**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| MERCER INTERNATIONAL INC., *et al.*, [1] | : | Case No. 26-90829 (CML) |
| Debtors. | : | (Joint Administration Requested) |

**EMERGENCY MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) SCHEDULING COMBINED HEARING ON (A) ADEQUACY OF DISCLOSURE STATEMENT AND (B) CONFIRMATION OF PLAN; (II) APPROVING (A) SOLICITATION PROCEDURES, (B) FORM AND MANNER OF NOTICE OF COMMENCEMENT, COMBINED HEARING, AND OBJECTION DEADLINE, AND (C) RIGHTS OFFERING PROCEDURES AND RELATED FORMS, AND AUTHORIZING COMMENCEMENT OF THE RIGHTS OFFERING; (III) FIXING DEADLINE TO OBJECT TO DISCLOSURE STATEMENT AND PLAN; (IV) CONDITIONALLY (A) DIRECTING THE UNITED STATES TRUSTEE NOT TO CONVENE SECTION 341 MEETING OF CREDITORS AND (B) WAIVING REQUIREMENT TO FILE STATEMENTS OF FINANCIAL AFFAIRS AND SCHEDULES OF ASSETS AND LIABILITIES; (V) CONDITIONALLY APPROVING THE DISCLOSURE STATEMENT; AND (VI) GRANTING RELATED RELIEF**

**Emergency relief has been requested. Relief is requested not later than 2:30 p.m. (prevailing Central Time) on November 10, 2026.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on November 10, 2026 at 2:30 p.m. (prevailing Central Time) in Courtroom 402, 4th floor, 515 Rusk Street, Houston, Texas 77002.**

**Participation at the hearing will only be permitted by an audio and video connection.**

---

[1] The Debtors in the Chapter 11 Cases, together with the last four digits of each Debtor's taxpayer identification number, are: Mercer International Inc. (6945) and Mercer International (Texas) LLC (N/A). The Debtors' mailing address for purposes of the Chapter 11 Cases is: Suite 1120, 700 West Pender Street, Vancouver, British Columbia V6C 1G8.

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

The above-captioned debtors in possession (collectively, the "***Debtors***") respectfully state as follows in support of this motion (this "***Motion***"):

**RELIEF REQUESTED**

1. By this Motion,[2] the Debtors seek entry of an order (the "***Proposed Order***"), substantially in the form attached hereto:

(a) scheduling a combined hearing (the "***Combined Hearing***") to (i) approve the *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Reorganization of Mercer International Inc. and Its Debtor Affiliate* (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***"), and (ii) consider confirmation of the *Joint Prepackaged Chapter 11 Plan of Reorganization of Mercer International Inc. and Its Debtor Affiliate* (as may be amended, modified, or supplemented from time to time and including all exhibits thereto, the "***Plan***");

(b) establishing a deadline to object to the adequacy of the Disclosure Statement and confirmation of the Plan (the "***Objection Deadline***");

(c) approving the Solicitation Procedures (as defined herein) with respect to the Plan, including the forms of ballots to solicit votes to accept or reject the Plan (the "***Ballots***"), the Notice of Non-Voting Status and Release Opt-Out Form (each as defined herein), the Voting Record Date (as defined herein), and the Tabulation Procedures (as defined herein);

(d) approving the Rights Offering Procedures (as defined herein), the related subscription forms, the Rights Offering Record Date, the Subscription

[2] Capitalized terms used but not otherwise defined in this Motion have the meanings given to them in the Plan or, if not defined therein, in the First Day Declaration.

Commencement Date, and the Subscription Expiration Deadline (each as defined herein), and the manner of distribution thereof, and authorizing the Debtors to commence the Rights Offering;

(e) approving the form and manner of the notice of the commencement of the Chapter 11 Cases (as defined herein), the Combined Hearing, and the Objection Deadline;

(f) so long as the Plan is confirmed on or before January 8, 2027 (the "***SOFA/Schedule Deadline***"), which deadline may be extended without further order of the Court by written agreement between the Debtors and the Office of the United States Trustee for the Southern District of Texas (the "***U.S. Trustee***"), (i) directing the U.S. Trustee not to convene an initial meeting of creditors under section 341(a) of the Bankruptcy Code (the "***341 Meeting***"), (ii) waiving the requirement that the Debtors file statements of financial affairs (the "***SOFAs***") and schedules of assets and liabilities (the "***Schedules***"), and (iii) waiving the requirement that the Debtors file their initial reports of financial information with respect to entities in which their chapter 11 estates hold a controlling or substantial interest, as set forth in Bankruptcy Rule 2015.3 (the "***2015.3 Reports***");

(g) conditionally approving the Disclosure Statement, including for purposes of the postpetition solicitation of votes from the Non-Eligible Holders (as defined herein) of Senior Notes Claims in Class 3 and Holders of Existing Equity Interests in Class 8, waiving the 28-day notice requirement under Bankruptcy Rule 3017(a) to the extent necessary to permit such solicitation upon entry of the Proposed Order, and waiving the requirement under Bankruptcy Rule 3017(d) to distribute the Disclosure Statement and the Plan to Holders not entitled to vote; and

(h) granting related relief.

2. In connection with the Combined Hearing, the Debtors will seek entry of an order (the "***Confirmation Order***") (a) approving the adequacy of the Disclosure Statement on a final basis, (b) confirming the Plan, and (c) granting related relief. The Proposed Order is intended to constitute the Rights Offering Procedures Order (as defined in the Plan). The Debtors will seek approval of their entry into the Backstop Commitment Letter (as defined herein), including the Put Option Premium (as defined herein), by separate motion.

3. The following table summarizes the relevant dates requested in this Motion (subject to the Court's calendar):

| Event | Date/Deadline |
|---|---|
| Voting Record Date | November 2, 2026 |
| Solicitation Commencement Date (Distribution of Solicitation Packages to All Holders in Class 3 Before Filing of the Chapter 11 Cases; Only Eligible Holders May Vote) | November 9, 2026 |
| Petition Date / Rights Offering Record Date | November 9, 2026 |
| Service of Combined Notice, Notice of Non-Voting Status, and Release Opt-Out Forms[3] / Distribution of Solicitation Packages to Holders in Class 8 / Rights Offering Subscription Commencement Date | November 12, 2026, or as soon as reasonably practicable thereafter |
| Publication of Publication Notice | On or about November 16, 2026, and no later than 21 days before the Combined Hearing (or as soon as reasonably practicable thereafter) |
| Plan Supplement Initial Filing | December 3, 2026 (no later than 7 days before the Objection Deadline) |
| Voting Deadline / Deadline for Holders in Unimpaired Non-Voting Classes to Submit Release Opt-Out Forms | December 10, 2026 at 4:00 p.m. (prevailing Central Time) |
| Plan/Disclosure Statement Objection Deadline | December 10, 2026 at 4:00 p.m. (prevailing Central Time) |
| Rights Offering Subscription Expiration Deadline | December 10, 2026 at 4:00 p.m. (prevailing Central Time) |
| Deadline to File Voting Report | December 14, 2026 (or 2 business days before any adjourned Combined Hearing) |
| Deadline to File Confirmation Brief and Reply to Objection(s) / Deadline to File Proposed Confirmation Order | December 14, 2026 (or 2 business days before any adjourned Combined Hearing) |
| Combined Hearing | December 16, 2026 at 9:00 a.m. (prevailing Central Time) (subject to the Court's availability) |
| SOFA / Schedule Deadline | January 8, 2027 |

4. The following table summarizes the attachments and exhibits cited throughout this Motion:

| Pleading | Exhibit |
|---|---|
| Proposed Order | Attached to this Motion |
| Combined Notice | Exhibit 1 to the Proposed Order |

[3] The Combined Notice will also notify Holders in the Voting Classes that the Proposed Order has been entered and that Non-Eligible Holders may now submit Ballots on or before the Voting Deadline. The Rights Offering Procedures will be distributed on the same timeline.

| Pleading | Exhibit |
|---|---|
| Publication Notice | Exhibit 2 to the Proposed Order |
| Tabulation Procedures | Exhibit 3 to the Proposed Order |
| Notice of Non-Voting Status and Release Opt-Out Form | Exhibit 4 to the Proposed Order |
| Form of Class 3 Beneficial Holder Ballot | Exhibit 5-A to the Proposed Order |
| Form of Class 3 Master Ballot | Exhibit 5-B to the Proposed Order |
| Form of Class 8 Beneficial Holder Ballot | Exhibit 6-A to the Proposed Order |
| Form of Class 8 Master Ballot | Exhibit 6-B to the Proposed Order |
| Form of Class 8 Registered Holder Ballot | Exhibit 6-C to the Proposed Order |
| Rights Offering Procedures and Subscription Forms | Exhibit 7 to the Proposed Order |

## JURISDICTION AND VENUE

5. The United States Bankruptcy Court for the Southern District of Texas (the "***Court***") has jurisdiction to consider this Motion under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent with Article III of the United States Constitution.

6. Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

7. The statutory and legal predicates for the relief requested herein are sections 105(a), 105(d), 341, 363(b)(1), 521(a), 1125, 1126, 1127, and 1128 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "***Bankruptcy Code***"), rules 1007, 2002, 2003, 2015.3, 3016, 3017, 3018, 3019, 3020, 6003, 6004, and 9006 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), rules 2002-1, 2015-3, 3016-2, and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "***Bankruptcy Local Rules***"), and the Procedures for Complex Cases in the Southern District of Texas (the "***Complex Case Procedures***").

## BACKGROUND

8. On November 9, 2026 (the "***Petition Date***"), the Debtors each commenced with the Court a voluntary case (collectively, the "***Chapter 11 Cases***") under chapter 11 of the Bankruptcy

Code. The Debtors continue to manage and operate their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been requested, and no committee has been appointed in the Chapter 11 Cases.

9. The Debtors and their Non-Debtor Affiliates (collectively, the "***Company***") are leading producers of "market" pulp and solid wood products. The Company's pulp business comprises the manufacture, sale, and distribution of pulp, electricity, and chemicals at its four modern pulp mills in Germany and Western Canada. The Company is one of the world's largest producers of northern bleached softwood kraft ("***NBSK***") pulp, a premium grade of pulp. The Company is the only significant pulp producer and the sole NBSK pulp producer in Germany, which is the largest pulp import market in Europe. The Company's pulp operations are well positioned to supply China and other Asian markets through its proximity to key ports and existing logistics arrangements. The Company's solid wood business comprises the manufacture, sale, and distribution of lumber, manufactured products (including cross-laminated timber, glulam, and finger joint lumber), wood pallets, electricity, biofuels, and wood residuals from two facilities located in Germany and three mass timber facilities in North America.

10. On November 2, 2026, the Debtors entered into (a) the Consenting Senior Noteholder RSA with the Consenting Senior Noteholders that hold, own, or control, in the aggregate, approximately 88.58% of the aggregate outstanding principal amount of the Senior Notes and have agreed, pursuant to the Consenting Senior Noteholder RSA, to support the Company's restructuring, and (b) the Consenting Equityholder RSA (and together with the Consenting Senior Noteholder RSA, the "***Restructuring Support Agreements***") with the Consenting Equityholders which hold, in the aggregate, approximately 43.1% of the aggregate outstanding Existing Equity Interests and have agreed, pursuant to the Consenting Equityholder

RSA, to support the Company's restructuring, in each case pursuant to the Plan, filed contemporaneously herewith. Each Consenting Senior Noteholder's support is provided solely pursuant to the Consenting Senior Noteholder RSA, and each Consenting Equityholder's support is provided solely pursuant to the Consenting Equityholder RSA.

11. The Consenting Senior Noteholder RSA also attaches, as an exhibit to the restructuring term sheet annexed thereto, the backstop commitment letter (as may be amended, supplemented, or modified from time to time, the "***Backstop Commitment Letter***") between the Debtors and certain members of the Majority Ad Hoc Group (the "***Backstop Parties***"), as described further in Part I.C below.

12. The factual background regarding the Debtors, including the Company's business operations, the Debtors' capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of Richard Short in Support of Debtors' Chapter 11 Petitions and First Day Relief* (the "***First Day Declaration***"), filed contemporaneously herewith and incorporated herein by reference.

13. Simultaneously with the filing of this Motion, the Debtors have filed a motion with this Court pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1 seeking joint administration and consolidation of the Chapter 11 Cases for procedural purposes only.

**THE PLAN**

14. During the months leading up to the Petition Date, and as detailed in the First Day Declaration and the Disclosure Statement, the Debtors negotiated a holistic balance-sheet restructuring memorialized in the Plan. The Plan has the overwhelming support of the Debtors' major stakeholders, as evidenced by the Consenting Senior Noteholder RSA executed by the Consenting Senior Noteholders and the Consenting Equityholder RSA executed by the Consenting Equityholders (together with the Consenting Senior Noteholders, the "***Consenting Stakeholders***").

15. Subject to the Court's approval, the Plan will accomplish a material deleveraging of the Debtors' balance sheet by exchanging approximately $1.275 billion in principal amount of Senior Notes, without impairing business operations and, notably, satisfying General Unsecured Claims in full. Pursuant to the Restructuring Support Agreements, the Consenting Senior Noteholders and the Consenting Equityholders, as applicable, agreed to, among other things, vote in favor of and support confirmation of the Plan. Accordingly, with the support of their key stakeholders, the Debtors expect to emerge from the Chapter 11 Cases expeditiously, with a right-sized balance sheet, and poised for future growth and success.

16. General unsecured creditors, including trade vendors and insurance providers, are Unimpaired under the Plan and, pursuant to relief sought at the outset of the Chapter 11 Cases, will continue to receive payments in the ordinary course of business, subject to the applicable contracts and arrangements governing their respective relationships with the Debtors. In short, the Debtors anticipate and intend that the Company's operations will continue unchanged and uninterrupted as a result of the Chapter 11 Cases. Accordingly, the Debtors believe that the transactions described in the Restructuring Support Agreements and the Plan represent the best path forward to strengthen their business by materially deleveraging their balance sheet and enhancing liquidity, while allowing business operations to continue without unnecessary interruption.

## BASIS FOR RELIEF

### I. SCHEDULING A COMBINED HEARING IS REASONABLE AND APPROPRIATE.

17. Consistent with the prepackaged nature of the Plan and the broad stakeholder support described above, the Debtors seek to set the Combined Hearing to consider approval of the Disclosure Statement, on a final basis, and confirmation of the Plan. Section 1128(a) of the

Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan." 11 U.S.C. § 1128(a). Section 105(d) of the Bankruptcy Code provides that the Court may combine the hearing on approval of a disclosure statement with the hearing on confirmation of a chapter 11 plan. 11 U.S.C. § 105(d)(2)(B)(vi); *see also In re Gulf Coast Oil Corp.*, 404 B.R. 407, 425 (Bankr. S.D. Tex. 2009) (stating that section 105(d) of the Bankruptcy Code authorizes the court to hold combined hearings for disclosure statements and plans).

18. Additionally, Bankruptcy Local Rule 3016-2 and Section P of the Complex Case Procedures permit the Court to combine the hearing to consider adequacy of the Disclosure Statement and confirmation of the Plan, so long as the motion identifies the proposed balloting agent, any voting procedures in addition to those required in the Complex Case Procedures, and the proposed hearing date, and includes a proposed order that provides for the items enumerated in paragraph 43 of the Complex Case Procedures. This Motion and the Proposed Order do each of these things, including by identifying the Solicitation Agent and describing the voting procedures in Part II below. Bankruptcy Rule 3020(b)(1) further provides that objections to confirmation of a plan must be filed and served "within the time set by the court," which time the Debtors request hereby. Fed. R. Bankr. P. 3020(b)(1).

19. A Combined Hearing is particularly appropriate here because, in advance of the Petition Date, the Debtors completed the most sensitive and difficult task required to effectuate a successful reorganization: the negotiation of the Plan with the support of the Consenting Stakeholders. The Debtors also began soliciting votes on the Plan from Eligible Holders (as defined herein) of Senior Notes Claims in Class 3 before commencing the Chapter 11 Cases on the Petition Date. Accordingly, a Combined Hearing will promote judicial economy and allow the Debtors to effectuate their restructuring expeditiously and preserve value.

20. The proposed schedule set forth herein affords Holders of Claims and Interests and all other parties in interest ample notice of commencement of the Chapter 11 Cases and the Combined Hearing. Specifically, the proposed schedule affords approximately 34 days after service of the Combined Notice for parties to evaluate their rights with respect to the Plan before the Combined Hearing and, therefore, no party in interest will be prejudiced by the requested relief.

21. Finally, the Debtors request that the Proposed Order provide that the Combined Hearing may be adjourned, from time to time, by the Debtors (subject to the terms of the Consenting Senior Noteholder RSA) without further notice other than an announcement of the adjourned date or dates in open court or at the Combined Hearing, or the filing of a notice or hearing agenda on the docket. Any notice of such adjourned date(s) will be available on the electronic case filing docket. The Debtors further request that the Court authorize the Solicitation Agent to file the tabulation of votes on the Plan (the "***Voting Report***") by no later than December 14, 2026, or 2 business days before any adjourned Combined Hearing.

**A. Approval of the Disclosure Statement**

22. Because adequate disclosure is a prerequisite to soliciting votes on the Plan, the Debtors seek conditional approval of the Disclosure Statement now, upon entry of the Proposed Order, and will seek entry of an order approving the adequacy of the Disclosure Statement on a final basis at the Combined Hearing. Pursuant to section 1125 of the Bankruptcy Code, a plan proponent must provide holders of impaired claims and interests with "adequate information" regarding a debtor's proposed plan of reorganization, which is defined as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that

> would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).

23. Whether a disclosure statement contains "adequate information" under section 1125(a)(1) of the Bankruptcy Code is a flexible, fact-specific inquiry left to the Court's discretion. *See* H.R. Rep. No. 95-595, at 408-09 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6365; *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (adequate information "will be determined by the facts and circumstances of each case"); *Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988) ("[t]he determination of what is adequate information is subjective and made on a case by case basis" and "largely within the discretion of the bankruptcy court"). Courts typically look for disclosures regarding, among other things, the events leading to the bankruptcy filing, the debtor's assets and post-emergence operations, a liquidation analysis, and the risks posed to creditors under the plan. *See Westland Oil Dev. Corp. v. MCorp Mgmt. Solutions, Inc.*, 157 B.R. 100, 102 (S.D. Tex. 1993) (citing *In re Metrocraft Pub. Serv., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984)).

24. Consistent with these factors, the Disclosure Statement describes, among other things, (a) the Plan, including the releases, exculpation, and injunctions set forth therein, (b) the Debtors' business operations, (c) key events leading to the commencement of these Chapter 11 Cases, (d) the Debtors' significant prepetition indebtedness, (e) the proposed, pro forma capital structure of the Reorganized Debtors, (f) financial information and valuations relevant to creditors' determination to accept or reject the Plan, (g) a liquidation analysis, (h) risk factors associated with the Plan, (i) the means for implementation of the Plan, and (j) federal tax law consequences of the Plan. At the Combined Hearing, the Debtors will demonstrate that the Disclosure Statement

contains "adequate information," within the meaning of section 1125(a) of the Bankruptcy Code, and should be approved on a final basis.

25. Conditional approval of the Disclosure Statement at this juncture is also warranted because the Debtors' solicitation of votes on the Plan began before, and will continue after, the Petition Date. As described in Part II.A below, only Eligible Holders of Senior Notes Claims in Class 3 (as defined herein) were permitted to vote on the Plan before the Petition Date, and Non-Eligible Holders (as defined herein) and all Holders of Existing Equity Interests in Class 8 will be permitted to vote only upon entry of the Proposed Order. *See* 11 U.S.C. § 1125(g) ("[A]n acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law."). Section 1125(b) provides that a vote to accept or reject a plan "may not be solicited after the commencement of the case . . . unless, at the time of or before such solicitation, there is transmitted to such holder . . . a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b).

26. Thus, in accordance with section 1125(b) of the Bankruptcy Code, the Debtors request, as permitted by Bankruptcy Local Rule 3016-2 and Section P of the Complex Case Procedures, that the Court conditionally approve the Disclosure Statement as containing adequate information solely for the purpose of permitting the postpetition solicitation of votes from the Non-Eligible Holders and Holders of Existing Equity Interests in Class 8 (and the continued solicitation of Eligible Holders), consistent with the Solicitation Procedures described herein. Conditional approval of the Disclosure Statement at the outset of the Chapter 11 Cases is necessary so that the Debtors can continue to pursue, obtain approval of, and effectuate the restructuring transactions

on a timeline consistent with the Restructuring Support Agreements, and failure to obtain conditional approval could require the Debtors to resolicit votes on the Plan, imposing significant additional costs on the Debtors' estates with nominal (if any) benefit. Indeed, this is particularly appropriate here given the substantial support for the Plan from the Voting Classes (as defined herein). Under the Consenting Senior Noteholder RSA, the Consenting Senior Noteholders, which hold, own, or control, in the aggregate, approximately 88.58% of the aggregate principal amount of Senior Notes, have agreed to support the Plan. Under a separate agreement, the Consenting Equityholder RSA, the Consenting Equityholders which hold, in the aggregate, approximately 43.1% of the outstanding Existing Equity Interests, have likewise agreed to support the Plan. The Consenting Senior Noteholders and the Consenting Equityholders are not parties to each other's Restructuring Support Agreement, and each such group has agreed to support the Plan separately from the other. The Holders of Claims and Interests in the Non-Voting Classes (as defined herein) are receiving treatment that renders them Unimpaired under the Plan.

**B. Confirmation of the Plan**

27. The Debtors are not seeking confirmation of the Plan by this Motion. Instead, confirmation of the Plan will be considered at the Combined Hearing. The Debtors believe that the Plan satisfies all of the requirements for confirmation under the Bankruptcy Code. Before the Combined Hearing, the Debtors will file a brief in support of confirmation that, among other things, will (a) demonstrate that the Plan satisfies the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code and (b) respond to objections to confirmation, if any. The Debtors further request that, to the extent the Plan is modified before confirmation in accordance with its terms and the terms of the Consenting Senior Noteholder RSA, any acceptance or rejection of the Plan be deemed an acceptance or rejection of the Plan as so modified, unless such modification materially and adversely changes the treatment of the Claim or Interest of the

applicable Holder, in which case resolicitation would be required only to the extent required by section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. *See* 11 U.S.C. § 1127; Fed. R. Bankr. P. 3019(a); *In re New Power Co.*, 438 F.3d 1113, 1117–18 (11th Cir. 2006) ("[T]he bankruptcy court may deem a claim or interest holder's vote for or against a plan as a corresponding vote in relation to a modified plan unless the modification materially and adversely changes the way that claim or interest holder is treated.").

**C. The Backstop Commitment Letter**

28. As described in Part III below, the Rights Offering is backstopped in full by the Backstop Parties pursuant to the Backstop Commitment Letter, in exchange for which the Backstop Parties will receive, among other things, a non-refundable put option premium in an aggregate amount of $56.0 million (the "***Put Option Premium***"), payable in the form of additional new senior secured notes (the "***Put Option Premium Notes***"); *provided* that, if the Backstop Commitment Letter is terminated prior to the effective date of the Plan for any reason other than a breach of the Backstop Commitment Letter or the other Definitive Documents (as defined in the Consenting Senior Noteholder RSA) by the Backstop Parties, the Put Option Premium will be payable in cash on the earlier of (a) 20 business days after such termination and (b) the consummation of an Alternative Transaction (as defined in the Consenting Senior Noteholder RSA).

29. The Debtors are not seeking approval of the Backstop Commitment Letter pursuant to this Motion. Rather, the Debtors will seek approval of their entry into, and performance under, the Backstop Commitment Letter, including the payment of the Put Option Premium and the indemnities provided for thereunder, by separate motion.

## II. APPROVAL OF THE SOLICITATION PROCEDURES AND FORMS OF SOLICITATION MATERIALS

30. The Court should approve the solicitation, balloting, tabulation, and related activities undertaken in connection with the Plan, which were commenced by the Debtors before the Petition Date and are proposed to be completed on the timeline set forth herein (collectively, the "***Solicitation Procedures***"). As set forth below, the Solicitation Procedures comply with the various applicable provisions of the Bankruptcy Rules and Bankruptcy Code and should be approved.

### A. The Debtors' Prepetition Solicitation Was Exempt from Registration and Disclosure Requirements Otherwise Applicable Under Non-Bankruptcy Law.

31. Section 1125(g) of the Bankruptcy Code provides: "[A]n acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law." 11 U.S.C. § 1125(g). Section 1126(b) of the Bankruptcy Code provides:

> [A] holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if—(1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or (2) if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

11 U.S.C. § 1126(b). Therefore, either the prepetition solicitation must comply with generally applicable Federal and state securities laws and regulations (including the registration and disclosure requirements thereof) or, if such laws and regulations do not apply, the solicited holders must receive "adequate information" under section 1125 of the Bankruptcy Code. *Id.*

32. Here, the Debtors' prepetition Solicitation (as defined herein) of votes from Eligible Holders (as defined herein) of Senior Notes Claims in Class 3 is exempt from the registration requirements of the Securities Act of 1933 (as amended, the "***Securities Act***") pursuant to Section 4(a)(2) of the Securities Act (and Regulation D and Regulation S promulgated thereunder), and under state "Blue Sky" laws, or any similar rules, regulations, or statutes.

33. Before the Petition Date, the Debtors solicited votes on the Plan solely from Eligible Holders of Senior Notes Claims in Class 3. Because the Plan provides Holders of Allowed Claims and Interests in the Voting Classes (as defined herein) with distributions that include new securities under the Plan, the Debtors required each Holder of Senior Notes Claims in Class 3 submitting a Ballot prior to entry of the Proposed Order to certify in the applicable Ballot that such Holder is (a) a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act), (b) an "accredited investor" (as defined in Rule 501(a) of Regulation D under the Securities Act) (or their authorized signatories), or (c) for holders located outside the United States, a person other than a "U.S. person" (as defined in Rule 902(k) of Regulation S under the Securities Act) and not participating on behalf of or on account of a U.S. person (collectively, the "***Eligible Holders***").

34. Accordingly, the requirements of section 1126(b)(1) of the Bankruptcy Code have been satisfied by the Debtors' prepetition Solicitation process. As noted above, and to the extent section 1126(b)(1) of the Bankruptcy Code is determined not to apply, the Debtors will seek a final determination from the Court at the Combined Hearing that all solicited holders received "adequate information" as defined by section 1125(a) of the Bankruptcy Code in compliance with section 1126(b)(2) of the Bankruptcy Code.

35. Holders of Senior Notes Claims in Class 3 who are not Eligible Holders, and to whom the exemptions applicable to Eligible Holders therefore do not apply (collectively, the

"***Non-Eligible Holders***"), also received the Solicitation Package (as defined herein) before the Petition Date. The Solicitation Package, including the Ballots, directed Non-Eligible Holders not to submit Ballots prior to entry of the Proposed Order. It also advised that any Ballot received from a Non-Eligible Holder prior to such time will not be counted and that any Holder submitting a Ballot prior to such time certifies that it is an Eligible Holder. The Debtors propose to permit Non-Eligible Holders to vote on the Plan upon entry of the Proposed Order pursuant to the conditionally approved Disclosure Statement. The Debtors will promptly notify Holders in the Voting Classes of such entry by distributing the Combined Notice. The Combined Notice advises that, following entry of the Proposed Order, Non-Eligible Holders may vote to accept or reject the Plan by completing and returning their Ballots in accordance with the instructions thereon so that they are actually received by the Solicitation Agent on or before the Voting Deadline. Non-Eligible Holders may obtain additional copies of their Ballots and the other solicitation materials, free of charge, from the Solicitation Agent.

36. The Debtors intend to rely on section 1145(a) of the Bankruptcy Code to exempt the offer, issuance, and distribution of the New Common Stock and New Convertible Preferred Stock under the Plan (including the Stapled Equity, to the extent permitted) to Holders of Allowed Senior Notes Claims and Holders of Allowed Existing Equity Interests from registration under the Securities Act. With respect to the Rights Offering, the offer of the Subscription Rights, the New Money Senior Secured Notes, and the Stapled Equity and the offering, issuance, and distribution of the New Money Senior Secured Notes and the Stapled Equity to Rights Offering Participants under the Plan after the Petition Date (other than any New Money Senior Secured Notes and related Stapled Equity issued to the Backstop Parties pursuant to their commitments under the Backstop Commitment Letter) will be exempt from registration in reliance on section 1145(a) of the

Bankruptcy Code to the maximum extent permitted by law or, if section 1145(a) of the Bankruptcy Code is not available, Section 4(a)(2) of the Securities Act or Regulation D or Regulation S thereunder. Any New Money Senior Secured Notes and related Stapled Equity issued to the Backstop Parties pursuant to the Backstop Commitment Letter (other than Put Option Premium Notes, at the election of the beneficial owner thereof) will be issued in reliance on Section 4(a)(2) of the Securities Act.

37. To the extent issued pursuant to section 1145(a) of the Bankruptcy Code, such securities will be deemed issued in a public offering, will not be "restricted securities," and may be resold without registration, subject to (a) the provisions of section 1145(b)(1) of the Bankruptcy Code with respect to "underwriters," (b) restrictions applicable to any holder that is, or within 90 days of such resale was, an "affiliate" of the Reorganized Debtors, (c) compliance with applicable securities laws, (d) the New Corporate Governance Documents, (e) the procedures of DTC (as defined herein), and (f) any other applicable regulatory requirements. With respect to any New Money Senior Secured Notes (and related Stapled Equity) purchased by the Backstop Parties pursuant to the Backstop Commitment Letter (other than Put Option Premium Notes, at the election of the beneficial owner thereof), the Debtors intend to rely on Section 4(a)(2) of the Securities Act, and such securities will be "restricted securities," each as more fully described in the Disclosure Statement and the Rights Offering Procedures. The Debtors' postpetition solicitation of votes from the Non-Eligible Holders and Holders of Existing Equity Interests in Class 8 will be made pursuant to the conditionally approved Disclosure Statement in accordance with section 1125(b) of the Bankruptcy Code and does not require registration under the Securities Act.

38. Therefore, because the Solicitation Procedures comply with applicable Federal and state securities laws, the Debtors' prepetition actions under the Solicitation Procedures satisfied the requirements of section 1126(b)(1) of the Bankruptcy Code. Further, the Debtors respectfully submit that the Solicitation Procedures also satisfy section 1126(b)(2) of the Bankruptcy Code. All Holders of Claims and Interests in the Voting Classes have received or will receive "adequate information" as that term is used in section 1125(a) of the Bankruptcy Code and, accordingly, the Solicitation Procedures with respect to the Voting Classes should be approved.

**B. Non-Solicitation of Holders Presumed to Accept the Plan**

39. The Plan provides that the Holders of Claims and Interests in specific Classes are presumed to accept the Plan (collectively, the "***Non-Voting Classes***"). Specifically, Holders of Claims in Class 1 (Secured Claims), Class 2 (Other Priority Claims), Class 4 (General Unsecured Claims), and Class 7 (510(b) Claims) are Unimpaired and are presumed to accept the Plan (collectively, the "***Unimpaired Non-Voting Classes***"). Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of a Claim or Interest in an Unimpaired class is "conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class . . . is not required." 11 U.S.C. § 1126(f). Accordingly, Holders in the Unimpaired Non-Voting Classes are conclusively presumed to accept the Plan and, therefore, are not entitled to vote.

40. Similarly, Holders of Claims and Interests in Class 5 (Intercompany Claims) and Class 6 (Intercompany Interests) are also Unimpaired and thus are presumed to accept the Plan but, because such Claims and Interests are held by the Debtors' affiliates, are not included in the Unimpaired Non-Voting Classes and will not receive the Notice of Non-Voting Status. Together with the Unimpaired Non-Voting Classes, Class 5 and Class 6 constitute the Non-Voting Classes. Accordingly, Holders of Claims and Interests in each of the Non-Voting Classes are conclusively presumed to accept the Plan and will not be solicited.

41. The Debtors are requesting a waiver of the requirement that they mail copies of the Plan and Disclosure Statement to any Non-Voting Class. *See* Fed. R. Bankr. P. 3017(d)(1)(B) (requiring transmission of court-approved disclosure statement to, *inter alia*, classes of unimpaired creditors and equity security holders unless the court orders otherwise). Although the Debtors commenced the Solicitation on a prepetition basis, the Debtors will solicit acceptances and rejections of the Plan from the Non-Eligible Holders and Holders of Existing Equity Interests in Class 8 on a postpetition basis following the Court's entry of the Proposed Order conditionally approving the Disclosure Statement. To the extent Bankruptcy Rule 3017(d) applies upon such conditional approval, Bankruptcy Rule 3017(d) expressly permits the Court to order otherwise, and the Debtors request such relief out of an abundance of caution. Holders in the Non-Voting Classes are not entitled to vote on the Plan because they are presumed to accept the Plan by operation of law, *see* 11 U.S.C. § 1126(f), and will instead receive the Combined Notice and the Notice of Non-Voting Status, which explain how to obtain copies of the Plan and the Disclosure Statement free of charge. Because such Holders are Unimpaired (*i.e.*, their legal, equitable, and contractual rights are unaltered by the Plan), transmitting the voluminous Disclosure Statement and Plan to them would impose significant and unnecessary administrative costs (such as printing and postage costs) on the Debtors' estates without providing any corresponding benefit.

42. In lieu of furnishing each Non-Voting Class with a copy of the Plan and Disclosure Statement, the Debtors propose to send to each Non-Voting Class (other than Class 5 (Intercompany Claims) and Class 6 (Intercompany Interests)) the Combined Notice (as defined herein), which sets forth a summary of the Plan, the treatment of such Claims and Interests in the Non-Voting Classes, and the manner in which a copy of the Plan and the Disclosure Statement may be obtained free of charge. The Debtors have made the Disclosure Statement and the Plan

available at no cost on the website of the Debtors' proposed claims, noticing, and solicitation agent, Stretto, Inc. (the "***Solicitation Agent***") at https://cases.stretto.com/Mercer.

43. In addition to the Combined Notice, the Debtors propose to send to the Holders in the Unimpaired Non-Voting Classes the notice of non-voting status (the "***Notice of Non-Voting Status***"), which the Debtors propose to mail (or cause to be mailed) to such Holders within 2 calendar days of the entry of the Proposed Order or as soon as reasonably practicable thereafter. The Debtors further request that the Court authorize the Solicitation Agent to serve the Combined Notice and the Notice of Non-Voting Status (including the Release Opt-Out Forms) on Holders in the Non-Voting Classes by email, where available, or otherwise by first-class mail pursuant to Bankruptcy Rule 2002(m), in lieu of sending such Holders copies of the Disclosure Statement and the Plan, which minimizes the administrative burden and cost of serving the large number of parties in interest who cannot vote on the Plan and will expedite receipt of such materials by parties served by email. With respect to Class 5 (Intercompany Claims) and Class 6 (Intercompany Interests), the Debtors request a waiver of any requirement to serve a Notice of Non-Voting Status or any other type of notice in connection with the Plan because such Claims and Interests are held by the Debtors' affiliates (and not individual creditors or interest holders).

44. The Notice of Non-Voting Status, attached as **Exhibit 4** to the Proposed Order, contains the full text of the injunction, release, and exculpation provisions set forth in Articles 10.5, 10.6, and 10.7, respectively, of the Plan and advises the Holders in the Non-Voting Classes that they will be deemed to have consented to the third-party release provision in Article 10.6(b) of the Plan unless they timely and properly choose to opt out on the release opt-out form provided to

them by the Debtors (the "***Release Opt-Out Form***").[4] The Notice of Non-Voting Status further advises that, consistent with the Plan, any Holder of a Claim or Interest that timely objects to the Third-Party Release, either through a formal objection Filed on the docket of the Chapter 11 Cases or an informal objection provided to the Debtors by electronic mail, which objection is not withdrawn or otherwise resolved before entry of the Confirmation Order, will not be a Releasing Party. The Notice of Non-Voting Status also includes instructions for where the Holders in Non-Voting Classes can obtain, free of charge, copies of the Plan, Disclosure Statement, and related exhibits such as the valuation analysis, financial projections, and Plan Supplement and information generally about the Plan and Combined Hearing.

45. Under the circumstances, the Debtors submit that the Notice of Non-Voting Status is adequate and appropriate to provide the Holders in the Unimpaired Non-Voting Classes notice of their non-voting status and the opportunity to opt out of the third-party release set forth in Article 10.6(b) of the Plan. The Plan and the Disclosure Statement describe the injunction, release, and exculpation provisions in specific and conspicuous language, and the Ballots, the Combined Notice, and the Notice of Non-Voting Status each set forth the full text of those provisions. *See* Fed. R. Bankr. P. 2002(c)(3), 3016(c). Accordingly, the Debtors request that the Court find that (a) the Solicitation Package complies with Bankruptcy Rules 2002(b) and 3017(d), and (b) the Plan, the Disclosure Statement, the Solicitation Package, the Combined Notice, and the Notice of Non-Voting Status provide sufficient notice of the injunction, release, and exculpation provisions of the Plan in satisfaction of Bankruptcy Rules 2002(c)(3) and 3016(c).

[4] The proposed deadline for submission of Release Opt-Out Forms is the Voting Deadline of December 10, 2026 at 4:00 p.m. (prevailing Central Time).

46. The United States Postal Service may return some Solicitation Packages, Combined Notices, and Notices of Non-Voting Status as undeliverable. Re-mailing materials to addresses that already returned mail is costly and wasteful. The Debtors therefore request that the Court excuse them from mailing such materials to those addresses. The Debtors also request that the Court waive any obligation of the Debtors or the Solicitation Agent to research updated addresses based on materials returned as undeliverable in the prepetition and postpetition solicitation mailings. Finally, the Debtors request authority to rely on the address information for the Voting Classes and Non-Voting Classes as compiled, updated, and maintained by the Debtors as of the Voting Record Date.

47. For the foregoing reasons, the Solicitation Procedures undertaken by the Debtors and described herein with respect to the Non-Voting Classes comply with the Bankruptcy Code, and the Debtors respectfully request that the Court approve them.

**C. Solicitation of Impaired Classes Entitled to Vote to Accept or Reject the Plan**

48. Two (2) Classes are Impaired and entitled to vote to accept or reject the Plan: Class 3 (Senior Notes Claims) and Class 8 (Existing Equity Interests) (together, the "***Voting Classes***"). As described in Part II.A above, before the Petition Date, the Debtors distributed the Solicitation Package (as defined herein) to all Holders of Senior Notes Claims in Class 3, both Eligible Holders and Non-Eligible Holders, at the same time, but only Eligible Holders were permitted to vote prior to entry of the Proposed Order. Non-Eligible Holders of Senior Notes Claims in Class 3 and Holders of Existing Equity Interests in Class 8 will be permitted to vote following entry of the Proposed Order. This approach ensures that all Holders within each Class receive the same Solicitation Package at the same time as the other Holders in such Class, that prepetition votes of Eligible Holders are solicited consistent with Bankruptcy Rule 3018(b), and that Non-Eligible Holders, who have had the Solicitation Package since the Solicitation Commencement Date (as

defined herein), have a sufficient opportunity to vote following entry of the Proposed Order and before the Voting Deadline, while complying with applicable securities laws.

49. Specifically, on November 9, 2026, before the Debtors commenced the Chapter 11 Cases, the Debtors commenced the solicitation of votes on the Plan by distributing, via email, first-class mail, or overnight delivery, copies of the solicitation package to all Holders of Senior Notes Claims in Class 3, whether Eligible Holders or Non-Eligible Holders and whether directly or, as applicable, through Nominees[5] on behalf of Beneficial Holders,[6] containing the Disclosure Statement, including the Plan and other exhibits thereto, and one or more Ballots, as applicable (the "***Solicitation Package***"). Although all Holders of Senior Notes Claims in Class 3 received the Solicitation Package at the same time, prior to entry of the Proposed Order, only Eligible Holders of Senior Notes Claims are permitted to vote to accept or reject the Plan, and Non-Eligible Holders were instructed not to submit Ballots until entry of the Proposed Order. Following entry of the Proposed Order, the Debtors will solicit votes from the Non-Eligible Holders and from Holders of Existing Equity Interests in Class 8, to whom the Solicitation Package will be distributed as described below (collectively with the prepetition solicitation of Eligible Holders, the "***Solicitation***").

50. Given that the Disclosure Statement, including the Plan and other exhibits thereto, is voluminous, the Debtors have distributed, and request approval of the distribution of, the Disclosure Statement, including the Plan and other exhibits thereto, in electronic format (*i.e.*, on a

---

[5] A "***Nominee***" is any broker, dealer, commercial bank, trust company, savings and loan, financial institution, or other intermediary (or agent thereof) in whose name a beneficial owner's Senior Notes or Existing Equity Interests are registered or held of record, including through DTC (as defined herein), as of the Voting Record Date.

[6] A "***Beneficial Holder***" is a beneficial owner of Senior Notes Claims or Existing Equity Interests whose Claims or Interests have not been satisfied before the Voting Record Date pursuant to a Court order or otherwise, as reflected in the records maintained by the Nominees.

USB flash drive or via an electronic link). Distribution in this manner will translate into monetary savings for the Debtors' estates by reducing printing and postage costs.

51. The Solicitation Package advises Holders in the Voting Classes that, among other things, the deadline for submitting a Ballot containing a vote to accept or reject the Plan is December 10, 2026 at 4:00 p.m. (prevailing Central Time) (the "***Voting Deadline***"), which may be extended by the Debtors, subject to the consent rights set forth in the Consenting Senior Noteholder RSA. The Solicitation Package also advises recipients that Ballots[7] must be returned to the Solicitation Agent in accordance with express submission instructions set forth in the Ballots.[8] Each Ballot also contains detailed instructions on how to complete it and how to make any applicable elections contained therein, including an election permitting Holders in the Voting Classes to opt out of the third-party release set forth in Article 10.6(b) of the Plan. The Ballots set forth the full text of the release, injunction, and exculpation provisions of the Plan. Holders in the Voting Classes that do not affirmatively opt out on their Ballots will be deemed to grant such release. Consistent with the Plan, the Ballots also advise that any Holder in the Voting Classes that timely objects to the Third-Party Release, either through a formal objection Filed on the docket of the Chapter 11 Cases or an informal objection provided to the Debtors by electronic mail, which

[7] A "***Master Ballot***" is the master ballot provided to a Nominee for use in compiling and transmitting to the Solicitation Agent the votes of the Beneficial Holders for which it holds Senior Notes Claims or Existing Equity Interests.

[8] Holders in the Voting Classes were instructed to submit Ballots (provided that Non-Eligible Holders were instructed not to submit Ballots prior to entry of the Proposed Order) (a) for Master Ballots, via email at the email address provided in the Master Ballots, (b) for pre-validated Beneficial Holder Ballots, via email of a PDF copy to the email address provided in the Beneficial Holder Ballots, (c) for Registered Holder Ballots, via the E-Ballot Portal (as defined herein) accessible at the Debtors' restructuring website maintained by the Solicitation Agent, or (d) in hard copy by regular mail, overnight courier, or hand delivery to the address provided in the Ballots. Holders of Claims and Interests in the Non-Voting Classes will be instructed to submit Release Opt-Out Forms, as applicable, (a) in hard copy by regular mail, overnight courier, or hand delivery to the proposed Solicitation Agent's address provided in the Release Opt-Out Form or (b) online via the E-Ballot Portal accessible at the Debtors' restructuring website maintained by the Solicitation Agent.

objection is not withdrawn or otherwise resolved before entry of the Confirmation Order, will not be a Releasing Party.

52. The Debtors request authorization to accept Registered Holder Ballots[9] and Release Opt-Out Forms via electronic, online transmission through a customized online balloting portal on the Debtors' case website maintained by the Solicitation Agent (the "***E-Ballot Portal***"). Instructions for electronic, online transmission are set forth on each Registered Holder Ballot and Release Opt-Out Form. Master Ballots and pre-validated Ballots may not be submitted through the E-Ballot Portal. The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot or Release Opt-Out Form submitted in this manner, and the Holder's electronic signature will be deemed to be immediately legally valid and effective.

53. To establish Claim amounts for voting purposes for Holders of Claims in Class 3 (Senior Notes Claims), the Solicitation Agent relied on the amount of such Claims held by each Beneficial Holder through its Nominee as of the Voting Record Date as evidenced by the securities position report(s) from The Depository Trust Company ("***DTC***"), in each case based on the outstanding principal amount of the applicable Senior Notes, without regard to any accrued but unpaid interest, fees, or premiums.[10] To establish the amount of Existing Equity Interests for voting purposes, the Solicitation Agent relied on the Debtors' stock register maintained by the Debtors' transfer agent and the securities position report(s) from DTC as of the Voting Record Date. In the event of any inconsistency, the securities position report(s) from DTC will control for

---

[9] A "***Registered Holder***" is a Holder of Existing Equity Interests in Class 8 whose Existing Equity Interests are registered directly in its own name on the stock register maintained by the Debtors' transfer agent as of the Voting Record Date, and a "***Registered Holder Ballot***" is the Ballot provided to Registered Holders.

[10] Computershare Trust Company, N.A., as indenture trustee under each of the indentures governing the 2028 Senior Notes and the 2029 Senior Notes, has confirmed that there are no registered holders of the Senior Notes on its books and records, and that Cede & Co., as nominee for DTC, is the sole registered holder of the Senior Notes.

positions held through DTC, and the voting amount will control regardless of any amount set forth on a Ballot.

54. Before the Debtors commenced the Chapter 11 Cases on the Petition Date, the Solicitation Agent distributed the Solicitation Package, including the applicable Ballots, to Nominees for Class 3, together with instructions to forward the Solicitation Package to the underlying Beneficial Holders. Within 2 calendar days, or as soon as reasonably practicable thereafter, the Solicitation Agent will distribute the Solicitation Package in the same manner to Registered Holders of Existing Equity Interests in Class 8 as of the Voting Record Date and to Nominees for Class 8. Registered Holders in Class 8 will receive a Registered Holder Ballot, substantially in the form annexed as **Exhibit 6-C** to the Proposed Order, directly from the Solicitation Agent, and may return such Ballot to the Solicitation Agent in hard copy or via the E-Ballot Portal. Within 2 calendar days after entry of the Proposed Order, or as soon as reasonably practicable thereafter, the Solicitation Agent will serve the Combined Notice on Holders in the Voting Classes (including through Nominees), notifying such Holders that the Proposed Order has been entered and that Non-Eligible Holders of Senior Notes Claims in Class 3 may now submit Ballots on or before the Voting Deadline.

55. Before the Petition Date, Nominees were instructed to either (a) forward the Solicitation Package to Beneficial Holders no later than 5 business days after receipt, and collect and tabulate their votes on a Master Ballot, or (b) "pre-validate" a beneficial holder Ballot and forward it to the Beneficial Holder with instructions to return it directly to the Solicitation Agent. Nominees may also collect votes and forward solicitation materials in accordance with their customary practices, including by email or other electronic means, and may return any excess or unused Solicitation Packages to the Solicitation Agent. Nominees holding Existing Equity

Interests in Class 8 will be given the same instructions upon distribution of the Solicitation Package following entry of the Proposed Order (within 2 calendar days, or as soon as reasonably practicable thereafter). A Beneficial Holder that holds through more than one Nominee or account must return a separate Ballot for each, must vote all such Claims or Interests in the same manner, and must certify on each Ballot all other Ballots submitted in the same Voting Class, in sufficient time for the Nominee to return the Master Ballot so that it is actually received by the Solicitation Agent on or before the Voting Deadline. For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code applicable to Class 3, the Solicitation Agent will treat each Beneficial Holder as a single Holder, to the extent it is able to identify such Beneficial Holder's Ballots submitted through multiple Nominees or accounts. Acceptance by Class 8 will be determined in accordance with section 1126(d) of the Bankruptcy Code, which does not contain a numerosity requirement.

56. Votes submitted by a Nominee will not be counted in excess of such Nominee's record position as of the Voting Record Date, and the Solicitation Agent will reconcile any overvotes as set forth in the Tabulation Procedures (as defined herein). The Debtors request authority to reimburse Nominees for their reasonable and customary out-of-pocket expenses incurred in distributing Solicitation Packages. The foregoing procedures for distributing Solicitation Packages through Nominees and collecting votes through Master Ballots and pre-validated Ballots are designed to ensure that Beneficial Holders receive the Solicitation Package and a meaningful opportunity to vote, and the Debtors request that the Court determine that they are adequate under Bankruptcy Rule 3017(e). *See* Fed. R. Bankr. P. 3017(e) (requiring the court to "determine the adequacy of the procedures" for transmitting solicitation materials to beneficial holders).

57. The Solicitation Agent will tabulate the votes and elections contained in the Ballots in accordance with the tabulation procedures, substantially in the form annexed as **Exhibit 3** to the Proposed Order (the "***Tabulation Procedures***"), which provide neutral rules for counting Ballots, including that the last properly completed Ballot received before the Voting Deadline controls, that Holders may not split their votes within a Class, that Ballots that are not marked to accept or reject the Plan, or are marked to both accept and reject the Plan, will not be counted, and that, consistent with Article 3.6 of the Plan, if no Holder in a Voting Class submits a valid Ballot, the Plan shall be presumed accepted by such Voting Class. The Tabulation Procedures are consistent with sections 1126(c) and 1126(d) of the Bankruptcy Code and Bankruptcy Rule 3018(a), will permit the Solicitation Agent to determine whether each of Class 3 and Class 8 has accepted the Plan, and should be approved. *See* 11 U.S.C. § 1126(c) (two-thirds in amount and more than one-half in number of claims voting); 11 U.S.C. § 1126(d) (two-thirds in amount of interests voting).

58. The Debtors further request that the Court authorize (a) the Solicitation Agent to contact parties who submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies, without any obligation or liability for failing to do so, (b) the Debtors or the Solicitation Agent, as applicable, to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots, which determination, absent a contrary ruling by the Court, will be final and binding, and (c) the Debtors, subject to a contrary order of the Court, to waive any defects or irregularities as to any particular Ballot or Release Opt-Out Form at any time, either before or after the Voting Deadline, other than any requirement imposed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Local Rules, with any such waiver to be identified in the Voting Report. The Solicitation Agent will retain paper Ballots and solicitation-related correspondence for 2 years following the Effective

Date, after which it may dispose of such materials unless otherwise directed in writing by the Debtors or the Clerk of the Court within such 2-year period.

**D. The Voting Record Date**

59. Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan, "'creditors' and 'equity security holders' include record holders of stock, bonds, debentures, notes, and other securities on the date the order approving the disclosure statement is entered—or another date the court sets for cause and after notice and a hearing." Fed. R. Bankr. P. 3017(d)(4). Bankruptcy Rule 3018(a)(2) contains a similar provision regarding determination of the record date for voting purposes. Bankruptcy Rule 3018(b) provides that, in a prepetition solicitation, the holders of record of the applicable claims against and interests in a debtor entitled to receive ballots and related solicitation materials are to be determined "on the date specified in the solicitation[.]" Fed. R. Bankr. P. 3018(b). The Ballots distributed in the prepetition solicitation clearly identify November 2, 2026 as the date for determining which Holders of Senior Notes Claims in Class 3 were entitled to vote to accept or reject the Plan (the "***Voting Record Date***"). Pursuant to Bankruptcy Rule 3017(d)(4), the Debtors request that the Court set the Voting Record Date as the record date for determining which Holders of Existing Equity Interests in Class 8 are entitled to vote, so that a single record date applies to both Voting Classes. The Debtors further request that the Court approve the Voting Record Date as the date for determining (a) which Holders of Senior Notes Claims in Class 3 and Existing Equity Interests in Class 8 are entitled to vote to accept or reject the Plan in connection with the Solicitation, including the prepetition and continued postpetition solicitation of Eligible Holders and the postpetition solicitation of Non-Eligible Holders, and (b) which Holders of Claims and Interests in the Non-Voting Classes (other than Class 5 (Intercompany Claims) and Class 6

(Intercompany Interests)) are entitled to receive the Notice of Non-Voting Status and submit a Release Opt-Out Form.

**E. Voting Deadline**

60. Bankruptcy Rule 3018(b) provides that a holder of a claim or interest that accepted or rejected a plan before the commencement of the case will not be deemed to have accepted or rejected the plan if the court finds that the plan was not transmitted to substantially all of the holders of claims or interests in the same class, that an unreasonably short time was prescribed for voting, or that the solicitation did not comply with section 1126(b) of the Bankruptcy Code. All Holders of Senior Notes Claims in Class 3, including both Eligible Holders and Non-Eligible Holders, were transmitted the Plan as part of the Solicitation Package, either directly by the Solicitation Agent or, in the case of Beneficial Holders, through their Nominees, on November 9, 2026, before the Debtors commenced the Chapter 11 Cases on the Petition Date (the "***Solicitation Commencement Date***"). Holders of Existing Equity Interests in Class 8 will be transmitted the Plan as part of the Solicitation Package within 2 calendar days, or as soon as reasonably practicable thereafter. As set forth in the Disclosure Statement and Ballots, the Voting Deadline is December 10, 2026 at 4:00 p.m. (prevailing Central Time).

61. Accordingly, Eligible Holders will have had approximately 31 days from the Solicitation Commencement Date to submit their Ballots. Although Non-Eligible Holders of Senior Notes Claims in Class 3 may not submit Ballots until entry of the Proposed Order, they have had the Plan and the Disclosure Statement since on or about the Solicitation Commencement Date, and all Non-Eligible Holders of Senior Notes Claims in Class 3 and all Holders of Existing Equity Interests in Class 8 will have approximately 28 days to submit their Ballots before the Voting Deadline. The Debtors submit that this period is sufficient under the circumstances and consistent with the relief requested under Bankruptcy Rules 3017(a), 3017(e), and 9006(c). To

the extent the relief sought in this Motion falls within the scope of Bankruptcy Rule 3017(a), the Debtors also seek relief under Bankruptcy Rules 9006(c) and 3017(e) and request that the Court (a) waive the 28-day notice requirement under Bankruptcy Rule 3017(a) for the limited purpose of allowing Non-Eligible Holders and Holders of Existing Equity Interests in Class 8 to submit Ballots upon entry of the Proposed Order and (b) to the extent the period between service of the Combined Notice and the Voting Deadline is shorter than 28 days, shorten such period for cause pursuant to Bankruptcy Rule 9006(c)(1).

62. The Consenting Senior Noteholders and Consenting Equityholders, who hold, respectively, a substantial majority of the Senior Notes Claims and a significant portion of the Existing Equity Interests entitled to vote on the Plan, agreed to the Voting Deadline (and the Voting Record Date and Combined Hearing date, as contemplated by the solicitation milestone in the Consenting Senior Noteholder RSA) before the Solicitation Commencement Date, and that agreement supports the expeditious restructuring contemplated by the Plan and the Restructuring Support Agreements. The Plan is the product of good-faith, arm's-length negotiations between the Debtors and the Consenting Stakeholders, during which the Consenting Stakeholders extensively reviewed and commented on the Plan and the Disclosure Statement. The Consenting Senior Noteholders were familiar with both documents well before the Debtors' prepetition Solicitation of Eligible Holders of Senior Notes Claims in Class 3.

63. Holders in the Voting Classes therefore had adequate time to consider the Plan and the Disclosure Statement and to submit their Ballots before the Voting Deadline. Further, the overwhelming majority of these Holders are sophisticated. They were able to review the Disclosure Statement and vote on the Plan, and they can respond with any objections by the deadlines set forth in the Ballots and the Combined Notice. The Solicitation period is thus

sufficient for Holders in the Voting Classes to make an informed decision to accept or reject the Plan.

**F. Form of Ballot and Tabulation Procedures**

64. Bankruptcy Rule 3017(d)(2) requires that the Debtors use a form of ballot substantially conforming to Official Form No. 314. Bankruptcy Rule 3018(c)(1) further provides that "[a]n acceptance or rejection of a plan must be in writing, identify the plan or plans, be signed by the creditor or equity security holder—or an authorized agent, and conform to Form 314." Fed. R. Bankr. P. 3018(c)(1). The Ballots, copies of which are annexed as **Exhibits 5-A, 5-B, 6-A, 6-B, and 6-C** to the Proposed Order, are based on Official Form No. 314 and were modified to address the particular aspects of the Chapter 11 Cases and to be relevant and appropriate for the Voting Classes.

65. As set forth above, to be counted as votes to accept or reject the Plan, the Ballots are required to be properly executed, completed, and delivered to the Solicitation Agent so that they are received no later than the Voting Deadline.

66. In consideration of the foregoing, the Debtors submit that the Solicitation Procedures comply with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. For purposes of Section P of the Complex Case Procedures and Bankruptcy Local Rule 3016-2, the voting procedures proposed in addition to those required by the Complex Case Procedures are the tabulation rules (including the presumed acceptance of the Plan by any Voting Class in which no valid Ballot is submitted), the procedures applicable to Nominees, Master Ballots, and pre-validated Ballots, the overvote reconciliation procedures, the Debtors' authority to waive defects and irregularities, the procedures for submitting and tabulating Release Opt-Out Forms, and the E-Ballot Portal procedures, each as described in this Part II. The Debtors further request authority (without need for entry of a further order by the Court), subject to any consent

rights set forth in the Consenting Senior Noteholder RSA, to make non-substantive modifications to the Disclosure Statement, the Plan, the Combined Notice, the Publication Notice, the Ballots, the Notice of Non-Voting Status, the Release Opt-Out Form, and associated materials, including changes to correct typographical and grammatical errors and to make conforming changes. Accordingly, the Debtors respectfully request that this Court approve the Solicitation Procedures, including the Ballots and Tabulation Procedures.

## III. APPROVAL OF THE RIGHTS OFFERING PROCEDURES AND RELATED FORMS

67. In conjunction with the Solicitation, the Debtors also seek approval of the procedures governing the Rights Offering. The Plan provides that the Debtors shall effectuate a rights offering during the Chapter 11 Cases and in conjunction with and pursuant to the Plan (the "***Rights Offering***") to Holders of Allowed Senior Notes Claims as of the Rights Offering Record Date (as defined herein) (collectively, the "***Rights Offering Participants***") of rights (collectively, the "***Subscription Rights***") to purchase their Pro Rata Share of $420.0 million (inclusive of $20.0 million of original issue discount but exclusive of the Put Option Premium) of new money senior secured notes (the "***New Money Senior Secured Notes***"), together with a Pro Rata Share of 40.0% of the New Common Stock and 40.0% of the New Convertible Preferred Stock (the "***Stapled Equity***"), subject to adjustments and other terms described in the Disclosure Statement and the Rights Offering Procedures. The Rights Offering is backstopped in full by the Backstop Parties pursuant to the Backstop Commitment Letter.

68. To implement the Rights Offering, the Debtors propose to distribute (or cause to be distributed), within 2 calendar days of the entry of the Proposed Order or as soon as reasonably practicable thereafter, the rights offering procedures and related subscription forms, substantially in the form annexed as **Exhibit 7** to the Proposed Order (the "***Rights Offering Procedures***"), to

all Holders of Allowed Senior Notes Claims as of November 9, 2026 (the "***Rights Offering Record Date***"), with the subscription period commencing upon such distribution (the "***Subscription Commencement Date***"). For Holders of Senior Notes Claims held through DTC, the Solicitation Agent, in its capacity as subscription agent, will provide the Nominees with instructions to distribute the Rights Offering Procedures to the underlying Beneficial Holders. Rights Offering Participants will exercise their Subscription Rights by (a) returning a properly completed subscription form to their Nominee for delivery to the Solicitation Agent, (b) instructing their Nominee to tender all of the applicable Senior Notes through DTC's Automated Tender Offer Program, and (c) other than Backstop Parties, which shall fund in accordance with the Backstop Commitment Letter, funding the applicable purchase price, in each case by December 10, 2026 at 4:00 p.m. (prevailing Central Time) (the "***Subscription Expiration Deadline***").

69. Approval of the Rights Offering Procedures at this stage is necessary to permit the Rights Offering to run concurrently with the Solicitation so that the New Money Senior Secured Notes can be issued on the Effective Date consistent with the milestones under the Restructuring Support Agreements. Absent such approval, the Rights Offering could not be completed in time to fund the Debtors' emergence, jeopardizing the milestones and the consensus reflected in the Plan. The Subscription Expiration Deadline falls on the same day as the Voting Deadline, affording Rights Offering Participants approximately 28 days from distribution of the Rights Offering Procedures to evaluate and exercise their Subscription Rights. The terms of the Rights Offering and the Backstop Commitment Letter were the product of extensive, arm's-length negotiations between the Debtors and the Backstop Parties, and the proposed timeline provides Rights Offering Participants a fair and reasonable opportunity to participate in the Rights Offering.

70. Section 363(b)(1) of the Bankruptcy Code permits a debtor to use property of the estate outside the ordinary course of business where the debtor articulates a sound business purpose, and section 105(a) authorizes the Court to issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code. *See In re ASARCO, L.L.C.*, 650 F.3d 593, 601–02 (5th Cir. 2011) (describing the business judgment standard under section 363); *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986). The Rights Offering is a critical component of the Plan and will fund the Debtors' emergence, and commencing it now will allow it to run on a timeline consistent with the Restructuring Support Agreements, while consummation will remain conditioned on confirmation of the Plan and the occurrence of the Effective Date. Courts in this district have approved rights offering procedures and authorized debtors to commence rights offerings in connection with conditional approval of a disclosure statement, with approval of the related backstop agreement sought by separate motion. Accordingly, approval of the Rights Offering Procedures is a sound exercise of the Debtors' business judgment and is in the best interests of the Debtors' estates and their stakeholders.

71. Entry of the Proposed Order shall constitute entry of the Rights Offering Procedures Order (as defined in the Plan) for all purposes under the Plan. Approval of the Backstop Commitment Letter and the Put Option Premium will be sought by separate motion, and nothing in the Proposed Order shall constitute approval of the Backstop Commitment Letter or the Put Option Premium. Consummation of the Rights Offering will be conditioned on the consummation of the Plan and satisfaction of the applicable conditions specified in the Rights Offering Documents (as defined in the Plan), with subscription funds held in a segregated account pending the Effective Date and returned to subscribers, without interest, if the Rights Offering is terminated, including upon withdrawal of the Plan or termination of the Backstop Commitment

Letter; *provided* that any funds deposited by the Backstop Parties pursuant to the Backstop Commitment Letter shall be held in escrow and, if the Rights Offering is terminated, returned to the Backstop Parties together with any interest accrued thereon, in accordance with the terms of the Backstop Commitment Letter.

72. Accordingly, the Debtors respectfully request that the Court approve the Rights Offering Procedures, the related subscription forms, substantially in the form annexed as **Exhibit 7** to the Proposed Order, the Rights Offering Record Date, the Subscription Commencement Date, the Subscription Expiration Deadline, and the proposed manner of distribution thereof, and authorize the Debtors to commence the Rights Offering in accordance therewith. The Debtors further request authority, subject to the terms of the Backstop Commitment Letter and with the consent of the Required Consenting Senior Noteholders (as defined in the Consenting Senior Noteholder RSA) and the reasonable consent of the Required Backstop Parties (as defined in the Backstop Commitment Letter), and without need for a further order of the Court, to make modifications to the Rights Offering Procedures and subscription forms; *provided* that the Debtors shall not modify the Rights Offering Record Date or extend the Subscription Expiration Deadline without the consent of the Required Consenting Senior Noteholders and the Required Backstop Parties, except as required by law; *provided further* that the Debtors will provide prompt written notice of any material modification to the Rights Offering Procedures made after the Subscription Commencement Date, and, using commercially reasonable efforts to do so at least 5 business days before any previously scheduled Subscription Expiration Deadline, notice of any extension of the Subscription Expiration Deadline, in each case by (a) posting such notice on the Solicitation Agent's website, (b) filing such notice on the docket of the Chapter 11 Cases, and (c) providing

such notice to the Majority Ad Hoc Group Advisors (as defined in the Plan), with email notice being sufficient.

## IV. DEADLINE AND PROCEDURES FOR OBJECTIONS TO THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN

73. To ensure that parties in interest have a meaningful opportunity to be heard on each matter to be considered at the Combined Hearing, the Debtors propose the objection deadline and procedures described below. The Court may set the confirmation hearing date and the time for objections, subject to the 28-day notice period, which the Court may shorten for cause. *See* Fed. R. Bankr. P. 2002(b), 3017(a), 3017(c), 3020(b)(1), 9006(c)(1).

74. The Debtors request that the Court set December 10, 2026 at 4:00 p.m. (prevailing Central Time), as the Objection Deadline. The proposed Objection Deadline is projected to be at least 28 days after the anticipated date of service for the Combined Notice and, therefore, satisfies the 28-day notice period required by Bankruptcy Rules 2002(b) and 3017(a); to the extent it does not, the Debtors request that the Court shorten such notice period for cause pursuant to Bankruptcy Rule 9006(c)(1).

75. The proposed Objection Deadline will provide Holders of Claims and Interests with sufficient notice of the deadline for filing objections to the Disclosure Statement and Plan, while still affording the Debtors and other parties time to file a responsive brief and, if possible, resolve consensually any objections received. The Debtors further request that they and any other party that supports confirmation of the Plan be authorized to file replies to any timely objections or responses no later than December 14, 2026.

76. The Debtors request that the Court direct that any responses or objections to the adequacy of the Disclosure Statement or confirmation of the Plan must: (a) be in writing; (b) conform to the applicable Bankruptcy Rules and the Bankruptcy Local Rules; (c) set forth the

name of the objecting party, the nature and amount of any claim or interest asserted by the objecting party against the Debtors, the basis for the objection, and the specific grounds thereof; (d) in the case of an objection to confirmation of the Plan, include proposed language that if included in the Plan would remedy the matters set forth in the objection; and (e) be filed with the Court, together with proof of service. In addition to being filed with the Court, any such responses or objections must be served on the parties listed below (the "***Notice Parties***") so as to be received by the Objection Deadline:

(a) the Debtors, c/o Mercer International Inc., Suite 1120, 700 West Pender Street, Vancouver, British Columbia V6C 1G8, Attn: Richard Short (richard.short@mercerint.com);

(b) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, TX 77002, Attn: Jayson Ruff (Jayson.B.Ruff@usdoj.gov);

(c) Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020, Attn: Ray C. Schrock (ray.schrock@lw.com); Keith A. Simon (keith.simon@lw.com); Joe Zujkowski (joe.zujkowski@lw.com); and 10250 Constellation Blvd., Suite 1100, Los Angeles, CA 90067, Attn: Nicholas J. Messana (nicholas.messana@lw.com), proposed counsel to the Debtors;

(d) Hunton Andrews Kurth LLP, 600 Travis Street, Suite 4200, Houston, TX 77002, Attn: Timothy A. ("Tad") Davidson II (taddavidson@hunton.com); Ashley L. Harper (ashleyharper@hunton.com); Brandon Bell (bbell@hunton.com); and Kaleb Bailey (kbailey@hunton.com), proposed co-counsel to the Debtors;

(e) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, Attn: Jacob Adlerstein (jadlerstein@paulweiss.com); Sung Pak (spak@paulweiss.com); and Joseph M. Graham (jgraham@paulweiss.com), counsel to the Majority Ad Hoc Group; and

(f) Pryor Cashman LLP, 7 Times Square, 40th Floor, New York, NY 10036, Attn: David W. Smith (dsmith@pryorcashman.com), counsel to Computershare Trust Company, N.A., as trustee under the indentures governing the Senior Notes.

77. The Debtors will file certain initial documents to be included in the Plan Supplement, as defined in the Plan (the "***Initial Plan Supplement***"), on or before December 3, 2026, or such date that is 7 days before the Objection Deadline, and certain additional or revised Plan Supplement documents (collectively, the "***Final Plan Supplement***") as soon as practicable thereafter. If the Objection Deadline is extended, the Debtors will file the Initial Plan Supplement no later than 7 days before such extended Objection Deadline. The Debtors further propose to file the proposed Confirmation Order on or before December 14, 2026, the deadline to file any brief in support of confirmation of the Plan, and reserve the right to file a revised proposed Confirmation Order at any time before the Combined Hearing.

78. Accordingly, the Debtors respectfully request that the Court approve the Objection Deadline and the objection procedures set forth above.

## V. FORM AND MANNER OF NOTICE OF THE COMMENCEMENT OF THE CHAPTER 11 CASES, COMBINED HEARING, AND OBJECTION DEADLINE

79. The foregoing deadlines and procedures will be communicated to parties in interest through a single, comprehensive notice. Within 2 calendar days after the Court's entry of the Proposed Order, or as soon as reasonably practicable thereafter, the Debtors intend to serve a notice (the "***Combined Notice***"), substantially in the form annexed as **<u>Exhibit 1</u>** to the Proposed Order, on (a) the Debtors' creditor matrix; (b) Holders in the Voting Classes (including through Nominees); and (c) all counterparties to the Debtors' executory contracts and unexpired leases, excluding the Debtors and their affiliates. The Combined Notice provides notice of the commencement of the Chapter 11 Cases and sets forth, among other things, the date of the Combined Hearing, the Voting Deadline, the Objection Deadline and objection procedures, the Subscription Expiration Deadline, the ability of Non-Eligible Holders to vote following entry of the Proposed Order, the treatment of executory contracts and unexpired leases, and the full text of

the release, injunction, and exculpation provisions of the Plan and the procedures for submitting a Release Opt-Out Form.

80. The Combined Notice will satisfy the requirement that notice of the order for relief be given to all creditors and equity security holders. *See* Fed. R. Bankr. P. 2002(d), 2002(f)(1).

81. The Debtors intend to only provide the Combined Notice to the Company's business customers that are known creditors. The Debtors also request that they not be required to mail the Combined Notice to the Company's current employees (other than those that may be Holders of Claims or Interests in the Voting Classes) or contractors, because providing such notice could result in confusion, to the detriment of the Company's businesses and all stakeholders. Such procedures are appropriate given all General Unsecured Claims are being paid in full as of the Effective Date or are otherwise Unimpaired.

82. With respect to Holders of Claims and Interests held through DTC, the Debtors request that the Court (a) authorize the Debtors to provide the Nominees with sufficient copies of the Combined Notice to forward to the Beneficial Holders and (b) require the Nominees to forward the Combined Notice or copies thereof to the Beneficial Holders within 5 business days of the receipt by such Nominee of the Combined Notice. To the extent Nominees incur out-of-pocket expenses in connection with distribution of the Combined Notice, the Debtors request authority to reimburse such entities for their reasonable and customary expenses incurred in this regard.

83. In addition, Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if notice by mail is impracticable or if it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(l). The Debtors request that this Court authorize, but not direct, the Debtors, in their discretion, to give supplemental publication notice of the Combined Hearing, substantially in the form annexed as **Exhibit 2** to the Proposed Order (the "***Publication Notice***"), no later than 21

days before the Combined Hearing (or as soon as reasonably practicable thereafter), in the national edition of the *Wall Street Journal* or a similar national publication. The Debtors believe that the Publication Notice will provide sufficient notice of the commencement of the Chapter 11 Cases, the Combined Hearing, and the Objection Deadline to parties in interest who will not otherwise receive notice by mail or email as provided herein.

84. As an additional form of notice to parties in interest in these cases, the Debtors intend to post to the proposed Solicitation Agent's website various chapter 11 documents, including (a) the Plan, (b) the Disclosure Statement, (c) this Motion and any orders entered in connection with this Motion, and (d) the Combined Notice. In addition, the Solicitation Agent will post the notice of the commencement of the Chapter 11 Cases to DTC's Legal and Tax Notice System, a service which is available to Nominees who use the DTC system. Finally, notice of commencement of the Chapter 11 Cases will be filed with the Securities and Exchange Commission on Form 8-K and, thus, will be available to interested parties through the Securities and Exchange Commission's EDGAR website.

85. The Debtors submit that service of the Combined Notice, together with the Publication Notice and posting on the Solicitation Agent's website, will provide sufficient notice to all parties in interest of the matters described above.

## VI. NOTICE OF ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

86. The Combined Notice will also serve as notice of the Debtors' proposed treatment of executory contracts and unexpired leases. The Debtors intend to serve the Combined Notice on all non-debtor counterparties to executory contracts and unexpired leases, reflecting the Debtors' intention to assume executory contracts and unexpired leases in connection with the Plan. The Plan provides, and the Combined Notice discloses, that all executory contracts and unexpired

leases to which any of the Debtors are party that have not expired by their own terms on or before the Confirmation Date shall be deemed assumed, unless such contract or lease (a) has been assumed, assumed and assigned, or rejected by the Debtors pursuant to a prior order of the Bankruptcy Court; (b) is the subject of a motion to reject filed by the Debtors pending on the Effective Date of the Plan; (c) is identified as an executory contract or unexpired lease to be rejected by the Debtors on the Schedule of Rejected Executory Contracts and Unexpired Leases; (d) is rejected or terminated pursuant to the terms of the Plan; or (e) is the subject of a pending Cure Dispute (as defined in the Plan). Disputes pertaining to the assumption of an executory contract or unexpired lease are addressed by Article VIII of the Plan. For the avoidance of doubt, other than the Combined Notice, the Debtors do not intend to serve a separate notice on parties to executory contracts and unexpired leases regarding assumption of executory contracts and unexpired leases.

87. The Debtors submit that notice of their assumption of executory contracts and unexpired leases, as provided in the Combined Notice and the Plan, is appropriate under the circumstances. The Debtors further request that any objection to the proposed assumption of an executory contract or unexpired lease be filed and served on the Notice Parties so as to be received by the Objection Deadline, and that any counterparty that fails to timely object be deemed to have consented to such assumption; *provided*, that Cure Disputes (as defined in the Plan) will be asserted and resolved in accordance with the Plan; *provided further*, that, as provided in the Plan, the Debtors may, with the consent of the Required Consenting Senior Noteholders, amend the Schedule of Rejected Executory Contracts and Unexpired Leases up to and through the Effective Date by filing a subsequent Plan Supplement and serving it on the affected non-Debtor counterparties. To the extent any executory contract or unexpired lease is rejected pursuant to the

Plan, the Combined Notice also discloses that, under the Plan, Proofs of Claim arising from such rejection must be filed within 21 days after service of an order of the Court (including the Confirmation Order) approving such rejection, and the Debtors request that service of the Combined Notice, together with service of the Schedule of Rejected Executory Contracts and Unexpired Leases (and any amendment thereto) on the affected counterparties in accordance with the Plan, constitute adequate notice of such rejection and such deadline.

## VII. EXTENSION AND CONDITIONAL WAIVER OF THE 341 MEETING AND THE FILING OF SOFAS AND SCHEDULES

88. Finally, in light of the expedited timeline proposed herein, the Debtors also request that the Proposed Order provide that (a) the 341 Meeting shall not be scheduled by the U.S. Trustee on or before the SOFA/Schedule Deadline (January 8, 2027), which is 60 days from the Petition Date, (b) the time for filing the SOFAs and Schedules and 2015.3 Reports be extended until the same date, and (c) if the Plan is confirmed on or before the SOFA/Schedule Deadline, the 341 Meeting will be waived, and the Debtors will be excused from filing the SOFAs and Schedules and 2015.3 Reports, in each case without further order of the Court.

89. Although section 341 of the Bankruptcy Code generally requires the U.S. Trustee to convene a meeting of creditors, the Court may, for cause, order that no meeting be convened where the debtor has filed a plan as to which it solicited acceptances before the commencement of the case. 11 U.S.C. § 341(e). The purpose of the 341 Meeting is to provide parties in interest with a meaningful opportunity to obtain and examine important information about the debtor. Here, however, the Debtors solicited acceptances of the Plan from Eligible Holders before the Petition Date, the Debtors expect that the Plan will be accepted by the Voting Classes well in excess of the statutory thresholds specified in sections 1126(c) and 1126(d) of the Bankruptcy Code, and the Debtors intend to proceed expeditiously to confirm the Plan and emerge from chapter 11.

Therefore, parties are not likely to receive any benefit from a 341 Meeting, and the requested conditional relief pursuant to section 341(e) of the Bankruptcy Code is appropriate here.

90. The Debtors also request that the time for filing the SOFAs and Schedules and 2015.3 Reports be extended until the SOFA/Schedule Deadline unless the Plan is confirmed prior to the SOFA/Schedule Deadline, in which case the Debtors request that the requirement to file SOFAs and Schedules and 2015.3 Reports be waived. Section 521(a)(1) of the Bankruptcy Code requires a debtor to file schedules of assets and liabilities and a statement of financial affairs "unless the court orders otherwise[.]" 11 U.S.C. § 521(a)(1). The Court is authorized to grant the requested extension "for cause" pursuant to Bankruptcy Rule 1007(c)(7). Similarly, Bankruptcy Rule 2015.3(d) permits the Court, after notice and a hearing, to vary the reporting requirement for cause. Sufficient cause exists here because requiring the Debtors to file Schedules and SOFAs and 2015.3 Reports before the Combined Hearing would be time-consuming, distracting to the Debtors' advisors and management, and costly to the Debtors' estates, while providing little benefit to most parties in interest in the Chapter 11 Cases. No party in interest would be prejudiced by the Court granting the Debtors' request for an extension through and including the SOFA/Schedule Deadline because, under the Plan, all General Unsecured Claims will be paid in full on the Effective Date or "ride through" the Chapter 11 Cases Unimpaired. Therefore, the Court should only require the Debtors to file SOFAs and Schedules and 2015.3 Reports if the Plan is not confirmed on or before the SOFA/Schedule Deadline.

91. Accordingly, the Debtors respectfully request that the Court waive the requirement to file Schedules and SOFAs, waive the requirement to file 2015.3 Reports, and direct the U.S. Trustee not to convene a 341 Meeting unless the Plan is not confirmed on or before the SOFA/Schedule Deadline, without prejudice to the Debtors' right to request further extensions,

for cause shown. The Debtors further request that they be permitted to extend the SOFA/Schedule Deadline, without need for a further order of the Court, through written agreement with the U.S. Trustee; *provided* that the Debtors shall file notice of such agreed extension on the docket and serve it on the Notice Parties.

**EMERGENCY CONSIDERATION**

92. The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Local Rule 9013-1(i), the Complex Case Procedures, and Bankruptcy Rule 6003, which authorize this Court to grant relief within the first 21 days after the commencement of a chapter 11 case to the extent that relief is necessary to avoid immediate and irreparable harm.

93. As described above and in the First Day Declaration, immediate and irreparable harm would result if the relief requested herein is not granted. The Debtors must promptly commence the postpetition solicitation of Non-Eligible Holders of Senior Notes Claims in Class 3 and Holders of Existing Equity Interests in Class 8, as well as the Rights Offering, to ensure that each is completed within the milestones set forth in the Restructuring Support Agreements. Any delay would place those milestones at risk, which could permit the Consenting Senior Noteholders and Consenting Equityholders to terminate them and unravel the consensus reflected in the Plan. Accordingly, the Debtors submit that the requirements of Bankruptcy Rule 6003 are satisfied.

**WAIVER OF BANKRUPTCY RULE 6004(A) AND (H)**

94. To implement the foregoing immediately, the Debtors request that the Court find that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that, for the reasons set forth above, cause exists to waive the 14-day stay under Bankruptcy Rule 6004(h), to the extent applicable.

## RESERVATION OF RIGHTS

95. Nothing contained herein is or should be deemed or construed as: (a) an admission as to the validity of any claim against any Debtor or the existence of any lien against the Debtors' properties; (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim would constitute an allowed claim; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; or (f) a limitation on the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to the Proposed Order (once entered). Nothing contained in the Proposed Order shall be deemed to increase, decrease, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

## NOTICE

96. Notice of this Motion will be given to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the Majority Ad Hoc Group; (c) the creditors listed on the Debtors' consolidated list of 30 creditors holding the largest unsecured claims; (d) counsel to the Senior Notes Trustees; (e) the Securities and Exchange Commission; (f) the United States Attorney for the Southern District of Texas; (g) the Internal Revenue Service; (h) the state attorneys general for states in which the Debtors conduct business; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, under the circumstances, no other or further notice is required.

97. A copy of this Motion is available on (a) this Court's website, at www.txs.uscourts.gov, and (b) the website maintained by the Solicitation Agent at https://cases.stretto.com/Mercer.

**WHEREFORE**, the Debtors respectfully request that this Court enter the Proposed Order, substantially in the form attached hereto, and grant the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: November 9, 2026
Houston, Texas

Respectfully submitted,

*/s/ Timothy A. ("Tad") Davidson II*

**HUNTON ANDREWS KURTH LLP**
Timothy A. ("Tad") Davidson II (TX Bar No. 24012503)
Ashley L. Harper (TX Bar No. 24065272)
Brandon Bell (TX Bar No. 24127019)
Kaleb Bailey (TX Bar No. 24136717)
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone: (713) 220-4200
Email: taddavidson@hunton.com
ashleyharper@hunton.com
bbell@hunton.com
kbailey@hunton.com

- and -

**LATHAM & WATKINS LLP**
Ray C. Schrock (NY Bar No. 4860631)
Keith A. Simon (NY Bar No. 4636007)
Joe Zujkowski (NY Bar No. 4625638)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: ray.schrock@lw.com
keith.simon@lw.com
joe.zujkowski@lw.com

- and -

Nicholas J. Messana (CA Bar No. 332355)
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5500
Email: nicholas.messana@lw.com

*Proposed Attorneys for the Debtors and Debtors in Possession*

## CERTIFICATE OF SERVICE

I certify that on November 9, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

*/s/ Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II