**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| MERCER INTERNATIONAL INC., *et al.*,[1] | : | Case No. 26-90829 (CML) |
| Debtors. | : | (Jointly Administered) |

**ORDER (I) SCHEDULING COMBINED HEARING ON (A) ADEQUACY OF DISCLOSURE STATEMENT AND (B) CONFIRMATION OF PLAN; (II) APPROVING (A) SOLICITATION PROCEDURES, (B) FORM AND MANNER OF NOTICE OF COMMENCEMENT, COMBINED HEARING, AND OBJECTION DEADLINE, AND (C) RIGHTS OFFERING PROCEDURES AND RELATED FORMS, AND AUTHORIZING COMMENCEMENT OF THE RIGHTS OFFERING; (III) FIXING DEADLINE TO OBJECT TO DISCLOSURE STATEMENT AND PLAN; (IV) CONDITIONALLY (A) DIRECTING THE UNITED STATES TRUSTEE NOT TO CONVENE SECTION 341 MEETING OF CREDITORS AND (B) WAIVING REQUIREMENT TO FILE STATEMENTS OF FINANCIAL AFFAIRS AND SCHEDULES OF ASSETS AND LIABILITIES; (V) CONDITIONALLY APPROVING THE DISCLOSURE STATEMENT; AND (VI) GRANTING RELATED RELIEF**

**[Relates to Docket No. ]**

Upon the emergency motion (the "***Motion***")[2] of the Debtors for entry of an order (this "***Order***"):

(a) scheduling the Combined Hearing to (i) approve the Disclosure Statement and (ii) consider confirmation of the Plan;

(b) establishing the Objection Deadline;

---

[1] The Debtors in the Chapter 11 Cases, together with the last four digits of each Debtor's taxpayer identification number, are: Mercer International Inc. (6945) and Mercer International (Texas) LLC (N/A). The Debtors' mailing address for purposes of the Chapter 11 Cases is: Suite 1120, 700 West Pender Street, Vancouver, British Columbia V6C 1G8.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion.

(c) approving the Solicitation Procedures with respect to the Plan, including the forms of Ballots, Notice of Non-Voting Status and Release Opt-Out Form, the Voting Record Date, and the Tabulation Procedures;

(d) approving the Rights Offering Procedures, the related subscription forms, the Rights Offering Record Date, the Subscription Commencement Date, the Subscription Expiration Deadline, and the manner of distribution thereof, and authorizing the Debtors to commence the Rights Offering;

(e) approving the form and manner of the notice of the commencement of the Chapter 11 Cases, the Combined Hearing, and the Objection Deadline;

(f) so long as the Plan is confirmed on or before the SOFA/Schedule Deadline, (i) directing the U.S. Trustee not to convene the 341 Meeting, (ii) waiving the requirement that the Debtors file SOFAs and Schedules, and (iii) waiving the requirement that the Debtors file their 2015.3 Reports, and authorizing the Debtors to further extend the SOFA/Schedule Deadline upon written agreement with the U.S. Trustee without further order of the Court;

(g) conditionally approving the Disclosure Statement, including for purposes of the postpetition solicitation of votes from the Non-Eligible Holders and Holders of Existing Equity Interests in Class 8, waiving the 28-day notice requirement under Bankruptcy Rule 3017(a) to the extent necessary to permit such solicitation upon entry of this Order, and waiving the requirement under Bankruptcy Rule 3017(d) to distribute the Disclosure Statement and the Plan to Holders not entitled to vote; and

(h) granting related relief,

all as more fully set forth in the Motion; and this Court having reviewed the Motion and the First Day Declaration; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary, except as set forth in the Motion with respect to entry of this Order; and upon the record herein; and after due deliberation thereon; and this Court having determined

that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED as set forth herein.

2. All objections to entry of this Order, to the extent not withdrawn or settled, are overruled.

3. The Combined Hearing shall be held before this Court on __________, 2026 at ___: ___ [a.m./p.m.] (prevailing Central Time) or as soon thereafter as counsel may be heard. The Combined Hearing may be adjourned from time to time by the Debtors, subject to the terms of the Consenting Senior Noteholder RSA, without further notice other than an announcement of the adjourned date or dates in open court or at the Combined Hearing, or the filing of a notice or hearing agenda on the Court's docket indicating such adjournment. The adjourned date or dates will be available on the electronic case filing docket and the Solicitation Agent's website at https://cases.stretto.com/Mercer.

4. Any responses or objections to the adequacy of the Disclosure Statement or confirmation of the Plan must: (a) be in writing; (b) conform to the applicable Bankruptcy Rules and the Bankruptcy Local Rules; (c) set forth the name of the objecting party, the nature and amount of any claim or interest asserted by the objecting party against the Debtors, the basis for the objection, and the specific grounds thereof; (d) in the case of an objection to confirmation of the Plan, include proposed language that if included in the Plan would remedy the matters set forth in the objection; and (e) be filed with the Court, together with proof of service. In addition to being filed with the Court, any such responses or objections must be served on the following Notice

Parties, set forth below, so as to be received by the Objection Deadline, December 10, 2026 at 4:00 p.m. (prevailing Central Time):

(a) the Debtors, c/o Mercer International Inc., Suite 1120, 700 West Pender Street, Vancouver, British Columbia V6C 1G8, Attn: Richard Short (richard.short@mercerint.com);

(b) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, TX 77002, Attn: Jayson Ruff (Jayson.B.Ruff@usdoj.gov);

(c) Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020, Attn: Ray C. Schrock (ray.schrock@lw.com); Keith A. Simon (keith.simon@lw.com); Joe Zujkowski (joe.zujkowski@lw.com); and 10250 Constellation Blvd., Suite 1100, Los Angeles, CA 90067, Attn: Nicholas J. Messana (nicholas.messana@lw.com), proposed counsel to the Debtors;

(d) Hunton Andrews Kurth LLP, 600 Travis Street, Suite 4200, Houston, TX 77002, Attn: Timothy A. ("Tad") Davidson II (taddavidson@hunton.com); Ashley L. Harper (ashleyharper@hunton.com); Brandon Bell (bbell@hunton.com); and Kaleb Bailey (kbailey@hunton.com), proposed co-counsel to the Debtors;

(e) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, Attn: Jacob Adlerstein (jadlerstein@paulweiss.com); Sung Pak (spak@paulweiss.com); and Joseph M. Graham (jgraham@paulweiss.com), counsel to the Majority Ad Hoc Group; and

(f) Pryor Cashman LLP, 7 Times Square, 40th Floor, New York, NY 10036, Attn: David W. Smith (dsmith@pryorcashman.com), counsel to Computershare Trust Company, N.A., as trustee under the indentures governing the Senior Notes.

5. Any objections not timely filed and served in the manner set forth in this Order may not be considered and may be overruled. To the extent the Objection Deadline does not satisfy the 28-day notice period required by Bankruptcy Rules 2002(b) and 3017(a), such notice period is hereby shortened for cause pursuant to Bankruptcy Rule 9006(c)(1).

6. The deadline for the Debtors and any other party that supports confirmation of the Plan to file any brief in support of the Disclosure Statement and confirmation of the Plan and reply to any objections shall be December 14, 2026.

7. The Debtors are authorized to file the Initial Plan Supplement on or before December 3, 2026, or such date that is 7 days before the Objection Deadline, and the Final Plan Supplement as soon as practicable thereafter. If the Objection Deadline is extended, the Debtors shall be authorized to file the Initial Plan Supplement by 7 days before such extended Objection Deadline.

8. The Debtors shall file the proposed Confirmation Order on or before December 14, 2026, the deadline to file any brief in support of confirmation of the Plan; *provided* that the Debtors reserve the right to file a revised proposed Confirmation Order at any time before the Combined Hearing.

9. The Combined Notice, substantially in the form annexed hereto as **Exhibit 1**, is approved, and the Combined Notice and service thereof as proposed in the Motion comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 2002(d), and 2002(f)(1), and the Bankruptcy Local Rules. The Combined Notice shall be deemed good and sufficient notice of (a) the Combined Hearing, (b) the commencement of the Chapter 11 Cases, (c) the Objection Deadline and the procedures for objecting to the adequacy of the Disclosure Statement or confirmation of the Plan, (d) the key provisions of the Plan governing the assumption or rejection of executory contracts and unexpired leases, including the deadline for filing Proofs of Claim arising from any such rejection, (e) the Voting Deadline, (f) the ability of Non-Eligible Holders to vote to accept or reject the Plan following entry of this Order, (g) the deadline to submit Release Opt-Out Forms, (h) the Subscription Expiration Deadline, and (i) the

release, injunction, and exculpation provisions contained in the Plan, and no further notice need be given. Any provision of Bankruptcy Rule 3017(d) requiring the Debtors to distribute the Disclosure Statement and the Plan to parties not entitled to vote or any parties in interest other than as prescribed in this Order shall be waived; *provided*, that the Disclosure Statement and Plan shall remain posted in PDF format at https://cases.stretto.com/Mercer through the pendency of the Chapter 11 Cases and shall be provided in either electronic or paper form to any parties in interest upon written request to the Debtors. The Debtors shall also serve a copy of the Combined Notice on (a) the Debtors' creditor matrix, (b) Holders in the Voting Classes (including through Nominees), and (c) all counterparties to the Debtors' executory contracts and unexpired leases, excluding the Debtors and their affiliates, within 2 calendar days of entry of this Order, or as soon as reasonably practicable thereafter. Substantially contemporaneously with service of the Combined Notice, the Debtors shall cause to be posted to the Solicitation Agent's website (w) the Plan, (x) the Disclosure Statement, (y) the Motion and any orders entered in connection with the Motion, and (z) the Combined Notice.

10. The Debtors are authorized, but not directed, pursuant to Bankruptcy Rule 2002(l), to give supplemental publication notice of the commencement of the Chapter 11 Cases, the Combined Hearing, and the Objection Deadline, substantially in the form attached hereto as **Exhibit 2** (the "***Publication Notice***"), no later than 21 days before the Combined Hearing (or as soon as reasonably practicable thereafter), in the national edition of the *Wall Street Journal* or a similar national publication. The Publication Notice is approved and shall constitute good and sufficient notice of the commencement of the Chapter 11 Cases, the Combined Hearing, and the Objection Deadline (and related procedures) to persons who do not otherwise receive the Combined Notice.

11. The Debtors are authorized to combine the notice of the Combined Hearing and the Objection Deadline (and related procedures) with the notice of the commencement of the Chapter 11 Cases.

12. The Debtors are authorized, but not directed, to provide the Nominees with sufficient copies of the Combined Notice to forward to the Beneficial Holders, and the Nominees are required to forward the Combined Notice or copies thereof to the Beneficial Holders within 5 business days of the receipt by such Nominee of the Combined Notice. To the extent the Nominees incur out-of-pocket expenses in connection with distribution of the Combined Notice, the Debtors are authorized, but not directed, to reimburse such entities for their reasonable and customary expenses incurred in this regard.

13. The Debtors are not required to mail the Combined Notice to the Company's business customers (other than customers that are known creditors) or to the Company's current employees (other than those that may be Holders of Claims or Interests in the Voting Classes) or contractors.

14. Service of the Combined Notice on all non-debtor counterparties to the Debtors' executory contracts and unexpired leases, as provided in the Motion and the Plan, constitutes good and sufficient notice of the Debtors' proposed assumption of executory contracts and unexpired leases in connection with the Plan, and the Debtors are not required to serve any separate notice regarding such assumption. Any objection to the proposed assumption of an executory contract or unexpired lease must be filed with the Court and served on the Notice Parties so as to be received by the Objection Deadline. Any counterparty to an executory contract or unexpired lease that fails to timely object to the proposed assumption of such executory contract or unexpired lease shall be deemed to have consented to such assumption; *provided*, that nothing herein shall limit the

assertion or resolution of any Cure Dispute (as defined in the Plan) in accordance with the Plan. Service of the Combined Notice, together with service of the Schedule of Rejected Executory Contracts and Unexpired Leases (and any amendment thereto) on the affected counterparties in accordance with the Plan, shall constitute good and sufficient notice of the rejection of any executory contract or unexpired lease pursuant to the Plan and of the deadline under the Plan for filing Proofs of Claim arising from such rejection.

15. The Debtors are authorized to serve the Combined Notice and the Notice of Non-Voting Status (including the Release Opt-Out Forms) on Holders in the Non-Voting Classes by email where available or otherwise by first-class mail, pursuant to Bankruptcy Rule 2002(m), in lieu of sending such Holders copies of the Disclosure Statement and the Plan, within 2 calendar days of entry of this Order or as soon as reasonably practicable thereafter, and the requirements under the Bankruptcy Rules or the Bankruptcy Local Rules, including Bankruptcy Rule 3017(d), to transmit copies of the Disclosure Statement and Plan to Holders in the Non-Voting Classes are hereby waived with respect to such Holders. With respect to Class 5 (Intercompany Claims) and Class 6 (Intercompany Interests), because such Claims and Interests are held by the Debtors' affiliates (and not individual creditors or interest holders), the requirement to serve a Notice of Non-Voting Status or any other type of notice in connection with the Plan is hereby waived.

16. The Debtors are not required to mail Solicitation Packages, Combined Notices, or Notices of Non-Voting Status to any address from which mail was previously returned as undeliverable and neither the Debtors nor the Solicitation Agent shall be required to conduct any additional research for updated addresses based on undeliverable materials. For purposes of serving the Solicitation Packages, Combined Notices, and Notices of Non-Voting Status, the

Debtors are authorized to rely on the address information for the Voting Classes and Non-Voting Classes as compiled, updated, and maintained by the Debtors as of the Voting Record Date.

17. To the extent that section 1125(b) of the Bankruptcy Code requires the Debtors' prepetition solicitation of acceptances for the Plan to be pursuant to an approved disclosure statement to continue on a postpetition basis, the Court, pursuant to Bankruptcy Local Rule 3016-2 and Section P of the Complex Case Procedures, conditionally approves the Disclosure Statement as having adequate information as required by section 1125 of the Bankruptcy Code, solely for the purpose of permitting the postpetition solicitation of votes from the Non-Eligible Holders and Holders of Existing Equity Interests in Class 8 (and the continued solicitation of Eligible Holders), without prejudice to any party in interest objecting to the Disclosure Statement at the Combined Hearing. Such conditional approval shall not constitute a final determination as to the adequacy of the Disclosure Statement, which shall be considered at the Combined Hearing. To the extent Bankruptcy Rule 3017(a) applies, pursuant to Bankruptcy Rules 9006(c) and 3017(e), the 28-day notice requirement under Bankruptcy Rule 3017(a) is waived for the limited purpose of permitting the Non-Eligible Holders and Holders of Existing Equity Interests in Class 8 to submit Ballots upon entry of this Order. The failure of any party in interest to object to conditional approval of the Disclosure Statement shall not constitute a waiver of any objection to final approval of the Disclosure Statement or confirmation of the Plan.

18. Upon entry of this Order, pursuant to sections 1125 and 1126 of the Bankruptcy Code and applicable non-bankruptcy law, the Debtors are authorized to begin solicitation of votes on the Plan from the Non-Eligible Holders and Holders of Existing Equity Interests in Class 8 (and continue their solicitation of Eligible Holders), which Solicitation commenced on November 9, 2026 before the commencement of the Chapter 11 Cases, in each case as set forth in the Motion.

The Solicitation Agent shall distribute the Solicitation Package to Holders of Existing Equity Interests in Class 8 (including through Nominees) within 2 calendar days or as soon as reasonably practicable thereafter. Service of the Combined Notice on Holders in the Voting Classes (including through Nominees) shall constitute good and sufficient notice to the Non-Eligible Holders and Holders of Existing Equity Interests in Class 8 that they may vote to accept or reject the Plan by returning their Ballots so that they are actually received by the Solicitation Agent on or before the Voting Deadline. Non-Eligible Holders may obtain additional copies of their Ballots and the other solicitation materials, free of charge, from the Solicitation Agent. Any Ballot submitted by a Non-Eligible Holder prior to entry of this Order shall not be counted, and any Holder submitting a Ballot prior to entry of this Order shall be deemed to have certified that it is an Eligible Holder.

19. The Solicitation Procedures utilized by the Debtors for distribution of the Solicitation Packages, as set forth more fully in the Motion and Ballots, in soliciting acceptances and rejections of the Plan satisfy the requirements of the Bankruptcy Code and the Bankruptcy Rules and are approved. Such approval includes service of the Solicitation Package by email, first-class mail, overnight delivery, or such other manner of transmission as the Debtors, in their sole discretion, may determine. The Tabulation Procedures, substantially in the form attached hereto as **Exhibit 3**, including the Voting Record Date, the tabulation procedures, the overvote reconciliation procedures, and the procedures applicable to Nominees, Master Ballots, and pre-validated Ballots set forth therein, are approved in their entirety, and the Solicitation Agent is authorized to tabulate all Ballots in accordance therewith.

20. The procedures for distributing Solicitation Packages to Beneficial Holders through their Nominees and for collecting votes through Master Ballots and pre-validated Ballots are

adequate under Bankruptcy Rule 3017(e). The Solicitation Agent is authorized to contact parties who submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies; *provided* that neither the Debtors nor the Solicitation Agent is required to contact such parties to provide notification of defects or irregularities with respect to completion or delivery of Ballots, nor shall any of them incur any liability for failure to provide such notification.

21. The Debtors or the Solicitation Agent, as applicable, are authorized to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots, which determination, absent a contrary order of the Court, shall be final and binding. Subject to a contrary order of the Court, the Debtors are authorized to waive any defects or irregularities as to any particular Ballot or Release Opt-Out Form at any time, either before or after the Voting Deadline, other than any requirement imposed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Local Rules, and any such waiver shall be identified in the Voting Report. Nominees may return any excess or unused Solicitation Packages to the Solicitation Agent. The Debtors are authorized, but not directed, to reimburse Nominees for their reasonable and customary out-of-pocket expenses incurred in distributing Solicitation Packages. No further notice or solicitation shall be required.

22. The Voting Record Date of November 2, 2026 (for Holders of Claims in Class 3, for purposes of both the prepetition Solicitation and the continued postpetition Solicitation; for Holders of Existing Equity Interests in Class 8, for purposes of the postpetition Solicitation; and for determining which Holders in the Non-Voting Classes (other than Class 5 and Class 6) are entitled to receive the Notice of Non-Voting Status and submit a Release Opt-Out Form) and the Voting Deadline of December 10, 2026, at 4:00 p.m. (prevailing Central Time) are each hereby approved; *provided*, that the Debtors may extend the Voting Deadline in their discretion, subject

to the terms of the Consenting Senior Noteholder RSA. The deadline for Holders in the Unimpaired Non-Voting Classes to submit Release Opt-Out Forms shall be the Voting Deadline. Any Holder of a Claim or Interest that timely objects to the Third-Party Release in accordance with the Plan, which objection is not withdrawn or otherwise resolved before entry of the Confirmation Order, shall not be a Releasing Party.

23. The service of the Solicitation Package and the Combined Notice in the time and manner set forth in this Order shall constitute adequate and sufficient notice of the Voting Deadline, and no other or further notice is necessary. To the extent the period between service of the Combined Notice and the Voting Deadline does not satisfy the 28-day notice period required by Bankruptcy Rules 2002(b) and 3017(a), such notice period is hereby shortened for cause pursuant to Bankruptcy Rule 9006(c)(1).

24. The Solicitation Agent's distribution, on behalf of the Debtors and before the Petition Date, of the Disclosure Statement, including the Plan and other exhibits thereto, in electronic format (including on a USB flash drive or via an electronic link) is approved, and the Debtors and the Solicitation Agent are authorized to make any further such distribution in electronic format. The Solicitation Agent is authorized to accept, on behalf of the Debtors, Registered Holder Ballots and Release Opt-Out Forms via the E-Ballot Portal, and the encrypted data and audit trail created by such electronic submission shall become part of the record of any Ballot or Release Opt-Out Form submitted in this manner, and the Holder's electronic signature will be deemed to be immediately legally valid and effective.

25. The Solicitation Agent shall retain all paper copies of Ballots and all solicitation-related correspondence for 2 years following the Effective Date. Thereafter, the Solicitation Agent is authorized to destroy or otherwise dispose of all paper copies of Ballots, printed solicitation

materials (including unused copies of the Solicitation Package), and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such 2-year period.

26. The Ballots, substantially in the forms attached to this Order as **Exhibits 5-A, 5-B, 6-A, 6-B, and 6-C**, and the Notice of Non-Voting Status and Release Opt-Out Form, substantially in the form attached to this Order as **Exhibit 4**, are approved.

27. The Solicitation Package complies with Bankruptcy Rules 2002(b) and 3017(d). The Plan, the Disclosure Statement (including all applicable exhibits thereto), the Solicitation Package, the Combined Notice, and the Notice of Non-Voting Status provide Holders of Claims, Holders of Interests, and other parties in interest with sufficient notice of the injunction, release, and exculpation provisions contained in Articles 10.5, 10.6, and 10.7 of the Plan, in satisfaction of the requirements of Bankruptcy Rules 2002(c)(3) and 3016(c).

28. The Debtors are authorized (without further approval of the Court), subject to any consent rights set forth in the Consenting Senior Noteholder RSA, to make non-substantive modifications to the Disclosure Statement, the Plan, the Combined Notice, the Publication Notice, Ballots, Notice of Non-Voting Status, Release Opt-Out Form, and associated materials, including changes to correct typographical and grammatical errors and to make conforming changes.

29. The Rights Offering Procedures and related subscription forms, substantially in the form attached hereto as **Exhibit 7**, are approved, and the following dates and deadlines are approved: (a) the Rights Offering Record Date of November 9, 2026; (b) the Subscription Commencement Date, which shall be the date of distribution of the Rights Offering Procedures within 2 calendar days of entry of this Order (or as soon as reasonably practicable thereafter); and (c) the Subscription Expiration Deadline of December 10, 2026, at 4:00 p.m. (prevailing Central

Time). The Debtors are authorized to distribute the Rights Offering Procedures as set forth in the Motion, and to commence the Rights Offering in accordance with the Rights Offering Procedures.

30. This Order shall constitute the Rights Offering Procedures Order (as defined in the Plan) for all purposes under the Plan. Approval of the Backstop Commitment Letter and the Put Option Premium shall be sought by separate motion.

31. Nothing in this Order shall constitute approval of the Backstop Commitment Letter or the Put Option Premium, and all parties' rights with respect thereto are reserved pending entry of an order approving the Backstop Commitment Letter. Consummation of the Rights Offering shall be conditioned on the consummation of the Plan and satisfaction of the applicable conditions specified in the Rights Offering Documents, and subscription funds shall be held in a segregated account pending the Effective Date and returned to subscribers, without interest, if the Rights Offering is terminated, including upon withdrawal of the Plan or termination of the Backstop Commitment Letter; *provided* that any funds deposited by the Backstop Parties pursuant to the Backstop Commitment Letter shall be held in escrow and, if the Rights Offering is terminated, returned to the Backstop Parties together with any interest accrued thereon, in accordance with the terms of the Backstop Commitment Letter.

32. The Debtors are authorized, subject to the terms of the Backstop Commitment Letter and with the consent of the Required Consenting Senior Noteholders (as defined in the Consenting Senior Noteholder RSA) and the reasonable consent of the Required Backstop Parties (as defined in the Backstop Commitment Letter), and without further approval of the Court, to make modifications to the Rights Offering Procedures and subscription forms; *provided* that the Debtors shall not modify the Rights Offering Record Date or extend the Subscription Expiration Deadline without the consent of the Required Consenting Senior Noteholders and the Required

Backstop Parties, except as required by law; *provided further* that the Debtors shall provide prompt written notice of any material modification to the Rights Offering Procedures made after the Subscription Commencement Date, and, using commercially reasonable efforts to do so at least 5 business days before any previously scheduled Subscription Expiration Deadline, notice of any extension of the Subscription Expiration Deadline, in each case by (a) posting such notice on the Solicitation Agent's website, (b) filing such notice on the docket of these Chapter 11 Cases, and (c) providing such notice to the Majority Ad Hoc Group Advisors (as defined in the Plan), with email notice being sufficient.

33. The U.S. Trustee shall not convene the 341 Meeting on or before January 8, 2027 (the SOFA/Schedule Deadline), and the time for the Debtors to file SOFAs, Schedules, and 2015.3 Reports is extended through and including the SOFA/Schedule Deadline. If the Plan is confirmed on or before the SOFA/Schedule Deadline, the 341 Meeting shall be waived and the requirements that the Debtors file SOFAs, Schedules, and 2015.3 Reports shall be waived, in each case without further order of the Court. The SOFA/Schedule Deadline may be further extended without further motion by the Debtors and without further order from the Court, upon written agreement between the Debtors and the U.S. Trustee (which written agreement may be by email) and upon notice filed on the docket and served on the Notice Parties. This relief is without prejudice to the Debtors' rights to request further extensions thereof.

34. The Solicitation Agent shall file the Voting Report no later than December 14, 2026, or 2 business days before any adjourned Combined Hearing.

35. Nothing in the Motion or this Order shall be deemed or construed as: (a) an admission as to the validity of any claim against any Debtor or the existence of any lien against the Debtors' properties; (b) a waiver of the Debtors' rights to dispute any claim or lien on any

grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim would constitute an allowed claim; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; or (f) a limitation on the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to this Order. Nothing contained in this Order shall be deemed to increase, decrease, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

36. Nothing in this Order shall be construed as a waiver of the right of the Debtors or any other party in interest, as applicable, to object to a proof of claim after the Voting Record Date.

37. The Debtors' rights to modify or withdraw the Plan and the Disclosure Statement in accordance with their terms, the Consenting Senior Noteholder RSA, and section 1127 of the Bankruptcy Code are reserved. To the extent the Plan is modified before confirmation, any acceptance or rejection of the Plan shall be deemed an acceptance or rejection of the Plan as so modified, unless such modification materially and adversely changes the treatment of the Claim or Interest of the applicable Holder, in which case resolicitation shall be required only to the extent required by section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

38. Nothing in the Motion or this Order waives or modifies the rights and remedies of the Consenting Senior Noteholders and the Consenting Equityholders under the Restructuring Support Agreements and the Backstop Commitment Letter, as applicable, including, without limitation, the consultation, consent, and termination rights of such parties contained therein.

39. The requirements of Bankruptcy Rule 6003(b) are satisfied because the relief set forth in this Order is necessary to avoid immediate and irreparable harm.

40. Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of the Bankruptcy Rules, including, without limitation, Bankruptcy Rule 6004(a), and the Bankruptcy Local Rules are satisfied by such notice.

41. Notwithstanding any Bankruptcy Rule to the contrary, including, without limitation, Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

42. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

43. The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

44. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Signed: _______________, 2026
Houston, Texas

____________________________________________
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

Combined Notice

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| MERCER INTERNATIONAL INC., *et al.*,[1] | : | Case No. 26-90829 (CML) |
| Debtors. | : | (Jointly Administered) |

**NOTICE OF**
**(I) COMMENCEMENT OF CHAPTER**
**11 CASES, (II) COMBINED HEARING ON**
**(A) DISCLOSURE STATEMENT AND (B) JOINT**
**PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION**
**OF MERCER INTERNATIONAL INC. AND ITS DEBTOR AFFILIATE,**
**(III) OBJECTION DEADLINES, AND (IV) SUMMARY OF KEY TERMS RELATING**
**TO THE ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**NOTICE IS HEREBY GIVEN** as follows:

Mercer International Inc. and its affiliated debtor, as debtors and debtors in possession (collectively, the "***Debtors***"), each commenced a case under Chapter 11 of Title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of Texas (the "***Court***") on November 9, 2026 (the "***Petition Date***").

Before the Petition Date, the Debtors commenced solicitation of the *Joint Prepackaged Chapter 11 Plan of Reorganization of Mercer International Inc. and Its Debtor Affiliate* (as may be amended, modified, or supplemented from time to time, the "***Plan***")[2] attached as Exhibit A to the proposed *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Reorganization of Mercer International Inc. and Its Debtor Affiliate* (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***") pursuant to sections 1125 and 1126(b) of the Bankruptcy Code from Holders of Class 3 Senior Notes Claims. Copies of the Plan and the Disclosure Statement may be obtained (a) free of charge from the Debtors' solicitation agent, Stretto, Inc. (the "***Solicitation Agent***"), by visiting https://cases.stretto.com/Mercer, calling (833) 333-9454 (International: +1 (650) 525-4708), or emailing MercerInquiries@stretto.com (with

[1] The Debtors in the Chapter 11 Cases, together with the last four digits of each Debtor's taxpayer identification number, are: Mercer International Inc. (6945) and Mercer International (Texas) LLC (N/A). The Debtors' mailing address for purposes of the Chapter 11 Cases is: Suite 1120, 700 West Pender Street, Vancouver, British Columbia V6C 1G8.

[2] Capitalized terms used but not defined herein have the meanings given to them in the Plan.

"Mercer Solicitation Inquiry" in the subject line); (b) for a fee via PACER at https://pacer.uscourts.gov; or (c) in electronic or paper form upon written request to the Debtors.

The Plan will accomplish a material deleveraging of the Debtors' balance sheet by exchanging approximately $1.275 billion in principal amount of Senior Notes, without impairing business operations and, notably, satisfying General Unsecured Claims in full. With the support of their key stakeholders, the Debtors expect to emerge from these chapter 11 cases expeditiously with a healthier balance sheet and the ability to continue to serve and supply all domestic and international customers.

## I. INFORMATION REGARDING PLAN.

Before the Petition Date, the Debtors commenced solicitation of votes on the Plan from Holders of Class 3 Senior Notes Claims as of November 2, 2026 (the "***Voting Record Date***"), and, following entry of the Solicitation Procedures Order, the Debtors are soliciting votes from Holders of Class 8 Existing Equity Interests as of the Voting Record Date. Only Holders in Classes 3 and 8 are entitled to vote. Before entry of the Solicitation Procedures Order, only Eligible Holders of Class 3 Senior Notes Claims were permitted to submit Ballots. All other Classes are presumed to accept the Plan and are not entitled to vote.

**THE BANKRUPTCY COURT HAS GRANTED THE SOLICITATION PROCEDURES ORDER AUTHORIZING THE DEBTORS TO SOLICIT VOTES TO ACCEPT OR REJECT THE PLAN FROM "NON-ELIGIBLE" HOLDERS OF CLASS 3 SENIOR NOTES CLAIMS AND HOLDERS OF CLASS 8 EXISTING EQUITY INTERESTS.**

**HOLDERS OF SUCH CLAIMS AND INTERESTS HAVE UNTIL DECEMBER 10, 2026 AT 4:00 P.M. (PREVAILING CENTRAL TIME) TO VOTE ON THE PLAN BY FOLLOWING THE INSTRUCTIONS ON THEIR BALLOTS.**

**The deadline for Rights Offering Participants to subscribe for New Money Senior Secured Notes (and related Stapled Equity) in the Rights Offering is December 10, 2026 at 4:00 p.m. (prevailing Central Time) (the "*Subscription Expiration Deadline*").** The Rights Offering is backstopped in full by the Backstop Parties pursuant to the Backstop Commitment Letter, approval of which the Debtors will seek by separate motion. Copies of the Rights Offering Procedures may be obtained free of charge from the Solicitation Agent as set forth above.

**PLEASE BE ADVISED THAT THE PLAN CONTAINS RELEASE, EXCULPATION AND INJUNCTION PROVISIONS. THESE PROVISIONS ARE SET FORTH IN APPENDIX A.**

**Specifically, pursuant to Article 10.6(b) of the Plan, each Holder of a Claim or Interest in a Voting Class, and each Holder of a Claim or Interest in a Non-Voting Class (other than Holders of Intercompany Claims and Intercompany Interests) that is deemed to accept the Plan, is deemed to grant the Third-Party Release, to the maximum extent otherwise permitted by law, unless such Holder timely opts out of providing the Third-Party Release**

**by the Voting Deadline. To opt out, a Holder must check the appropriate box on its Ballot or Notice of Non-Voting Status and Release Opt-Out Form, as applicable, and return it in accordance with the instructions thereon (including, where permitted, through the online portal on the Solicitation Agent's website) so that it is actually received by the Solicitation Agent on or before the Voting Deadline. In addition, any Holder that timely objects to the Third-Party Release, either through a formal objection Filed on the docket of the Chapter 11 Cases or an informal objection provided to the Debtors by electronic mail, which objection is not withdrawn or otherwise resolved before entry of the Confirmation Order, will not be a Releasing Party. The Third-Party Release is discussed further in Article 10.6(b) of the Plan. Please be advised that opting out does not affect the amount of your distribution under the Plan.**

Pursuant to the Solicitation Procedures Order,[3] the Court has scheduled a combined hearing to consider (a) final approval of the Disclosure Statement and (b) confirmation of the Plan, and any objections thereto, to be held before the Court, Courtroom 402, 4th floor, 515 Rusk Street, Houston, Texas 77002, **on [● ], 2026 at [ ● ]:[ ● ] [a.m./p.m.] (prevailing Central Time)** (the "***Combined Hearing***").

The Combined Hearing will be held before the Honorable Christopher M. Lopez, United States Bankruptcy Judge. Parties may participate in the Combined Hearing in person or by an audio and video connection. Audio communication will be by use of the Court's dial-in facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting. Hearing appearances must be made electronically in advance of hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields, and click "Submit" to complete your appearance.

The Combined Hearing may be adjourned from time to time by the Debtors without further notice other than by the Debtors filing a notice or hearing agenda on the Court's docket or announcing the adjourned date(s) in open court or at the Combined Hearing; adjourned dates will be posted on the Court's docket and at https://cases.stretto.com/Mercer.

The Debtors will file the Initial Plan Supplement on or before December 3, 2026, or such date that is 7 days before the Objection Deadline, and may file additional or revised Plan Supplement documents thereafter, and copies will be available free of charge on the Solicitation

[3] The "***Solicitation Procedures Order***" means that *Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Approving (A) Solicitation Procedures, (B) Form and Manner of Notice of Commencement, Combined Hearing, and Objection Deadline, and (C) Rights Offering Procedures and Related Forms, and Authorizing Commencement of the Rights Offering; (III) Fixing Deadline to Object to Disclosure Statement and Plan; (IV) Conditionally (A) Directing the United States Trustee Not to Convene Section 341 Meeting of Creditors and (B) Waiving Requirement to File Statements of Financial Affairs and Schedules of Assets and Liabilities; (V) Conditionally Approving the Disclosure Statement; and (VI) Granting Related Relief* [Docket No. [ ● ]].

Agent's website at https://cases.stretto.com/Mercer. The Plan may be modified or amended, if necessary, subject to section 1127 of the Bankruptcy Code, before, during, or as a result of the Combined Hearing, without further notice to parties in interest. The statements contained herein are summaries of the provisions contained in the Plan and the Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan. To the extent there is a discrepancy between the terms herein and the Plan or the Disclosure Statement, the Plan or the Disclosure Statement, as applicable, shall govern and control.

The Court has set the deadline for filing objections to the final approval of the Disclosure Statement and confirmation of the Plan as **December 10, 2026 at 4:00 p.m. (prevailing Central Time)** (the "***Objection Deadline***"). Any objections to the Disclosure Statement and/or the Plan must: (a) be in writing, (b) be filed with the Clerk of the Court together with proof of service thereof, (c) set forth the name of the objecting party and the nature and amount of any claim or interest asserted by the objecting party against the Debtors, (d) state the basis for such objection and the specific grounds thereof, (e) in the case of an objection to confirmation of the Plan, include proposed language that, if included in the Plan, would remedy the matters set forth in the objection, and (f) conform to the applicable Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "***Bankruptcy Local Rules***").

In addition to being filed with the Clerk of the Court, any such objections must be served upon the following parties in accordance with the Bankruptcy Local Rules so as to be **actually received** on or before the Objection Deadline: (a) the Debtors, c/o Mercer International Inc., Suite 1120, 700 West Pender Street, Vancouver, British Columbia V6C 1G8, Attn: Richard Short (richard.short@mercerint.com); (b) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, TX 77002, Attn: Jayson B. Ruff (jayson.b.ruff@usdoj.gov); (c) Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020, Attn: Ray C. Schrock (ray.schrock@lw.com); Keith A. Simon (keith.simon@lw.com); Joe Zujkowski (joe.zujkowski@lw.com); and 10250 Constellation Blvd., Suite 1100, Los Angeles, CA 90067, Attn: Nicholas J. Messana (nicholas.messana@lw.com), proposed counsel to the Debtors; (d) Hunton Andrews Kurth LLP, 600 Travis Street, Suite 4200, Houston, TX 77002, Attn: Timothy A. ("Tad") Davidson II (taddavidson@hunton.com); Ashley L. Harper (ashleyharper@hunton.com); Brandon Bell (bbell@hunton.com); and Kaleb Bailey (kbailey@hunton.com), proposed co-counsel to the Debtors; (e) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, Attn: Jacob Adlerstein (jadlerstein@paulweiss.com); Sung Pak (spak@paulweiss.com); and Joseph M. Graham (jgraham@paulweiss.com), counsel to the Majority Ad Hoc Group; and (f) Pryor Cashman LLP, 7 Times Square, 40th Floor, New York, NY 10036, Attn: David W. Smith (dsmith@pryorcashman.com), counsel to Computershare Trust Company, N.A., as trustee under the indentures governing the Senior Notes.

**UNLESS AN OBJECTION IS TIMELY FILED AND SERVED IN ACCORDANCE WITH THE PROCEDURES IN THIS NOTICE, SUCH OBJECTION MAY NOT BE CONSIDERED BY THE COURT AT THE COMBINED HEARING.**

## II. SUMMARY OF KEY DATES AND DEADLINES

| Event | Date/Deadline |
|---|---|
| Voting Record Date | November 2, 2026 |
| Solicitation Commencement Date (Distribution of Solicitation Packages to All Holders in Class 3 Before Filing of the Chapter 11 Cases; Only Eligible Holders May Vote) | November 9, 2026 |
| Petition Date / Rights Offering Record Date | November 9, 2026 |
| Service of Combined Notice, Notice of Non-Voting Status, and Release Opt-Out Forms / Distribution of Solicitation Packages to Holders in Class 8 / Rights Offering Subscription Commencement Date | November 12, 2026, or as soon as reasonably practicable thereafter |
| Publication of Publication Notice | On or about November 16, 2026, and no later than 21 days before the Combined Hearing (or as soon as reasonably practicable thereafter) |
| Plan Supplement Initial Filing | December 3, 2026 (no later than 7 days before the Objection Deadline) |
| Voting Deadline / Deadline for Holders in Unimpaired Non-Voting Classes to Submit Release Opt-Out Forms | December 10, 2026 at 4:00 p.m. (prevailing Central Time) |
| Plan/Disclosure Statement Objection Deadline | December 10, 2026 at 4:00 p.m. (prevailing Central Time) |
| Rights Offering Subscription Expiration Deadline | December 10, 2026 at 4:00 p.m. (prevailing Central Time) |
| Deadline to File Voting Report | December 14, 2026 (or 2 business days before any adjourned Combined Hearing) |
| Deadline to File Confirmation Brief and Reply to Objection(s) / Deadline to File Proposed Confirmation Order | December 14, 2026 (or 2 business days before any adjourned Combined Hearing) |
| Combined Hearing | December 16, 2026 at 9:00 a.m. (prevailing Central Time) (subject to the Court's availability) |

**BINDING NATURE OF THE PLAN: IF CONFIRMED, THE PLAN WILL BIND ALL HOLDERS OF CLAIMS AND INTERESTS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT A HOLDER OF A CLAIM OR INTEREST WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, HAS FILED A PROOF OF CLAIM IN THESE CHAPTER 11 CASES, OR FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.**

## III. SUMMARY OF THE PLAN

The following chart summarizes the treatment provided by the Plan to each Class of Claims and Interests:

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Secured Claims | Unimpaired | No (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | No (Presumed to Accept) |
| ***3*** | ***Senior Notes Claims*** | ***Impaired*** | ***Yes*** |
| 4 | General Unsecured Claims | Unimpaired | No (Presumed to Accept) |
| 5 | Intercompany Claims | Unimpaired | No (Presumed to Accept) |
| 6 | Intercompany Interests | Unimpaired | No (Presumed to Accept) |
| 7 | 510(b) Claims | Unimpaired | No (Presumed to Accept) |
| ***8*** | ***Existing Equity Interests*** | ***Impaired*** | ***Yes*** |

## IV. NON-VOTING STATUS OF HOLDERS OF CERTAIN CLAIMS AND INTERESTS

As set forth above, certain Holders of Claims and Interests are **not** entitled to vote on the Plan. As a result, such parties did not receive any Ballots and other related solicitation materials to vote on the Plan. Claims and Interests in Classes 1, 2, 4, 5, 6, and 7 (collectively, the "***Non-Voting Classes***") are Unimpaired under the Plan and, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to accept the Plan. In light of their presumed acceptance of the Plan, none of the Holders of Claims and Interests in the Non-Voting Classes will be solicited to vote on the Plan. Instead, the Holders of Claims and Interests in the Non-Voting Classes (other than Holders of Intercompany Claims and Intercompany Interests) will receive a Notice of Non-Voting Status and Release Opt-Out Form. Because the Intercompany Claims and Intercompany Interests are all held by the Debtors or affiliates of the Debtors, the Debtors did not provide the Holders in Class 5 (Intercompany Claims) or Class 6 (Intercompany Interests) with a Notice of Non-Voting Status and Release Opt-Out Form (or Solicitation Materials). Further, Holders of Claims or Interests in the Non-Voting Classes can access the Disclosure Statement and the Plan at no cost on the website maintained by the Solicitation Agent: https://cases.stretto.com/Mercer.

## V. KEY TERMS RELATING TO ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**ARTICLE VIII OF THE PLAN CONTAINS THE FOLLOWING PROVISIONS REGARDING EXECUTORY CONTRACTS AND UNEXPIRED LEASES. PARTIES TO EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING ARTICLE VIII, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**The text of certain executory contract and unexpired lease provisions of the Plan is set forth below for your convenience, but you should review the Disclosure Statement and the Plan for a complete description of such provisions:**

### A. Assumption or Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors, including, but not limited to, Employee Plans, which have not expired by their own terms on or before the Confirmation Date, shall be deemed assumed by the Debtors in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except for those Executory Contracts and Unexpired Leases that, in each case:

(a) have been assumed, assumed and assigned, or rejected by the Debtors by prior order of the Bankruptcy Court;

(b) are the subject of a motion to reject Filed by the Debtors pending on the Effective Date;

(c) are identified as rejected Executory Contracts and Unexpired Leases by the Debtors, with the consent of the Required Consenting Senior Noteholders, on the Schedule of Rejected Executory Contracts and Unexpired Leases, if any, to be Filed in the Plan Supplement, which may be amended by the Debtors, with the consent of the Required Consenting Senior Noteholders, up to and through the Effective Date to add or remove Executory Contracts and Unexpired Leases by Filing with the Bankruptcy Court a subsequent Plan Supplement and serving it on the affected non-Debtor contract parties;

(d) are rejected or terminated pursuant to the terms of this Plan; or

(e) are the subject of a pending Cure Dispute.

Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract or Unexpired Lease, the Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumptions, assumptions and assignments, and the rejection of Executory Contracts and Unexpired Leases set forth in the Schedule of Rejected Executory Contracts and Unexpired Leases, if any, provided for in this Plan pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

To the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned (as applicable) pursuant to this Plan or any prior order of the Bankruptcy Court (including, without limitation, any "change of control" or similar provision) prohibits, restricts, or conditions, or purports to prohibit, restrict, or condition, or is modified, breached, or terminated, or deemed modified, breached, or terminated by, or triggers any right or contingent right to any payment or benefit (either alone or in conjunction with any other action or event) as a result of: (i) the commencement of the Chapter 11 Cases or the insolvency or financial condition of any Debtor at any time before the closing of its respective Chapter 11 Case; (ii) any Debtor's or any Reorganized Debtor's assumption or assumption and assignment (as applicable) of such Executory Contract or Unexpired Lease; or (iii) the Confirmation or consummation of this Plan, then such provision shall be deemed modified such that the transactions contemplated by this Plan shall not entitle the non-Debtor party thereto to modify or terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights or remedies with respect thereto, and any required consent under any such contract or lease shall be deemed satisfied by the Confirmation of this Plan.

Each Executory Contract and Unexpired Lease assumed or assigned pursuant to this Plan shall revest in and be fully enforceable by the applicable Reorganized Debtor or the applicable assignee in accordance with its terms and conditions, except as modified by the provisions of this Plan, any order of the Bankruptcy Court approving its assumption or assignment, or applicable law.

The Debtors reserve the right, on or before the Effective Date and with the consent of the Required Consenting Senior Noteholders, to amend the Schedule of Rejected Executory Contracts and Unexpired Leases, if any, or to add thereto or remove therefrom any Executory Contract and Unexpired Lease.

The inclusion or exclusion of a contract or lease on any schedule or exhibit shall not constitute an admission by any Debtor that such contract or lease is an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder.

**B. Payments Related to Assumption of Executory Contracts and Unexpired Leases**

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to this Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding: (a) the amount of any Cure Claim; (b) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), if applicable, under the Executory Contract or the Unexpired Lease to be assumed; or (c) any other matter pertaining to assumption, the Cure Claims shall be paid following the entry of a Final Order resolving the dispute and approving the assumption of such Executory Contracts or Unexpired Leases; *provided*, that the Debtors or the Reorganized Debtors, as applicable, may settle any dispute regarding the amount of any Cure Claim without any further notice to or action, order, or approval of the Bankruptcy Court.

**C. Claims on Account of the Rejection of Executory Contracts or Unexpired Leases**

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to this Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within twenty-one (21) days after service of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection. Any Claim arising from the rejection of Executory Contracts or Unexpired Leases that becomes an Allowed Claim is classified and shall be treated as a Class 4 (General Unsecured Claim).

Any Person or Entity that is required to File a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so shall be forever barred, estopped, and enjoined from asserting such Claim, and such Claim shall not be enforceable, against the Debtors, the Reorganized Debtors, or the Estates, and the Debtors, the Reorganized Debtors, and the Estates and their respective assets and property shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article 10.5 of the Plan.

**D. Survival of the Debtors' Indemnification Obligations**

On the Effective Date, all Indemnification Obligations shall be deemed and treated as Executory Contracts that are and shall be assumed by the Debtors (and assigned to the applicable Reorganized Debtors, if necessary) pursuant to section 365(a) and section 1123 of the Bankruptcy Code as to which no Proof of Claim, request for administrative expense, or cure claim need be Filed, and all Claims arising from the Indemnification Obligations shall survive the Effective Date and be Unimpaired. Unless previously effectuated by separate order entered by the Bankruptcy Court, entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' assumption of each of the Indemnification Obligations. Confirmation and Consummation of this Plan shall not impair or otherwise modify any available defenses of the Reorganized Debtors or other applicable parties under the Indemnification Obligations. For the avoidance of doubt, the Indemnification Obligations shall continue to apply with respect to actions, or failures to act, that occurred on or prior to the Effective Date, subject to the terms and conditions of the Indemnification Obligations.

**E. Employee Plans**

All Employee Plans that exist as of the Petition Date that remain in effect as of the Effective Date shall be assumed (and assigned to the applicable Reorganized Debtors, if necessary) on the Effective Date (after giving effect to the amendments contemplated below) as Executory Contracts pursuant to sections 365 and 1123 of the Bankruptcy Code as to which no Proof of Claim, request for administrative expense, or cure claim need be Filed. For the avoidance of doubt, neither the assumption of any Employee Plans nor any transactions in connection with this Plan shall trigger any applicable change of control, immediate vesting, or similar provisions therein, including any right to increased severance pay in connection with a qualifying termination of employment following a change in control. Notwithstanding the foregoing, (i) Mercer's Amended and Restated

2022 Stock Incentive Plan and any other Employee Plan providing for the grant of any equity-based award, program, or arrangement that is sponsored or maintained by any Debtor shall terminate effective as of the Effective Date, and (ii) any outstanding equity-based awards that are subject to time-based vesting or performance-based vesting that have not fully vested as of immediately prior to the Effective Date (after giving effect to the amendments contemplated below) shall be cancelled for no consideration, effective as of the Effective Date. Prior to the Effective Date, the Debtors shall take any actions reasonably necessary, in consultation with the Required Consenting Senior Noteholders and solely to the extent not self-effectuating pursuant to Article 8.5 of the Plan, (x) to effect the terminations and cancellations contemplated in the preceding sentence and (y) to amend or modify any Employee Plan under which the Restructuring Transactions (either alone or in conjunction with any other event) would or could trigger a "change in control," "change of control," or similar provision or related payment, vesting, funding, or other increased benefit, in accordance with the Consenting Senior Noteholder RSA, effective no later than the Effective Date, to provide that the Restructuring Transactions (either alone or in conjunction with any other event) shall not constitute a "change in control," "change of control," or similar event under any such Employee Plan or otherwise trigger any related payment, vesting, funding, or other increased benefit.

As of the Effective Date, the Debtors and the Reorganized Debtors shall continue to honor their obligations under all applicable workers' compensation programs and in accordance with all applicable workers' compensation laws in states in which the Reorganized Debtors operate. Any Claims arising under workers' compensation programs shall be deemed withdrawn once satisfied without any further notice to or action, order, or approval of the Bankruptcy Court; *provided*, that nothing in this Plan shall limit, diminish, or otherwise alter the Debtors' or Reorganized Debtors' defenses, Causes of Action, or other rights under applicable law, including non-bankruptcy law, with respect to any such workers' compensation programs; *provided further*, that nothing herein shall be deemed to impose any obligations on the Debtors in addition to what is provided for under applicable state law.

Notwithstanding the foregoing or anything else in this Plan to the contrary, (i) all accrued and unpaid obligations under the Short-Term Incentive Plan, in an aggregate amount not to exceed $1.7 million, and (ii) the fees and expenses of the members of the special committee of the board of Mercer, in an aggregate amount of fees not to exceed $200,000, shall be paid on or as soon as reasonably practicable after the Effective Date.

On the Effective Date, all Existing Unexercised Equity Interests shall be cancelled, released, and of no further force and effect, and no distributions will be made on account of such Existing Unexercised Equity Interests.

### F. Insurance Policies

All insurance policies to which any Debtor is a party as of the Effective Date, including any D&O Policy, shall be deemed to be and treated as Executory Contracts and shall be assumed by the applicable Debtors or the Reorganized Debtors and shall continue in full force and effect thereafter in accordance with their respective terms (as to which no Proof of Claim, request for administrative expense, or cure claim need be Filed), and all such insurance policies shall vest in

the Reorganized Debtors. Coverage for defense and indemnity under the D&O Policies shall remain available to all individuals within the definition of "Insured" in any D&O Policy.

In addition, after the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce the coverage under any D&O Policy (including any "tail policy") in effect as of the Petition Date, and any current directors, officers, members, managers, agents, or employees of any of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any such D&O Policy for the full term of such policy regardless of whether such members, managers, directors, or officers remain in such positions after the Effective Date to the extent set forth in such policies. On the Effective Date, the Debtors shall be deemed to have assumed all unexpired D&O Policies (including any "tail policy" on terms no less favorable than the Debtors' existing director, officer, manager, and employee coverage), the Debtors or the Reorganized Debtors, as applicable, shall obtain any applicable insurer consents required to assume such policies, and the Debtors or the Reorganized Debtors, as applicable, shall purchase any related tail policies providing for such coverage for at least a six-year period after the Effective Date.

In the event that the Debtors determine that an Allowed Claim is covered in full or in part under one of the Debtors' insurance policies, no distributions under this Plan shall be made on account of such Allowed Claim unless and until, and solely to the extent that, (i) the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, and (ii) the insurer authorized to issue a coverage position under such insurance policy, or the agent of such insurer, issues a formal determination, which the Debtors do not contest, that coverage under such insurance policy is excluded or otherwise unavailable for losses arising from such Allowed Claim. Any proceeds available pursuant to one of the Debtors' insurance policies shall reduce the Allowed amount of a Claim on a dollar-for-dollar basis. To the extent that one or more of the Debtors' insurers agrees to satisfy a Claim in full or in part (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court. If an applicable insurance policy has a SIR, the Holder of an Insured Claim shall have an Allowed General Unsecured Claim or a 510(b) Claim, as applicable, against the applicable Debtor's Estate solely up to the amount of the SIR that may be established upon the liquidation of the Insured Claim. Such SIR shall be considered satisfied pursuant to this Plan through allowance of the General Unsecured Claim or 510(b) Claim, as applicable, solely in the amount of the applicable SIR, if any; *provided*, that nothing herein obligates the Debtors or the Reorganized Debtors to otherwise satisfy any SIR under any insurance policy. Any recovery on account of the Insured Claim above the SIR established upon the liquidation of the Claim shall be recovered solely from the Debtors' insurance coverage, if any, and only to the extent of available insurance coverage and any proceeds thereof. Nothing in this Plan shall be construed to limit, extinguish, or diminish the insurance coverage that may exist or shall be construed as a finding that liquidated any Claim payable pursuant to an insurance policy.

### G. Intellectual Property Licenses and Agreements

All intellectual property contracts, licenses, royalties, or other similar agreements to which the Debtors have any rights or obligations in effect as of the date of the Confirmation Order shall be deemed and treated as Executory Contracts pursuant to this Plan and shall be assumed by the respective Debtors and Reorganized Debtors and shall continue in full force and effect (as to which no Proof of Claim, request for administrative expense, or cure claim need be Filed) unless any such intellectual property contract, license, royalty, or other similar agreement otherwise is specifically rejected pursuant to a separate order of the Bankruptcy Court or is the subject of a separate rejection motion Filed by the Debtors in accordance with this Plan. Unless otherwise noted hereunder, all other intellectual property contracts, licenses, royalties, or other similar agreements shall vest in the Reorganized Debtors and the Reorganized Debtors may take all actions as may be necessary or appropriate to ensure such vesting as contemplated herein.

### H. Assignment

To the extent provided under the Bankruptcy Code or other applicable law, any Executory Contract or Unexpired Lease transferred and assigned hereunder shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such Executory Contract or Unexpired Lease (including those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment. To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts, or conditions the assignment or transfer of any such Executory Contract or Unexpired Lease or that terminates or modifies such Executory Contract or Unexpired Lease or allows the counterparty to such Executory Contract or Unexpired Lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment, constitutes an unenforceable anti-assignment provision and is void and of no force or effect.

### I. Modifications, Amendments, Supplements, Restatements, or Other Agreements

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each Executory Contract and Unexpired Lease that is assumed shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract or Unexpired Lease.

### J. Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease by the Debtors on any exhibit, schedule, or other annex to this Plan or in the Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Debtors that any such contract or lease is or is not in fact an Executory Contract or Unexpired Lease or that the Debtors or the Reorganized Debtors or their respective Affiliates has any liability thereunder.

Except as otherwise provided in this Plan, nothing in this Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors and the Reorganized Debtors under any Executory Contract or non-Executory Contract or any expired or Unexpired Lease.

Nothing in this Plan shall increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors or the Reorganized Debtors under any executory or non-Executory Contract or any unexpired or expired lease.

If there is a dispute regarding a Cure Claim or whether a contract or lease is or was executory or unexpired at the time of assumption or rejection under this Plan, the Debtors or Reorganized Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease by Filing a notice indicating such altered treatment (including to reject such Executory Contract or Unexpired Lease in lieu of assuming or assigning it).

### K. Objections to Assumption and Cure

Any counterparty to an Executory Contract or Unexpired Lease that objects to the proposed assumption must file and serve an objection in accordance with the objection procedures set forth above so as to be actually received by the Objection Deadline. The Debtors request that, before filing an objection, counterparties contact the undersigned proposed counsel to the Debtors to attempt to resolve such dispute consensually. Any Cure Dispute will be resolved in accordance with Article 8.2 of the Plan, and the applicable Cure Claim shall be paid following the entry of a Final Order resolving the dispute and approving the assumption, unless otherwise settled by the Debtors or the Reorganized Debtors. **ANY COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT FAILS TO OBJECT TIMELY TO THE PROPOSED ASSUMPTION WILL BE DEEMED TO HAVE CONSENTED TO SUCH ASSUMPTION; PROVIDED, THAT CURE DISPUTES WILL BE ASSERTED AND RESOLVED IN ACCORDANCE WITH THE PLAN.**

**PURSUANT TO ARTICLE 8.2 OF THE PLAN, ANY MONETARY DEFAULTS UNDER EACH EXECUTORY CONTRACT AND UNEXPIRED LEASE TO BE ASSUMED OR ASSUMED AND ASSIGNED PURSUANT TO THE PLAN SHALL BE SATISFIED, PURSUANT TO SECTION 365(b)(1) OF THE BANKRUPTCY CODE, BY PAYMENT OF THE DEFAULT AMOUNT IN CASH ON THE EFFECTIVE DATE OR ON SUCH OTHER TERMS AS THE PARTIES TO SUCH EXECUTORY CONTRACTS OR UNEXPIRED LEASES MAY OTHERWISE AGREE. PURSUANT TO ARTICLE 8.1(c) OF THE PLAN, ANY PROVISION IN AN ASSUMED EXECUTORY CONTRACT OR UNEXPIRED LEASE (INCLUDING ANY "CHANGE OF CONTROL" OR SIMILAR PROVISION) TRIGGERED BY THE COMMENCEMENT OF THE CHAPTER 11 CASES, THE INSOLVENCY OR FINANCIAL CONDITION OF ANY DEBTOR, THE ASSUMPTION OF SUCH CONTRACT OR LEASE, OR THE CONFIRMATION OR CONSUMMATION OF THE PLAN SHALL BE DEEMED MODIFIED SUCH THAT THE TRANSACTIONS CONTEMPLATED BY THE PLAN SHALL NOT ENTITLE THE NON-DEBTOR PARTY TO MODIFY OR TERMINATE SUCH CONTRACT OR LEASE**

**OR TO EXERCISE ANY OTHER DEFAULT-RELATED RIGHTS OR REMEDIES, AND ANY REQUIRED CONSENT SHALL BE DEEMED SATISFIED BY CONFIRMATION OF THE PLAN. PURSUANT TO ARTICLE 7.1(c) OF THE PLAN, UPON AND AFTER THE EFFECTIVE DATE, ALL PROOFS OF CLAIM, OTHER THAN CLAIMS ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE, FILED AGAINST THE DEBTORS, REGARDLESS OF THE TIME OF FILING, SHALL BE DEEMED WITHDRAWN AND EXPUNGED.**

## VI. MEETING OF CREDITORS PURSUANT TO SECTION 341

Pursuant to the Solicitation Procedures Order, the Court has ordered that the Office of the United States Trustee for the Southern District of Texas shall not convene a meeting of creditors pursuant to section 341 of the Bankruptcy Code on or before January 8, 2027, and that if the Plan is confirmed on or before January 8, 2027, the requirement to convene such a meeting shall be waived. The time for the Debtors to file their statements of financial affairs, schedules of assets and liabilities, and reports under Bankruptcy Rule 2015.3 has likewise been extended through January 8, 2027, and such requirements shall be waived if the Plan is confirmed on or before such date. Such date may be further extended upon written agreement between the Debtors and the United States Trustee and notice filed on the docket.

[*Remainder of page intentionally left blank*]

Dated: [ ● ], 2026
Houston, Texas

*/s/ Timothy A. ("Tad") Davidson II*

**HUNTON ANDREWS KURTH LLP**
Timothy A. ("Tad") Davidson II (TX Bar No. 24012503)
Ashley L. Harper (TX Bar No. 24065272)
Brandon Bell (TX Bar No. 24127019)
Kaleb Bailey (TX Bar No. 24136717)
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone: (713) 220-4200
Email: taddavidson@hunton.com
ashleyharper@hunton.com
bbell@hunton.com
kbailey@hunton.com

- and -

**LATHAM & WATKINS LLP**
Ray C. Schrock (NY Bar No. 4860631)
Keith A. Simon (NY Bar No. 4636007)
Joe Zujkowski (NY Bar No. 4625638)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: ray.schrock@lw.com
keith.simon@lw.com
joe.zujkowski@lw.com

- and -

Nicholas J. Messana (CA Bar No. 332355)
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5500
Email: nicholas.messana@lw.com

*Proposed Attorneys for the Debtors*
*and Debtors in Possession*

# APPENDIX A

Release, Injunction, and Exculpation Provisions in the Plan[1]

[1] Capitalized terms used but not defined in this Appendix A have the meanings given to them in the Plan.

**A. Certain Relevant Definitions.**

"***Exculpated Parties***" means, each in its capacity as such, (a) each of the Debtors and the Estates; and (b) each independent director of the Debtors.

"***Related Parties***" means with respect to a Person, such Person's current and former affiliates, and such Person's and its current and former affiliates' current and former directors, managers, committee members, members of any governing body, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed or advised entities, accounts, or funds, current or former, and future associated entities, predecessors, participants, successors, and assigns (whether by operation of law or otherwise), subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, partners, employees, agents, fiduciaries, trustees, advisory board members, financial advisors or managers, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, investment managers, investment advisors, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such.

"***Released Parties***" means, collectively, solely in their capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Senior Notes Trustee; (e) each Backstop Party; (f) each member of the Majority Ad Hoc Group; and (g) with respect to each of the foregoing Persons in clauses (a) through (f), each of their Related Parties; *provided* that, a Person shall not be a Released Party if such Person (i) elects to opt out of the Releases set forth in this Plan or (ii) timely Files an objection to the Releases set forth in this Plan and such objection is not withdrawn or otherwise resolved before the Confirmation Order is entered.

"***Releases***" means, collectively, the releases set forth in Article 10.6 of the Plan.

"***Releasing Parties***" means, collectively, and in each case solely in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Senior Notes Trustee; (e) each Backstop Party; (f) each Holder of a Claim or Interest in a Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective ballot; (g) each Holder of a Claim or Interest in a Non-Voting Class that is deemed to accept this Plan that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective Release Opt-Out Form; and (h) each Related Party of each Entity in clauses (a) through (g), solely to the extent such Related Party (I) would be obligated to grant a release under principles of agency if it were so directed by the Entity in the foregoing clauses (a) through (f) to whom they are related or (II) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (g); *provided*, that any Holder of a Claim or Interest that timely objects to the Third Party Release, either through (x) a formal objection Filed on the docket of the Chapter 11 Cases or (y) an informal objection provided to the Debtors by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or via electronic mail, as applicable, or otherwise resolved before the Confirmation Order is entered, shall not be a "Releasing Party".

**B. Section 10.5 of the Plan – Permanent Injunction.**

**Except as otherwise expressly provided in this Plan or the Confirmation Order, from and after the Effective Date, all Persons and Entities are, to the fullest extent provided under section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined from (a) commencing or continuing, in any manner or in any place, any suit, action, or other proceeding of any kind; (b) enforcing, attaching, collecting, or recovering in any manner or means any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Lien or encumbrance; (d) asserting a right of setoff or subrogation of any kind; or (e) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or with respect to any Claim, demand, liability, obligation, debt, right, Cause of Action, Interest, or remedy released or to be released, exculpated or to be exculpated, settled or to be settled, or discharged or to be discharged pursuant to this Plan or the Confirmation Order against any Person or Entity so released, discharged, or exculpated (or the property or estate of any Person or Entity so released, discharged, or exculpated). All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.**

**No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, Reorganized Debtors, Exculpated Parties, or Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of any Claim or Cause of Action, as applicable, subject to Article X, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Exculpated Party. At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Reorganized Debtor, Exculpated Party, Released Party or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action File a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Federal Rules of Civil Procedure, including Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.**

**C. Section 10.6 of the Plan – Releases.**

**(a) Releases by the Debtors.**

**To the fullest extent permitted by applicable law, and except as otherwise expressly set forth in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Debtors, the Reorganized Debtors, and the Estates, in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally, released and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (a) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (b) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (c) the subject matter of, or the transactions, events, circumstances, acts, or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (d) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including the Consenting Stakeholders), (e) the Senior Notes Documents, (f) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (g) intercompany transactions, (h) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements and related prepetition transactions, the Definitive Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (i) any contract, instrument, release, or other agreement or document created or entered into in connection with this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements, the Definitive Documents, the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of this Plan, or the administration and implementation of this Plan or the Confirmation Order, including the issuance or distribution of Securities pursuant to this Plan, (j) the distribution, including any disbursements made by a Distribution Agent, of property under this Plan, or any other related agreement, or (k) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; *provided*, that the Debtors do not release Claims or Causes of Action (x) that are of a commercial nature and arise in the ordinary course of business, such as accounts receivable and accounts payable on account of goods being sold and services being performed; (y) arising under an Executory Contract or Unexpired Lease that is assumed by the Debtors; or (z) arising out of, or**

**related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct. Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under this Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or the Restructuring Transactions, or any agreement, Claim, or obligation arising or assumed under this Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing this Plan; (b) a good-faith settlement and compromise of the Claims released by the Debtors; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.**

**(b) <u>Releases by Holders of Claims and Interests</u>.**

**To the fullest extent permitted by applicable law, and except as otherwise expressly set forth in this Plan or the Confirmation Order, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party, in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally, released and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (a) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (b) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (c) the subject matter of, or the transactions, events, circumstances, acts, or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (d) the business or contractual arrangements between**

**any Debtor or Non-Debtor Affiliate and any other Entity (including the Consenting Stakeholders), (e) the Senior Notes Documents, (f) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (g) intercompany transactions, (h) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements and related prepetition transactions, the Definitive Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (i) any contract, instrument, release, or other agreement or document created or entered into in connection with this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements, the Definitive Documents, or the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, or the administration and implementation of this Plan or the Confirmation Order, including the issuance or distribution of Securities pursuant to this Plan, (j) the distribution, including any disbursements made by a Distribution Agent, of property under this Plan, or any other related agreement, or (k) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; *provided*, that the Releasing Parties do not release Claims or Causes of Action arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct. Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under this Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or the Restructuring Transactions, or any agreement, Claim, or obligation arising or assumed under this Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of this Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing this Plan; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.**

**D. Section 10.7 of the Plan – Exculpation.**

**Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any Claims or Causes of Action for any act taken or omitted to be taken between the Petition**

**Date and the Effective Date in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the Confirmation or consummation (as applicable) of this Plan, the Restructuring Support Agreements and related prepetition transactions, and the Disclosure Statement including any disbursements made by a Distribution Agent in connection with this Plan, the Disclosure Statement, the Definitive Documents, the Corporate Governance Documents, the Senior Notes Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with this Plan, or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement, or Confirmation or consummation of this Plan; *provided*, that the foregoing provisions of this exculpation shall not operate to waive or release: (a) any Claims or Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; or (b) the rights of any Person or Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan, or assumed pursuant to this Plan or Final Order of the Bankruptcy Court; *provided further*, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions, or inactions.**

**The Exculpated Parties have, and upon consummation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.**

**The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or Entity. For the avoidance of doubt and notwithstanding anything else herein, the foregoing exculpation shall be limited to Persons that served as Estate fiduciaries during the Chapter 11 Cases.**

**EXHIBIT 2**

Publication Notice

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| MERCER INTERNATIONAL INC., *et al.*,[1] | : | Case No. 26-90829 (CML) |
| Debtors. | : | (Jointly Administered) |

**NOTICE OF (I) COMMENCEMENT OF CHAPTER 11 CASES, (II) COMBINED HEARING ON DISCLOSURE STATEMENT AND CONFIRMATION OF JOINT PREPACKAGED CHAPTER 11 PLAN, AND (III) OBJECTION DEADLINE**

**NOTICE IS HEREBY GIVEN** as follows:

Mercer International Inc. and its affiliated debtor, as debtors and debtors in possession (collectively, the "***Debtors***"), each commenced a case under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of Texas (the "***Court***") on November 9, 2026 (the "***Petition Date***").

Before the Petition Date, the Debtors commenced solicitation pursuant to sections 1125 and 1126(b) of the Bankruptcy Code of the *Joint Prepackaged Chapter 11 Plan of Reorganization of Mercer International Inc. and Its Debtor Affiliate* (as may be amended, modified, or supplemented from time to time, the "***Plan***"),[2] attached as Exhibit A to the *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Reorganization of Mercer International Inc. and Its Debtor Affiliate* (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***"). Copies of the Plan and the Disclosure Statement may be obtained free of charge on the website of the Debtors' solicitation agent, Stretto, Inc. (the "***Solicitation Agent***"), at https://cases.stretto.com/Mercer, by calling (833) 333-9454 (toll free) or +1 (650) 525-4708 (international, toll), or by emailing MercerInquiries@stretto.com (with "Mercer Solicitation Inquiry" in the subject line). The statements herein are summaries only; to the extent of any discrepancy, the Plan or the Disclosure Statement, as applicable, shall govern.

Holders of Class 3 Senior Notes Claims and Class 8 Existing Equity Interests as of November 2, 2026 (the "***Voting Record Date***") are entitled to vote on the Plan. All other Classes are Unimpaired and presumed to accept the Plan. **The deadline to vote on the Plan is December 10, 2026 at 4:00 p.m. (prevailing Central Time) (the "*Voting Deadline*").** The deadline for Rights Offering Participants to subscribe in the Rights Offering is also **December 10, 2026 at 4:00 p.m. (prevailing Central Time)**. Holders entitled to vote who have not received a Ballot should contact the Solicitation Agent.

---

[1] The Debtors in the Chapter 11 Cases, together with the last four digits of each Debtor's taxpayer identification number, are: Mercer International Inc. (6945) and Mercer International (Texas) LLC (N/A). The Debtors' mailing address for purposes of the Chapter 11 Cases is: Suite 1120, 700 West Pender Street, Vancouver, British Columbia V6C 1G8.

[2] Capitalized terms used but not defined herein have the meanings given to them in the Plan.

**THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, INCLUDING A THIRD-PARTY RELEASE IN ARTICLE 10.6(b) OF THE PLAN. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED.**

**If you are a Holder of a Claim or Interest in a Voting Class (Class 3 or Class 8), or a Holder of a Claim or Interest in a Non-Voting Class that is deemed to accept the Plan (other than Holders of Intercompany Claims in Class 5 and Intercompany Interests in Class 6), you will be deemed to grant the Third-Party Release, to the maximum extent permitted by law, unless you timely opt out by checking the appropriate box on your Ballot or Notice of Non-Voting Status and Release Opt-Out Form, as applicable, and returning it in accordance with the instructions thereon (including, where permitted, through the online portal on the Solicitation Agent's website) so that it is actually received by the Solicitation Agent on or before December 10, 2026 at 4:00 p.m. (prevailing Central Time) (as such deadline may be extended by the Debtors). In addition, any Holder that timely objects to the Third-Party Release, either through a formal objection Filed on the docket of the Chapter 11 Cases or an informal objection provided to the Debtors by electronic mail, which objection is not withdrawn or otherwise resolved before entry of the Confirmation Order, will not be a Releasing Party. Your recovery under the Plan will be the same whether or not you opt out.**

The Court has scheduled a combined hearing (the "***Combined Hearing***") before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, in Courtroom 402, 4th floor, 515 Rusk Street, Houston, Texas 77002, **on [ ● ], 2026 at [ ● ] [a.m./p.m.] (prevailing Central Time)**, to consider (i) final approval of the Disclosure Statement and (ii) confirmation of the Plan, and any objections thereto. Parties may participate in person or by audio and video connection as described on Judge Lopez's home page.

The Combined Hearing may be adjourned from time to time without further notice other than by the Debtors filing a notice or hearing agenda on the Court's docket indicating such adjournment and/or announcement of the adjournment date or dates at the Combined Hearing. The adjourned dates will be available on the electronic case filing docket and the Solicitation Agent's website at https://cases.stretto.com/Mercer.

The Court has set the deadline for filing objections to the final approval of the Disclosure Statement and confirmation of the Plan as **December 10, 2026 at 4:00 p.m. (prevailing Central Time)** (the "***Objection Deadline***"). Any objections to the Disclosure Statement and/or the Plan must: (a) be in writing, (b) be filed with the Clerk of the Court together with proof of service thereof, (c) set forth the name of the objecting party and the nature and amount of any claim or interest asserted by the objecting party against the Debtors, (d) state the basis for such objection and the specific grounds thereof, (e) in the case of an objection to confirmation of the Plan, include proposed language that, if included in the Plan, would remedy the matters set forth in the objection, and (f) conform to the applicable Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "***Bankruptcy Local Rules***").

In addition to being filed with the Clerk of the Court, any such objections must be served upon the following parties in accordance with the Bankruptcy Local Rules so as to be **actually received** on or before the Objection Deadline: (a) the Debtors, c/o Mercer International Inc., Suite 1120, 700 West Pender Street, Vancouver, British Columbia V6C 1G8, Attn: Richard Short (richard.short@mercerint.com); (b) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, TX 77002, Attn: Jayson B. Ruff (jayson.b.ruff@usdoj.gov); (c) Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020, Attn: Ray C. Schrock (ray.schrock@lw.com); Keith A. Simon

(keith.simon@lw.com); Joe Zujkowski (joe.zujkowski@lw.com); and 10250 Constellation Blvd., Suite 1100, Los Angeles, CA 90067, Attn: Nicholas J. Messana (nicholas.messana@lw.com), proposed counsel to the Debtors; (d) Hunton Andrews Kurth LLP, 600 Travis Street, Suite 4200, Houston, TX 77002, Attn: Timothy A. ("Tad") Davidson II (taddavidson@hunton.com); Ashley L. Harper (ashleyharper@hunton.com); Brandon Bell (bbell@hunton.com); and Kaleb Bailey (kbailey@hunton.com), proposed co-counsel to the Debtors; (e) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, Attn: Jacob Adlerstein (jadlerstein@paulweiss.com); Sung Pak (spak@paulweiss.com); and Joseph M. Graham (jgraham@paulweiss.com), counsel to the Majority Ad Hoc Group; and (f) Pryor Cashman LLP, 7 Times Square, 40th Floor, New York, NY 10036, Attn: David W. Smith (dsmith@pryorcashman.com), counsel to Computershare Trust Company, N.A., as trustee under the indentures governing the Senior Notes.

**UNLESS AN OBJECTION IS TIMELY FILED AND SERVED IN ACCORDANCE WITH THE PROCEDURES IN THIS NOTICE, SUCH OBJECTION MAY NOT BE CONSIDERED BY THE COURT AT THE COMBINED HEARING.**

**EXHIBIT 3**

Tabulation Procedures

# **Tabulation Procedures**

These tabulation procedures (the "***Tabulation Procedures***") govern the tabulation of Ballots submitted by Holders of Claims in Class 3 (Senior Notes Claims) and Holders of Interests in Class 8 (Existing Equity Interests) (together, the "***Voting Classes***") and Release Opt-Out Forms submitted by Holders of Claims and Interests in Class 1 (Secured Claims), Class 2 (Other Priority Claims), Class 4 (General Unsecured Claims), and Class 7 (510(b) Claims). The Debtors commenced the solicitation of votes from Eligible Holders of Class 3 Senior Notes Claims before the Petition Date, and these Tabulation Procedures apply to such prepetition solicitation to the extent consistent with sections 1125(g) and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018(b). Holders in the Voting Classes that are Non-Eligible Holders may vote only following entry of the order to which these Tabulation Procedures are attached (the "***Solicitation Procedures Order***"), and the distribution of Release Opt-Out Forms to the Holders of Claims in Class 1 (Secured Claims), Class 2 (Other Priority Claims), Class 4 (General Unsecured Claims), and Class 7 (510(b) Claims) will commence following entry of the Solicitation Procedures Order. Holders of Class 8 Existing Equity Interests will be solicited following entry of the Solicitation Procedures Order. Capitalized terms used but not defined herein have the meanings given to them in the Solicitation Procedures Order, the Motion,[1] or the Plan, as applicable.

## 1. Voting Record Date.

The Voting Record Date for Holders of Senior Notes Claims in Class 3 and Holders of Existing Equity Interests in Class 8 is November 2, 2026.

## 2. Voting Deadline.

To be counted, a Ballot must be properly executed, completed, and delivered so that it is actually received by the Solicitation Agent no later than **December 10, 2026 at 4:00 p.m. (prevailing Central Time)** (the "***Voting Deadline***"), which the Debtors may extend with the reasonable consent of the Required Consenting Senior Noteholders, subject to the terms of the Consenting Senior Noteholder RSA. The deadline to submit a Release Opt-Out Form is the Voting Deadline. Beneficial Holders voting through a Nominee (other than through a pre-validated Ballot) must return their Ballots or voting instructions to their Nominee with sufficient time for the Nominee to process them and deliver a Master Ballot to the Solicitation Agent by the Voting Deadline, and Beneficial Holders that receive a pre-validated Ballot must return it directly to the Solicitation Agent so that it is actually received by the Voting Deadline.

## 3. Methods of Submission.

Registered Holder Ballots and Release Opt-Out Forms may be submitted (a) in hard copy by regular mail, overnight courier, or hand delivery to the address set forth in the applicable Ballot or Release Opt-Out Form, or (b) through the E-Ballot Portal. Beneficial Holder Ballots that are not pre-validated must be returned to the applicable Nominee in accordance with such Nominee's instructions and customary practices. Master Ballots and pre-validated Ballots may be submitted in hard copy as set forth in clause (a) above or by email of a PDF copy to the address set forth in the applicable Ballot, but may not be submitted through the E-Ballot Portal. Except as provided in the preceding sentences, Ballots and Release Opt-Out

---

[1] The "***Motion***" means the *Emergency Motion of Debtors for Entry of an Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Approving (A) Solicitation Procedures, (B) Form and Manner of Notice of Commencement, Combined Hearing, and Objection Deadline, and (C) Rights Offering Procedures and Related Forms, and Authorizing Commencement of the Rights Offering; (III) Fixing Deadline to Object to Disclosure Statement and Plan; (IV) Conditionally (A) Directing the United States Trustee Not to Convene Section 341 Meeting of Creditors and (B) Waiving Requirement to File Statements of Financial Affairs and Schedules of Assets and Liabilities; (V) Conditionally Approving the Disclosure Statement; and (VI) Granting Related Relief.*

Forms submitted by email, facsimile, or any other electronic means will not be counted. The encrypted ballot data and audit trail created by electronic submission through the E-Ballot Portal shall become part of the record of any Ballot or Release Opt-Out Form submitted in this manner, and the Holder's electronic signature will be deemed immediately legally valid and effective. A Holder that submits a Ballot through the E-Ballot Portal should not also submit a paper Ballot on account of the same Claim or Interest. The method of delivery is at the election and risk of each Holder, and a Ballot or Release Opt-Out Form will be deemed delivered only when the Solicitation Agent actually receives it.

**4. Ballots Not Counted.**

Subject to Section 8 below, the following Ballots will not be counted: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder; (b) any Ballot actually received by the Solicitation Agent after the Voting Deadline, unless the Court orders otherwise upon request of the Debtors; (c) any Ballot that does not contain a signature (provided that a signature collected electronically through the E-Ballot Portal will be deemed a valid signature); (d) any Ballot not properly transmitted to the Solicitation Agent as required by these Tabulation Procedures, unless the Debtors determine otherwise; (e) any Ballot submitted by a Person that did not hold a Claim or Interest in a Voting Class as of the Voting Record Date or that is otherwise not entitled to vote pursuant to the Plan; (f) any Ballot submitted by or on behalf of a Non-Eligible Holder before entry of the Solicitation Procedures Order (and any Holder submitting a Ballot before entry of the Solicitation Procedures Order shall be deemed to have certified that it is an Eligible Holder); (g) any form of ballot other than the official form of Ballot sent by the Solicitation Agent (provided that votes transmitted by Beneficial Holders to their Nominees through customary communications as permitted by the Ballots may be reflected on a Master Ballot); (h) any Ballot that partially rejects and partially accepts the Plan; (i) any Ballot that is properly completed, executed, and timely returned but is not marked to either accept or reject the Plan, or is marked to both accept and reject the Plan; (j) any Ballot superseded by a later, timely submitted valid Ballot; (k) any Ballot sent to the Debtors, the Debtors' agents or representatives (other than the Solicitation Agent), or the Debtors' financial or legal advisors; (l) any Ballot cast by a Person that the Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; and (m) any Ballot not cast in accordance with these Tabulation Procedures and the procedures approved in the Solicitation Procedures Order.

**5. General Tabulation Rules.**

Whenever a Holder casts more than one Ballot voting the same Claim or Interest before the Voting Deadline, the last properly completed Ballot actually received on or before the Voting Deadline shall be deemed to reflect such Holder's intent and shall supersede any previously received Ballot. With respect to Beneficial Holder Ballots submitted through a Nominee (other than pre-validated Ballots), the last such Ballot received by the Nominee in sufficient time to be included on its Master Ballot shall control. Any duplicate Ballots will be counted only once.

Following the Voting Deadline, no Ballot may be changed or revoked, absent further order of the Court.

If a Holder simultaneously casts inconsistent Ballots with respect to the same Claim or Interest, such Ballots will not be counted.

Holders must vote all of their Claims or Interests within a particular Class either to accept or reject the Plan and may not split their votes.

The amount of a Claim or Interest for voting purposes shall be (i) for Class 3, the outstanding principal amount of the applicable Senior Notes held by each Beneficial Holder through its Nominee, without regard

to any accrued but unpaid interest, fees, or premiums, as reflected in the securities position report(s) from DTC as of the Voting Record Date, and (ii) for Class 8, the number of shares reflected on the Debtors' stock register maintained by the transfer agent or the securities position report(s) from DTC as of the Voting Record Date, in each case regardless of any amount set forth on a Ballot. In the event of any inconsistency, the securities position report(s) from DTC shall control for positions held through DTC.

A Ballot does not constitute, and shall not be deemed to be, a proof of claim or an assertion or admission of a Claim or Interest.

Only Holders as of the Voting Record Date may vote, and any transferee of a Claim or Interest after the Voting Record Date shall not be entitled to vote on account of such Claim or Interest.

Any Person signing a Ballot in a representative capacity (including as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation) must indicate such capacity and, if requested by the Debtors or the Solicitation Agent, submit proper evidence of authority to so act.

Consistent with Article 3.6 of the Plan, if no Holder in a Voting Class eligible to vote submits a valid Ballot, the Plan shall be presumed accepted by such Voting Class.

**6. Nominees, Master Ballots, and Overvotes.**

Nominees may (a) forward the Solicitation Package to Beneficial Holders no later than 5 business days after receipt and collect and tabulate their votes on a Master Ballot, or (b) pre-validate a Beneficial Holder Ballot and forward it to the Beneficial Holder for return directly to the Solicitation Agent, and may collect votes in accordance with their customary practices, including through voting instruction forms or electronic means. Nominees electing option (a) must deliver the Master Ballot so that it is actually received by the Solicitation Agent by the Voting Deadline.

Votes cast by Beneficial Holders through Nominees will be applied to the positions held by such Nominees as of the Voting Record Date, as evidenced by the applicable securities position report(s) from DTC.

Votes submitted by a Nominee will not be counted in excess of such Nominee's position as of the Voting Record Date.

If conflicting votes or over-votes are submitted by a Nominee, the Solicitation Agent may use reasonable efforts to reconcile such discrepancies with the Nominee.

To the extent any over-vote cannot be reconciled, the Solicitation Agent will tabulate votes to accept and to reject the Plan in the same proportion as the votes submitted by the Nominee on the applicable Master Ballot or pre-validated Ballots, but only to the extent of such Nominee's position as of the Voting Record Date. A Holder (including a Registered Holder or Beneficial Holder) that holds through more than one Nominee, account, or CUSIP must execute and return a separate Ballot for each Nominee, account, or CUSIP, must vote all such Claims or Interests in the same manner, and, in the case of a Beneficial Holder, must certify on each Ballot all other Ballots submitted in the same Voting Class.

For purposes of determining whether the numerosity requirement of section 1126(c) of the Bankruptcy Code has been satisfied, the Solicitation Agent will treat each Beneficial Holder as a single Holder, to the extent it is able to identify such Beneficial Holder's Ballots submitted through multiple Nominees or accounts.

**7. Release Opt-Out Forms.**

Subject to Section 8 below, a Release Opt-Out Form will be counted only if it is properly completed, executed, and actually received by the Solicitation Agent on or before the Voting Deadline in accordance with Section 3 above. The following Release Opt-Out Forms will not be counted: (a) any Release Opt-Out Form that is illegible or contains insufficient information to permit the identification of the Holder of the Claim or Interest; (b) any Release Opt-Out Form actually received by the Solicitation Agent after the Voting Deadline, unless the Court orders otherwise upon request of the Debtors; (c) any Release Opt-Out Form submitted by or on behalf of a Person that is not entitled to opt out of the Third-Party Release under the Restructuring Support Agreements; (d) any Release Opt-Out Form sent to the Debtors, the Debtors' agents or representatives (other than the Solicitation Agent), or the Debtors' financial or legal advisors; (e) any Release Opt-Out Form transmitted by facsimile, email, or other electronic means other than as permitted by these Tabulation Procedures; (f) any unsigned Release Opt-Out Form (provided that a signature collected electronically through the E-Ballot Portal will be deemed a valid signature); (g) any Release Opt-Out Form submitted without making the opt-out election; and (h) any Release Opt-Out Form not completed in accordance with these Tabulation Procedures and the procedures approved in the Solicitation Procedures Order.

If multiple Release Opt-Out Forms are received from the same Holder with respect to the same Claim or Interest before the Voting Deadline, the last properly completed Release Opt-Out Form timely received will supersede and revoke any earlier received Release Opt-Out Form. A Holder must make the same election with respect to all Claims or Interests held by such Holder in a single Class. An opt-out election made on a properly completed and timely submitted Ballot will be given the same effect as an election made on a Release Opt-Out Form.

A Release Opt-Out Form is not a letter of transmittal and may not be used for any purpose other than to opt out of the Third-Party Release, and does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

**8. Waiver of Defects; Voting Report.**

Subject to a contrary order of the Court, the Debtors may waive any defects or irregularities as to any particular Ballot or Release Opt-Out Form at any time, either before or after the Voting Deadline, other than any requirement imposed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Local Rules. The Debtors or the Solicitation Agent, as applicable, shall determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots, which determination, absent a contrary order of the Court, shall be final and binding. The Solicitation Agent may contact parties who submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies; *provided* that neither the Debtors nor the Solicitation Agent is required to provide notification of defects or irregularities with respect to completion or delivery of Ballots, nor shall any of them incur any liability for failure to provide such notification. The Solicitation Agent will file a voting report (the "***Voting Report***") no later than December 14, 2026, or 2 business days before any adjourned Combined Hearing, which shall, among other things, (a) identify each Ballot that does not conform to these Tabulation Procedures or contains any irregularity, the Debtors' treatment of each such Ballot, and any waivers made under this section, and (b) report the Release Opt-Out elections received on Ballots and Release Opt-Out Forms.

**9. Retention of Ballots.**

The Solicitation Agent shall retain all paper copies of Ballots and all solicitation-related correspondence for 2 years following the Effective Date, whereupon the Solicitation Agent is authorized to destroy or

otherwise dispose of all paper copies of Ballots, printed solicitation materials (including unused copies of the Solicitation Package), and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such 2-year period.

**EXHIBIT 4**

Notice of Non-Voting Status and Release Opt-Out Form

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| MERCER INTERNATIONAL INC., *et al.*,[1] | : | Case No. 26-90829 (CML) |
| Debtors. | : | (Jointly Administered) |

**NOTICE OF NON-VOTING STATUS AND**
**RELEASE OPT-OUT FORM FOR HOLDERS OF CLAIMS IN NON-VOTING CLASSES**

**You are receiving this Notice of Non-Voting Status and Release Opt-Out Form because your rights may be affected under the Plan. You should review this notice and the Plan carefully and may wish to consult an attorney as your rights may be affected. Due to the nature and treatment of your Claim under the Plan, you are not entitled to vote on the Plan.**

**ARTICLE 10 OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE 10.6(b) CONTAINS A THIRD-PARTY RELEASE. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MAY BE AFFECTED THEREUNDER.**

**ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT VALIDLY OPT OUT OF THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE 10 OF THE PLAN USING THE ENCLOSED RELEASE OPT-OUT FORM WILL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED THE DEBTORS, THE REORGANIZED DEBTORS, AND THE RELEASED PARTIES AS PROVIDED IN ARTICLE 10 OF THE PLAN (THE "*THIRD-PARTY RELEASE*"). IF YOU VALIDLY OPT OUT OF THE THIRD-PARTY RELEASE, YOU WILL NOT BE A RELEASING PARTY AND, TO THE EXTENT YOU WOULD OTHERWISE BE A RELEASED PARTY, YOU WILL NOT RECEIVE THE BENEFIT OF THE RELEASES GRANTED BY THE RELEASING PARTIES UNDER ARTICLE 10 OF THE PLAN.**

**Please be advised that your decision to opt out does not affect the amount of distribution you will receive under the Plan.**

**The Release Opt-Out Form must be received no later than December 10, 2026, at 4:00 p.m. (prevailing Central Time), as such deadline may be extended by the Debtors.**

[1] The Debtors in the Chapter 11 Cases, together with the last four digits of each Debtor's taxpayer identification number, are: Mercer International Inc. (6945) and Mercer International (Texas) LLC (N/A). The Debtors' mailing address for purposes of the Chapter 11 Cases is: Suite 1120, 700 West Pender Street, Vancouver, British Columbia V6C 1G8.

## I. General Information Concerning this Notice of Non-Voting Status and Release Opt-Out Form.

On November 9, 2026, Mercer International Inc. and its debtor affiliate, as debtors and debtors in possession (collectively, the "***Debtors***"), commenced chapter 11 cases in the United States Bankruptcy Court for the Southern District of Texas (the "***Court***"). Before commencing the chapter 11 cases, the Debtors commenced the solicitation of votes, pursuant to sections 1125 and 1126(b) of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "***Bankruptcy Code***"), to accept or reject the *Joint Prepackaged Chapter 11 Plan of Reorganization of Mercer International Inc. and Its Debtor Affiliate*, dated November 9, 2026 (as may be amended, modified, or supplemented from time to time, the "***Plan***"),[2] attached as Exhibit A to the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Mercer International Inc. and Its Debtor Affiliate*, dated November 9, 2026 (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***"), from certain eligible Holders of Claims in Class 3 (Senior Notes Claims). On [ ● ], 2026, the Court entered an order [Docket No. [ ● ]] (the "***Solicitation Procedures Order***") approving, among other things, the procedures for soliciting votes on the Plan, and the Debtors have since commenced the solicitation of votes from the remaining Holders in Class 3 and all Holders of Interests in Class 8 (Existing Equity Interests). Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the solicitation website maintained by the Debtors' solicitation agent, Stretto, Inc. (the "***Solicitation Agent***"), at https://cases.stretto.com/Mercer.

You are receiving this notice of non-voting status (this "***Notice***") and Release Opt-Out Form (the "***Release Opt-Out Form***") because, according to the Debtors' books and records, you may be a Holder of a Claim against one or more of the Debtors that, due to the nature and treatment of such Claim under the Plan, ***is <u>not</u> entitled to vote on the Plan***. Specifically, under the terms of the Plan, Claims in Class 1 (Secured Claims), Class 2 (Other Priority Claims), Class 4 (General Unsecured Claims), and Class 7 (510(b) Claims) (collectively, the "***Unimpaired Non-Voting Classes***") are Unimpaired under the Plan and, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to accept the Plan. Therefore, Holders of Claims in Classes 1, 2, 4, and 7 are not entitled to vote to accept or reject the Plan.

You are also receiving, together with this Notice, the notice of the Combined Hearing (the "***Combined Notice***"), which sets forth, among other things, the date, time, and place of the hearing to consider approval of the Disclosure Statement and confirmation of the Plan, the deadline and procedures for objecting to the Disclosure Statement and the Plan, and the release, injunction, and exculpation provisions of the Plan. In accordance with the Solicitation Procedures Order, you will not receive copies of the Plan or the Disclosure Statement, which may be obtained free of charge as described below. Please review the Combined Notice carefully.

<u>Article 10.6(a)</u> of the Plan contains a Debtor Release, and <u>Article 10.6(b)</u> contains a Third-Party Release. <u>Articles 10.5 and 10.7</u> contain injunction and exculpation provisions, respectively. These provisions are also described in <u>Appendix A</u>. You are advised and encouraged to carefully review and consider the Plan and Disclosure Statement, including the release, exculpation, and injunction provisions, as your rights might be affected.

***The Release Opt-Out Form provided in <u>Appendix B</u> provides you with the opportunity to elect to opt out of the releases described in <u>Appendix A</u>.***

2 Capitalized terms used but not defined herein have the meanings given to them in the Plan.

**THE RELEASE OPT-OUT FORM MUST BE RECEIVED NO LATER THAN DECEMBER 10, 2026, AT 4:00 P.M. (PREVAILING CENTRAL TIME).** Except as described in Section II below with respect to timely objections, if you do not opt out of the releases, you will be deemed to have granted the releases set forth in Article 10 of the Plan, and you will be a Releasing Party under the Plan. If you elect to opt out of the releases, you will not be deemed to have granted the releases set forth in Article 10 of the Plan. If you opt out of the Releases, you will not be a Releasing Party or a Released Party under the Plan and will forgo any benefit of the Releases to which you may otherwise be entitled. The Release Opt-Out Form in Appendix B provides you with the opportunity to elect to opt out of the releases.

## II. Making an Alternative Election Under this Release Opt-Out Form.

**Holders of Claims who take no action with respect to the Release Opt-Out Form will automatically be deemed to grant the Third-Party Release contained in Article 10 of the Plan; *provided*, that any Holder of a Claim that timely objects to the Third-Party Release, either through (a) a formal objection Filed on the docket of the Chapter 11 Cases or (b) an informal objection provided to the Debtors by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or via electronic mail, as applicable, or otherwise resolved before the Confirmation Order is entered, shall not be a Releasing Party.**

You should review the Disclosure Statement and the Plan before you make any election on the Release Opt-Out Form. You may wish to seek legal advice concerning the election available under the Release Opt-Out Form.

**Questions may be directed to the Debtors' Solicitation Agent at (833) 333-9454 (toll free) or +1 (650) 525-4708 (international, toll) or by sending an email to MercerInquiries@stretto.com (with "Mercer Solicitation Inquiry" in the subject line) or by submitting an inquiry on the Debtors' case website (https://cases.stretto.com/Mercer). Copies of the Plan, the Disclosure Statement, and related exhibits (including the valuation analysis and financial projections), as well as the Plan Supplement (once Filed), may also be obtained free of charge by contacting the Solicitation Agent. The Plan, Disclosure Statement, and related documents are also available for a fee through the Court's electronic case filing system at www.txs.uscourts.gov using a PACER password (to obtain a PACER password, go to the PACER website at http://pacer.psc.uscourts.gov).**

**YOU SHOULD NOT DIRECT ANY QUESTIONS TO, OR SUBMIT YOUR RELEASE OPT-OUT FORM TO, ANY OF THE DEBTOR ENTITIES, DEBTORS' AGENTS (OTHER THAN THE SOLICITATION AGENT), OR DEBTORS' FINANCIAL OR LEGAL ADVISORS. ANY RELEASE OPT-OUT FORM SENT TO ANY OF THEM WILL NOT BE COUNTED.**

**THE SOLICITATION AGENT IS NOT AUTHORIZED TO (AND WILL NOT) PROVIDE LEGAL ADVICE.**

[*Remainder of page left intentionally blank*]

Dated: [ ● ], 2026
Houston, Texas

*/s/ Timothy A. ("Tad") Davidson II*

**HUNTON ANDREWS KURTH LLP**
Timothy A. ("Tad") Davidson II (TX Bar No. 24012503)
Ashley L. Harper (TX Bar No. 24065272)
Brandon Bell (TX Bar No. 24127019)
Kaleb Bailey (TX Bar No. 24136717)
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone: (713) 220-4200
Email: taddavidson@hunton.com
ashleyharper@hunton.com
bbell@hunton.com
kbailey@hunton.com

- and -

**LATHAM & WATKINS LLP**
Ray C. Schrock (NY Bar No. 4860631)
Keith Simon (NY Bar No. 4636007)
Joe Zujkowski (NY Bar No. 4625638)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: ray.schrock@lw.com
keith.simon@lw.com
joe.zujkowski@lw.com

- and -

Nicholas J. Messana (CA Bar No. 332355)
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5500
Email: nicholas.messana@lw.com

*Proposed Counsel for the Debtors*
*and Debtors in Possession*

# APPENDIX A

Release, Injunction, and Exculpation Provisions in the Plan[1]

[1] Capitalized terms used but not defined in this Appendix A have the meanings given to them in the Plan.

**A. Certain Relevant Definitions.**

"***Exculpated Parties***" means, each in its capacity as such, (a) each of the Debtors and the Estates; and (b) each independent director of the Debtors.

"***Related Parties***" means with respect to a Person, such Person's current and former affiliates, and such Person's and its current and former affiliates' current and former directors, managers, committee members, members of any governing body, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed or advised entities, accounts, or funds, current or former, and future associated entities, predecessors, participants, successors, and assigns (whether by operation of law or otherwise), subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, partners, employees, agents, fiduciaries, trustees, advisory board members, financial advisors or managers, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, investment managers, investment advisors, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such.

"***Released Parties***" means, collectively, solely in their capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Senior Notes Trustee; (e) each Backstop Party; (f) each member of the Majority Ad Hoc Group; and (g) with respect to each of the foregoing Persons in clauses (a) through (f), each of their Related Parties; *provided* that, a Person shall not be a Released Party if such Person (i) elects to opt out of the Releases set forth in this Plan or (ii) timely Files an objection to the Releases set forth in this Plan and such objection is not withdrawn or otherwise resolved before the Confirmation Order is entered.

"***Releases***" means, collectively, the releases set forth in Article 10.6 of the Plan.

"***Releasing Parties***" means, collectively, and in each case solely in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Senior Notes Trustee; (e) each Backstop Party; (f) each Holder of a Claim or Interest in a Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective ballot; (g) each Holder of a Claim or Interest in a Non-Voting Class that is deemed to accept this Plan that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective Release Opt-Out Form; and (h) each Related Party of each Entity in clauses (a) through (g), solely to the extent such Related Party (I) would be obligated to grant a release under principles of agency if it were so directed by the Entity in the foregoing clauses (a) through (f) to whom they are related or (II) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (g); *provided*, that any Holder of a Claim or Interest that timely objects to the Third Party Release, either through (x) a formal objection Filed on the docket of the Chapter 11 Cases or (y) an informal objection provided to the Debtors by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or via electronic mail, as applicable, or otherwise resolved before the Confirmation Order is entered, shall not be a "Releasing Party".

**B. Section 10.5 of the Plan – Permanent Injunction.**

**Except as otherwise expressly provided in this Plan or the Confirmation Order, from and after the Effective Date, all Persons and Entities are, to the fullest extent provided under section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined from (a) commencing or continuing, in any manner or in any place, any suit, action, or other proceeding of any kind; (b) enforcing, attaching, collecting, or recovering in any manner or means any judgment, award,**

**decree, or order; (c) creating, perfecting, or enforcing any Lien or encumbrance; (d) asserting a right of setoff or subrogation of any kind; or (e) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or with respect to any Claim, demand, liability, obligation, debt, right, Cause of Action, Interest, or remedy released or to be released, exculpated or to be exculpated, settled or to be settled, or discharged or to be discharged pursuant to this Plan or the Confirmation Order against any Person or Entity so released, discharged, or exculpated (or the property or estate of any Person or Entity so released, discharged, or exculpated). All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.**

**No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, Reorganized Debtors, Exculpated Parties, or Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of any Claim or Cause of Action, as applicable, subject to Article X, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Exculpated Party. At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Reorganized Debtor, Exculpated Party, Released Party or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action File a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Federal Rules of Civil Procedure, including Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.**

**C. Section 10.6 of the Plan – Releases.**

**(a) Releases by the Debtors.**

**To the fullest extent permitted by applicable law, and except as otherwise expressly set forth in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Debtors, the Reorganized Debtors, and the Estates, in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally, released and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including**

**(a) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (b) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (c) the subject matter of, or the transactions, events, circumstances, acts, or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (d) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including the Consenting Stakeholders), (e) the Senior Notes Documents, (f) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (g) intercompany transactions, (h) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements and related prepetition transactions, the Definitive Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (i) any contract, instrument, release, or other agreement or document created or entered into in connection with this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements, the Definitive Documents, the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of this Plan, or the administration and implementation of this Plan or the Confirmation Order, including the issuance or distribution of Securities pursuant to this Plan, (j) the distribution, including any disbursements made by a Distribution Agent, of property under this Plan, or any other related agreement, or (k) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; *provided*, that the Debtors do not release Claims or Causes of Action (x) that are of a commercial nature and arise in the ordinary course of business, such as accounts receivable and accounts payable on account of goods being sold and services being performed; (y) arising under an Executory Contract or Unexpired Lease that is assumed by the Debtors; or (z) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct. Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under this Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or the Restructuring Transactions, or any agreement, Claim, or obligation arising or assumed under this Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing this Plan; (b) a good-faith settlement and compromise of the Claims released by the Debtors; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.**

**(b) <u>Releases by Holders of Claims and Interests</u>.**

**To the fullest extent permitted by applicable law, and except as otherwise expressly set forth in this Plan or the Confirmation Order, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party, in each case on**

**behalf of itself and its respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally, released and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (a) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (b) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (c) the subject matter of, or the transactions, events, circumstances, acts, or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (d) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including the Consenting Stakeholders), (e) the Senior Notes Documents, (f) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (g) intercompany transactions, (h) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements and related prepetition transactions, the Definitive Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (i) any contract, instrument, release, or other agreement or document created or entered into in connection with this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements, the Definitive Documents, or the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, or the administration and implementation of this Plan or the Confirmation Order, including the issuance or distribution of Securities pursuant to this Plan, (j) the distribution, including any disbursements made by a Distribution Agent, of property under this Plan, or any other related agreement, or (k) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; *provided*, that the Releasing Parties do not release Claims or Causes of Action arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct. Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under this Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or the Restructuring Transactions, or any agreement, Claim, or obligation arising or assumed under this Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of this Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing this Plan; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their**

**Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.**

**D. Section 10.7 of the Plan – Exculpation.**

**Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any Claims or Causes of Action for any act taken or omitted to be taken between the Petition Date and the Effective Date in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the Confirmation or consummation (as applicable) of this Plan, the Restructuring Support Agreements and related prepetition transactions, and the Disclosure Statement including any disbursements made by a Distribution Agent in connection with this Plan, the Disclosure Statement, the Definitive Documents, the Corporate Governance Documents, the Senior Notes Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with this Plan, or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement, or Confirmation or consummation of this Plan; *provided*, that the foregoing provisions of this exculpation shall not operate to waive or release: (a) any Claims or Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; or (b) the rights of any Person or Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan, or assumed pursuant to this Plan or Final Order of the Bankruptcy Court; *provided further*, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions, or inactions.**

**The Exculpated Parties have, and upon consummation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.**

**The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or Entity. For the avoidance of doubt and notwithstanding anything else herein, the foregoing exculpation shall be limited to Persons that served as Estate fiduciaries during the Chapter 11 Cases.**

**APPENDIX B**

Release Opt-Out Form

**OPTIONAL: RELEASE OPT-OUT FORM**

**You are receiving this Release Opt-Out Form because you are a Holder of a Claim that is not entitled to vote on the** *Joint Prepackaged Chapter 11 Plan of Reorganization of Mercer International Inc. and Its Debtor Affiliate*, dated November 9, 2026 (as may be amended, modified, or supplemented from time to time, the "***Plan***").

Article 10 of the Plan contains release, exculpation, and injunction provisions as set forth on Appendix A.

**This election allows you to:**

**OPT OUT OF THE RELEASES IN THE PLAN, WHICH WILL DISQUALIFY YOU FROM BEING SUBJECT TO AND BENEFITING FROM THE RELEASES IN ARTICLE 10 OF THE PLAN. IF YOU DO NOT OPT OUT OF THE RELEASES BY CHECKING THE BOX BELOW, YOU WILL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED THE DEBTORS, THE REORGANIZED DEBTORS, AND THE RELEASED PARTIES AS PROVIDED IN THE PLAN.**

**Complete and return this Release Opt-Out Form if you wish to elect to opt out of the releases contained in Article 10 of the Plan and described in Appendix A.**

## I. SUMMARY OF ELECTION

Article 10.6(b) of the Plan contains a third-party release that binds releasing parties, which is described in Appendix A.

**IMPORTANT INFORMATION REGARDING THE RELEASE**

**UNLESS YOU COMPLETE AND RETURN THIS RELEASE OPT-OUT FORM BY DECEMBER 10, 2026, AT 4:00 P.M. (PREVAILING CENTRAL TIME), YOU WILL BE DEEMED TO HAVE GRANTED THE RELEASES CONTAINED IN ARTICLE 10 OF THE PLAN.**

## II. INSTRUCTIONS FOR MAKING A RELEASE OPT-OUT ELECTION

If you wish to make the election and opt out of granting the releases contained in Article 10 of the Plan and described in Appendix A, check the box under "Optional: Opt-Out Election" below. If your election contained in this Release Opt-Out Form is not received by the Solicitation Agent by **December 10, 2026, at 4:00 p.m. (prevailing Central Time)**, your election will not count, your Release Opt-Out Form will not be effective, and you will be deemed to have consented to the releases provided for in Article 10 of the Plan. If your election is received and the Opt-Out box below is not checked, you will be deemed to have consented to the releases provided for in Article 10 of the Plan. Any Opt-Out election that is illegible or does not provide sufficient information to identify the Claim Holder will not be valid.

All questions as to the validity, form, eligibility (including time of receipt), and acceptance and revocation of an Opt-Out election will be resolved by the Debtors or the Solicitation Agent, as applicable, which resolution, absent a contrary ruling by the Court, will be final and binding.

If you have any questions on how to properly complete this Release Opt-Out Form, you may contact the Solicitation Agent at (833) 333-9454 (toll free) or +1 (650) 525-4708 (international, toll) or by sending an email to MercerInquiries@stretto.com (with "Mercer Solicitation Inquiry" in the subject line).

**IF YOU WISH TO MAKE THE OPT-OUT ELECTION, PLEASE COMPLETE, SIGN, AND DATE THIS RELEASE OPT-OUT FORM AND RETURN IT PROMPTLY BY ONLY ONE OF THE METHODS BELOW.**

**By First Class Mail or Overnight Mail:**

**Mercer Ballot Processing**
**c/o Stretto, Inc.**
**410 Exchange, Suite 100**
**Irvine, CA 92602**

**By Hand Delivery:** To arrange hand delivery of your Release Opt-Out Form, please email **MercerInquiries@stretto.com** (with "Mercer Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the Solicitation Agent address above and provide the anticipated date and time of delivery**.**

***OR***

**By Electronic, Online Submission:**

**Please visit https://cases.stretto.com/Mercer. Click on the "E-Ballot Portal" link in the header section of the Debtors' website and enter your password to submit your Release Opt-Out Form. If you choose to submit your Release Opt-Out Form via the E-Ballot Portal, you should NOT also return a hard copy of your Release Opt-Out Form. The "E-Ballot Portal" is the sole manner in which this Release Opt-Out Form will be accepted via electronic or online transmission. Release Opt-Out Forms submitted by facsimile or email will not be counted.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Release Opt-Out Form:**

**Unique E-Ballot ID#: ____________________**

**THE SOLICITATION AGENT MUST ACTUALLY RECEIVE YOUR RELEASE OPT-OUT FORM ON OR BEFORE DECEMBER 10, 2026, AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

[*Remainder of page intentionally blank*]

## OPTIONAL: OPT-OUT ELECTION

The undersigned, a Holder of a Secured Claim, Other Priority Claim, General Unsecured Claim, or 510(b) Claim:

☐ ELECTS TO **OPT OUT** OF THE THIRD-PARTY RELEASE IN ARTICLE 10.6(b) OF THE PLAN AND, AS A RESULT, NOT BE SUBJECT TO OR BENEFIT FROM THE RELEASES UNDER ARTICLE 10 OF THE PLAN.

Your recovery under the Plan remains the same regardless of whether you elect to opt out of the Third-Party Release. **YOU MUST AFFIRMATIVELY CHECK THE BOX ABOVE IN ORDER TO OPT OUT OF THE THIRD-PARTY RELEASE.**

**If you have made the election above, you must complete and sign the below certification.**

### Certification and Signature for Opt-Out Election

**Certification.** By signing this Release Opt-Out Form, the electing Claim Holder certifies to the Court and the Debtors: (a) that the Holder acknowledges that the election provided for in this Release Opt-Out Form is being made pursuant to the terms and conditions set forth in the Plan; (b) that the Holder has the full power and authority to make the election provided for in this Release Opt-Out Form with respect to its Class 1, Class 2, Class 4, or Class 7 Claim; (c) that the Holder has submitted the same election concerning the releases with respect to all Claims in a single Class; and (d) that no other Release Opt-Out Form with respect to the same Claims has been submitted or, if any other Release Opt-Out Forms have been submitted with respect to such Claims, then any such Release Opt-Out Forms are hereby revoked.

Name of Holder (Please Print or Type): ______________________________

Authorized Signature: ______________________________

Name of Signatory (if other than Holder): ______________________________

Title (if other than Holder)[1]: ______________________________

Street Address, City, State, Zip Code: ______________________________

Telephone Number: ______________________________

Email: ______________________________

Date Completed: ______________________________

[1] If you are completing this Release Opt-Out Form on behalf of another person or entity, indicate your relationship with such person or entity and the capacity in which you are signing.

**EXHIBIT 5-A**

Form of Class 3 Beneficial Holder Ballot

**PRIOR TO THE ENTRY OF AN ORDER OF THE BANKRUPTCY COURT APPROVING THE SOLICITATION PROCEDURES (THE "*SOLICITATION PROCEDURES ORDER*"), ONLY HOLDERS OF CLASS 3 SENIOR NOTES CLAIMS WHO ARE ELIGIBLE HOLDERS (AS DEFINED BELOW) ARE ENTITLED TO VOTE PURSUANT TO THIS BENEFICIAL HOLDER BALLOT. IF YOU ARE NOT AN ELIGIBLE HOLDER (A "*NON-ELIGIBLE HOLDER*"), YOU SHOULD NOT COMPLETE OR RETURN THIS BENEFICIAL HOLDER BALLOT UNTIL AFTER THE BANKRUPTCY COURT HAS ENTERED THE SOLICITATION PROCEDURES ORDER, AND ANY VOTE OF A NON-ELIGIBLE HOLDER TRANSMITTED PRIOR TO SUCH ENTRY WILL NOT BE COUNTED. THE DEBTORS WILL PROMPTLY NOTIFY HOLDERS OF CLASS 3 SENIOR NOTES CLAIMS OF THE ENTRY OF THE SOLICITATION PROCEDURES ORDER. IF YOU SUBMIT THIS BENEFICIAL HOLDER BALLOT PRIOR TO THE ENTRY OF THE SOLICITATION PROCEDURES ORDER, YOU CERTIFY TO THE DEBTORS THAT YOU ARE AN ELIGIBLE HOLDER.**

**AN "*ELIGIBLE HOLDER*" IS A HOLDER OF A CLASS 3 SENIOR NOTES CLAIM THAT CERTIFIES TO THE REASONABLE SATISFACTION OF THE DEBTORS THAT IT IS (A) A "QUALIFIED INSTITUTIONAL BUYER" (AS DEFINED IN RULE 144A OF THE SECURITIES ACT OF 1933, AS AMENDED (THE "*SECURITIES ACT*")), (B) AN "ACCREDITED INVESTOR" (AS DEFINED IN RULE 501(A) OF REGULATION D OF THE SECURITIES ACT), OR (C) FOR HOLDERS LOCATED OUTSIDE THE UNITED STATES, A PERSON OTHER THAN A "U.S. PERSON" (AS DEFINED IN RULE 902(K) OF REGULATION S OF THE SECURITIES ACT) AND NOT PARTICIPATING ON BEHALF OF OR ON ACCOUNT OF A U.S. PERSON.**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| MERCER INTERNATIONAL INC., *et al.*,[1] | : | IMPORTANT: No chapter 11 case has been commenced as of the date of the distribution of this ballot. This ballot is a prepetition solicitation of your vote on a prepackaged plan of reorganization. |
| Debtors. | : | If the chapter 11 cases are commenced, the Debtors will request joint administration of such cases. |

[1] The Debtors in the Chapter 11 Cases, together with the last four digits of each Debtor's taxpayer identification number, are: Mercer International Inc. (6945) and Mercer International (Texas) LLC (N/A). The Debtors' mailing address for purposes of the Chapter 11 Cases is: Suite 1120, 700 West Pender Street, Vancouver, British Columbia V6C 1G8.

**BALLOT FOR BENEFICIAL HOLDERS**
**OF CLAIMS IN CLASS 3 (SENIOR NOTES CLAIMS)**
**FOR VOTING TO ACCEPT OR REJECT THE JOINT**
**PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF**
**MERCER INTERNATIONAL INC. AND ITS DEBTOR AFFILIATE**

**The voting deadline to accept or reject the Plan is 4:00 p.m. (prevailing Central Time), on December 10, 2026 (the "*Voting Deadline*"), unless extended by the Debtors.**

**Please be advised that Article 10 of the Plan contains release, exculpation, and injunction provisions. These provisions are included in Appendix A to this Beneficial Holder Ballot. You are advised to review and consider the Plan carefully because your rights might be affected thereunder even if you abstain from voting. If you do not validly opt out of the Third-Party Release by checking the box in Item 3 and returning this Beneficial Holder Ballot (or otherwise conveying such election in accordance with your Nominee's instructions) so that such election is reflected on a Master Ballot or a pre-validated Beneficial Holder Ballot actually received by the Solicitation Agent by the Voting Deadline, you will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Debtors, the Reorganized Debtors, and the Released Parties as provided in Article 10.6(b) of the Plan (the "*Third-Party Release*"). This is the case whether you vote to accept or reject the Plan, abstain from voting, or do not return a ballot at all. If you opt out of the Third-Party Release, you will not be a Releasing Party and, to the extent you would otherwise be a Released Party, you will not receive the benefit of the releases granted by the Releasing Parties under Article 10 of the Plan. In addition, any Holder that timely objects to the Third-Party Release, either through a formal objection Filed on the docket of the Chapter 11 Cases or an informal objection provided to the Debtors by electronic mail, which objection is not withdrawn or otherwise resolved before entry of the Confirmation Order, will not be a Releasing Party.**

**Please be advised that your decision to opt out does not affect the amount of distribution you will receive under the Plan.**

The Debtors have sent this ballot (the "***Beneficial Holder Ballot***") to you to solicit your vote to accept or reject the *Joint Prepackaged Chapter 11 Plan of Reorganization of Mercer International Inc. and Its Debtor Affiliate*, dated November 9, 2026 (as may be amended, modified, or supplemented from time to time, the "***Plan***").[2] The Plan is attached as Exhibit A to the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Mercer International Inc. and Its Debtor Affiliate,* dated November 9, 2026 (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***"), which accompanies this Beneficial Holder Ballot and will be posted on the Solicitation Agent's website on the Petition Date. The Disclosure Statement provides information to assist you in deciding how to vote on the Plan. The Solicitation Agent's website will contain important information, hearing dates, other key deadlines, as well as the docket for the Chapter 11 Cases (as defined below).

The Disclosure Statement has not been approved by any court, and no chapter 11 cases have been commenced as of the date of distribution of this Beneficial Holder Ballot. As a Beneficial Holder, you should cast your vote to accept or reject the Plan in accordance with instructions received from the bank,

[2] Capitalized but undefined terms herein shall have the meanings ascribed to them in the Plan.

broker, or other financial institution that holds your Senior Notes "in street name" on your behalf (your "***Nominee***") through the use of this Beneficial Holder Ballot or otherwise as directed by your Nominee. You should review the Disclosure Statement and Plan before you vote, and you may wish to seek legal advice concerning your classification and treatment under the Plan.

If you have not received or wish to obtain additional copies of the Disclosure Statement, please contact the Debtors' Solicitation Agent, Stretto, Inc. (the "***Solicitation Agent***"), (a) by writing to Mercer International Inc., c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, (b) by email at MercerInquiries@stretto.com (with "Mercer International Inc. Solicitation" in the subject line), or (c) by telephone at (833) 333-9454 (toll free) or +1 (650) 525-4708 (international, toll). Please be advised that the Solicitation Agent cannot provide legal advice. If you have any questions regarding how to properly complete this Beneficial Holder Ballot, the voting procedures, or the voting instructions you received from your Nominee, please contact your Nominee.

You are receiving this Beneficial Holder Ballot because you are a Beneficial Holder,[3] as of November 2, 2026 (the "***Voting Record Date***"), of any Senior Notes Claims. "***Senior Notes Claims***" include any Claim on account of the Senior Notes or otherwise arising under or in connection with the Senior Notes Indentures, including accrued but unpaid interest, fees, and premiums through the Petition Date. "***Senior Notes Indentures***" means, collectively, the 2028 Senior Notes Indenture and the 2029 Senior Notes Indenture, each as defined in the Plan, under which Mercer International Inc. ("***Mercer***") is the issuer.

As described in the Disclosure Statement, the Debtors intend to commence cases (the "***Chapter 11 Cases***") under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") following this solicitation. If the Debtors commence the Chapter 11 Cases, the Plan may be confirmed by the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "***Bankruptcy Court***") and thereby made binding on you if: (a) it is accepted by at least two-thirds of the aggregate principal amount and more than one-half in number of the Holders of the Senior Notes Claims voting in Class 3; and (b) the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, Class 3 and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court and the Effective Date occurs, the Plan will be binding on all Holders of Senior Notes Claims whether or not a Holder of Senior Notes Claims returns a ballot, votes to reject the Plan, or does not vote.

On the Petition Date, all pleadings and notices relating to the Chapter 11 Cases that are filed with the Bankruptcy Court (including notices of the date and time of hearings) will be made available for review and download, free of charge, on the case information website of the Solicitation Agent at https://cases.stretto.com/Mercer.

This Beneficial Holder Ballot is for Senior Notes Claims in Class 3. If you hold Claims or Interests in more than one class, you will receive a separate ballot for each class in which you are entitled to vote. Unless otherwise instructed by your Nominee, in order for your vote to count, your Nominee must receive your vote, whether by this Beneficial Holder Ballot or otherwise according to your Nominee's voting instructions, in sufficient time for your Nominee to include your vote on a master ballot (a "***Master Ballot***") that must be actually received by the Solicitation Agent on or before the Voting Deadline. Please allow

[3] A "***Beneficial Holder***" means a beneficial holder of Class 3 Senior Notes Claims as of the Voting Record Date, as reflected in the records maintained by the applicable Nominee holding the Class 3 Senior Notes Claims through The Depository Trust Company.

sufficient time for your vote to be included on the Master Ballot completed by your Nominee. If a Master Ballot recording your vote is not received by the Solicitation Agent by the Voting Deadline, and if the Voting Deadline is not extended, your vote will not count.

Your Nominee may choose to "pre-validate" your Beneficial Holder Ballot by signing the Beneficial Holder Ballot and adding (a) the Nominee's DTC participant number and a medallion guarantee stamp confirming the principal amount of your Class 3 Senior Notes Claims as of the Voting Record Date, (b) the Beneficial Holder's account number, and (c) the principal amount of Class 3 Senior Notes Claims held by the Beneficial Holder as of the Voting Record Date, and forwarding the pre-validated Beneficial Holder Ballot to you with instructions to submit your pre-validated Beneficial Holder Ballot directly to the Solicitation Agent on or before the Voting Deadline. For purposes of tabulating votes, each Nominee or Beneficial Holder will be deemed to have voted the principal amount of its Class 3 Senior Notes Claims as reflected in the securities position report(s) from DTC as of the Voting Record Date, regardless of any amount set forth on this Beneficial Holder Ballot.

Your receipt of this Beneficial Holder Ballot does not signify that you are the Beneficial Holder or, except as provided in Article 4.3 of the Plan with respect to the aggregate allowance of the Senior Notes Claims, that a Beneficial Holder's Class 3 Senior Notes Claim has been or will be Allowed. This Beneficial Holder Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of or distribution on account of Class 3 Senior Notes Claims. Subject to Article 4.3 of the Plan, the Debtors reserve all rights to dispute such Claim(s).

This Beneficial Holder Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than (a) to cast a vote to accept or reject the Plan and/or (b) to make an election with respect to the Third-Party Release. Accordingly, at this time, Holders of Senior Notes Claims should not surrender certificates or instruments representing or evidencing their Senior Notes Claims, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates or instruments surrendered together with a Beneficial Holder Ballot. If you believe you have received this Beneficial Holder Ballot in error, or if you believe that you have received the wrong ballot, please contact your Nominee or the Solicitation Agent immediately.

If you have any questions regarding this Beneficial Holder Ballot or how to properly complete this Beneficial Holder Ballot, please contact your Nominee for further assistance.

[*Remainder of page left intentionally blank*]

**IMPORTANT NOTICE REGARDING TREATMENT FOR HOLDERS OF CLASS 3 SENIOR NOTES CLAIMS**

As described in more detail in the Disclosure Statement and Plan, if the Chapter 11 Cases are commenced, the Plan is confirmed, and the Effective Date occurs, then each Holder of an Allowed Senior Notes Claim shall receive, in full and final satisfaction, settlement, release and discharge of, and in exchange for such Allowed Senior Notes Claim, its Pro Rata Share of: (a) the Subscription Rights; (b) 91.5% of the New Common Stock, subject to dilution by the Management Incentive Plan, the New Common Stock issued as Stapled Equity, and the New Convertible Preferred Stock (if converted); (c) 56.5% of the New Convertible Preferred Stock; and (d) the Takeback Senior Secured Notes.

Distributions of Plan Securities to Holders of Allowed Senior Notes Claims shall be made through the facilities of DTC in accordance with DTC's customary practices, except as otherwise agreed by the Debtors (or the Reorganized Debtors) and the Required Consenting Senior Noteholders. Only Rights Offering Participants (as defined in the Plan), which are Holders of Allowed Senior Notes Claims as of the Rights Offering Record Date, may exercise Subscription Rights and participate in the Rights Offering. Rights Offering Participants will receive additional information regarding the exercise of their Subscription Rights after the commencement of the Chapter 11 Cases upon the Bankruptcy Court's approval of the Rights Offering Procedures. Subscription Rights may be exercised only in accordance with the Rights Offering Procedures, and this Beneficial Holder Ballot may not be used to exercise Subscription Rights. Each Rights Offering Participant that elects to exercise its Subscription Rights in accordance with the Rights Offering Procedures will also receive its pro rata share of the Stapled Equity.

[*Remainder of page left intentionally blank*]

**IMPORTANT NOTICE REGARDING TREATMENT FOR HOLDERS OF CLASS 3 SENIOR NOTES CLAIMS**

**IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, IT WILL BE BINDING ON ALL HOLDERS OF CLASS 3 SENIOR NOTES CLAIMS WHETHER OR NOT THEY VOTE. PLEASE BE ADVISED THAT IF THE PLAN IS CONFIRMED AND CONSUMMATED, HOLDERS OF CLASS 3 SENIOR NOTES CLAIMS WILL BE BOUND BY THE INJUNCTION AND EXCULPATION PROVISIONS CONTAINED IN ARTICLE 10 OF THE PLAN AND SET FORTH IN APPENDIX A. EACH HOLDER OF A CLASS 3 SENIOR NOTES CLAIM THAT DOES NOT VALIDLY OPT OUT OF THE THIRD-PARTY RELEASE BY CHECKING THE BOX IN ITEM 3 AND RETURNING THIS BENEFICIAL HOLDER BALLOT (OR OTHERWISE CONVEYING SUCH ELECTION IN ACCORDANCE WITH ITS NOMINEE'S INSTRUCTIONS) SO THAT IT IS REFLECTED ON A MASTER BALLOT OR PRE-VALIDATED BENEFICIAL HOLDER BALLOT ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE WILL BE DEEMED TO HAVE GRANTED THE THIRD-PARTY RELEASE, WHETHER SUCH BENEFICIAL HOLDER VOTES TO ACCEPT OR REJECT THE PLAN, ABSTAINS FROM VOTING, OR DOES NOT RETURN A BALLOT AT ALL. BENEFICIAL HOLDERS THAT VALIDLY OPT OUT OF THE THIRD-PARTY RELEASE WILL NOT BE RELEASING PARTIES AND, TO THE EXTENT THEY WOULD OTHERWISE BE RELEASED PARTIES, WILL NOT RECEIVE THE BENEFIT OF THE RELEASES GRANTED BY THE RELEASING PARTIES UNDER ARTICLE 10 OF THE PLAN. IN ADDITION, ANY HOLDER THAT TIMELY OBJECTS TO THE THIRD-PARTY RELEASE, EITHER THROUGH A FORMAL OBJECTION FILED ON THE DOCKET OF THE CHAPTER 11 CASES OR AN INFORMAL OBJECTION PROVIDED TO THE DEBTORS BY ELECTRONIC MAIL, WHICH OBJECTION IS NOT WITHDRAWN OR OTHERWISE RESOLVED BEFORE ENTRY OF THE CONFIRMATION ORDER, WILL NOT BE A RELEASING PARTY.**

**IMPORTANT**

**YOU SHOULD CAREFULLY REVIEW THE DISCLOSURE STATEMENT AND PLAN BEFORE YOU VOTE. YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR CLAIMS UNDER THE PLAN.**

**THE SOLICITATION AGENT IS NOT AUTHORIZED TO (AND WILL NOT) PROVIDE LEGAL ADVICE.**

**VOTING RECORD DATE: NOVEMBER 2, 2026**

**VOTING DEADLINE: 4:00 P.M. PREVAILING CENTRAL TIME ON DECEMBER 10, 2026 (UNLESS EXTENDED BY THE DEBTORS)**

**IN ORDER FOR YOUR VOTE TO COUNT, YOU MUST SUBMIT THIS BENEFICIAL HOLDER BALLOT (OR OTHERWISE CONVEY YOUR VOTE AND THE REQUIRED INFORMATION REQUESTED ON THIS BENEFICIAL HOLDER BALLOT) TO YOUR NOMINEE WITH SUFFICIENT TIME FOR YOUR NOMINEE TO RECEIVE YOUR VOTE, COMPLETE THE MASTER BALLOT AND RETURN THE MASTER BALLOT TO THE SOLICITATION AGENT, SUCH THAT THE MASTER BALLOT IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE, UNLESS SUCH TIME IS**

**EXTENDED BY THE DEBTORS. IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE THE MASTER BALLOT INDICATING YOUR VOTE CAST ON YOUR BENEFICIAL HOLDER BALLOT (OR OTHERWISE IN ACCORDANCE WITH YOUR NOMINEE'S INSTRUCTIONS) BY THE VOTING DEADLINE, YOUR VOTE WILL NOT BE COUNTED, EXCEPT AS MAY BE ALLOWED BY THE BANKRUPTCY COURT AT THE REQUEST OF THE DEBTORS, AND ANY ELECTION TO OPT OUT OF THE THIRD-PARTY RELEASE WILL NOT BE VALID.**

**IF YOUR NOMINEE CHOSE TO SEND YOU A PRE-VALIDATED BENEFICIAL HOLDER BALLOT, YOUR NOMINEE WILL HAVE ALREADY COMPLETED ITEM 6 BELOW (INCLUDING SPECIFYING THE NOMINEE'S DTC PARTICIPANT NUMBER) AND EXECUTED THIS BENEFICIAL HOLDER BALLOT ON YOUR BEHALF. IF YOU RECEIVED A PRE-VALIDATED BALLOT, PLEASE COMPLETE THE REMAINING ITEMS ON THE BENEFICIAL HOLDER BALLOT AND RETURN THE BENEFICIAL HOLDER BALLOT DIRECTLY TO THE SOLICITATION AGENT BY NO LATER THAN THE VOTING DEADLINE USING THE RETURN ENVELOPE PROVIDED IN THE SOLICITATION PACKAGE. IF NO RETURN ENVELOPE WAS PROVIDED, YOU SHOULD CONTACT THE SOLICITATION AGENT FOR INSTRUCTIONS. YOU SHOULD NOT SEND YOUR BALLOT TO ANY OF THE DEBTOR ENTITIES, DEBTORS' AGENTS (OTHER THAN THE SOLICITATION AGENT), OR DEBTORS' FINANCIAL OR LEGAL ADVISORS. IF SO SENT, THE BALLOT WILL NOT BE COUNTED IN CONNECTION WITH THE PLAN. IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, IT WILL BE BINDING ON YOU WHETHER OR NOT YOU VOTE.**

**PRE-VALIDATED BENEFICIAL HOLDER BALLOTS MAY BE RETURNED (A) BY FIRST CLASS MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO: MERCER INTERNATIONAL INC. BALLOT PROCESSING, C/O STRETTO, 410 EXCHANGE, SUITE 100, IRVINE, CA 92602; OR (B) BY EMAIL OF A PDF COPY TO MERCERINQUIRIES@STRETTO.COM (WITH "MERCER INTERNATIONAL INC. SOLICITATION" IN THE SUBJECT LINE). IF YOU SUBMIT YOUR PRE-VALIDATED BENEFICIAL HOLDER BALLOT BY EMAIL, YOU SHOULD NOT ALSO RETURN A HARD COPY. PRE-VALIDATED BENEFICIAL HOLDER BALLOTS WILL NOT BE ACCEPTED BY TELECOPY, FACSIMILE, OR OTHER ELECTRONIC MEANS OF TRANSMISSION, INCLUDING VIA ANY ONLINE PORTAL FOR ELECTRONIC SUBMISSION OF BALLOTS MAINTAINED BY THE SOLICITATION AGENT. IF YOU DO NOT KNOW WHETHER YOUR NOMINEE PROVIDED YOU WITH A PRE-VALIDATED BENEFICIAL HOLDER BALLOT, YOU SHOULD CONTACT YOUR NOMINEE.**

[*Remainder of page left intentionally blank*]

**BENEFICIAL HOLDER BALLOT INSTRUCTIONS**

1. This Beneficial Holder Ballot is subject to the tabulation procedures attached hereto as Appendix B (the "***Tabulation Procedures***"), which the Debtors will seek to have approved by the Bankruptcy Court following commencement of the Chapter 11 Cases. In the event of any inconsistency between this Beneficial Holder Ballot and the Tabulation Procedures, the Tabulation Procedures shall control; *provided* that, to the extent required by Bankruptcy Rule 3018(b), any Beneficial Holder Ballot submitted prior to the Petition Date shall be tabulated in a manner consistent with these instructions.

2. Complete Items 1 and 2.

3. If you wish to opt out of the Third-Party Release, regardless of whether you vote to accept or reject the Plan or abstain from voting, complete Item 3 by checking the box. Unless you check the box in Item 3 and return this Beneficial Holder Ballot (or otherwise convey your election in accordance with your Nominee's instructions), you will be deemed to have granted the Third-Party Release, whether you vote to accept or reject the Plan, abstain, or do not return a ballot at all.

4. Complete Item 4, if applicable.

5. Review the certification contained in Item 5.

6. Sign and date the Beneficial Holder Ballot and fill out the other required information (or otherwise follow the instructions of your Nominee).

7. Your Nominee is authorized to forward solicitation materials and information to, and collect Plan votes from, its Beneficial Holder clients according to its customary practices, including a voting instruction form, email, telephone, online platform, or voting information form in lieu of, or in addition to, a Beneficial Holder Ballot.

8. Unless otherwise instructed by your Nominee, return your completed Beneficial Holder Ballot to your Nominee in sufficient time for your Nominee to complete the Master Ballot and return the Master Ballot to the Solicitation Agent so that it is actually received no later than the Voting Deadline of 4:00 p.m. (prevailing Central Time) on December 10, 2026. If your Nominee provided you with a pre-validated Beneficial Holder Ballot, return it directly to the Solicitation Agent so that it is actually received by the Voting Deadline.

9. The amount of your Class 3 Senior Notes Claim for voting purposes will be the outstanding principal amount of your Senior Notes, without regard to any accrued but unpaid interest, fees, or premiums, as reflected in the securities position report(s) from DTC as of the Voting Record Date, regardless of any amount set forth on this Beneficial Holder Ballot. In the event of any inconsistency, the securities position report(s) from DTC shall control.

10. Only Beneficial Holders as of the Voting Record Date may vote, and any transferee of a Class 3 Senior Notes Claim after the Voting Record Date is not entitled to vote on account of such Claim.

11. If you hold Class 3 Senior Notes Claims through more than one Nominee, account, CUSIP, or ISIN, you must (a) submit a separate Beneficial Holder Ballot for each such Nominee, account, CUSIP, or ISIN, (b) vote all such Claims in the same manner, and (c) identify all other Beneficial Holder Ballots submitted in Class 3 in Item 4. For purposes of the numerosity requirement of

section 1126(c) of the Bankruptcy Code, you will be treated as a single Holder to the extent the Solicitation Agent is able to identify your Beneficial Holder Ballots submitted through multiple Nominees or accounts.

12. You must make the same election with respect to the Third-Party Release for all Class 3 Senior Notes Claims you hold, including Claims held through more than one Nominee, account, CUSIP, or ISIN.

13. Votes submitted by your Nominee will not be counted in excess of your Nominee's position as of the Voting Record Date. To the extent any over-vote cannot be reconciled, votes to accept and to reject the Plan will be tabulated in the same proportion as the votes submitted by your Nominee on the applicable Master Ballot or pre-validated Beneficial Holder Ballots, but only to the extent of your Nominee's position as of the Voting Record Date, as set forth in the Tabulation Procedures.

14. Consistent with Article 3.6 of the Plan, if no Holder of a Class 3 Senior Notes Claim eligible to vote submits a valid Beneficial Holder Ballot or Master Ballot, the Plan shall be presumed accepted by Class 3.

15. You must vote the full amount of your Class 3 Senior Notes Claims either to accept or reject the Plan and you may not split your vote.

16. The following Beneficial Holder Ballots will not be counted: (a) any Beneficial Holder Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder; (b) any Beneficial Holder Ballot actually received by the Solicitation Agent after the Voting Deadline, unless the Bankruptcy Court orders otherwise upon the request of the Debtors; (c) any Beneficial Holder Ballot that is not properly signed; (d) any Beneficial Holder Ballot not properly transmitted to the Solicitation Agent as required by the Tabulation Procedures, unless the Debtors determine otherwise; (e) any Beneficial Holder Ballot submitted by a Person that did not hold a Class 3 Senior Notes Claim as of the Voting Record Date or that is otherwise not entitled to vote pursuant to the Plan; (f) any Beneficial Holder Ballot submitted by or on behalf of a Non-Eligible Holder prior to entry of the Solicitation Procedures Order; (g) any ballot in a form other than the official form of Beneficial Holder Ballot sent by the Solicitation Agent (provided that votes transmitted by Beneficial Holders to their Nominees through customary communications as permitted by the Beneficial Holder Ballots may be reflected on a Master Ballot); (h) any Beneficial Holder Ballot that attempts to partially accept and partially reject the Plan; (i) any Beneficial Holder Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan; (j) any Beneficial Holder Ballot superseded by a later, timely submitted valid Beneficial Holder Ballot; (k) any Beneficial Holder Ballot sent to the Debtors, the Debtors' agents or representatives (other than the Solicitation Agent), or the Debtors' financial or legal advisors; (l) any Beneficial Holder Ballot cast by a Person that the Bankruptcy Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; (m) any Beneficial Holder Ballot submitted by facsimile, telecopy, or other electronic means, other than a Master Ballot or pre-validated Beneficial Holder Ballot submitted by email in accordance with these instructions; and (n) any Beneficial Holder Ballot not cast in accordance with the Tabulation Procedures and the procedures approved in the Solicitation Procedures Order.

17. Unless the Master Ballot submitted on your behalf or your pre-validated Beneficial Holder Ballot, as applicable, is actually received by the Solicitation Agent on or prior to the Voting Deadline, such vote will be rejected as invalid and will not be counted as an acceptance or

rejection of the Plan; provided, however, that the Debtors reserve the right to request the Bankruptcy Court to allow such vote to be counted. The method of delivery of the Beneficial Holder Ballot to the Nominee or the Solicitation Agent is at your election and risk.

18. The Beneficial Holder Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors (other than the Solicitation Agent and only with respect to a pre-validated Beneficial Holder Ballot).

19. If you cast more than one Beneficial Holder Ballot voting the same Class 3 Senior Notes Claims before the Voting Deadline, the last properly completed Beneficial Holder Ballot actually received by your Nominee in sufficient time to permit your Nominee to include your vote on, and deliver, its Master Ballot to the Solicitation Agent on or before the Voting Deadline shall be deemed to reflect your intent and shall supersede and revoke any prior Beneficial Holder Ballot. If you simultaneously cast Beneficial Holder Ballots for the same Claims that are voted inconsistently, all such inconsistent Beneficial Holder Ballots will not be counted. With respect to pre-validated Beneficial Holder Ballots, the last properly completed Beneficial Holder Ballot actually received by the Solicitation Agent on or before the Voting Deadline shall control. Any duplicate Beneficial Holder Ballots will be counted only once. Following the Voting Deadline, no Beneficial Holder Ballot may be changed or revoked absent further order of the Bankruptcy Court.

20. The failure to vote does not constitute a vote to accept or reject the Plan. An objection to the confirmation of the Plan, even if timely served, does not constitute a vote to accept or reject the Plan.

21. Please be sure to sign and date your Beneficial Holder Ballot. If you are signing a Beneficial Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, you must submit proper evidence to the requesting party of your authority to so act on behalf of such holder.

22. Subject to any contrary order of the Bankruptcy Court, the Debtors may waive any defect or irregularity as to any particular Beneficial Holder Ballot at any time, either before or after the Voting Deadline, other than any requirement imposed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Local Rules, and any such waiver shall be identified in the Voting Report.

23. The Solicitation Agent may contact Beneficial Holders that submit incomplete or otherwise deficient pre-validated Beneficial Holder Ballots to make a reasonable effort to cure such deficiencies; *provided* that neither the Debtors nor the Solicitation Agent is required to provide notification of defects or irregularities with respect to completion or delivery of Beneficial Holder Ballots, nor shall any of them incur any liability for failure to provide such notification; *provided further*, that the Voting Report shall identify each Beneficial Holder Ballot that does not conform to the Tabulation Procedures or contains any irregularity and the Debtors' treatment thereof.

24. Unless waived by the Debtors, subject to the contrary order of the Bankruptcy Court, any defects or irregularities in connection with deliveries of Beneficial Holder Ballots must be cured prior to the Voting Deadline or such Beneficial Holder Ballots will not be counted; *provided* that any such waiver may be made either before or after the Voting Deadline.

25. This Beneficial Holder Ballot does not constitute, and shall not be deemed to be: (a) a Proof of Claim or (b) an assertion or admission of a Claim.

26. In the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Beneficial Holder Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

27. The Plan may be modified before confirmation in accordance with its terms and the Consenting Senior Noteholder RSA. Any acceptance or rejection of the Plan will be deemed an acceptance or rejection of the Plan as so modified, unless such modification materially and adversely changes the treatment of your Claim, in which case resolicitation will be required only to the extent required by section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

28. If you believe you have received the wrong ballot, you should contact the Solicitation Agent immediately (a) by email to MercerInquiries@stretto.com with a reference to "Mercer International Inc. Solicitation" in the subject line, or (b) by telephone at (833) 333-9454 (toll free) or +1 (650) 525-4708 (international, toll).

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BENEFICIAL HOLDER BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.**

**IN ORDER FOR YOUR VOTE TO BE COUNTED IT MUST BE INCLUDED ON A MASTER BALLOT OR PRE-VALIDATED BENEFICIAL HOLDER BALLOT WHICH IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE, AS DIRECTED ABOVE.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL HOLDER BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CONTACT YOUR NOMINEE FOR FURTHER ASSISTANCE.**

**THE VOTING DEADLINE IS DECEMBER 10, 2026 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

[*Remainder of page left intentionally blank*]

**<u>Item 1</u>. Principal Amount of Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory of such Beneficial Holder) of a Class 3 Senior Notes Claim in the aggregate unpaid **<u>principal</u>** amount inserted into the box below, without regard to any accrued but unpaid interest, fees, or premiums, with respect to the CUSIP / ISIN indicated below. If your Class 3 Senior Notes Claims are held on your behalf through a Nominee and you do not know the amount of your Class 3 Senior Notes Claims as of the Voting Record Date, please contact your Nominee for this information as soon as possible. The amount below is for voting purposes only and is subject to the applicable voting and tabulation procedures.

| |
|---|
| Principal Amount of Class 3 Senior Notes Claim as of the Voting Record Date:<br><br>$________________________________________ |
| CUSIP / ISIN (to be completed by Nominee before distribution; check one box):<br>☐ 2028 Senior Notes (144A) – CUSIP 588056BC4 / ISIN US588056BC44<br>☐ 2028 Senior Notes (Reg S) – CUSIP U58839AL2 / ISIN USU58839AL29<br>☐ 2028 Senior Notes (Reg S) – CUSIP U58839AM0 / ISIN USU58839AM02<br>☐ 2029 Senior Notes (Public Secondary Market) – CUSIP 588056BB6 / ISIN US588056BB60<br>☐ 2029 Senior Notes (144A) – CUSIP 588056BA8 / ISIN US588056BA87<br>☐ 2029 Senior Notes (Reg S) – CUSIP U58839AK4 / ISIN USU58839AK46 |

A Beneficial Holder that holds Class 3 Senior Notes Claims under more than one CUSIP / ISIN must complete a separate Beneficial Holder Ballot for each CUSIP / ISIN and must cast the same vote on each such Beneficial Holder Ballot.

**<u>Item 2</u>. Vote on Plan.**

Please vote below either to accept or to reject the Plan with respect to your Claim in Class 3. Any Beneficial Holder Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan. The Plan, though proposed jointly, constitutes separate plans proposed by each of the Debtor entities. Your vote will count as votes for or against, as applicable, each plan proposed by each Debtor entity. The undersigned Beneficial Holder of a Class 3 Senior Notes Claim identified in <u>Item 1</u> votes as follows (check one box only—if you do not check a box or you check both boxes, your vote will not be counted):

| | |
|---|---|
| ☐ **ACCEPT** (vote FOR) the Plan. | ☐ **REJECT** (vote AGAINST) the Plan. |

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**<u>Item 3</u>. Optional Release Election.**

**<u>PLAN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS</u>**

**THE PLAN INCLUDES CERTAIN INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS. IF THE PLAN IS CONFIRMED AND CONSUMMATED, THEN, UNLESS YOU**

**VALIDLY OPT OUT SO THAT SUCH ELECTION IS REFLECTED ON A MASTER BALLOT OR PRE-VALIDATED BENEFICIAL HOLDER BALLOT ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE, YOU WILL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED THE DEBTORS, THE REORGANIZED DEBTORS, AND THE RELEASED PARTIES AS PROVIDED IN ARTICLE 10 OF THE PLAN AND AS SET FORTH IN APPENDIX A, REGARDLESS OF WHETHER YOU VOTE TO ACCEPT OR REJECT THE PLAN, ABSTAIN FROM VOTING, OR DO NOT RETURN A BALLOT AT ALL. IF YOU OPT OUT OF THE THIRD-PARTY RELEASE, YOU WILL NOT BE A RELEASING PARTY AND, TO THE EXTENT YOU WOULD OTHERWISE BE A RELEASED PARTY, YOU WILL NOT RECEIVE THE BENEFIT OF THE RELEASES GRANTED BY THE RELEASING PARTIES UNDER ARTICLE 10 OF THE PLAN. IN ADDITION, IF YOU TIMELY OBJECT TO THE THIRD-PARTY RELEASE, EITHER THROUGH A FORMAL OBJECTION FILED ON THE DOCKET OF THE CHAPTER 11 CASES OR AN INFORMAL OBJECTION PROVIDED TO THE DEBTORS BY ELECTRONIC MAIL, WHICH OBJECTION IS NOT WITHDRAWN OR OTHERWISE RESOLVED BEFORE ENTRY OF THE CONFIRMATION ORDER, YOU WILL NOT BE A RELEASING PARTY.**

Election to withhold consent to the Third-Party Release is at your option. The Beneficial Holder of the Class 3 Senior Notes Claim identified in Item 1 elects to:

| |
|---|
| ☐ **Opt Out of the Third-Party Release** |

Your election to opt out of the Third-Party Release will be valid only if it is included on a Master Ballot submitted by your Nominee, or on a pre-validated Beneficial Holder Ballot, that is actually received by the Solicitation Agent by the Voting Deadline. The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.

**Item 4. Other Beneficial Holder Ballots Submitted.**

By returning this Beneficial Holder Ballot, the Beneficial Holder of the Class 3 Senior Notes Claims identified in Item 1 certifies that (a) this Beneficial Holder Ballot is the only Beneficial Holder Ballot submitted for the Class 3 Senior Notes Claims identified in Item 1 owned by such Beneficial Holder, except as identified in the following table, and (b) all Beneficial Holder Ballots submitted by the Beneficial Holder in Class 3, including through other Nominees, accounts, CUSIPs, or ISINs, indicate the same vote to accept or reject the Plan that the Beneficial Holder has indicated in Item 2 of this Beneficial Holder Ballot (please use additional sheets of paper if necessary). If you hold Class 3 Senior Notes Claims through one or more Nominees, accounts, CUSIPs, or ISINs, you must identify all Class 3 Senior Notes Claims held in your own name and/or through each Nominee, account, CUSIP, or ISIN in the following table and indicate the same vote to accept or reject the Plan on all Beneficial Holder Ballots submitted.

**ONLY COMPLETE THIS TABLE IF YOU HAVE VOTED OTHER SENIOR NOTES CLAIMS IN CLASS 3 ON OTHER BENEFICIAL HOLDER BALLOTS**

| DTC Participant Number and Name of Nominee | Name of Registered Holder or Nominee | CUSIP / ISIN | Principal Amount of Claims Voted through Other Beneficial Holder Ballot | Plan Vote (Accept or Reject) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

**Item 5. Certifications.**

By signing this Beneficial Holder Ballot, the undersigned certifies to the Debtors and the Solicitation Agent that, as of the Voting Record Date, either: (i) the Entity is the Beneficial Holder of the Class 3 Senior Notes Claims being voted on this Beneficial Holder Ballot; or (ii) the Entity is an authorized signatory for the Entity that is the Beneficial Holder of the Class 3 Senior Notes Claims being voted on this Beneficial Holder Ballot, and further certifies that: (1) if this Beneficial Holder Ballot is submitted prior to entry of the Solicitation Procedures Order, the Entity (or in the case of an authorized signatory, the Beneficial Holder) is an Eligible Holder; (2) the Entity (or in the case of an authorized signatory, the Beneficial Holder) has received a copy of the Plan, the Disclosure Statement, and the other applicable solicitation materials and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein; (3) the Entity has cast the same vote with respect to all Class 3 Senior Notes Claims, including any such Claims held through other Nominees; (4) no other Beneficial Holder Ballots with respect to the Class 3 Senior Notes Claims identified in Item 1 have been cast or, if any other Beneficial Holder Ballots have been cast with respect to such Class 3 Senior Notes Claims, then any such earlier received Beneficial Holder Ballots are hereby revoked; (5) the Entity acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of the Class 3 Senior Notes Claims held by it or the Beneficial Holder on whose behalf it is submitting this Beneficial Holder Ballot, as applicable; (6) the Entity understands and, if accepting the Plan, agrees with the treatment provided under the Plan for such Class 3 Senior Notes Claims; (7) the Entity acknowledges that this solicitation is being conducted prior to the commencement of the Chapter 11 Cases (or, with respect to votes cast by Non-Eligible Holders following entry of the Solicitation Procedures Order, during the Chapter 11 Cases) and that, if the Chapter 11 Cases are commenced, the Debtors intend to use the votes received in this solicitation to seek confirmation of the Plan; and (8) the Entity acknowledges and agrees that the Debtors may make conforming changes to the Plan in accordance with the terms thereof and, following commencement of the Chapter 11 Cases, to the extent provided by Bankruptcy Rule 3019, as may be reasonably necessary, and that the Debtors will not re-solicit acceptances or rejections of the Plan in the event of such conforming changes.

**YOUR RECEIPT OF THIS BENEFICIAL HOLDER BALLOT DOES NOT SIGNIFY THAT YOUR SENIOR NOTES CLAIMS HAVE BEEN OR WILL BE ALLOWED. SUBJECT TO THE**

**ALLOWANCE OF SENIOR NOTES CLAIMS UNDER THE PLAN, THE DEBTORS RESERVE ALL RIGHTS TO DISPUTE SUCH SENIOR NOTES CLAIMS.**

| | |
|---|---|
| Name of Holder of Class 3 Senior Notes Claim: | ______________________________ |
| DTC Participant Number: | ______________________________ |
| Signature: | ______________________________ |
| Name of Signatory (If other than the Beneficial Holder, indicate relationship with the Beneficial Holder and capacity in which signing): | ______________________________ |
| Title: | ______________________________ |
| Address (Street, City, State, Zip Code): | ______________________________ |
| Telephone Number: | ______________________________ |
| Email Address: | ______________________________ |
| Date Completed: | ______________________________ |

**<u>Item 6</u>. Nominee Pre-Validation (to be completed only by Nominee for pre-validated Beneficial Holder Ballots).**

| | |
|---|---|
| Name of Nominee: | ______________________________ |
| DTC Participant Number: | ______________________________ |
| Beneficial Holder Account Number: | ______________________________ |
| Principal Amount of Class 3 Senior Notes Claims held as of the Voting Record Date: | ______________________________ |
| CUSIP / ISIN: | ______________________________ |
| Medallion Guarantee Stamp: | ______________________________ |
| Nominee Authorized Signature: | ______________________________ |
| Name: | ______________________________ |
| Title: | ______________________________ |
| Date: | ______________________________ |

This Beneficial Holder Ballot shall not constitute or be deemed a proof of claim or equity interest, an assertion or admission of a claim or equity interest, or the allowance of a claim or equity interest.

**PLEASE COMPLETE, SIGN, AND DATE THIS BENEFICIAL HOLDER BALLOT AND RETURN IT (WITH A SIGNATURE) *PROMPTLY* IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.**

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THE MASTER BALLOT SUBMITTED ON YOUR BEHALF THAT REFLECTS YOUR VOTE (OR YOUR PRE-VALIDATED BENEFICIAL HOLDER BALLOT) ON OR BEFORE DECEMBER 10, 2026 AT 4:00 P.M. (PREVAILING CENTRAL TIME), AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE TRANSMITTED BY THIS BENEFICIAL HOLDER BALLOT WILL NOT BE COUNTED, EXCEPT THAT THE DEBTORS RESERVE THE RIGHT TO REQUEST THE BANKRUPTCY COURT ALLOW SUCH VOTES TO BE COUNTED.**

[*Remainder of page left intentionally blank*]

# APPENDIX A

Release, Injunction, And Exculpation Provisions in the Plan[1]

[1] Capitalized terms used but not defined in this Appendix A have the meanings given to them in the Plan.

## A. Certain Relevant Definitions.

"***Exculpated Parties***" means, each in its capacity as such, (a) each of the Debtors and the Estates; and (b) each independent director of the Debtors.

"***Related Parties***" means with respect to a Person, such Person's current and former affiliates, and such Person's and its current and former affiliates' current and former directors, managers, committee members, members of any governing body, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed or advised entities, accounts, or funds, current or former, and future associated entities, predecessors, participants, successors, and assigns (whether by operation of law or otherwise), subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, partners, employees, agents, fiduciaries, trustees, advisory board members, financial advisors or managers, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, investment managers, investment advisors, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such.

"***Released Parties***" means, collectively, solely in their capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Senior Notes Trustee; (e) each Backstop Party; (f) each member of the Majority Ad Hoc Group; and (g) with respect to each of the foregoing Persons in clauses (a) through (f), each of their Related Parties; *provided* that, a Person shall not be a Released Party if such Person (i) elects to opt out of the Releases set forth in this Plan or (ii) timely Files an objection to the Releases set forth in this Plan and such objection is not withdrawn or otherwise resolved before the Confirmation Order is entered.

"***Releases***" means, collectively, the releases set forth in Article 10.6 of the Plan.

"***Releasing Parties***" means, collectively, and in each case solely in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Senior Notes Trustee; (e) each Backstop Party; (f) each Holder of a Claim or Interest in a Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective ballot; (g) each Holder of a Claim or Interest in a Non-Voting Class that is deemed to accept this Plan that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective Release Opt-Out Form; and (h) each Related Party of each Entity in clauses (a) through (g), solely to the extent such Related Party (I) would be obligated to grant a release under principles of agency if it were so directed by the Entity in the foregoing clauses (a) through (f) to whom they are related or (II) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (g); *provided*, that any Holder of a Claim or Interest that timely objects to the Third Party Release, either through (x) a formal objection Filed on the docket of the Chapter 11 Cases or (y) an informal objection provided to the Debtors by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or via electronic mail, as applicable, or otherwise resolved before the Confirmation Order is entered, shall not be a "Releasing Party".

## B. Section 10.5 of the Plan – Permanent Injunction.

**Except as otherwise expressly provided in this Plan or the Confirmation Order, from and after the Effective Date, all Persons and Entities are, to the fullest extent provided under section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined from (a) commencing or continuing, in any manner or in any place, any suit, action, or other proceeding of any kind; (b) enforcing, attaching, collecting, or recovering in any manner or means any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Lien or encumbrance; (d) asserting a right**

**of setoff or subrogation of any kind; or (e) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or with respect to any Claim, demand, liability, obligation, debt, right, Cause of Action, Interest, or remedy released or to be released, exculpated or to be exculpated, settled or to be settled, or discharged or to be discharged pursuant to this Plan or the Confirmation Order against any Person or Entity so released, discharged, or exculpated (or the property or estate of any Person or Entity so released, discharged, or exculpated). All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.**

**No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, Reorganized Debtors, Exculpated Parties, or Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of any Claim or Cause of Action, as applicable, subject to Article X, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Exculpated Party. At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Reorganized Debtor, Exculpated Party, Released Party or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action File a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Federal Rules of Civil Procedure, including Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.**

**C. Section 10.6 of the Plan – Releases.**

**(a) Releases by the Debtors.**

**To the fullest extent permitted by applicable law, and except as otherwise expressly set forth in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Debtors, the Reorganized Debtors, and the Estates, in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally, released and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (a) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (b) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor**

**Affiliates, (c) the subject matter of, or the transactions, events, circumstances, acts, or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (d) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including the Consenting Stakeholders), (e) the Senior Notes Documents, (f) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (g) intercompany transactions, (h) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements and related prepetition transactions, the Definitive Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (i) any contract, instrument, release, or other agreement or document created or entered into in connection with this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements, the Definitive Documents, the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of this Plan, or the administration and implementation of this Plan or the Confirmation Order, including the issuance or distribution of Securities pursuant to this Plan, (j) the distribution, including any disbursements made by a Distribution Agent, of property under this Plan, or any other related agreement, or (k) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; *provided*, that the Debtors do not release Claims or Causes of Action (x) that are of a commercial nature and arise in the ordinary course of business, such as accounts receivable and accounts payable on account of goods being sold and services being performed; (y) arising under an Executory Contract or Unexpired Lease that is assumed by the Debtors; or (z) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct. Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under this Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or the Restructuring Transactions, or any agreement, Claim, or obligation arising or assumed under this Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing this Plan; (b) a good-faith settlement and compromise of the Claims released by the Debtors; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.**

**(b) <u>Releases by Holders of Claims and Interests</u>.**

**To the fullest extent permitted by applicable law, and except as otherwise expressly set forth in this Plan or the Confirmation Order, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party, in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and**

**unconditionally, released and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (a) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (b) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (c) the subject matter of, or the transactions, events, circumstances, acts, or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (d) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including the Consenting Stakeholders), (e) the Senior Notes Documents, (f) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (g) intercompany transactions, (h) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements and related prepetition transactions, the Definitive Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (i) any contract, instrument, release, or other agreement or document created or entered into in connection with this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements, the Definitive Documents, or the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, or the administration and implementation of this Plan or the Confirmation Order, including the issuance or distribution of Securities pursuant to this Plan, (j) the distribution, including any disbursements made by a Distribution Agent, of property under this Plan, or any other related agreement, or (k) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; *provided*, that the Releasing Parties do not release Claims or Causes of Action arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct. Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under this Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or the Restructuring Transactions, or any agreement, Claim, or obligation arising or assumed under this Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of this Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing this Plan; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.**

**D. Section 10.7 of the Plan – Exculpation.**

**Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any Claims or Causes of Action for any act taken or omitted to be taken between the Petition Date and the Effective Date in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the Confirmation or consummation (as applicable) of this Plan, the Restructuring Support Agreements and related prepetition transactions, and the Disclosure Statement including any disbursements made by a Distribution Agent in connection with this Plan, the Disclosure Statement, the Definitive Documents, the Corporate Governance Documents, the Senior Notes Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with this Plan, or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement, or Confirmation or consummation of this Plan; *provided*, that the foregoing provisions of this exculpation shall not operate to waive or release: (a) any Claims or Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; or (b) the rights of any Person or Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan, or assumed pursuant to this Plan or Final Order of the Bankruptcy Court; *provided further*, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions, or inactions.**

**The Exculpated Parties have, and upon consummation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.**

**The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or Entity. For the avoidance of doubt and notwithstanding anything else herein, the foregoing exculpation shall be limited to Persons that served as Estate fiduciaries during the Chapter 11 Cases.**

# APPENDIX B

Tabulation Procedures

## Tabulation Procedures

These tabulation procedures (the "***Tabulation Procedures***") govern the tabulation of Ballots submitted by Holders of Claims in Class 3 (Senior Notes Claims) and Holders of Interests in Class 8 (Existing Equity Interests) (together, the "***Voting Classes***") and Release Opt-Out Forms submitted by Holders of Claims and Interests in Class 1 (Secured Claims), Class 2 (Other Priority Claims), Class 4 (General Unsecured Claims), and Class 7 (510(b) Claims). The Debtors commenced the solicitation of votes from Eligible Holders of Class 3 Senior Notes Claims before the Petition Date, and these Tabulation Procedures apply to such prepetition solicitation to the extent consistent with sections 1125(g) and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018(b). Holders in the Voting Classes that are Non-Eligible Holders may vote only following entry of the order (the "***Solicitation Procedures Order***"), and the distribution of Release Opt-Out Forms to the Holders of Claims in Class 1 (Secured Claims), Class 2 (Other Priority Claims), Class 4 (General Unsecured Claims), and Class 7 (510(b) Claims) will commence following entry of the Solicitation Procedures Order. Holders of Class 8 Existing Equity Interests will be solicited following entry of the Solicitation Procedures Order. Capitalized terms used but not defined herein have the meanings given to them in the Solicitation Procedures Order, the Motion,[1] or the Plan, as applicable.

**1. Voting Record Date.**

The Voting Record Date for Holders of Senior Notes Claims in Class 3 and Holders of Existing Equity Interests in Class 8 is November 2, 2026.

**2. Voting Deadline.**

To be counted, a Ballot must be properly executed, completed, and delivered so that it is actually received by the Solicitation Agent no later than December 10, 2026 at 4:00 p.m. (prevailing Central Time) (the "***Voting Deadline***"), which the Debtors may extend in their discretion, subject to the terms of the Consenting Senior Noteholder RSA. The deadline to submit a Release Opt-Out Form is the Voting Deadline. Beneficial Holders voting through a Nominee (other than through a pre-validated Ballot) must return their Ballots or voting instructions to their Nominee with sufficient time for the Nominee to process them and deliver a Master Ballot to the Solicitation Agent by the Voting Deadline, and Beneficial Holders that receive a pre-validated Ballot must return it directly to the Solicitation Agent so that it is actually received by the Voting Deadline.

**3. Methods of Submission.**

Registered Holder Ballots and Release Opt-Out Forms may be submitted (a) in hard copy by regular mail, overnight courier, or hand delivery to the address set forth in the applicable Ballot or Release Opt-Out Form, or (b) through the E-Ballot Portal. Beneficial Holder Ballots that are not pre-validated must be returned to the applicable Nominee in accordance with such Nominee's instructions and customary practices. Master Ballots and pre-validated Ballots may be submitted in hard copy as set forth in clause (a) above or by email of a PDF copy to the address set forth in the applicable Ballot, but may not be submitted

[1] The "***Motion***" means the *Emergency Motion of Debtors for Entry of an Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Approving (A) Solicitation Procedures, (B) Form and Manner of Notice of Commencement, Combined Hearing, and Objection Deadline, and (C) Rights Offering Procedures and Related Forms, and Authorizing Commencement of the Rights Offering; (III) Fixing Deadline to Object to Disclosure Statement and Plan; (IV) Conditionally (A) Directing the United States Trustee Not to Convene Section 341 Meeting of Creditors and (B) Waiving Requirement to File Statements of Financial Affairs and Schedules of Assets and Liabilities; (V) Conditionally Approving the Disclosure Statement; and (VI) Granting Related Relief.*

through the E-Ballot Portal. Except as provided in the preceding sentences, Ballots and Release Opt-Out Forms submitted by email, facsimile, or any other electronic means will not be counted. The encrypted ballot data and audit trail created by electronic submission through the E-Ballot Portal shall become part of the record of any Ballot or Release Opt-Out Form submitted in this manner, and the Holder's electronic signature will be deemed immediately legally valid and effective. A Holder that submits a Ballot through the E-Ballot Portal should not also submit a paper Ballot on account of the same Claim or Interest. The method of delivery is at the election and risk of each Holder, and a Ballot or Release Opt-Out Form will be deemed delivered only when the Solicitation Agent actually receives it.

**4. Ballots Not Counted.**

Subject to Section 8 below, the following Ballots will not be counted: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder; (b) any Ballot actually received by the Solicitation Agent after the Voting Deadline, unless the Court orders otherwise upon request of the Debtors; (c) any Ballot that does not contain a signature (provided that a signature collected electronically through the E-Ballot Portal will be deemed a valid signature); (d) any Ballot not properly transmitted to the Solicitation Agent as required by these Tabulation Procedures, unless the Debtors determine otherwise; (e) any Ballot submitted by a Person that did not hold a Claim or Interest in a Voting Class as of the Voting Record Date or that is otherwise not entitled to vote pursuant to the Plan; (f) any Ballot submitted by or on behalf of a Non-Eligible Holder before entry of the Solicitation Procedures Order (and any Holder submitting a Ballot before entry of the Solicitation Procedures Order shall be deemed to have certified that it is an Eligible Holder); (g) any form of ballot other than the official form of Ballot sent by the Solicitation Agent (provided that votes transmitted by Beneficial Holders to their Nominees through customary communications as permitted by the Ballots may be reflected on a Master Ballot); (h) any Ballot that partially rejects and partially accepts the Plan; (i) any Ballot that is properly completed, executed, and timely returned but is not marked to either accept or reject the Plan, or is marked to both accept and reject the Plan; (j) any Ballot superseded by a later, timely submitted valid Ballot; (k) any Ballot sent to the Debtors, the Debtors' agents or representatives (other than the Solicitation Agent), or the Debtors' financial or legal advisors; (l) any Ballot cast by a Person that the Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; and (m) any Ballot not cast in accordance with these Tabulation Procedures and the procedures approved in the Solicitation Procedures Order.

**5. General Tabulation Rules.**

Whenever a Holder casts more than one Ballot voting the same Claim or Interest before the Voting Deadline, the last properly completed Ballot actually received on or before the Voting Deadline shall be deemed to reflect such Holder's intent and shall supersede any previously received Ballot. With respect to Beneficial Holder Ballots submitted through a Nominee (other than pre-validated Ballots), the last such Ballot received by the Nominee in sufficient time to be included on its Master Ballot shall control. Any duplicate Ballots will be counted only once.

Following the Voting Deadline, no Ballot may be changed or revoked, absent further order of the Court.

If a Holder simultaneously casts inconsistent Ballots with respect to the same Claim or Interest, such Ballots will not be counted.

Holders must vote all of their Claims or Interests within a particular Class either to accept or reject the Plan and may not split their votes.

The amount of a Claim or Interest for voting purposes shall be (i) for Class 3, the outstanding principal amount of the applicable Senior Notes held by each Beneficial Holder through its Nominee, without regard to any accrued but unpaid interest, fees, or premiums, as reflected in the securities position report(s) from DTC as of the Voting Record Date, and (ii) for Class 8, the number of shares reflected on the Debtors' stock register maintained by the transfer agent or the securities position report(s) from DTC as of the Voting Record Date, in each case regardless of any amount set forth on a Ballot. In the event of any inconsistency, the securities position report(s) from DTC shall control for positions held through DTC.

A Ballot does not constitute, and shall not be deemed to be, a proof of claim or an assertion or admission of a Claim or Interest.

Only Holders as of the Voting Record Date may vote, and any transferee of a Claim or Interest after the Voting Record Date shall not be entitled to vote on account of such Claim or Interest.

Any Person signing a Ballot in a representative capacity (including as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation) must indicate such capacity and, if requested by the Debtors or the Solicitation Agent, submit proper evidence of authority to so act.

Consistent with Article 3.6 of the Plan, if no Holder in a Voting Class eligible to vote submits a valid Ballot, the Plan shall be presumed accepted by such Voting Class.

**6. Nominees, Master Ballots, and Overvotes.**

Nominees may (a) forward the Solicitation Package to Beneficial Holders no later than 5 business days after receipt and collect and tabulate their votes on a Master Ballot, or (b) pre-validate a Beneficial Holder Ballot and forward it to the Beneficial Holder for return directly to the Solicitation Agent, and may collect votes in accordance with their customary practices, including through voting instruction forms or electronic means. Nominees electing option (a) must deliver the Master Ballot so that it is actually received by the Solicitation Agent by the Voting Deadline.

Votes cast by Beneficial Holders through Nominees will be applied to the positions held by such Nominees as of the Voting Record Date, as evidenced by the applicable securities position report(s) from DTC.

Votes submitted by a Nominee will not be counted in excess of such Nominee's position as of the Voting Record Date.

If conflicting votes or over-votes are submitted by a Nominee, the Solicitation Agent may use reasonable efforts to reconcile such discrepancies with the Nominee.

To the extent any over-vote cannot be reconciled, the Solicitation Agent will tabulate votes to accept and to reject the Plan in the same proportion as the votes submitted by the Nominee on the applicable Master Ballot or pre-validated Ballots, but only to the extent of such Nominee's position as of the Voting Record Date. A Holder (including a Registered Holder or Beneficial Holder) that holds through more than one Nominee, account, or CUSIP must execute and return a separate Ballot for each Nominee, account, or CUSIP, must vote all such Claims or Interests in the same manner, and, in the case of a Beneficial Holder, must certify on each Ballot all other Ballots submitted in the same Voting Class.

For purposes of determining whether the numerosity requirement of section 1126(c) of the Bankruptcy Code has been satisfied, the Solicitation Agent will treat each Beneficial Holder as a single Holder, to the extent it is able to identify such Beneficial Holder's Ballots submitted through multiple Nominees or accounts.

**7. Release Opt-Out Forms.**

Subject to Section 8 below, a Release Opt-Out Form will be counted only if it is properly completed, executed, and actually received by the Solicitation Agent on or before the Voting Deadline in accordance with Section 3 above. The following Release Opt-Out Forms will not be counted: (a) any Release Opt-Out Form that is illegible or contains insufficient information to permit the identification of the Holder of the Claim or Interest; (b) any Release Opt-Out Form actually received by the Solicitation Agent after the Voting Deadline, unless the Court orders otherwise upon request of the Debtors; (c) any Release Opt-Out Form submitted by or on behalf of a Person that is not entitled to opt out of the Third-Party Release under the Restructuring Support Agreements; (d) any Release Opt-Out Form sent to the Debtors, the Debtors' agents or representatives (other than the Solicitation Agent), or the Debtors' financial or legal advisors; (e) any Release Opt-Out Form transmitted by facsimile, email, or other electronic means other than as permitted by these Tabulation Procedures; (f) any unsigned Release Opt-Out Form (provided that a signature collected electronically through the E-Ballot Portal will be deemed a valid signature); (g) any Release Opt-Out Form submitted without making the opt-out election; and (h) any Release Opt-Out Form not completed in accordance with these Tabulation Procedures and the procedures approved in the Solicitation Procedures Order.

If multiple Release Opt-Out Forms are received from the same Holder with respect to the same Claim or Interest before the Voting Deadline, the last properly completed Release Opt-Out Form timely received will supersede and revoke any earlier received Release Opt-Out Form. A Holder must make the same election with respect to all Claims or Interests held by such Holder in a single Class. An opt-out election made on a properly completed and timely submitted Ballot will be given the same effect as an election made on a Release Opt-Out Form.

A Release Opt-Out Form is not a letter of transmittal and may not be used for any purpose other than to opt out of the Third-Party Release, and does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

**8. Waiver of Defects; Voting Report.**

Subject to a contrary order of the Court, the Debtors may waive any defects or irregularities as to any particular Ballot or Release Opt-Out Form at any time, either before or after the Voting Deadline, other than any requirement imposed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Local Rules. The Debtors or the Solicitation Agent, as applicable, shall determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots, which determination, absent a contrary order of the Court, shall be final and binding. The Solicitation Agent may contact parties who submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies; *provided* that neither the Debtors nor the Solicitation Agent is required to provide notification of defects or irregularities with respect to completion or delivery of Ballots, nor shall any of them incur any liability for failure to provide such notification. The Solicitation Agent will file a voting report (the "***Voting Report***") no later than December 14, 2026, or 2 business days before any adjourned Combined Hearing, which shall, among other things, (a) identify each Ballot that does not conform to these Tabulation Procedures or contains any irregularity, the Debtors' treatment of each such Ballot, and any waivers made under this section, and (b) report the Release Opt-Out elections received on Ballots and Release Opt-Out Forms.

**9. Retention of Ballots.**

The Solicitation Agent shall retain all paper copies of Ballots and all solicitation-related correspondence for 2 years following the Effective Date, whereupon the Solicitation Agent is authorized to destroy or

otherwise dispose of all paper copies of Ballots, printed solicitation materials (including unused copies of the Solicitation Package), and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such 2-year period.

# EXHIBIT 5-B

Form of Class 3 Master Ballot

**PRIOR TO THE ENTRY OF AN ORDER OF THE BANKRUPTCY COURT APPROVING THE SOLICITATION PROCEDURES (THE "*SOLICITATION PROCEDURES ORDER*"), ONLY HOLDERS OF CLASS 3 SENIOR NOTES CLAIMS WHO ARE ELIGIBLE HOLDERS (AS DEFINED BELOW) ARE ENTITLED TO VOTE, AND NOMINEES MAY TRANSMIT PURSUANT TO THIS MASTER BALLOT ONLY THE VOTES OF BENEFICIAL HOLDERS THAT ARE ELIGIBLE HOLDERS. VOTES OF BENEFICIAL HOLDERS THAT ARE NOT ELIGIBLE HOLDERS (EACH, A "*NON-ELIGIBLE HOLDER*") SHOULD NOT BE INCLUDED ON OR TRANSMITTED BY THIS MASTER BALLOT UNTIL AFTER THE BANKRUPTCY COURT HAS ENTERED THE SOLICITATION PROCEDURES ORDER, AND ANY VOTE OF A NON-ELIGIBLE HOLDER TRANSMITTED PRIOR TO SUCH ENTRY WILL NOT BE COUNTED. THE DEBTORS WILL PROMPTLY NOTIFY NOMINEES AND HOLDERS OF CLASS 3 SENIOR NOTES CLAIMS OF THE ENTRY OF THE SOLICITATION PROCEDURES ORDER. IF YOU SUBMIT THIS MASTER BALLOT PRIOR TO THE ENTRY OF THE SOLICITATION PROCEDURES ORDER, YOU CERTIFY TO THE DEBTORS THAT EACH BENEFICIAL HOLDER WHOSE VOTE IS TRANSMITTED HEREBY HAS CERTIFIED TO YOU THAT IT IS AN ELIGIBLE HOLDER.**

**AN "*ELIGIBLE HOLDER*" IS A HOLDER OF A CLASS 3 SENIOR NOTES CLAIM THAT CERTIFIES TO THE REASONABLE SATISFACTION OF THE DEBTORS THAT IT IS (A) A "QUALIFIED INSTITUTIONAL BUYER" (AS DEFINED IN RULE 144A OF THE SECURITIES ACT OF 1933, AS AMENDED (THE "*SECURITIES ACT*")), (B) AN "ACCREDITED INVESTOR" (AS DEFINED IN RULE 501(A) OF REGULATION D OF THE SECURITIES ACT), OR (C) FOR HOLDERS LOCATED OUTSIDE THE UNITED STATES, A PERSON OTHER THAN A "U.S. PERSON" (AS DEFINED IN RULE 902(K) OF REGULATION S OF THE SECURITIES ACT) AND NOT PARTICIPATING ON BEHALF OF OR ON ACCOUNT OF A U.S. PERSON.**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| MERCER INTERNATIONAL INC., *et al.*,[1] | IMPORTANT: No chapter 11 case has been commenced as of the date of the distribution of this ballot. This ballot is a prepetition solicitation of your vote on a prepackaged plan of reorganization. |
| Debtors. | If the chapter 11 cases are commenced, the Debtors will request joint administration of such cases. |

[1] The Debtors in the Chapter 11 Cases, together with the last four digits of each Debtor's taxpayer identification number, are: Mercer International Inc. (6945) and Mercer International (Texas) LLC (N/A). The Debtors' mailing address for purposes of the Chapter 11 Cases is: Suite 1120, 700 West Pender Street, Vancouver, British Columbia V6C 1G8.

**MASTER BALLOT FOR NOMINEES
OF BENEFICIAL HOLDERS OF CLAIMS
IN CLASS 3 (SENIOR NOTES CLAIMS)
FOR VOTING TO ACCEPT OR REJECT THE
JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION
OF MERCER INTERNATIONAL INC. AND ITS DEBTOR AFFILIATE**

**The voting deadline to accept or reject the Plan is 4:00 p.m. (prevailing Central Time), on December 10, 2026 (the "*Voting Deadline*"), unless extended by the Debtors.**

**Please be advised that Article 10 of the Plan contains release, exculpation, and injunction provisions. These provisions are included in Appendix A to this Master Ballot. Beneficial Holders are advised to review and consider the Plan carefully because their rights might be affected thereunder even if they abstain from voting. If a Beneficial Holder does not validly opt out of the Third-Party Release by checking the box in Item 3 of its Beneficial Holder Ballot (or otherwise conveying such election in accordance with your customary practices) so that such election is reflected on a Master Ballot or a pre-validated Beneficial Holder Ballot actually received by the Solicitation Agent by the Voting Deadline, such Beneficial Holder will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Debtors, the Reorganized Debtors, and the Released Parties as provided in Article 10.6(b) of the Plan (the "*Third-Party Release*"). This is the case whether such Beneficial Holder votes to accept or reject the Plan, abstains from voting, or does not return a ballot at all. If a Beneficial Holder opts out of the Third-Party Release, it will not be a Releasing Party and, to the extent it would otherwise be a Released Party, will not receive the benefit of the releases granted by the Releasing Parties under Article 10 of the Plan. In addition, any Beneficial Holder that timely objects to the Third-Party Release, either through a formal objection Filed on the docket of the Chapter 11 Cases or an informal objection provided to the Debtors by electronic mail, which objection is not withdrawn or otherwise resolved before entry of the Confirmation Order, will not be a Releasing Party.**

**A Beneficial Holder's decision to opt out does not affect the amount of distribution it will receive under the Plan.**

The Debtors have sent this ballot (the "***Master Ballot***") to you, a broker, dealer, commercial bank, trust company or other agent or nominee (each, a "***Nominee***") of a Beneficial Holder of a Class 3 Senior Notes Claim, and, accordingly, you have a right to vote to accept or reject the *Joint Prepackaged Chapter 11 Plan of Reorganization of Mercer International Inc. and Its Debtor Affiliate*, dated November 9, 2026 (as may be amended, modified, or supplemented from time to time, the "***Plan***") on behalf of such Beneficial Holders.[2] The Plan is attached as Exhibit A to the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Mercer International Inc. and Its Debtor Affiliate*, dated November 9, 2026 (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***"), which accompanies this Master Ballot and will be posted on the Solicitation Agent's website on the Petition Date. The Disclosure Statement provides information to assist you and your Beneficial Holder clients in deciding how to vote on the Plan. The Solicitation Agent's website will contain important information, hearing dates, other key deadlines, as well as the docket for the Chapter 11 Cases (as defined below).

[2] Capitalized but undefined terms herein shall have the meanings ascribed to them in the Plan.

Nominees should use this Master Ballot to transmit votes to accept or reject the Plan. This Master Ballot is to be used by each Nominee to summarize the individual votes of its respective Beneficial Holders from their Beneficial Holder Ballots to vote to accept or reject the Plan. If you have not received or wish to obtain additional copies of the Disclosure Statement, or if you have any questions on how to properly complete and/or submit this Master Ballot, please contact the Debtors' Solicitation Agent, Stretto, Inc. (the "***Solicitation Agent***"), (a) by writing to Mercer International Inc., c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, (b) by email at MercerInquiries@stretto.com (with "Mercer International Inc. Solicitation" in the subject line), or (c) by telephone at (833) 333-9454 (toll free) or +1 (650) 525-4708 (international, toll). Please be advised that the Solicitation Agent cannot provide legal advice.

You are receiving this Master Ballot because you are a Nominee of Beneficial Holders,[3] as of November 2, 2026 (the "***Voting Record Date***"), of any Senior Notes Claims. "***Senior Notes Claims***" include any Claim on account of the Senior Notes or otherwise arising under or in connection with the Senior Notes Indentures, including accrued but unpaid interest, fees, and premiums through the Petition Date. "***Senior Notes Indentures***" means, collectively, the 2028 Senior Notes Indenture and the 2029 Senior Notes Indenture, each as defined in the Plan, under which Mercer International Inc. ("***Mercer***") is the issuer.

As described in the Disclosure Statement, the Debtors intend to commence cases (the "***Chapter 11 Cases***") under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") following this solicitation. If the Debtors commence the Chapter 11 Cases, the Plan may be confirmed by the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "***Bankruptcy Court***") if (a) it is accepted by at least two-thirds of the aggregate principal amount and more than one-half in number of the Holders of the Senior Notes Claims voting in Class 3; and (b) the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, Class 3 and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court and the Effective Date occurs, the Plan will be binding on all Holders of Senior Notes Claims whether or not a Holder of Senior Notes Claims returns a ballot, votes to reject the Plan, or does not vote.

On the Petition Date, all pleadings and notices relating to the Chapter 11 Cases that are filed with the Bankruptcy Court (including notices of the date and time of hearings) will be made available for review and download, free of charge, on the case information website of the Solicitation Agent at https://cases.stretto.com/Mercer.

This Master Ballot is for Senior Notes Claims in Class 3. Any of your Beneficial Holder clients that hold Claims or Interests in more than one Class under the Plan may receive a ballot for each such Class and must complete a separate ballot for each such Class. For your Beneficial Holder clients' votes to be counted, this Master Ballot must be properly completed, signed, and returned so that it is actually received by the Solicitation Agent by no later than the Voting Deadline, unless such time is extended by the Debtors. Please allow sufficient time for your Beneficial Holder clients to submit their voting instructions to you so that you are able to enter those votes in this Master Ballot and submit it to the Solicitation Agent by the Voting Deadline. If you wish to return a hard copy of your Master Ballot, you may return it in the enclosed preaddressed, postage prepaid envelope or by first class mail, overnight courier, or hand delivery to: Mercer International Inc. Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602. If you would prefer to submit your Master Ballot by email, which is the preferred method of submitting your Master

[3] A "***Beneficial Holder***" means a beneficial holder of Class 3 Senior Notes Claims as of the Voting Record Date, as reflected in the records maintained by the applicable Nominee holding the Class 3 Senior Notes Claims through The Depository Trust Company.

Ballot, please send a PDF copy of your Master Ballot to TeamPublicSecurities@stretto.com (with "Mercer International Inc. Solicitation" in the subject line) such that the Solicitation Agent actually receives your Master Ballot before the Voting Deadline. Except for Master Ballots and pre-validated Beneficial Holder Ballots submitted by email of a PDF copy as described herein and in the applicable pre-validated Beneficial Holder Ballot, Master Ballots and pre-validated Beneficial Holder Ballots will not be accepted by telecopy, facsimile, or any other electronic means of transmission, including through the E-Ballot Portal.

Your receipt of this Master Ballot does not signify that the Class 3 Senior Notes Claim(s) of any Beneficial Holder, except as provided in Article 4.3 of the Plan with respect to the aggregate allowance of the Senior Notes Claims, has been or will be Allowed. This Master Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of or distribution on account of Class 3 Senior Notes Claims. Subject to Article 4.3 of the Plan, the Debtors reserve all rights to dispute such Claim(s).

This Master Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than (a) to vote to accept or reject the Plan, (b) make an election with respect to the Third-Party Release, and/or (c) make certifications with respect to the Beneficial Holder Ballots. If you believe you have received this Master Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent immediately.

If you have any questions regarding this Master Ballot or how to properly complete this Master Ballot, please contact the Solicitation Agent for further assistance by telephone at (833) 333-9454 (toll free) or +1 (650) 525-4708 (international, toll) or via email at MercerInquiries@stretto.com (with "Mercer International Inc. Solicitation" in the subject line).

[*Remainder of page left intentionally blank*]

**IMPORTANT NOTICE REGARDING TREATMENT FOR HOLDERS OF CLASS 3 SENIOR NOTES CLAIMS**

As described in more detail in the Disclosure Statement and Plan, if the Chapter 11 Cases are commenced, the Plan is confirmed, and the Effective Date occurs, then each Holder of an Allowed Senior Notes Claim shall receive, in full and final satisfaction, settlement, release and discharge of, and in exchange for such Allowed Senior Notes Claim, its Pro Rata Share of: (a) the Subscription Rights; (b) 91.5% of the New Common Stock, subject to dilution by the Management Incentive Plan, the New Common Stock issued as Stapled Equity, and the New Convertible Preferred Stock (if converted); (c) 56.5% of the New Convertible Preferred Stock; and (d) the Takeback Senior Secured Notes.

Distributions of Plan Securities to Holders of Allowed Senior Notes Claims shall be made through the facilities of DTC in accordance with DTC's customary practices, except as otherwise agreed by the Debtors (or the Reorganized Debtors) and the Required Consenting Senior Noteholders. Only Rights Offering Participants (as defined in the Plan), which are Holders of Allowed Senior Notes Claims as of the Rights Offering Record Date may exercise Subscription Rights and participate in the Rights Offering. Rights Offering Participants will receive additional information regarding the exercise of their Subscription Rights after the commencement of the Chapter 11 Cases upon the Bankruptcy Court's approval of the Rights Offering Procedures. Subscription Rights may be exercised only in accordance with the Rights Offering Procedures, and this Master Ballot may not be used to exercise Subscription Rights. Each Rights Offering Participant that elects to exercise its Subscription Rights in accordance with the Rights Offering Procedures will also receive its pro rata share of the Stapled Equity.

[*Remainder of page left intentionally blank*]

**IMPORTANT NOTICE REGARDING TREATMENT FOR HOLDERS OF CLASS 3 SENIOR NOTES CLAIMS**

**IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, IT WILL BE BINDING ON ALL HOLDERS OF CLASS 3 SENIOR NOTES CLAIMS WHETHER OR NOT THEY VOTE. PLEASE BE ADVISED THAT IF THE PLAN IS CONFIRMED AND CONSUMMATED, HOLDERS OF CLASS 3 SENIOR NOTES CLAIMS WILL BE BOUND BY THE INJUNCTION AND EXCULPATION PROVISIONS CONTAINED IN ARTICLE 10 OF THE PLAN AND SET FORTH IN APPENDIX A. EACH BENEFICIAL HOLDER THAT DOES NOT VALIDLY OPT OUT OF THE THIRD-PARTY RELEASE SO THAT SUCH ELECTION IS REFLECTED ON A MASTER BALLOT OR PRE-VALIDATED BENEFICIAL HOLDER BALLOT ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE WILL BE DEEMED TO HAVE GRANTED THE THIRD-PARTY RELEASE, WHETHER SUCH BENEFICIAL HOLDER VOTES TO ACCEPT OR REJECT THE PLAN, ABSTAINS FROM VOTING, OR DOES NOT RETURN A BALLOT AT ALL. BENEFICIAL HOLDERS THAT VALIDLY OPT OUT OF THE THIRD-PARTY RELEASE WILL NOT BE RELEASING PARTIES AND, TO THE EXTENT THEY WOULD OTHERWISE BE RELEASED PARTIES, WILL NOT RECEIVE THE BENEFIT OF THE RELEASES GRANTED BY THE RELEASING PARTIES UNDER ARTICLE 10 OF THE PLAN. IN ADDITION, ANY BENEFICIAL HOLDER THAT TIMELY OBJECTS TO THE THIRD-PARTY RELEASE, EITHER THROUGH A FORMAL OBJECTION FILED ON THE DOCKET OF THE CHAPTER 11 CASES OR AN INFORMAL OBJECTION PROVIDED TO THE DEBTORS BY ELECTRONIC MAIL, WHICH OBJECTION IS NOT WITHDRAWN OR OTHERWISE RESOLVED BEFORE ENTRY OF THE CONFIRMATION ORDER, WILL NOT BE A RELEASING PARTY.**

**IMPORTANT**

**YOU SHOULD CAREFULLY REVIEW THE DISCLOSURE STATEMENT AND PLAN BEFORE YOU VOTE. YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR CLAIMS UNDER THE PLAN.**

**THE SOLICITATION AGENT IS NOT AUTHORIZED TO (AND WILL NOT) PROVIDE LEGAL ADVICE.**

**VOTING RECORD DATE: NOVEMBER 2, 2026**

**VOTING DEADLINE: 4:00 P.M. PREVAILING CENTRAL TIME ON DECEMBER 10, 2026 (UNLESS EXTENDED BY THE DEBTORS)**

**FOR YOUR BENEFICIAL HOLDER CLIENTS' VOTES TO BE COUNTED, THIS MASTER BALLOT MUST BE PROPERLY COMPLETED, SIGNED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE, UNLESS SUCH TIME IS EXTENDED BY THE DEBTORS. IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE THIS MASTER BALLOT BY THE VOTING DEADLINE, THE VOTES AND ANY ELECTIONS TO OPT OUT OF THE THIRD-PARTY RELEASE TRANSMITTED BY THIS MASTER BALLOT WILL NOT BE COUNTED, EXCEPT THAT THE DEBTORS RESERVE THE RIGHT TO REQUEST THE BANKRUPTCY COURT TO ALLOW SUCH VOTES AND ELECTIONS TO BE COUNTED.**

**YOU SHOULD NOT SEND THIS MASTER BALLOT TO ANY OF THE DEBTOR ENTITIES, DEBTORS' AGENTS (OTHER THAN THE SOLICITATION AGENT), OR DEBTORS' FINANCIAL OR LEGAL ADVISORS. IF SO SENT, THE MASTER BALLOT WILL NOT BE COUNTED IN CONNECTION WITH THE PLAN.**

**INSTRUCTIONS FOR COMPLETING MASTER BALLOTS**

1. This Master Ballot is subject to the solicitation and tabulation procedures attached hereto as Appendix B (the "***Tabulation Procedures***"), which the Debtors will seek to have approved by the Bankruptcy Court following commencement of the Chapter 11 Cases. In the event of any inconsistency between this Master Ballot and the Tabulation Procedures, the Tabulation Procedures shall control; *provided* that, to the extent required by Bankruptcy Rule 3018(b), any Master Ballot submitted prior to the Petition Date shall be tabulated in a manner consistent with these instructions.

2. The Debtors are soliciting the votes of Beneficial Holders of Class 3 Senior Notes Claims with respect to the Plan prior to the commencement of the Chapter 11 Cases. Capitalized terms used in this Master Ballot or in these instructions but not otherwise defined therein or herein shall have the meanings set forth in the Plan.

3. If the Chapter 11 Cases are commenced, the Bankruptcy Court may confirm the Plan and thereby bind Holders of Claims and Interests by the terms of the Plan. Please review the Disclosure Statement and Plan for more information.

4. You should immediately, and in no event later than five (5) business days after receipt, distribute the Beneficial Holder Ballots and the solicitation package to all Beneficial Holders of Class 3 Senior Notes Claims and take any action required to enable each such Beneficial Holder to timely vote the Class 3 Senior Notes Claims that it holds. If your customary practice is to forward the solicitation information to Beneficial Holders by a voting instruction form, email, telephone, or other customary means of communication, you are authorized to employ that method of communication in lieu of sending the paper Beneficial Holder Ballot and/or solicitation package. Any Beneficial Holder Ballot returned to you by a Beneficial Holder shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to the Solicitation Agent, a Master Ballot that reflects the vote of such Beneficial Holder by the Voting Deadline, or you otherwise validate the Beneficial Holder Ballot in a manner acceptable to the Solicitation Agent by the Voting Deadline. If your customary practice is to collect votes from your Beneficial Holder clients by voting instruction form, email, telephone, or other accepted methods of communication, you are authorized to collect the votes and Third-Party Release elections in that manner.

5. You may pre-validate the Beneficial Holder Ballots by (a) signing the Beneficial Holder Ballot and indicating on the Beneficial Holder Ballot the (i) name and The Depository Trust Company ("***DTC***") Participant Number of the Nominee, (ii) account number of the Beneficial Holder, and (iii) principal amount of the Class 3 Senior Notes Claims held by the Nominee for the Beneficial Holder, (b) applying a medallion guarantee stamp to the Beneficial Holder Ballot to certify the principal amount of the Class 3 Senior Notes Claims held by the Beneficial Holder as of the Voting Record Date, and (c) forwarding such Beneficial Holder Ballot, together with the solicitation package, including a preaddressed, postage-paid return envelope addressed to the Solicitation Agent, to the Beneficial Holder. The Beneficial Holder will be required to complete the pre-validated Beneficial Holder Ballot and return it directly to the Solicitation Agent so that it is actually received before the Voting Deadline.

6. Prior to entry of the Solicitation Procedures Order, you may transmit on a Master Ballot only the votes and Third-Party Release elections of Beneficial Holders that have certified to you that they are Eligible Holders. If you receive votes from Beneficial Holders that are Non-Eligible Holders, you should not transmit such votes until after the Bankruptcy Court has entered the Solicitation

Procedures Order, and any such vote transmitted prior to such entry will not be counted. If you submit a Master Ballot prior to entry of the Solicitation Procedures Order, you must submit a separate Master Ballot following such entry to transmit the votes of any Non-Eligible Holders, and you must not include on such subsequent Master Ballot any vote previously transmitted on behalf of the same Beneficial Holder unless such Beneficial Holder has submitted a superseding Beneficial Holder Ballot in accordance with these instructions. The Debtors will promptly notify Nominees of entry of the Solicitation Procedures Order.

7. With regard to any votes returned to you by a Beneficial Holder (whether through a Beneficial Holder Ballot or otherwise), you must compile and validate the votes, execute the Master Ballot, and deliver the Master Ballot to the Solicitation Agent so that it is **actually received** by the Solicitation Agent on or before the Voting Deadline. All Beneficial Holder Ballots (or customary communications for transmitting votes) returned by Beneficial Holders should be retained for inspection for at least one (1) year after the Effective Date.

8. Beneficial Holder votes tabulated on this Master Ballot will be applied to the applicable positions you hold as the holder of record at DTC, as of the Voting Record Date. Votes submitted pursuant to a Master Ballot will not be counted in excess of the amount of Class 3 Senior Notes Claims you hold at DTC as of the Voting Record Date.

9. If you submit conflicting votes or "over-votes" pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, the Solicitation Agent may use reasonable efforts to reconcile such discrepancies with you. To the extent any over-vote is not reconciled prior to the preparation of the Voting Report, the Solicitation Agent shall tabulate the votes to accept and to reject the Plan in the same proportion as the votes to accept and to reject the Plan submitted by you on the applicable Master Ballot or pre-validated Beneficial Holder Ballots, but only to the extent of your position as of the Voting Record Date.

10. The amount of each Beneficial Holder's Class 3 Senior Notes Claim for voting purposes will be the outstanding principal amount of the Senior Notes held by such Beneficial Holder, without regard to any accrued but unpaid interest, fees, or premiums, as reflected in the securities position report(s) from DTC as of the Voting Record Date, regardless of any amount set forth on this Master Ballot or any Beneficial Holder Ballot. In the event of any inconsistency, the securities position report(s) from DTC shall control.

11. Only Beneficial Holders as of the Voting Record Date may vote, and any transferee of a Class 3 Senior Notes Claim after the Voting Record Date is not entitled to vote on account of such Claim.

12. Each Beneficial Holder must make the same election with respect to the Third-Party Release for all Class 3 Senior Notes Claims it holds, including Claims held through more than one Nominee, account, CUSIP, or ISIN.

13. Consistent with Article 3.6 of the Plan, if no Holder of a Class 3 Senior Notes Claim eligible to vote submits a valid Beneficial Holder Ballot or Master Ballot, the Plan shall be presumed accepted by Class 3.

14. You may complete and deliver to the Solicitation Agent multiple Master Ballots. Votes reflected on multiple Master Ballots will be counted, except to the extent that they are duplicative of other Master Ballots. Any duplicate Master Ballots will be counted only once. If two or more Master Ballots are inconsistent, the last properly completed Master Ballot actually received on or before the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior

Master Ballot received by the Solicitation Agent. Likewise, if a Beneficial Holder submits to you more than one Beneficial Holder Ballot, (a) the last properly completed Beneficial Holder Ballot received in sufficient time to be included on your Master Ballot shall be deemed to reflect such Beneficial Holder's intent and supersede any prior Beneficial Holder Ballot submitted by such Beneficial Holder; and (b) you should complete the Master Ballot accordingly. With respect to pre-validated Beneficial Holder Ballots, the last properly completed Beneficial Holder Ballot actually received by the Solicitation Agent on or before the Voting Deadline shall control. Following the Voting Deadline, no Master Ballot or Beneficial Holder Ballot may be changed or revoked absent further order of the Bankruptcy Court.

15. The following Master Ballots and Beneficial Holder Ballots will not be counted: (a) any ballot that is illegible or contains insufficient information to permit the identification of the Nominee or Beneficial Holder; (b) any ballot actually received by the Solicitation Agent after the Voting Deadline, unless the Bankruptcy Court orders otherwise upon the request of the Debtors; (c) any ballot that is not properly signed; (d) any ballot not properly transmitted to the Solicitation Agent as required by the Tabulation Procedures, unless the Debtors determine otherwise; (e) any ballot submitted by or on behalf of a Person that did not hold a Class 3 Senior Notes Claim as of the Voting Record Date or that is otherwise not entitled to vote pursuant to the Plan; (f) any vote of a Non-Eligible Holder transmitted prior to entry of the Solicitation Procedures Order; (g) any ballot in a form other than the official form of ballot sent by the Solicitation Agent (provided that Beneficial Holder votes may be transmitted through the customary communications authorized in these instructions); (h) any ballot that attempts to partially accept and partially reject the Plan with respect to any Beneficial Holder; (i) any ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan; (j) any ballot superseded by a later, timely submitted valid ballot; (k) any ballot sent to the Debtors, the Debtors' agents or representatives (other than the Solicitation Agent), or the Debtors' financial or legal advisors; (l) any ballot that the Bankruptcy Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; (m) any ballot submitted by facsimile, telecopy, or other electronic means, other than a Master Ballot or pre-validated Beneficial Holder Ballot submitted by email in accordance with these instructions; and (n) any ballot not cast in accordance with the Tabulation Procedures and the procedures approved in the Solicitation Procedures Order.

16. Unless a Master Ballot or Beneficial Holder Ballot is received by the Solicitation Agent on or before the Voting Deadline, such ballot will be rejected as invalid and will not be counted as an acceptance or rejection of the Plan; provided, however, that the Debtors reserve the right to request the Bankruptcy Court to allow such ballot to be counted.

17. The method of delivery of the Master Ballot to the Solicitation Agent is at your election and risk. Except as otherwise provided herein, such delivery will be deemed made, regardless of the manner of delivery, only when the Solicitation Agent actually receives the properly completed Master Ballot. In all cases, Nominees should allow sufficient time to assure timely delivery of the Master Ballots.

18. The failure to vote does not constitute a vote to accept or reject the Plan. An objection to the confirmation of the Plan, even if timely served, does not constitute a vote to accept or reject the Plan.

19. Please be sure to sign and date your Master Ballot. You should indicate that you are signing a Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity and, if

required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

20. Please keep any records of Beneficial Holder Ballots, including records of the Beneficial Holders to whom pre-validated Beneficial Holder Ballots were delivered, for at least one year after the Effective Date (or such other date as is set by order of the Bankruptcy Court). You may be ordered to produce the Beneficial Holder Ballots to the Debtors or the Bankruptcy Court.

21. If you are both the Nominee and the Beneficial Holder of any of the Class 3 Senior Notes Claims and you wish to vote such Class 3 Senior Notes Claims, please return a Master Ballot for such Class 3 Senior Notes Claims.

22. Subject to any contrary order of the Bankruptcy Court, the Debtors may waive any defect or irregularity as to any particular ballot at any time, either before or after the Voting Deadline, other than any requirement imposed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Local Rules, and any such waiver shall be identified in the Voting Report.

23. The Solicitation Agent may contact Nominees that submit incomplete or otherwise deficient ballots to make a reasonable effort to cure such deficiencies; *provided* that neither the Debtors nor the Solicitation Agent is required to provide notification of defects or irregularities with respect to completion or delivery of ballots, nor shall any of them incur any liability for failure to provide such notification; *provided further* that the Voting Report shall identify each ballot that does not conform to the Tabulation Procedures or contains any irregularity and the Debtors' treatment thereof.

24. Unless waived by the Debtors, subject to contrary order of the Bankruptcy Court, any defects or irregularities in connection with deliveries of ballots must be cured prior to the Voting Deadline or such ballots will not be counted; *provided* that any such waiver may be made either before or after the Voting Deadline.

25. The Debtors will, upon written request, reimburse you for customary mailing and handling expenses you incur in forwarding the solicitation package and Beneficial Holder Ballot to the Beneficial Holders for which you are the Nominee. No fees or commissions or other remuneration will be payable to any broker, dealer, or other person for soliciting votes from Beneficial Holders with respect to the Plan.

26. This Master Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan, make an election with respect to the Third-Party Release, and/or make certifications with respect to the Beneficial Holder Ballots. Accordingly, at this time, Holders of Claims should not surrender certificates or instruments representing their Claims and you should not accept delivery of any such certificates or instruments surrendered together with a Beneficial Holder Ballot.

27. This Master Ballot does not constitute, and shall not be deemed to be: (a) a Proof of Claim or (b) an assertion or admission of a Claim.

28. In the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Master Ballot shall automatically

be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

29. The Plan may be modified before confirmation in accordance with its terms and the Consenting Senior Noteholder RSA. Any acceptance or rejection of the Plan will be deemed an acceptance or rejection of the Plan as so modified, unless such modification materially and adversely changes the treatment of the Claim of the applicable Beneficial Holder, in which case resolicitation will be required only to the extent required by section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

30. If you believe you have received the wrong ballot, you should contact the Solicitation Agent immediately (a) by email to MercerInquiries@stretto.com with a reference to "Mercer International Inc. Solicitation" in the subject line, or (b) by telephone at (833) 333-9454 (toll free) or +1 (650) 525-4708 (international, toll).

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS MASTER BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.**

**IN ORDER FOR THE VOTES TRANSMITTED BY THIS MASTER BALLOT TO BE COUNTED, THIS MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT BY THE VOTING DEADLINE, AS DIRECTED ABOVE.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CONTACT THE SOLICITATION AGENT BY EMAIL TO MERCERINQUIRIES@STRETTO.COM WITH A REFERENCE TO "MERCER INTERNATIONAL INC. SOLICITATION" IN THE SUBJECT LINE, OR BY TELEPHONE AT (833) 333-9454 (TOLL FREE) OR +1 (650) 525-4708 (INTERNATIONAL, TOLL). PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL RENDER YOU OR ANY OTHER ENTITY THE AGENT OF THE DEBTORS OR THE SOLICITATION AGENT OR AUTHORIZE YOU OR ANY OTHER ENTITY TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF ANY OF THE DEBTORS WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE DOCUMENTS ENCLOSED HEREWITH.**

**THE VOTING DEADLINE IS DECEMBER 10, 2026 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

[*Remainder of page left intentionally blank*]

**Item 1. Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

| | |
|---|---|
| ☐ | is a broker, dealer, bank, or other agent or nominee for the Beneficial Holders of the aggregate principal amount of Class 3 Senior Notes Claims listed in Items 2 and 3 below and is the registered or record holder of such Class 3 Senior Notes Claims; or |
| ☐ | is acting under a power of attorney and/or agency agreement (a copy of which will be provided upon request) granted by a broker, bank, or other nominee that is the registered or record holder of the aggregate principal amount of Class 3 Senior Notes Claims listed in Items 2 and 3 below; or |
| ☐ | has been granted a proxy (an original of which is attached hereto) from a broker, bank, other nominee, or a Beneficial Holder, that is the registered or record holder of the aggregate principal amount of Class 3 Senior Notes Claims listed in Items 2 and 3 below and, accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holders of the Class 3 Senior Notes Claims described in Items 2 and 3 below. |

| **A SEPARATE MASTER BALLOT MUST BE USED FOR EACH CUSIP / ISIN** |
|---|
| CUSIP / ISIN to which this Master Ballot relates (check one box): |
| ☐ 2028 Senior Notes (144A) – CUSIP 588056BC4 / ISIN US588056BC44 |
| ☐ 2028 Senior Notes (Reg S) – CUSIP U58839AL2 / ISIN USU58839AL29 |
| ☐ 2028 Senior Notes (Reg S) – CUSIP U58839AM0 / ISIN USU58839AM02 |
| ☐ 2029 Senior Notes (Public Secondary Market) – CUSIP 588056BB6 / ISIN US588056BB60 |
| ☐ 2029 Senior Notes (144A) – CUSIP 588056BA8 / ISIN US588056BA87 |
| ☐ 2029 Senior Notes (Reg S) – CUSIP U58839AK4 / ISIN USU58839AK46 |

A Nominee that holds Class 3 Senior Notes Claims under more than one CUSIP / ISIN must complete a separate Master Ballot for each CUSIP / ISIN.

**Items 2 and 3. Class 3 Senior Notes Claims Vote on Plan; Third-Party Release.**

The undersigned transmits the following votes of Beneficial Holders of Class 3 Senior Notes Claims and certifies that the following Beneficial Holders of Class 3 Senior Notes Claims, as identified by their respective customer account numbers set forth below, are Beneficial Holders of such securities as of the Voting Record Date and have delivered to the undersigned, as Nominee, Beneficial Holder Ballots (or voting instructions conveyed through the customary means authorized in these instructions) casting such votes. Please note that the votes cast below will be applied in the same manner against each applicable Debtor. The Plan, though proposed jointly, constitutes separate plans proposed by each of the Debtor entities. Your vote will count as votes for or against, as applicable, each plan proposed by each Debtor entity. Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table. Please note that each Beneficial Holder must vote all of such Beneficial Holder's Class 3 Senior Notes Claims to accept or reject the Plan and may not split such vote. Any Beneficial Holder Ballot that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted as a vote on the Plan. Beneficial Holders who did not cast a vote to accept or reject the Plan but checked the box to opt out of the Third-Party Release set forth in Article 10 of the Plan should be indicated by listing such Beneficial Holder's customer account number, leaving the accept and reject columns blank, and placing an "X" in the opt out column. (Please use additional sheets in the format below as necessary.)

| | Item 2 | | Item 3 |
|---|---|---|---|
| **Your Customer Account Number for Each Beneficial Holder of Class 3 Senior Notes Claims** | **Principal Amount Voted to ACCEPT the Plan** | **Principal Amount Voted to REJECT the Plan** | **OPT OUT OF THIRD-PARTY RELEASE** (if the box in Item 3 of the Beneficial Holder Ballot was completed, place an "X" in this column) |
| | | | |
| | | | |
| | | | |
| **TOTAL:** | | | |

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**PLAN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS**

**THE PLAN INCLUDES CERTAIN INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS. IF THE PLAN IS CONFIRMED AND CONSUMMATED, THEN, UNLESS A BENEFICIAL HOLDER OF A CLASS 3 SENIOR NOTES CLAIM VALIDLY OPTS OUT OF THE THIRD-PARTY RELEASE SO THAT SUCH ELECTION IS REFLECTED ON A MASTER BALLOT OR PRE-VALIDATED BENEFICIAL HOLDER BALLOT ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE, SUCH BENEFICIAL HOLDER WILL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED THE DEBTORS, THE REORGANIZED DEBTORS, AND THE RELEASED PARTIES AS PROVIDED IN ARTICLE 10 OF THE PLAN AND AS SET FORTH IN APPENDIX A, REGARDLESS OF WHETHER SUCH BENEFICIAL HOLDER VOTES TO ACCEPT OR REJECT THE PLAN, ABSTAINS FROM VOTING, OR DOES NOT RETURN A BALLOT AT ALL. BENEFICIAL HOLDERS THAT VALIDLY OPT OUT OF THE THIRD-PARTY RELEASE WILL NOT BE RELEASING PARTIES AND, TO THE EXTENT THEY WOULD OTHERWISE BE RELEASED PARTIES, WILL NOT RECEIVE THE BENEFIT OF THE RELEASES GRANTED BY THE RELEASING PARTIES UNDER ARTICLE 10 OF THE PLAN.**

An election to opt out of the Third-Party Release will be valid only if it is included on a Master Ballot, or on a pre-validated Beneficial Holder Ballot, that is **actually received** by the Solicitation Agent by the Voting Deadline. The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.

**Item 4. Certification as to Transcription of Information from Item 4 (Other Beneficial Holder Ballots Submitted) of the Beneficial Holder Ballots as to Class 3 Senior Notes Claims.**

The undersigned certifies that the undersigned has transcribed in the following table the information, if any, provided by the Beneficial Holders in Item 4 of each of the Beneficial Holders' Beneficial Holder Ballots, identifying any Class 3 Senior Notes Claims for which such Beneficial Holders have submitted ballots other than to the undersigned:

**TRANSCRIBE FROM ITEM 4 OF THE BENEFICIAL HOLDER BALLOTS:**

| Your Customer Account Number for Beneficial Holder / Name of Registered Holder or Other Nominee | DTC Participant Number | CUSIP / ISIN | Principal Amount of Claims Voted through Other Beneficial Holder Ballot | Plan Vote (Accept or Reject) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

**Item 5. Certifications.**

By signing this Master Ballot, the undersigned certifies that:

(1) it has received a copy of the Disclosure Statement, the ballots, and the solicitation package and has delivered the same to the Beneficial Holders listed on the ballots;

(2) it has received a completed and signed Beneficial Holder Ballot (or voting instructions conveyed through the customary means authorized in these instructions) from each Beneficial Holder listed in Items 2 and 3 of this Master Ballot;

(3) it is the registered or record holder of the securities being voted;

(4) it has been authorized by each such Beneficial Holder to vote on the Plan and/or make an election with respect to the Third-Party Release;

(5) it has properly disclosed: (i) the number of Beneficial Holders who completed Beneficial Holder Ballots; (ii) the respective amounts of the Class 3 Senior Notes Claims voted by each Beneficial Holder who completed a Beneficial Holder Ballot; (iii) each such Beneficial Holder's respective vote or election concerning the Plan or Third-Party Release, respectively; (iv) each such Beneficial Holder's certification as to Class 3 Senior Notes Claims voted; and (v) the customer account or other identification number for each such Beneficial Holder;

(6) each such Beneficial Holder has certified to the undersigned that it is eligible to vote on the Plan and/or make an election with respect to the Third-Party Release, including, solely with respect to any vote transmitted by this Master Ballot prior to the entry of the Solicitation Procedures Order, that such Beneficial Holder is an Eligible Holder, *i.e.*, (a) a "qualified institutional buyer" (as such term is defined in Rule 144A of the Securities Act), (b) an "accredited investor" (as such term is defined in Rule 501(a) of Regulation D of the Securities Act), or (c) for holders located outside the United States, a person other than a "U.S. person" (as defined in Rule 902(k) of Regulation S of the Securities Act) and not participating on behalf of or on account of a U.S. person; and, if this Master Ballot is submitted prior to entry of the Solicitation Procedures Order, this Master Ballot does not include the vote or Third-Party Release election of any Beneficial Holder that has not so certified; and it will maintain Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least one year after the Effective Date and disclose all such information to the Bankruptcy Court or the Debtors if so ordered;

(7) it acknowledges and understands that the solicitation is being made pursuant to the terms and conditions set forth in the Plan, the Disclosure Statement, and the other applicable solicitation materials;

(8) it acknowledges and agrees that the Debtors may make conforming changes to the Plan in accordance with the terms thereof and, following commencement of the Chapter 11 Cases, to the extent provided by Bankruptcy Rule 3019 as may be reasonably necessary and that the Debtors will not re-solicit acceptances or rejections of the Plan in the event of such conforming changes; and

(9) no other Master Ballots with respect to the same Class 3 Senior Notes Claims identified in Item 2 have been cast or, if any other Master Ballots have been cast with respect to such Class 3 Senior Notes Claims, then any such earlier received Master Ballots are hereby revoked.

**YOUR RECEIPT OF THIS MASTER BALLOT DOES NOT SIGNIFY THAT THE CLAIMS OF ANY BENEFICIAL HOLDER HAVE BEEN OR WILL BE ALLOWED. SUBJECT TO THE ALLOWANCE OF SENIOR NOTES CLAIMS UNDER THE PLAN, THE DEBTORS RESERVE ALL RIGHTS TO DISPUTE SUCH SENIOR NOTES CLAIMS.**

| | |
|---|---|
| Name of Nominee: | ______________________________ |
| Name of Proxy Holder or Agent for Nominee (if applicable): | ______________________________ |
| Nominee's DTC Participant Number: | ______________________________ |
| | |
| Signature: | ______________________________ |
| Name of Signatory: | ______________________________ |
| Title: | ______________________________ |
| Address: | ______________________________ |
| Telephone Number: | ______________________________ |
| Email Address: | ______________________________ |
| Date Completed: | ______________________________ |

This Master Ballot shall not constitute or be deemed a proof of claim or equity interest, an assertion of a claim or equity interest, or the allowance of a claim or equity interest.

**PLEASE COMPLETE, SIGN, AND DATE THIS MASTER BALLOT AND RETURN IT (WITH A SIGNATURE) *PROMPTLY* TO THE SOLICITATION AGENT IN THE ENVELOPE PROVIDED OR BY EMAIL BY ONE OF THE FOLLOWING METHODS:**

**1. Via electronic mail service to (preferred method):**

**TeamPublicSecurities@stretto.com**

**With reference to "Mercer International Inc. Solicitation" in the subject line.**

**2. In the envelope provided via first class mail, by overnight courier, or by hand delivery to:**

**Mercer International Inc.**
**Ballot Processing**
**c/o Stretto**
**410 Exchange, Suite 100**
**Irvine, CA 92602**

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS MASTER BALLOT ON OR BEFORE DECEMBER 10, 2026 AT 4:00 P.M. (PREVAILING CENTRAL TIME), AND IF THE VOTING DEADLINE IS NOT EXTENDED, THE VOTES AND ANY ELECTIONS TO OPT OUT OF THE THIRD-PARTY RELEASE TRANSMITTED BY THIS MASTER BALLOT WILL NOT BE COUNTED, EXCEPT THAT THE DEBTORS RESERVE THE RIGHT TO REQUEST THE BANKRUPTCY COURT TO ALLOW SUCH VOTES AND ELECTIONS TO BE COUNTED.**

[*Remainder of page left intentionally blank*]

# APPENDIX A

Release, Injunction, And Exculpation Provisions in the Plan[1]

[1] Capitalized terms used but not defined in this Appendix A have the meanings given to them in the Plan.

**A. Certain Relevant Definitions.**

"***Exculpated Parties***" means, each in its capacity as such, (a) each of the Debtors and the Estates; and (b) each independent director of the Debtors.

"***Related Parties***" means with respect to a Person, such Person's current and former affiliates, and such Person's and its current and former affiliates' current and former directors, managers, committee members, members of any governing body, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed or advised entities, accounts, or funds, current or former, and future associated entities, predecessors, participants, successors, and assigns (whether by operation of law or otherwise), subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, partners, employees, agents, fiduciaries, trustees, advisory board members, financial advisors or managers, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, investment managers, investment advisors, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such.

"***Released Parties***" means, collectively, solely in their capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Senior Notes Trustee; (e) each Backstop Party; (f) each member of the Majority Ad Hoc Group; and (g) with respect to each of the foregoing Persons in clauses (a) through (f), each of their Related Parties; *provided* that, a Person shall not be a Released Party if such Person (i) elects to opt out of the Releases set forth in this Plan or (ii) timely Files an objection to the Releases set forth in this Plan and such objection is not withdrawn or otherwise resolved before the Confirmation Order is entered.

"***Releases***" means, collectively, the releases set forth in Article 10.6 of the Plan.

"***Releasing Parties***" means, collectively, and in each case solely in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Senior Notes Trustee; (e) each Backstop Party; (f) each Holder of a Claim or Interest in a Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective ballot; (g) each Holder of a Claim or Interest in a Non-Voting Class that is deemed to accept this Plan that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective Release Opt-Out Form; and (h) each Related Party of each Entity in clauses (a) through (g), solely to the extent such Related Party (I) would be obligated to grant a release under principles of agency if it were so directed by the Entity in the foregoing clauses (a) through (f) to whom they are related or (II) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (g); *provided*, that any Holder of a Claim or Interest that timely objects to the Third Party Release, either through (x) a formal objection Filed on the docket of the Chapter 11 Cases or (y) an informal objection provided to the Debtors by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or via electronic mail, as applicable, or otherwise resolved before the Confirmation Order is entered, shall not be a "Releasing Party".

**B. Section 10.5 of the Plan – Permanent Injunction.**

**Except as otherwise expressly provided in this Plan or the Confirmation Order, from and after the Effective Date, all Persons and Entities are, to the fullest extent provided under section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined from (a) commencing or continuing, in any manner or in any place, any suit, action, or other proceeding of any kind; (b) enforcing, attaching, collecting, or recovering in any manner or means any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Lien or encumbrance; (d) asserting a right**

**of setoff or subrogation of any kind; or (e) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or with respect to any Claim, demand, liability, obligation, debt, right, Cause of Action, Interest, or remedy released or to be released, exculpated or to be exculpated, settled or to be settled, or discharged or to be discharged pursuant to this Plan or the Confirmation Order against any Person or Entity so released, discharged, or exculpated (or the property or estate of any Person or Entity so released, discharged, or exculpated). All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.**

**No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, Reorganized Debtors, Exculpated Parties, or Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of any Claim or Cause of Action, as applicable, subject to <u>Article X</u>, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Exculpated Party. At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Reorganized Debtor, Exculpated Party, Released Party or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action File a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Federal Rules of Civil Procedure, including Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.**

**C. Section 10.6 of the Plan – Releases.**

**(a) <u>Releases by the Debtors</u>.**

**To the fullest extent permitted by applicable law, and except as otherwise expressly set forth in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Debtors, the Reorganized Debtors, and the Estates, in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally, released and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (a) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (b) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor**

**Affiliates, (c) the subject matter of, or the transactions, events, circumstances, acts, or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (d) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including the Consenting Stakeholders), (e) the Senior Notes Documents, (f) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (g) intercompany transactions, (h) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements and related prepetition transactions, the Definitive Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (i) any contract, instrument, release, or other agreement or document created or entered into in connection with this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements, the Definitive Documents, the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of this Plan, or the administration and implementation of this Plan or the Confirmation Order, including the issuance or distribution of Securities pursuant to this Plan, (j) the distribution, including any disbursements made by a Distribution Agent, of property under this Plan, or any other related agreement, or (k) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; *provided*, that the Debtors do not release Claims or Causes of Action (x) that are of a commercial nature and arise in the ordinary course of business, such as accounts receivable and accounts payable on account of goods being sold and services being performed; (y) arising under an Executory Contract or Unexpired Lease that is assumed by the Debtors; or (z) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct. Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under this Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or the Restructuring Transactions, or any agreement, Claim, or obligation arising or assumed under this Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing this Plan; (b) a good-faith settlement and compromise of the Claims released by the Debtors; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.**

**(b) Releases by Holders of Claims and Interests.**

**To the fullest extent permitted by applicable law, and except as otherwise expressly set forth in this Plan or the Confirmation Order, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party, in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and**

**unconditionally, released and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (a) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (b) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (c) the subject matter of, or the transactions, events, circumstances, acts, or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (d) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including the Consenting Stakeholders), (e) the Senior Notes Documents, (f) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (g) intercompany transactions, (h) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements and related prepetition transactions, the Definitive Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (i) any contract, instrument, release, or other agreement or document created or entered into in connection with this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements, the Definitive Documents, or the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, or the administration and implementation of this Plan or the Confirmation Order, including the issuance or distribution of Securities pursuant to this Plan, (j) the distribution, including any disbursements made by a Distribution Agent, of property under this Plan, or any other related agreement, or (k) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; *provided*, that the Releasing Parties do not release Claims or Causes of Action arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct. Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under this Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or the Restructuring Transactions, or any agreement, Claim, or obligation arising or assumed under this Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of this Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing this Plan; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.**

**D. Section 10.7 of the Plan – Exculpation.**

**Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any Claims or Causes of Action for any act taken or omitted to be taken between the Petition Date and the Effective Date in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the Confirmation or consummation (as applicable) of this Plan, the Restructuring Support Agreements and related prepetition transactions, and the Disclosure Statement including any disbursements made by a Distribution Agent in connection with this Plan, the Disclosure Statement, the Definitive Documents, the Corporate Governance Documents, the Senior Notes Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with this Plan, or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement, or Confirmation or consummation of this Plan; *provided*, that the foregoing provisions of this exculpation shall not operate to waive or release: (a) any Claims or Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; or (b) the rights of any Person or Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan, or assumed pursuant to this Plan or Final Order of the Bankruptcy Court; *provided further*, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions, or inactions.**

**The Exculpated Parties have, and upon consummation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.**

**The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or Entity. For the avoidance of doubt and notwithstanding anything else herein, the foregoing exculpation shall be limited to Persons that served as Estate fiduciaries during the Chapter 11 Cases.**

# **APPENDIX B**

Tabulation Procedures

## Tabulation Procedures

These tabulation procedures (the "***Tabulation Procedures***") govern the tabulation of Ballots submitted by Holders of Claims in Class 3 (Senior Notes Claims) and Holders of Interests in Class 8 (Existing Equity Interests) (together, the "***Voting Classes***") and Release Opt-Out Forms submitted by Holders of Claims and Interests in Class 1 (Secured Claims), Class 2 (Other Priority Claims), Class 4 (General Unsecured Claims), and Class 7 (510(b) Claims). The Debtors commenced the solicitation of votes from Eligible Holders of Class 3 Senior Notes Claims before the Petition Date, and these Tabulation Procedures apply to such prepetition solicitation to the extent consistent with sections 1125(g) and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018(b). Holders in the Voting Classes that are Non-Eligible Holders may vote only following entry of the order (the "***Solicitation Procedures Order***"), and the distribution of Release Opt-Out Forms to the Holders of Claims in Class 1 (Secured Claims), Class 2 (Other Priority Claims), Class 4 (General Unsecured Claims), and Class 7 (510(b) Claims) will commence following entry of the Solicitation Procedures Order. Holders of Class 8 Existing Equity Interests will be solicited following entry of the Solicitation Procedures Order. Capitalized terms used but not defined herein have the meanings given to them in the Solicitation Procedures Order, the Motion,[1] or the Plan, as applicable.

### 1. Voting Record Date.

The Voting Record Date for Holders of Senior Notes Claims in Class 3 and Holders of Existing Equity Interests in Class 8 is November 2, 2026.

### 2. Voting Deadline.

To be counted, a Ballot must be properly executed, completed, and delivered so that it is actually received by the Solicitation Agent no later than December 10, 2026 at 4:00 p.m. (prevailing Central Time) (the "***Voting Deadline***"), which the Debtors may extend in their discretion, subject to the terms of the Consenting Senior Noteholder RSA. The deadline to submit a Release Opt-Out Form is the Voting Deadline. Beneficial Holders voting through a Nominee (other than through a pre-validated Ballot) must return their Ballots or voting instructions to their Nominee with sufficient time for the Nominee to process them and deliver a Master Ballot to the Solicitation Agent by the Voting Deadline, and Beneficial Holders that receive a pre-validated Ballot must return it directly to the Solicitation Agent so that it is actually received by the Voting Deadline.

### 3. Methods of Submission.

Registered Holder Ballots and Release Opt-Out Forms may be submitted (a) in hard copy by regular mail, overnight courier, or hand delivery to the address set forth in the applicable Ballot or Release Opt-Out Form, or (b) through the E-Ballot Portal. Beneficial Holder Ballots that are not pre-validated must be returned to the applicable Nominee in accordance with such Nominee's instructions and customary practices. Master Ballots and pre-validated Ballots may be submitted in hard copy as set forth in clause (a) above or by email of a PDF copy to the address set forth in the applicable Ballot, but may not be submitted through the E-Ballot Portal. Except as provided in the preceding sentences, Ballots and Release Opt-Out Forms submitted by email, facsimile, or any other electronic means will not be counted. The encrypted

[1] The "***Motion***" means the *Emergency Motion of Debtors for Entry of an Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Approving (A) Solicitation Procedures, (B) Form and Manner of Notice of Commencement, Combined Hearing, and Objection Deadline, and (C) Rights Offering Procedures and Related Forms, and Authorizing Commencement of the Rights Offering; (III) Fixing Deadline to Object to Disclosure Statement and Plan; (IV) Conditionally (A) Directing the United States Trustee Not to Convene Section 341 Meeting of Creditors and (B) Waiving Requirement to File Statements of Financial Affairs and Schedules of Assets and Liabilities; (V) Conditionally Approving the Disclosure Statement; and (VI) Granting Related Relief.*

ballot data and audit trail created by electronic submission through the E-Ballot Portal shall become part of the record of any Ballot or Release Opt-Out Form submitted in this manner, and the Holder's electronic signature will be deemed immediately legally valid and effective. A Holder that submits a Ballot through the E-Ballot Portal should not also submit a paper Ballot on account of the same Claim or Interest. The method of delivery is at the election and risk of each Holder, and a Ballot or Release Opt-Out Form will be deemed delivered only when the Solicitation Agent actually receives it.

**4. Ballots Not Counted.**

Subject to Section 8 below, the following Ballots will not be counted: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder; (b) any Ballot actually received by the Solicitation Agent after the Voting Deadline, unless the Court orders otherwise upon request of the Debtors; (c) any Ballot that does not contain a signature (provided that a signature collected electronically through the E-Ballot Portal will be deemed a valid signature); (d) any Ballot not properly transmitted to the Solicitation Agent as required by these Tabulation Procedures, unless the Debtors determine otherwise; (e) any Ballot submitted by a Person that did not hold a Claim or Interest in a Voting Class as of the Voting Record Date or that is otherwise not entitled to vote pursuant to the Plan; (f) any Ballot submitted by or on behalf of a Non-Eligible Holder before entry of the Solicitation Procedures Order (and any Holder submitting a Ballot before entry of the Solicitation Procedures Order shall be deemed to have certified that it is an Eligible Holder); (g) any form of ballot other than the official form of Ballot sent by the Solicitation Agent (provided that votes transmitted by Beneficial Holders to their Nominees through customary communications as permitted by the Ballots may be reflected on a Master Ballot); (h) any Ballot that partially rejects and partially accepts the Plan; (i) any Ballot that is properly completed, executed, and timely returned but is not marked to either accept or reject the Plan, or is marked to both accept and reject the Plan; (j) any Ballot superseded by a later, timely submitted valid Ballot; (k) any Ballot sent to the Debtors, the Debtors' agents or representatives (other than the Solicitation Agent), or the Debtors' financial or legal advisors; (l) any Ballot cast by a Person that the Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; and (m) any Ballot not cast in accordance with these Tabulation Procedures and the procedures approved in the Solicitation Procedures Order.

**5. General Tabulation Rules.**

Whenever a Holder casts more than one Ballot voting the same Claim or Interest before the Voting Deadline, the last properly completed Ballot actually received on or before the Voting Deadline shall be deemed to reflect such Holder's intent and shall supersede any previously received Ballot. With respect to Beneficial Holder Ballots submitted through a Nominee (other than pre-validated Ballots), the last such Ballot received by the Nominee in sufficient time to be included on its Master Ballot shall control. Any duplicate Ballots will be counted only once.

Following the Voting Deadline, no Ballot may be changed or revoked, absent further order of the Court.

If a Holder simultaneously casts inconsistent Ballots with respect to the same Claim or Interest, such Ballots will not be counted.

Holders must vote all of their Claims or Interests within a particular Class either to accept or reject the Plan and may not split their votes.

The amount of a Claim or Interest for voting purposes shall be (i) for Class 3, the outstanding principal amount of the applicable Senior Notes held by each Beneficial Holder through its Nominee, without regard to any accrued but unpaid interest, fees, or premiums, as reflected in the securities position report(s) from

DTC as of the Voting Record Date, and (ii) for Class 8, the number of shares reflected on the Debtors' stock register maintained by the transfer agent or the securities position report(s) from DTC as of the Voting Record Date, in each case regardless of any amount set forth on a Ballot. In the event of any inconsistency, the securities position report(s) from DTC shall control for positions held through DTC.

A Ballot does not constitute, and shall not be deemed to be, a proof of claim or an assertion or admission of a Claim or Interest.

Only Holders as of the Voting Record Date may vote, and any transferee of a Claim or Interest after the Voting Record Date shall not be entitled to vote on account of such Claim or Interest.

Any Person signing a Ballot in a representative capacity (including as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation) must indicate such capacity and, if requested by the Debtors or the Solicitation Agent, submit proper evidence of authority to so act.

Consistent with Article 3.6 of the Plan, if no Holder in a Voting Class eligible to vote submits a valid Ballot, the Plan shall be presumed accepted by such Voting Class.

**6. Nominees, Master Ballots, and Overvotes.**

Nominees may (a) forward the Solicitation Package to Beneficial Holders no later than 5 business days after receipt and collect and tabulate their votes on a Master Ballot, or (b) pre-validate a Beneficial Holder Ballot and forward it to the Beneficial Holder for return directly to the Solicitation Agent, and may collect votes in accordance with their customary practices, including through voting instruction forms or electronic means. Nominees electing option (a) must deliver the Master Ballot so that it is actually received by the Solicitation Agent by the Voting Deadline.

Votes cast by Beneficial Holders through Nominees will be applied to the positions held by such Nominees as of the Voting Record Date, as evidenced by the applicable securities position report(s) from DTC.

Votes submitted by a Nominee will not be counted in excess of such Nominee's position as of the Voting Record Date.

If conflicting votes or over-votes are submitted by a Nominee, the Solicitation Agent may use reasonable efforts to reconcile such discrepancies with the Nominee.

To the extent any over-vote cannot be reconciled, the Solicitation Agent will tabulate votes to accept and to reject the Plan in the same proportion as the votes submitted by the Nominee on the applicable Master Ballot or pre-validated Ballots, but only to the extent of such Nominee's position as of the Voting Record Date. A Holder (including a Registered Holder or Beneficial Holder) that holds through more than one Nominee, account, or CUSIP must execute and return a separate Ballot for each Nominee, account, or CUSIP, must vote all such Claims or Interests in the same manner, and, in the case of a Beneficial Holder, must certify on each Ballot all other Ballots submitted in the same Voting Class.

For purposes of determining whether the numerosity requirement of section 1126(c) of the Bankruptcy Code has been satisfied, the Solicitation Agent will treat each Beneficial Holder as a single Holder, to the extent it is able to identify such Beneficial Holder's Ballots submitted through multiple Nominees or accounts.

**7. Release Opt-Out Forms.**

Subject to Section 8 below, a Release Opt-Out Form will be counted only if it is properly completed, executed, and actually received by the Solicitation Agent on or before the Voting Deadline in accordance with Section 3 above. The following Release Opt-Out Forms will not be counted: (a) any Release Opt-Out Form that is illegible or contains insufficient information to permit the identification of the Holder of the Claim or Interest; (b) any Release Opt-Out Form actually received by the Solicitation Agent after the Voting Deadline, unless the Court orders otherwise upon request of the Debtors; (c) any Release Opt-Out Form submitted by or on behalf of a Person that is not entitled to opt out of the Third-Party Release under the Restructuring Support Agreements; (d) any Release Opt-Out Form sent to the Debtors, the Debtors' agents or representatives (other than the Solicitation Agent), or the Debtors' financial or legal advisors; (e) any Release Opt-Out Form transmitted by facsimile, email, or other electronic means other than as permitted by these Tabulation Procedures; (f) any unsigned Release Opt-Out Form (provided that a signature collected electronically through the E-Ballot Portal will be deemed a valid signature); (g) any Release Opt-Out Form submitted without making the opt-out election; and (h) any Release Opt-Out Form not completed in accordance with these Tabulation Procedures and the procedures approved in the Solicitation Procedures Order.

If multiple Release Opt-Out Forms are received from the same Holder with respect to the same Claim or Interest before the Voting Deadline, the last properly completed Release Opt-Out Form timely received will supersede and revoke any earlier received Release Opt-Out Form. A Holder must make the same election with respect to all Claims or Interests held by such Holder in a single Class. An opt-out election made on a properly completed and timely submitted Ballot will be given the same effect as an election made on a Release Opt-Out Form.

A Release Opt-Out Form is not a letter of transmittal and may not be used for any purpose other than to opt out of the Third-Party Release, and does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

**8. Waiver of Defects; Voting Report.**

Subject to a contrary order of the Court, the Debtors may waive any defects or irregularities as to any particular Ballot or Release Opt-Out Form at any time, either before or after the Voting Deadline, other than any requirement imposed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Local Rules. The Debtors or the Solicitation Agent, as applicable, shall determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots, which determination, absent a contrary order of the Court, shall be final and binding. The Solicitation Agent may contact parties who submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies; *provided* that neither the Debtors nor the Solicitation Agent is required to provide notification of defects or irregularities with respect to completion or delivery of Ballots, nor shall any of them incur any liability for failure to provide such notification. The Solicitation Agent will file a voting report (the "***Voting Report***") no later than December 14, 2026, or 2 business days before any adjourned Combined Hearing, which shall, among other things, (a) identify each Ballot that does not conform to these Tabulation Procedures or contains any irregularity, the Debtors' treatment of each such Ballot, and any waivers made under this section, and (b) report the Release Opt-Out elections received on Ballots and Release Opt-Out Forms.

**9. Retention of Ballots.**

The Solicitation Agent shall retain all paper copies of Ballots and all solicitation-related correspondence for 2 years following the Effective Date, whereupon the Solicitation Agent is authorized to destroy or

otherwise dispose of all paper copies of Ballots, printed solicitation materials (including unused copies of the Solicitation Package), and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such 2-year period.

## EXHIBIT 6-A

Form of Class 8 Beneficial Holder Ballot

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| MERCER INTERNATIONAL INC., *et al.*,[1] | : | Case No. 26-90829 (CML) |
| Debtors. | : | (Jointly Administered) |

**BALLOT FOR BENEFICIAL HOLDERS**
**OF EXISTING EQUITY INTERESTS IN CLASS 8**
**FOR VOTING TO ACCEPT OR REJECT THE JOINT**
**PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF**
**MERCER INTERNATIONAL INC. AND ITS DEBTOR AFFILIATE**

**The voting deadline to accept or reject the Plan is 4:00 p.m. (prevailing Central Time), on December 10, 2026 (the "*Voting Deadline*"), unless extended by the Debtors.**

**Please be advised that Article 10 of the Plan contains release, exculpation, and injunction provisions. These provisions are included in Appendix A to this Beneficial Holder Ballot. You are advised to review and consider the Plan carefully because your rights might be affected thereunder even if you abstain from voting. If you do not validly opt out of the Third-Party Release by checking the box in Item 3 and returning this Beneficial Holder Ballot (or otherwise conveying such election in accordance with your Nominee's instructions) so that such election is reflected on a Master Ballot or a pre-validated Beneficial Holder Ballot actually received by the Solicitation Agent by the Voting Deadline, you will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Debtors, the Reorganized Debtors, and the Released Parties as provided in Article 10.6(b) of the Plan (the "*Third-Party Release*"). This is the case whether you vote to accept or reject the Plan, abstain from voting, or do not return a ballot at all. If you opt out of the Third-Party Release, you will not be a Releasing Party and, to the extent you would otherwise be a Released Party, you will not receive the benefit of the releases granted by the Releasing Parties under Article 10 of the Plan. In addition, any Holder that timely objects to the Third-Party Release, either through a formal objection Filed on the docket of the Chapter 11 Cases or an informal objection provided to the Debtors by electronic mail, which objection is not withdrawn or otherwise resolved before entry of the Confirmation Order, will not be a Releasing Party.**

**Please be advised that your decision to opt out does not affect the amount of distribution you will receive under the Plan.**

[1] The Debtors in the Chapter 11 Cases, together with the last four digits of each Debtor's taxpayer identification number, are: Mercer International Inc. (6945) and Mercer International (Texas) LLC (N/A). The Debtors' mailing address for purposes of the Chapter 11 Cases is: Suite 1120, 700 West Pender Street, Vancouver, British Columbia V6C 1G8.

The Debtors have sent this ballot (the "***Beneficial Holder Ballot***") to you to solicit your vote to accept or reject the *Joint Prepackaged Chapter 11 Plan of Reorganization of Mercer International Inc. and Its Debtor Affiliate*, dated November 9, 2026 (as may be amended, modified, or supplemented from time to time, the "***Plan***").[2] The Plan is attached as Exhibit A to the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Mercer International Inc. and Its Debtor Affiliate*, dated November 9, 2026 (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***"), which accompanies this Beneficial Holder Ballot and is available on the Solicitation Agent's website. The Disclosure Statement provides information to assist you in deciding how to vote on the Plan. The Solicitation Agent's website contains important information, hearing dates, other key deadlines, as well as the docket for the Chapter 11 Cases (as defined below).

As a Beneficial Holder, you should cast your vote to accept or reject the Plan in accordance with instructions received from the bank, broker, or other financial institution that holds your Existing Equity Interests "in street name" on your behalf (your "***Nominee***") through the use of this Beneficial Holder Ballot or otherwise as directed by your Nominee. You should review the Disclosure Statement and Plan before you vote, and you may wish to seek legal advice concerning your classification and treatment under the Plan.

If you have not received or wish to obtain additional copies of the Disclosure Statement, please contact the Debtors' Solicitation Agent, Stretto, Inc. (the "***Solicitation Agent***"), (a) by writing to Mercer International Inc., c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, (b) by email at MercerInquiries@stretto.com (with "Mercer International Inc. Solicitation" in the subject line), or (c) by telephone at (833) 333-9454 (toll free) or +1 (650) 525-4708 (international, toll). Please be advised that the Solicitation Agent cannot provide legal advice. If you have any questions regarding how to properly complete this Beneficial Holder Ballot, the voting procedures, or the voting instructions you received from your Nominee, please contact your Nominee.

You are receiving this Beneficial Holder Ballot because you are a Beneficial Holder,[3] as of November 2, 2026 (the "***Voting Record Date***"), of any Existing Equity Interests. "***Existing Equity Interests***" means any and all Interests in Mercer International Inc. ("***Mercer***") (other than any Existing Unexercised Equity Interests) as of immediately before the Effective Date.

The Debtors' cases (the "***Chapter 11 Cases***") under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") are pending before the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "***Bankruptcy Court***"). Holders of Existing Equity Interests were not solicited before the Petition Date, and this solicitation is being conducted pursuant to the order of the Bankruptcy Court approving the solicitation procedures (the "***Solicitation Procedures Order***"). The Plan may be confirmed by the Bankruptcy Court and thereby made binding on you if: (a) it is accepted by at least two-thirds in amount of the Existing Equity Interests in Class 8 that actually vote on the Plan; and (b) the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, Class 8 and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court and the Effective Date occurs, the Plan will be binding on all Holders of Existing Equity Interests whether or not a Holder of Existing Equity Interests returns a ballot, votes to reject the Plan, or does not vote.

---

2 Capitalized but undefined terms herein shall have the meanings ascribed to them in the Plan.

3 A "***Beneficial Holder***" means a beneficial holder of Class 8 Existing Equity Interests as of the Voting Record Date, as reflected in the records maintained by the applicable Nominee holding the Class 8 Existing Equity Interests through The Depository Trust Company.

All pleadings and notices relating to the Chapter 11 Cases that are filed with the Bankruptcy Court (including notices of the date and time of hearings) are available for review and download, free of charge, on the case information website of the Solicitation Agent at https://cases.stretto.com/Mercer.

This Beneficial Holder Ballot is for Existing Equity Interests in Class 8. If you hold Claims or Interests in more than one class, you will receive a separate ballot for each class in which you are entitled to vote. Unless otherwise instructed by your Nominee, in order for your vote to count, your Nominee must receive your vote, whether by this Beneficial Holder Ballot or otherwise according to your Nominee's voting instructions, in sufficient time for your Nominee to include your vote on a master ballot (a "***Master Ballot***") that must be actually received by the Solicitation Agent on or before the Voting Deadline. Please allow sufficient time for your vote to be included on the Master Ballot completed by your Nominee. If a Master Ballot recording your vote is not received by the Solicitation Agent by the Voting Deadline, and if the Voting Deadline is not extended, your vote will not count.

Your Nominee may choose to "pre-validate" your Beneficial Holder Ballot by signing the Beneficial Holder Ballot and adding (a) the Nominee's DTC participant number and a medallion guarantee stamp confirming the number of shares of your Class 8 Existing Equity Interests as of the Voting Record Date, (b) the Beneficial Holder's account number, and (c) the number of shares of Class 8 Existing Equity Interests held by the Beneficial Holder as of the Voting Record Date, and forwarding the pre-validated Beneficial Holder Ballot to you with instructions to submit your pre-validated Beneficial Holder Ballot directly to the Solicitation Agent on or before the Voting Deadline. For purposes of tabulating votes, the number of shares of Class 8 Existing Equity Interests voted by each Nominee or Beneficial Holder will be the number of shares reflected on the securities position report(s) from DTC as of the Voting Record Date, regardless of any amount set forth on this Beneficial Holder Ballot.

Your receipt of this Beneficial Holder Ballot does not signify that you are the Beneficial Holder or that a Beneficial Holder's Class 8 Existing Equity Interests have been or will be Allowed. This Beneficial Holder Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of or distribution on account of Class 8 Existing Equity Interests. The Debtors reserve all rights to dispute such Interests.

This Beneficial Holder Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than (a) to cast a vote to accept or reject the Plan and/or (b) to make an election with respect to the Third-Party Release. Accordingly, at this time, Holders of Existing Equity Interests should not surrender stock certificates or instruments representing or evidencing their Existing Equity Interests, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates or instruments surrendered together with a Beneficial Holder Ballot. If you believe you have received this Beneficial Holder Ballot in error, or if you believe that you have received the wrong ballot, please contact your Nominee or the Solicitation Agent immediately.

If you have any questions regarding this Beneficial Holder Ballot or how to properly complete this Beneficial Holder Ballot, please contact your Nominee for further assistance.

[*Remainder of page left intentionally blank*]

**IMPORTANT NOTICE REGARDING TREATMENT FOR HOLDERS OF CLASS 8 EXISTING EQUITY INTERESTS**

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed, and the Effective Date occurs, then each Holder of an Allowed Existing Equity Interest shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Existing Equity Interest, its Pro Rata Share of: (a) 8.5% of the New Common Stock, subject to dilution by the Management Incentive Plan and the New Convertible Preferred Stock (if converted); and (b) 3.5% of the New Convertible Preferred Stock. On the Effective Date, all Existing Equity Interests shall be cancelled, released, extinguished, and of no further force and effect.

Distributions of Plan Securities to Holders of Allowed Existing Equity Interests shall be made through the facilities of DTC in accordance with DTC's customary practices, except as otherwise agreed by the Debtors (or the Reorganized Debtors) and the Required Consenting Senior Noteholders.

[*Remainder of page left intentionally blank*]

**IMPORTANT NOTICE REGARDING TREATMENT FOR HOLDERS OF CLASS 8 EXISTING EQUITY INTERESTS**

**IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, IT WILL BE BINDING ON ALL HOLDERS OF CLASS 8 EXISTING EQUITY INTERESTS WHETHER OR NOT THEY VOTE. PLEASE BE ADVISED THAT IF THE PLAN IS CONFIRMED AND CONSUMMATED, HOLDERS OF CLASS 8 EXISTING EQUITY INTERESTS WILL BE BOUND BY THE INJUNCTION AND EXCULPATION PROVISIONS CONTAINED IN ARTICLE 10 OF THE PLAN AND SET FORTH IN APPENDIX A. EACH HOLDER OF A CLASS 8 EXISTING EQUITY INTEREST THAT DOES NOT VALIDLY OPT OUT OF THE THIRD-PARTY RELEASE BY CHECKING THE BOX IN ITEM 3 AND RETURNING THIS BENEFICIAL HOLDER BALLOT (OR OTHERWISE CONVEYING SUCH ELECTION IN ACCORDANCE WITH ITS NOMINEE'S INSTRUCTIONS) SO THAT IT IS REFLECTED ON A MASTER BALLOT OR PRE-VALIDATED BENEFICIAL HOLDER BALLOT ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE, WILL BE DEEMED TO HAVE GRANTED THE THIRD-PARTY RELEASE, WHETHER SUCH BENEFICIAL HOLDER VOTES TO ACCEPT OR REJECT THE PLAN, ABSTAINS FROM VOTING, OR DOES NOT RETURN A BALLOT AT ALL. BENEFICIAL HOLDERS THAT VALIDLY OPT OUT OF THE THIRD-PARTY RELEASE WILL NOT BE RELEASING PARTIES AND, TO THE EXTENT THEY WOULD OTHERWISE BE RELEASED PARTIES, WILL NOT RECEIVE THE BENEFIT OF THE RELEASES GRANTED BY THE RELEASING PARTIES UNDER ARTICLE 10 OF THE PLAN. IN ADDITION, ANY HOLDER THAT TIMELY OBJECTS TO THE THIRD-PARTY RELEASE, EITHER THROUGH A FORMAL OBJECTION FILED ON THE DOCKET OF THE CHAPTER 11 CASES OR AN INFORMAL OBJECTION PROVIDED TO THE DEBTORS BY ELECTRONIC MAIL, WHICH OBJECTION IS NOT WITHDRAWN OR OTHERWISE RESOLVED BEFORE ENTRY OF THE CONFIRMATION ORDER, WILL NOT BE A RELEASING PARTY.**

**IMPORTANT**

**YOU SHOULD CAREFULLY REVIEW THE DISCLOSURE STATEMENT AND PLAN BEFORE YOU VOTE. YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR INTERESTS UNDER THE PLAN.**

**THE SOLICITATION AGENT IS NOT AUTHORIZED TO (AND WILL NOT) PROVIDE LEGAL ADVICE.**

**VOTING RECORD DATE: NOVEMBER 2, 2026**

**VOTING DEADLINE: 4:00 P.M. PREVAILING CENTRAL TIME ON DECEMBER 10, 2026 (UNLESS EXTENDED BY THE DEBTORS)**

**IN ORDER FOR YOUR VOTE TO COUNT, YOU MUST SUBMIT THIS BENEFICIAL HOLDER BALLOT (OR OTHERWISE CONVEY YOUR VOTE AND THE REQUIRED INFORMATION REQUESTED ON THIS BENEFICIAL HOLDER BALLOT) TO YOUR NOMINEE WITH SUFFICIENT TIME FOR YOUR NOMINEE TO RECEIVE YOUR VOTE, COMPLETE THE MASTER BALLOT AND RETURN THE MASTER BALLOT TO THE SOLICITATION AGENT, SUCH THAT THE MASTER BALLOT IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE, UNLESS SUCH TIME IS**

**EXTENDED BY THE DEBTORS. IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE THE MASTER BALLOT INDICATING YOUR VOTE CAST ON YOUR BENEFICIAL HOLDER BALLOT (OR OTHERWISE IN ACCORDANCE WITH YOUR NOMINEE'S INSTRUCTIONS) BY THE VOTING DEADLINE, YOUR VOTE WILL NOT BE COUNTED, EXCEPT AS MAY BE ALLOWED BY THE BANKRUPTCY COURT AT THE REQUEST OF THE DEBTORS, AND ANY ELECTION TO OPT OUT OF THE THIRD-PARTY RELEASES WILL NOT BE VALID.**

**IF YOUR NOMINEE CHOSE TO SEND YOU A PRE-VALIDATED BENEFICIAL HOLDER BALLOT, YOUR NOMINEE WILL HAVE ALREADY COMPLETED ITEM 6 BELOW (INCLUDING SPECIFYING THE NOMINEE'S DTC PARTICIPANT NUMBER) AND EXECUTED THIS BENEFICIAL HOLDER BALLOT ON YOUR BEHALF. IF YOU RECEIVED A PRE-VALIDATED BALLOT, PLEASE COMPLETE THE REMAINING ITEMS ON THE BENEFICIAL HOLDER BALLOT AND RETURN THE BENEFICIAL HOLDER BALLOT DIRECTLY TO THE SOLICITATION AGENT BY NO LATER THAN THE VOTING DEADLINE USING THE RETURN ENVELOPE PROVIDED IN THE SOLICITATION PACKAGE. IF NO RETURN ENVELOPE WAS PROVIDED, YOU SHOULD CONTACT THE SOLICITATION AGENT FOR INSTRUCTIONS. YOU SHOULD NOT SEND YOUR BALLOT TO ANY OF THE DEBTOR ENTITIES, DEBTORS' AGENTS (OTHER THAN THE SOLICITATION AGENT), OR DEBTORS' FINANCIAL OR LEGAL ADVISORS. IF SO SENT, THE BALLOT WILL NOT BE COUNTED IN CONNECTION WITH THE PLAN. IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, IT WILL BE BINDING ON YOU WHETHER OR NOT YOU VOTE.**

**PRE-VALIDATED BENEFICIAL HOLDER BALLOTS MAY BE RETURNED (A) BY FIRST CLASS MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO: MERCER INTERNATIONAL INC. BALLOT PROCESSING, C/O STRETTO, 410 EXCHANGE, SUITE 100, IRVINE, CA 92602; OR (B) BY EMAIL OF A PDF COPY TO MERCERINQUIRIES@STRETTO.COM (WITH "MERCER INTERNATIONAL INC. SOLICITATION" IN THE SUBJECT LINE). IF YOU SUBMIT YOUR PRE-VALIDATED BENEFICIAL HOLDER BALLOT BY EMAIL, YOU SHOULD NOT ALSO RETURN A HARD COPY. PRE-VALIDATED BENEFICIAL HOLDER BALLOTS WILL NOT BE ACCEPTED BY TELECOPY, FACSIMILE, OR OTHER ELECTRONIC MEANS OF TRANSMISSION, INCLUDING VIA ANY ONLINE PORTAL FOR ELECTRONIC SUBMISSION OF BALLOTS MAINTAINED BY THE SOLICITATION AGENT. IF YOU DO NOT KNOW WHETHER YOUR NOMINEE PROVIDED YOU WITH A PRE-VALIDATED BENEFICIAL HOLDER BALLOT, YOU SHOULD CONTACT YOUR NOMINEE.**

[*Remainder of page left intentionally blank*]

## BENEFICIAL HOLDER BALLOT INSTRUCTIONS

1. This Beneficial Holder Ballot is subject to the tabulation procedures attached hereto as Appendix B (the "***Tabulation Procedures***"), which were approved by the Bankruptcy Court pursuant to the Solicitation Procedures Order. In the event of any inconsistency between this Beneficial Holder Ballot and the Tabulation Procedures, the Tabulation Procedures shall control.

2. Complete Items 1 and 2.

3. If you wish to opt out of the Third-Party Release, regardless of whether you vote to accept or reject the Plan or abstain from voting, complete Item 3 by checking the box. Unless you check the box in Item 3 and return this Beneficial Holder Ballot (or otherwise convey your election in accordance with your Nominee's instructions), you will be deemed to have granted the Third-Party Release, whether you vote to accept or reject the Plan, abstain, or do not return a ballot at all.

4. Complete Item 4, if applicable.

5. Review the certification contained in Item 5.

6. Sign and date the Beneficial Holder Ballot and fill out the other required information (or otherwise follow the instructions of your Nominee).

7. Your Nominee is authorized to forward solicitation materials and information to, and collect Plan votes from, its Beneficial Holder clients according to its customary practices, including a voting instruction form, email, telephone, online platform, or voting information form in lieu of, or in addition to, a Beneficial Holder Ballot.

8. Unless otherwise instructed by your Nominee, return your completed Beneficial Holder Ballot to your Nominee in sufficient time for your Nominee to complete the Master Ballot and return the Master Ballot to the Solicitation Agent so that it is actually received no later than the Voting Deadline of 4:00 p.m. (prevailing Central Time) on December 10, 2026. If your Nominee provided you with a pre-validated Beneficial Holder Ballot, return it directly to the Solicitation Agent so that it is actually received by the Voting Deadline.

9. For voting purposes, the number of shares of Class 8 Existing Equity Interests shall be the number of shares reflected on the securities position report(s) from DTC as of the Voting Record Date, regardless of any amount set forth on this Beneficial Holder Ballot.

10. Only Beneficial Holders as of the Voting Record Date may vote, and any transferee of Class 8 Existing Equity Interests after the Voting Record Date is not entitled to vote on account of such Existing Equity Interests.

11. If you hold Class 8 Existing Equity Interests through more than one Nominee or account, you must (a) submit a separate Beneficial Holder Ballot for each such Nominee or account, (b) vote all such Existing Equity Interests in the same manner, and (c) identify all other Beneficial Holder Ballots submitted in Class 8 in Item 4.

12. You must make the same election with respect to the Third-Party Release for all Class 8 Existing Equity Interests you hold, including Existing Equity Interests held through more than one Nominee, account, CUSIP, or ISIN.

13. Votes submitted by your Nominee will not be counted in excess of your Nominee's position as of the Voting Record Date. To the extent any over-vote cannot be reconciled, votes to accept and to reject the Plan will be tabulated in the same proportion as the votes submitted by your Nominee on the applicable Master Ballot or pre-validated Beneficial Holder Ballots, but only to the extent of your Nominee's position as of the Voting Record Date, as set forth in the Tabulation Procedures.

14. Consistent with Article 3.6 of the Plan, if no Holder of a Class 8 Existing Equity Interest eligible to vote submits a valid Beneficial Holder Ballot or Master Ballot, the Plan shall be presumed accepted by Class 8.

15. You must vote all of your Class 8 Existing Equity Interests either to accept or reject the Plan and you may not split your vote.

16. The following Beneficial Holder Ballots will not be counted: (a) any Beneficial Holder Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder; (b) any Beneficial Holder Ballot actually received by the Solicitation Agent after the Voting Deadline, unless the Bankruptcy Court orders otherwise upon the request of the Debtors; (c) any Beneficial Holder Ballot that is not properly signed; (d) any Beneficial Holder Ballot not properly transmitted to the Solicitation Agent as required by the Tabulation Procedures, unless the Debtors determine otherwise; (e) any Beneficial Holder Ballot submitted by a Person that did not hold Class 8 Existing Equity Interests as of the Voting Record Date or that is otherwise not entitled to vote pursuant to the Plan; (f) any ballot in a form other than the official form of Beneficial Holder Ballot sent by the Solicitation Agent (provided that votes transmitted by Beneficial Holders to their Nominees through customary communications as permitted by the Beneficial Holder Ballots may be reflected on a Master Ballot); (g) any Beneficial Holder Ballot that attempts to partially accept and partially reject the Plan; (h) any Beneficial Holder Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan; (i) any Beneficial Holder Ballot superseded by a later, timely submitted valid Beneficial Holder Ballot; (j) any Beneficial Holder Ballot sent to the Debtors, the Debtors' agents or representatives (other than the Solicitation Agent), or the Debtors' financial or legal advisors; (k) any Beneficial Holder Ballot cast by a Person that the Bankruptcy Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; (l) any Beneficial Holder Ballot submitted by facsimile, telecopy, or other electronic means, other than a Master Ballot or pre-validated Beneficial Holder Ballot submitted by email in accordance with these instructions; and (m) any Beneficial Holder Ballot not cast in accordance with the Tabulation Procedures and the procedures approved in the Solicitation Procedures Order.

17. Unless the Master Ballot submitted on your behalf or your pre-validated Beneficial Holder Ballot, as applicable, is actually received by the Solicitation Agent on or prior to the Voting Deadline, such vote will be rejected as invalid and will not be counted as an acceptance or rejection of the Plan; provided, however, that the Debtors reserve the right to request the Bankruptcy Court to allow such vote to be counted. The method of delivery of the Beneficial Holder Ballot to the Nominee or the Solicitation Agent is at your election and risk.

18. The Beneficial Holder Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors (other than the Solicitation Agent and only with respect to a pre-validated Beneficial Holder Ballot).

19. If you cast more than one Beneficial Holder Ballot voting the same Class 8 Existing Equity Interests before the Voting Deadline, the last properly completed Beneficial Holder Ballot actually received by your Nominee in sufficient time to permit your Nominee to include your vote on, and deliver, its Master Ballot to the Solicitation Agent on or before the Voting Deadline shall be deemed to reflect your intent and shall supersede and revoke any prior Beneficial Holder Ballot. If you simultaneously cast Beneficial Holder Ballots for the same Existing Equity Interests that are voted inconsistently, all such inconsistent Beneficial Holder Ballots will not be counted. With respect to pre-validated Beneficial Holder Ballots, the last properly completed Beneficial Holder Ballot actually received by the Solicitation Agent on or before the Voting Deadline shall control. Any duplicate Beneficial Holder Ballots will be counted only once. Following the Voting Deadline, no Beneficial Holder Ballot may be changed or revoked absent further order of the Bankruptcy Court.

20. The failure to vote does not constitute a vote to accept or reject the Plan. An objection to the confirmation of the Plan, even if timely served, does not constitute a vote to accept or reject the Plan.

21. Please be sure to sign and date your Beneficial Holder Ballot. If you are signing a Beneficial Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, you must submit proper evidence to the requesting party of your authority to so act on behalf of such holder.

22. Subject to any contrary order of the Bankruptcy Court, the Debtors may waive any defect or irregularity as to any particular Beneficial Holder Ballot at any time, either before or after the Voting Deadline, other than any requirement imposed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Local Rules, and any such waiver shall be identified in the Voting Report.

23. The Solicitation Agent may contact Beneficial Holders that submit incomplete or otherwise deficient pre-validated Beneficial Holder Ballots to make a reasonable effort to cure such deficiencies; *provided* that neither the Debtors nor the Solicitation Agent is required to provide notification of defects or irregularities with respect to completion or delivery of Beneficial Holder Ballots, nor shall any of them incur any liability for failure to provide such notification; *provided further*, that the Voting Report shall identify each Beneficial Holder Ballot that does not conform to the Tabulation Procedures or contains any irregularity and the Debtors' treatment thereof.

24. Unless waived by the Debtors, subject to any contrary order of the Bankruptcy Court, any defects or irregularities in connection with deliveries of Beneficial Holder Ballots must be cured prior to the Voting Deadline or such Beneficial Holder Ballots will not be counted; *provided* that any such waiver may be made either before or after the Voting Deadline.

25. This Beneficial Holder Ballot does not constitute, and shall not be deemed to be: (a) a Proof of Interest or (b) an assertion or admission of an Interest.

26. In the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Beneficial Holder Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

27. The Plan may be modified before confirmation in accordance with its terms and the Consenting Senior Noteholder RSA. Any acceptance or rejection of the Plan will be deemed an acceptance or rejection of the Plan as so modified, unless such modification materially and adversely changes the treatment of your Interest, in which case resolicitation will be required only to the extent required by section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

28. If you believe you have received the wrong ballot, you should contact the Solicitation Agent immediately (a) by email to MercerInquiries@stretto.com with a reference to "Mercer International Inc. Solicitation" in the subject line, or (b) by telephone at (833) 333-9454 (toll free) or +1 (650) 525-4708 (international, toll).

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BENEFICIAL HOLDER BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.**

**IN ORDER FOR YOUR VOTE TO BE COUNTED IT MUST BE INCLUDED ON A MASTER BALLOT OR PRE-VALIDATED BENEFICIAL HOLDER BALLOT WHICH IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE, AS DIRECTED ABOVE.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL HOLDER BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CONTACT YOUR NOMINEE FOR FURTHER ASSISTANCE.**

**THE VOTING DEADLINE IS DECEMBER 10, 2026 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

[*Remainder of page left intentionally blank*]

**Item 1. The Number of Shares.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory of such Beneficial Holder) of the following number of shares (insert number of shares in box below, unless otherwise completed by your Nominee). The amount set forth below is for voting purposes only and is subject to the Tabulation Procedures. For voting purposes, the number of shares of Class 8 Existing Equity Interests shall be the number of shares reflected on the securities position report(s) from DTC as of the Voting Record Date, regardless of any amount set forth on this Beneficial Holder Ballot. If your Class 8 Existing Equity Interests are held on your behalf through a Nominee and you do not know the amount of your Class 8 Existing Equity Interests as of the Voting Record Date, please contact your Nominee for this information as soon as possible.

| |
|---|
| Number of shares of Class 8 Existing Equity Interests held as of the Voting Record Date:<br>_______________________________ Shares |
| CUSIP / ISIN to which this Beneficial Holder Ballot relates (check box):<br>☐ Existing Equity Interests (Common Stock) – CUSIP 588056101 / ISIN US5880561015 |

**Item 2. Vote on Plan.**

Please vote below either to accept or to reject the Plan with respect to your Interests in Class 8. Any Beneficial Holder Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan. The Plan, though proposed jointly, constitutes separate plans proposed by each of the Debtor entities. Your vote will count as votes for or against, as applicable, each plan proposed by each Debtor entity. The undersigned Beneficial Holder of a Class 8 Existing Equity Interests identified in Item 1 votes as follows (check one box only—if you do not check a box or you check both boxes, your vote will not be counted):

| | |
|---|---|
| ☐ **ACCEPT** (vote FOR) the Plan. | ☐ **REJECT** (vote AGAINST) the Plan. |

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**Item 3. Optional Release Election.**

**PLAN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS**

**THE PLAN INCLUDES CERTAIN INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS. IF THE PLAN IS CONFIRMED AND CONSUMMATED, THEN, UNLESS YOU VALIDLY OPT OUT SO THAT SUCH ELECTION IS REFLECTED ON A MASTER BALLOT OR PRE-VALIDATED BENEFICIAL HOLDER BALLOT ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE, YOU WILL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED THE DEBTORS, THE REORGANIZED DEBTORS, AND THE**

**RELEASED PARTIES AS PROVIDED IN ARTICLE 10 OF THE PLAN AND AS SET FORTH IN APPENDIX A, REGARDLESS OF WHETHER YOU VOTE TO ACCEPT OR REJECT THE PLAN, ABSTAIN FROM VOTING, OR DO NOT RETURN A BALLOT AT ALL. IF YOU OPT OUT OF THE THIRD-PARTY RELEASE, YOU WILL NOT BE A RELEASING PARTY AND, TO THE EXTENT YOU WOULD OTHERWISE BE A RELEASED PARTY, YOU WILL NOT RECEIVE THE BENEFIT OF THE RELEASES GRANTED BY THE RELEASING PARTIES UNDER ARTICLE 10 OF THE PLAN. IN ADDITION, IF YOU TIMELY OBJECT TO THE THIRD-PARTY RELEASE, EITHER THROUGH A FORMAL OBJECTION FILED ON THE DOCKET OF THE CHAPTER 11 CASES OR AN INFORMAL OBJECTION PROVIDED TO THE DEBTORS BY ELECTRONIC MAIL, WHICH OBJECTION IS NOT WITHDRAWN OR OTHERWISE RESOLVED BEFORE ENTRY OF THE CONFIRMATION ORDER, YOU WILL NOT BE A RELEASING PARTY.**

Election to withhold consent to the Third-Party Release is at your option. The Beneficial Holder of the Class 8 Existing Equity Interests identified in Item 1 elects to:

☐ **Opt Out of the Third-Party Release**

Your election to opt out of the Third-Party Release will be valid only if it is included on a Master Ballot submitted by your Nominee, or on a pre-validated Beneficial Holder Ballot, that is actually received by the Solicitation Agent by the Voting Deadline. The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.

**Item 4. Other Beneficial Holder Ballots Submitted.**

By returning this Beneficial Holder Ballot, the Beneficial Holder of the Class 8 Existing Equity Interests identified in Item 1 certifies that (a) this Beneficial Holder Ballot is the only Beneficial Holder Ballot submitted for the Class 8 Existing Equity Interests identified in Item 1 owned by such Beneficial Holder, except as identified in the following table, and (b) all Beneficial Holder Ballots submitted by the Beneficial Holder in Class 8, including through other Nominees or accounts, indicate the same vote to accept or reject the Plan that the Beneficial Holder has indicated in Item 2 of this Beneficial Holder Ballot (please use additional sheets of paper if necessary). If you hold Class 8 Existing Equity Interests through one or more Nominees or accounts, you must identify all Class 8 Existing Equity Interests held in your own name and/or through each Nominee or account in the following table and indicate the same vote to accept or reject the Plan on all Beneficial Holder Ballots submitted.

**ONLY COMPLETE THIS TABLE IF YOU HAVE VOTED OTHER EXISTING EQUITY INTERESTS IN CLASS 8 ON OTHER BENEFICIAL HOLDER BALLOTS**

| DTC Participant Number and Name of Nominee | Name of Registered Holder or Nominee | CUSIP / ISIN | Number of Shares Voted through Other Beneficial Holder Ballot | Plan Vote (Accept or Reject) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

**Item 5. Certifications.**

By signing this Beneficial Holder Ballot, the undersigned certifies to the Debtors and the Solicitation Agent that, as of the Voting Record Date, either: (i) the Entity is the Beneficial Holder of the Class 8 Existing Equity Interests being voted on this Beneficial Holder Ballot; or (ii) the Entity is an authorized signatory for the Entity that is the Beneficial Holder of the Class 8 Existing Equity Interests being voted on this Beneficial Holder Ballot, and further certifies that: (1) the Entity (or in the case of an authorized signatory, the Beneficial Holder) has received a copy of the Plan, the Disclosure Statement, and the other applicable solicitation materials and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein; (2) the Entity has the power and authority to vote to accept or reject the Plan; (3) the Entity has cast the same vote with respect to all Class 8 Existing Equity Interests, including any such Interests held through other Nominees or accounts; (4) no other Beneficial Holder Ballots with respect to the Class 8 Existing Equity Interests identified in Item 1 have been cast or, if any other Beneficial Holder Ballots have been cast with respect to such Class 8 Existing Equity Interests, then any such earlier received Beneficial Holder Ballots are hereby revoked; (5) the Entity acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of the Class 8 Existing Equity Interests held by it or the Beneficial Holder on whose behalf it is submitting this Beneficial Holder Ballot, as applicable; (6) the Entity understands and, if accepting the Plan, agrees with the treatment provided under the Plan for such Class 8 Existing Equity Interests; (7) the Entity acknowledges that this solicitation is being conducted during the Chapter 11 Cases pursuant to the Solicitation Procedures Order and that the Debtors intend to use the votes received in this solicitation to seek confirmation of the Plan; and (8) the Entity acknowledges and agrees that the Debtors may make conforming changes to the Plan in accordance with the terms thereof and, to the extent provided by Bankruptcy Rule 3019, as may be reasonably necessary, and that the Debtors will not re-solicit acceptances or rejections of the Plan in the event of such conforming changes.

**YOUR RECEIPT OF THIS BENEFICIAL HOLDER BALLOT DOES NOT SIGNIFY THAT YOUR EXISTING EQUITY INTERESTS HAVE BEEN OR WILL BE ALLOWED. SUBJECT TO THE ALLOWANCE OF EXISTING EQUITY INTERESTS UNDER THE PLAN, THE DEBTORS RESERVE ALL RIGHTS TO DISPUTE SUCH EXISTING EQUITY INTERESTS.**

| | |
|---|---|
| Name of Holder of Class 8 Existing Equity Interests: | ______________________ |
| DTC Participant Number: | ______________________ |
| Signature: | ______________________ |
| Name of Signatory (If other than the Beneficial Holder, indicate relationship with the Beneficial Holder and capacity in which signing): | ______________________ |
| Title: | ______________________ |
| Address (Street, City, State, Zip Code): | ______________________ |
| Telephone Number: | ______________________ |
| Email Address: | ______________________ |
| Date Completed: | ______________________ |

**Item 6. Nominee Pre-Validation (to be completed only by Nominee for pre-validated Beneficial Holder Ballots).**

| | |
|---|---|
| Name of Nominee: | ______________________ |
| DTC Participant Number: | ______________________ |

| | |
|---|---|
| Beneficial Holder Account Number: | ____________________ |
| Number of Shares of Class 8 Existing Equity Interests held as of the Voting Record Date: | ____________________ |
| CUSIP / ISIN: | ____________________ |
| Medallion Guarantee Stamp: | ____________________ |
| Nominee Authorized Signature: | ____________________ |
| Name: | ____________________ |
| Title: | ____________________ |
| Date: | ____________________ |

This Beneficial Holder Ballot shall not constitute or be deemed a proof of claim or equity interest, an assertion or admission of a claim or equity interest, or the allowance of a claim or equity interest.

**PLEASE COMPLETE, SIGN, AND DATE THIS BENEFICIAL HOLDER BALLOT AND RETURN IT (WITH A SIGNATURE) *PROMPTLY* IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.**

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THE MASTER BALLOT SUBMITTED ON YOUR BEHALF THAT REFLECTS YOUR VOTE (OR YOUR PRE-VALIDATED BENEFICIAL HOLDER BALLOT) ON OR BEFORE DECEMBER 10, 2026 AT 4:00 P.M. (PREVAILING CENTRAL TIME), AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE TRANSMITTED BY THIS BENEFICIAL HOLDER BALLOT WILL NOT BE COUNTED, EXCEPT THAT THE DEBTORS RESERVE THE RIGHT TO REQUEST THAT THE BANKRUPTCY COURT ALLOW SUCH VOTES TO BE COUNTED.**

[*Remainder of page left intentionally blank*]

# APPENDIX A

Release, Injunction, And Exculpation Provisions in the Plan[1]

[1] Capitalized terms used but not defined in this Appendix A have the meanings given to them in the Plan.

**A. Certain Relevant Definitions.**

"***Exculpated Parties***" means, each in its capacity as such, (a) each of the Debtors and the Estates; and (b) each independent director of the Debtors.

"***Related Parties***" means with respect to a Person, such Person's current and former affiliates, and such Person's and its current and former affiliates' current and former directors, managers, committee members, members of any governing body, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed or advised entities, accounts, or funds, current or former, and future associated entities, predecessors, participants, successors, and assigns (whether by operation of law or otherwise), subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, partners, employees, agents, fiduciaries, trustees, advisory board members, financial advisors or managers, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, investment managers, investment advisors, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such.

"***Released Parties***" means, collectively, solely in their capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Senior Notes Trustee; (e) each Backstop Party; (f) each member of the Majority Ad Hoc Group; and (g) with respect to each of the foregoing Persons in clauses (a) through (f), each of their Related Parties; *provided* that, a Person shall not be a Released Party if such Person (i) elects to opt out of the Releases set forth in this Plan or (ii) timely Files an objection to the Releases set forth in this Plan and such objection is not withdrawn or otherwise resolved before the Confirmation Order is entered.

"***Releases***" means, collectively, the releases set forth in Article 10.6 of the Plan.

"***Releasing Parties***" means, collectively, and in each case solely in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Senior Notes Trustee; (e) each Backstop Party; (f) each Holder of a Claim or Interest in a Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective ballot; (g) each Holder of a Claim or Interest in a Non-Voting Class that is deemed to accept this Plan that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective Release Opt-Out Form; and (h) each Related Party of each Entity in clauses (a) through (g), solely to the extent such Related Party (I) would be obligated to grant a release under principles of agency if it were so directed by the Entity in the foregoing clauses (a) through (f) to whom they are related or (II) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (g); *provided*, that any Holder of a Claim or Interest that timely objects to the Third Party Release, either through (x) a formal objection Filed on the docket of the Chapter 11 Cases or (y) an informal objection provided to the Debtors by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or via electronic mail, as applicable, or otherwise resolved before the Confirmation Order is entered, shall not be a "Releasing Party".

**B. Section 10.5 of the Plan – Permanent Injunction.**

**Except as otherwise expressly provided in this Plan or the Confirmation Order, from and after the Effective Date, all Persons and Entities are, to the fullest extent provided under section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined from (a) commencing or continuing, in any manner or in any place, any suit, action, or other proceeding of any kind; (b) enforcing, attaching, collecting, or recovering in any manner or means any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Lien or encumbrance; (d) asserting a right**

**of setoff or subrogation of any kind; or (e) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or with respect to any Claim, demand, liability, obligation, debt, right, Cause of Action, Interest, or remedy released or to be released, exculpated or to be exculpated, settled or to be settled, or discharged or to be discharged pursuant to this Plan or the Confirmation Order against any Person or Entity so released, discharged, or exculpated (or the property or estate of any Person or Entity so released, discharged, or exculpated). All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.**

**No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, Reorganized Debtors, Exculpated Parties, or Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of any Claim or Cause of Action, as applicable, subject to Article X, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Exculpated Party. At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Reorganized Debtor, Exculpated Party, Released Party or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action File a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Federal Rules of Civil Procedure, including Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.**

**C. Section 10.6 of the Plan – Releases.**

**(a) Releases by the Debtors.**

**To the fullest extent permitted by applicable law, and except as otherwise expressly set forth in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Debtors, the Reorganized Debtors, and the Estates, in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally, released and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (a) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (b) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor**

**Affiliates, (c) the subject matter of, or the transactions, events, circumstances, acts, or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (d) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including the Consenting Stakeholders), (e) the Senior Notes Documents, (f) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (g) intercompany transactions, (h) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements and related prepetition transactions, the Definitive Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (i) any contract, instrument, release, or other agreement or document created or entered into in connection with this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements, the Definitive Documents, the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of this Plan, or the administration and implementation of this Plan or the Confirmation Order, including the issuance or distribution of Securities pursuant to this Plan, (j) the distribution, including any disbursements made by a Distribution Agent, of property under this Plan, or any other related agreement, or (k) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; *provided*, that the Debtors do not release Claims or Causes of Action (x) that are of a commercial nature and arise in the ordinary course of business, such as accounts receivable and accounts payable on account of goods being sold and services being performed; (y) arising under an Executory Contract or Unexpired Lease that is assumed by the Debtors; or (z) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct. Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under this Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or the Restructuring Transactions, or any agreement, Claim, or obligation arising or assumed under this Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing this Plan; (b) a good-faith settlement and compromise of the Claims released by the Debtors; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.**

**(b) <u>Releases by Holders of Claims and Interests</u>.**

**To the fullest extent permitted by applicable law, and except as otherwise expressly set forth in this Plan or the Confirmation Order, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party, in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and**

**unconditionally, released and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (a) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (b) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (c) the subject matter of, or the transactions, events, circumstances, acts, or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (d) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including the Consenting Stakeholders), (e) the Senior Notes Documents, (f) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (g) intercompany transactions, (h) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements and related prepetition transactions, the Definitive Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (i) any contract, instrument, release, or other agreement or document created or entered into in connection with this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements, the Definitive Documents, or the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, or the administration and implementation of this Plan or the Confirmation Order, including the issuance or distribution of Securities pursuant to this Plan, (j) the distribution, including any disbursements made by a Distribution Agent, of property under this Plan, or any other related agreement, or (k) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; *provided*, that the Releasing Parties do not release Claims or Causes of Action arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct. Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under this Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or the Restructuring Transactions, or any agreement, Claim, or obligation arising or assumed under this Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of this Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing this Plan; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.**

**D. Section 10.7 of the Plan – Exculpation.**

**Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any Claims or Causes of Action for any act taken or omitted to be taken between the Petition Date and the Effective Date in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the Confirmation or consummation (as applicable) of this Plan, the Restructuring Support Agreements and related prepetition transactions, and the Disclosure Statement including any disbursements made by a Distribution Agent in connection with this Plan, the Disclosure Statement, the Definitive Documents, the Corporate Governance Documents, the Senior Notes Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with this Plan, or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement, or Confirmation or consummation of this Plan; *provided*, that the foregoing provisions of this exculpation shall not operate to waive or release: (a) any Claims or Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; or (b) the rights of any Person or Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan, or assumed pursuant to this Plan or Final Order of the Bankruptcy Court; *provided further*, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions, or inactions.**

**The Exculpated Parties have, and upon consummation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.**

**The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or Entity. For the avoidance of doubt and notwithstanding anything else herein, the foregoing exculpation shall be limited to Persons that served as Estate fiduciaries during the Chapter 11 Cases.**

# APPENDIX B

Tabulation Procedures

# Tabulation Procedures

These tabulation procedures (the "***Tabulation Procedures***") govern the tabulation of Ballots submitted by Holders of Claims in Class 3 (Senior Notes Claims) and Holders of Interests in Class 8 (Existing Equity Interests) (together, the "***Voting Classes***") and Release Opt-Out Forms submitted by Holders of Claims and Interests in Class 1 (Secured Claims), Class 2 (Other Priority Claims), Class 4 (General Unsecured Claims), and Class 7 (510(b) Claims). The Debtors commenced the solicitation of votes from Eligible Holders of Class 3 Senior Notes Claims before the Petition Date, and these Tabulation Procedures apply to such prepetition solicitation to the extent consistent with sections 1125(g) and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018(b). Holders in the Voting Classes that are Non-Eligible Holders may vote only following entry of the order to which these Tabulation Procedures are attached (the "***Solicitation Procedures Order***"), and the distribution of Release Opt-Out Forms to the Holders of Claims in Class 1 (Secured Claims), Class 2 (Other Priority Claims), Class 4 (General Unsecured Claims), and Class 7 (510(b) Claims) will commence following entry of the Solicitation Procedures Order. Holders of Class 8 Existing Equity Interests will be solicited following entry of the Solicitation Procedures Order. Capitalized terms used but not defined herein have the meanings given to them in the Solicitation Procedures Order, the Motion,[1] or the Plan, as applicable.

## 1. Voting Record Date.

The Voting Record Date for Holders of Senior Notes Claims in Class 3 and Holders of Existing Equity Interests in Class 8 is November 2, 2026.

## 2. Voting Deadline.

To be counted, a Ballot must be properly executed, completed, and delivered so that it is actually received by the Solicitation Agent no later than **December 10, 2026 at 4:00 p.m. (prevailing Central Time)** (the "***Voting Deadline***"), which the Debtors may extend with the reasonable consent of the Required Consenting Senior Noteholders, subject to the terms of the Consenting Senior Noteholder RSA. The deadline to submit a Release Opt-Out Form is the Voting Deadline. Beneficial Holders voting through a Nominee (other than through a pre-validated Ballot) must return their Ballots or voting instructions to their Nominee with sufficient time for the Nominee to process them and deliver a Master Ballot to the Solicitation Agent by the Voting Deadline, and Beneficial Holders that receive a pre-validated Ballot must return it directly to the Solicitation Agent so that it is actually received by the Voting Deadline.

## 3. Methods of Submission.

Registered Holder Ballots and Release Opt-Out Forms may be submitted (a) in hard copy by regular mail, overnight courier, or hand delivery to the address set forth in the applicable Ballot or Release Opt-Out Form, or (b) through the E-Ballot Portal. Beneficial Holder Ballots that are not pre-validated must be returned to the applicable Nominee in accordance with such Nominee's instructions and customary practices. Master Ballots and pre-validated Ballots may be submitted in hard copy as set forth in clause (a) above or by email of a PDF copy to the address set forth in the applicable Ballot, but may not be submitted through the E-Ballot Portal. Except as provided in the preceding sentences, Ballots and Release Opt-Out

---

[1] The "***Motion***" means the *Emergency Motion of Debtors for Entry of an Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Approving (A) Solicitation Procedures, (B) Form and Manner of Notice of Commencement, Combined Hearing, and Objection Deadline, and (C) Rights Offering Procedures and Related Forms, and Authorizing Commencement of the Rights Offering; (III) Fixing Deadline to Object to Disclosure Statement and Plan; (IV) Conditionally (A) Directing the United States Trustee Not to Convene Section 341 Meeting of Creditors and (B) Waiving Requirement to File Statements of Financial Affairs and Schedules of Assets and Liabilities; (V) Conditionally Approving the Disclosure Statement; and (VI) Granting Related Relief.*

Forms submitted by email, facsimile, or any other electronic means will not be counted. The encrypted ballot data and audit trail created by electronic submission through the E-Ballot Portal shall become part of the record of any Ballot or Release Opt-Out Form submitted in this manner, and the Holder's electronic signature will be deemed immediately legally valid and effective. A Holder that submits a Ballot through the E-Ballot Portal should not also submit a paper Ballot on account of the same Claim or Interest. The method of delivery is at the election and risk of each Holder, and a Ballot or Release Opt-Out Form will be deemed delivered only when the Solicitation Agent actually receives it.

**4. Ballots Not Counted.**

Subject to Section 8 below, the following Ballots will not be counted: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder; (b) any Ballot actually received by the Solicitation Agent after the Voting Deadline, unless the Court orders otherwise upon request of the Debtors; (c) any Ballot that does not contain a signature (provided that a signature collected electronically through the E-Ballot Portal will be deemed a valid signature); (d) any Ballot not properly transmitted to the Solicitation Agent as required by these Tabulation Procedures, unless the Debtors determine otherwise; (e) any Ballot submitted by a Person that did not hold a Claim or Interest in a Voting Class as of the Voting Record Date or that is otherwise not entitled to vote pursuant to the Plan; (f) any Ballot submitted by or on behalf of a Non-Eligible Holder before entry of the Solicitation Procedures Order (and any Holder submitting a Ballot before entry of the Solicitation Procedures Order shall be deemed to have certified that it is an Eligible Holder); (g) any form of ballot other than the official form of Ballot sent by the Solicitation Agent (provided that votes transmitted by Beneficial Holders to their Nominees through customary communications as permitted by the Ballots may be reflected on a Master Ballot); (h) any Ballot that partially rejects and partially accepts the Plan; (i) any Ballot that is properly completed, executed, and timely returned but is not marked to either accept or reject the Plan, or is marked to both accept and reject the Plan; (j) any Ballot superseded by a later, timely submitted valid Ballot; (k) any Ballot sent to the Debtors, the Debtors' agents or representatives (other than the Solicitation Agent), or the Debtors' financial or legal advisors; (l) any Ballot cast by a Person that the Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; and (m) any Ballot not cast in accordance with these Tabulation Procedures and the procedures approved in the Solicitation Procedures Order.

**5. General Tabulation Rules.**

Whenever a Holder casts more than one Ballot voting the same Claim or Interest before the Voting Deadline, the last properly completed Ballot actually received on or before the Voting Deadline shall be deemed to reflect such Holder's intent and shall supersede any previously received Ballot. With respect to Beneficial Holder Ballots submitted through a Nominee (other than pre-validated Ballots), the last such Ballot received by the Nominee in sufficient time to be included on its Master Ballot shall control. Any duplicate Ballots will be counted only once.

Following the Voting Deadline, no Ballot may be changed or revoked, absent further order of the Court.

If a Holder simultaneously casts inconsistent Ballots with respect to the same Claim or Interest, such Ballots will not be counted.

Holders must vote all of their Claims or Interests within a particular Class either to accept or reject the Plan and may not split their votes.

The amount of a Claim or Interest for voting purposes shall be (i) for Class 3, the outstanding principal amount of the applicable Senior Notes held by each Beneficial Holder through its Nominee, without regard

to any accrued but unpaid interest, fees, or premiums, as reflected in the securities position report(s) from DTC as of the Voting Record Date, and (ii) for Class 8, the number of shares reflected on the Debtors' stock register maintained by the transfer agent or the securities position report(s) from DTC as of the Voting Record Date, in each case regardless of any amount set forth on a Ballot. In the event of any inconsistency, the securities position report(s) from DTC shall control for positions held through DTC.

A Ballot does not constitute, and shall not be deemed to be, a proof of claim or an assertion or admission of a Claim or Interest.

Only Holders as of the Voting Record Date may vote, and any transferee of a Claim or Interest after the Voting Record Date shall not be entitled to vote on account of such Claim or Interest.

Any Person signing a Ballot in a representative capacity (including as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation) must indicate such capacity and, if requested by the Debtors or the Solicitation Agent, submit proper evidence of authority to so act.

Consistent with Article 3.6 of the Plan, if no Holder in a Voting Class eligible to vote submits a valid Ballot, the Plan shall be presumed accepted by such Voting Class.

**6. Nominees, Master Ballots, and Overvotes.**

Nominees may (a) forward the Solicitation Package to Beneficial Holders no later than 5 business days after receipt and collect and tabulate their votes on a Master Ballot, or (b) pre-validate a Beneficial Holder Ballot and forward it to the Beneficial Holder for return directly to the Solicitation Agent, and may collect votes in accordance with their customary practices, including through voting instruction forms or electronic means. Nominees electing option (a) must deliver the Master Ballot so that it is actually received by the Solicitation Agent by the Voting Deadline.

Votes cast by Beneficial Holders through Nominees will be applied to the positions held by such Nominees as of the Voting Record Date, as evidenced by the applicable securities position report(s) from DTC.

Votes submitted by a Nominee will not be counted in excess of such Nominee's position as of the Voting Record Date.

If conflicting votes or over-votes are submitted by a Nominee, the Solicitation Agent may use reasonable efforts to reconcile such discrepancies with the Nominee.

To the extent any over-vote cannot be reconciled, the Solicitation Agent will tabulate votes to accept and to reject the Plan in the same proportion as the votes submitted by the Nominee on the applicable Master Ballot or pre-validated Ballots, but only to the extent of such Nominee's position as of the Voting Record Date. A Holder (including a Registered Holder or Beneficial Holder) that holds through more than one Nominee, account, or CUSIP must execute and return a separate Ballot for each Nominee, account, or CUSIP, must vote all such Claims or Interests in the same manner, and, in the case of a Beneficial Holder, must certify on each Ballot all other Ballots submitted in the same Voting Class.

For purposes of determining whether the numerosity requirement of section 1126(c) of the Bankruptcy Code has been satisfied, the Solicitation Agent will treat each Beneficial Holder as a single Holder, to the extent it is able to identify such Beneficial Holder's Ballots submitted through multiple Nominees or accounts.

**7. Release Opt-Out Forms.**

Subject to Section 8 below, a Release Opt-Out Form will be counted only if it is properly completed, executed, and actually received by the Solicitation Agent on or before the Voting Deadline in accordance with Section 3 above. The following Release Opt-Out Forms will not be counted: (a) any Release Opt-Out Form that is illegible or contains insufficient information to permit the identification of the Holder of the Claim or Interest; (b) any Release Opt-Out Form actually received by the Solicitation Agent after the Voting Deadline, unless the Court orders otherwise upon request of the Debtors; (c) any Release Opt-Out Form submitted by or on behalf of a Person that is not entitled to opt out of the Third-Party Release under the Restructuring Support Agreements; (d) any Release Opt-Out Form sent to the Debtors, the Debtors' agents or representatives (other than the Solicitation Agent), or the Debtors' financial or legal advisors; (e) any Release Opt-Out Form transmitted by facsimile, email, or other electronic means other than as permitted by these Tabulation Procedures; (f) any unsigned Release Opt-Out Form (provided that a signature collected electronically through the E-Ballot Portal will be deemed a valid signature); (g) any Release Opt-Out Form submitted without making the opt-out election; and (h) any Release Opt-Out Form not completed in accordance with these Tabulation Procedures and the procedures approved in the Solicitation Procedures Order.

If multiple Release Opt-Out Forms are received from the same Holder with respect to the same Claim or Interest before the Voting Deadline, the last properly completed Release Opt-Out Form timely received will supersede and revoke any earlier received Release Opt-Out Form. A Holder must make the same election with respect to all Claims or Interests held by such Holder in a single Class. An opt-out election made on a properly completed and timely submitted Ballot will be given the same effect as an election made on a Release Opt-Out Form.

A Release Opt-Out Form is not a letter of transmittal and may not be used for any purpose other than to opt out of the Third-Party Release, and does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

**8. Waiver of Defects; Voting Report.**

Subject to a contrary order of the Court, the Debtors may waive any defects or irregularities as to any particular Ballot or Release Opt-Out Form at any time, either before or after the Voting Deadline, other than any requirement imposed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Local Rules. The Debtors or the Solicitation Agent, as applicable, shall determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots, which determination, absent a contrary order of the Court, shall be final and binding. The Solicitation Agent may contact parties who submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies; *provided* that neither the Debtors nor the Solicitation Agent is required to provide notification of defects or irregularities with respect to completion or delivery of Ballots, nor shall any of them incur any liability for failure to provide such notification. The Solicitation Agent will file a voting report (the "***Voting Report***") no later than December 14, 2026, or 2 business days before any adjourned Combined Hearing, which shall, among other things, (a) identify each Ballot that does not conform to these Tabulation Procedures or contains any irregularity, the Debtors' treatment of each such Ballot, and any waivers made under this section, and (b) report the Release Opt-Out elections received on Ballots and Release Opt-Out Forms.

**9. Retention of Ballots.**

The Solicitation Agent shall retain all paper copies of Ballots and all solicitation-related correspondence for 2 years following the Effective Date, whereupon the Solicitation Agent is authorized to destroy or

otherwise dispose of all paper copies of Ballots, printed solicitation materials (including unused copies of the Solicitation Package), and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such 2-year period.

# EXHIBIT 6-B

## Form of Class 8 Master Ballot

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ---------------------------------------------------------- | x | |
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| MERCER INTERNATIONAL INC., *et al.*,[1] | : | Case No. 26-90829 (CML) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| ---------------------------------------------------------- | x | |

**MASTER BALLOT FOR NOMINEES OF**
**BENEFICIAL HOLDERS OF EXISTING EQUITY INTERESTS**
**IN CLASS 8 FOR VOTING TO ACCEPT OR REJECT THE**
**JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION**
**OF MERCER INTERNATIONAL INC. AND ITS DEBTOR AFFILIATE**

**The voting deadline to accept or reject the Plan is 4:00 p.m. (prevailing Central Time), on December 10, 2026 (the "*Voting Deadline*"), unless extended by the Debtors.**

**Please be advised that Article 10 of the Plan contains release, exculpation, and injunction provisions. These provisions are included in Appendix A to this Master Ballot. Beneficial Holders are advised to review and consider the Plan carefully because their rights might be affected thereunder even if they abstain from voting. If a Beneficial Holder does not validly opt out of the Third-Party Release by checking the box in Item 3 of its Beneficial Holder Ballot (or otherwise conveying such election in accordance with your customary practices) so that such election is reflected on a Master Ballot or a pre-validated Beneficial Holder Ballot actually received by the Solicitation Agent by the Voting Deadline, such Beneficial Holder will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Debtors, the Reorganized Debtors, and the Released Parties as provided in Article 10.6(b) of the Plan (the "*Third-Party Release*"). This is the case whether such Beneficial Holder votes to accept or reject the Plan, abstains from voting, or does not return a ballot at all. If a Beneficial Holder opts out of the Third-Party Release, it will not be a Releasing Party and, to the extent it would otherwise be a Released Party, will not receive the benefit of the releases granted by the Releasing Parties under Article 10 of the Plan. In addition, any Beneficial Holder that timely objects to the Third-Party Release, either through a formal objection Filed on the docket of the Chapter 11 Cases or an informal objection provided to the Debtors by electronic mail, which objection is not withdrawn or otherwise resolved before entry of the Confirmation Order, will not be a Releasing Party.**

**A Beneficial Holder's decision to opt out does not affect the amount of distribution it will receive under the Plan.**

---

[1] The Debtors in the Chapter 11 Cases, together with the last four digits of each Debtor's taxpayer identification number, are: Mercer International Inc. (6945) and Mercer International (Texas) LLC (N/A). The Debtors' mailing address for purposes of the Chapter 11 Cases is: Suite 1120, 700 West Pender Street, Vancouver, British Columbia V6C 1G8.

The Debtors have sent this ballot (the "***Master Ballot***") to you, a broker, dealer, commercial bank, trust company or other agent or nominee (each, a "***Nominee***") of a Beneficial Holder of a Class 8 Existing Equity Interest, and, accordingly, you have a right to vote to accept or reject the *Joint Prepackaged Chapter 11 Plan of Reorganization of Mercer International Inc. and Its Debtor Affiliate*, dated November 9, 2026 (as may be amended, modified, or supplemented from time to time, the "***Plan***") on behalf of such Beneficial Holders.[2] The Plan is attached as Exhibit A to the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Mercer International Inc. and Its Debtor Affiliate*, dated November 9, 2026 (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***"), which accompanies this Master Ballot and is available on the Solicitation Agent's website. The Disclosure Statement provides information to assist you and your Beneficial Holder clients in deciding how to vote on the Plan. The Solicitation Agent's website contains important information, hearing dates, other key deadlines, as well as the docket for the Chapter 11 Cases (as defined below).

Nominees should use this Master Ballot to transmit votes to accept or reject the Plan. This Master Ballot is to be used by each Nominee to summarize the individual votes of its respective Beneficial Holders from their Beneficial Holder Ballots to vote to accept or reject the Plan. If you have not received or wish to obtain additional copies of the Disclosure Statement, or if you have any questions on how to properly complete and/or submit this Master Ballot, please contact the Debtors' Solicitation Agent, Stretto, Inc. (the "***Solicitation Agent***"), (a) by writing to Mercer International Inc., c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, (b) by email at MercerInquiries@stretto.com (with "Mercer International Inc. Solicitation" in the subject line), or (c) by telephone at (833) 333-9454 (toll free) or +1 (650) 525-4708 (international, toll). Please be advised that the Solicitation Agent cannot provide legal advice.

You are receiving this Master Ballot because you are a Nominee of Beneficial Holders,[3] as of November 2, 2026 (the "***Voting Record Date***"), of any Existing Equity Interests. "***Existing Equity Interests***" means any and all Interests in Mercer International Inc. ("***Mercer***") (other than any Existing Unexercised Equity Interests) as of immediately before the Effective Date.

The Debtors' cases (the "***Chapter 11 Cases***") under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") are pending before the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "***Bankruptcy Court***"). Holders of Existing Equity Interests were not solicited before the Petition Date, and this solicitation is being conducted pursuant to the Solicitation Procedures Order. The Plan may be confirmed by the Bankruptcy Court and thereby made binding on you if (a) it is accepted by at least two-thirds in amount of the Existing Equity Interests in Class 8 that actually vote on the Plan; and (b) the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, Class 8 and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court and the Effective Date occurs, the Plan will be binding on all Holders of Existing Equity Interests whether or not a Holder of Existing Equity Interests returns a ballot, votes to reject the Plan, or does not vote.

---

[2] Capitalized but undefined terms herein shall have the meanings ascribed to them in the Plan.

[3] A "***Beneficial Holder***" means a beneficial holder of Class 8 Existing Equity Interests as of the Voting Record Date, as reflected in the records maintained by the applicable Nominee holding the Class 8 Existing Equity Interests through The Depository Trust Company.

All pleadings and notices relating to the Chapter 11 Cases that are filed with the Bankruptcy Court (including notices of the date and time of hearings) are available for review and download, free of charge, on the case information website of the Solicitation Agent at https://cases.stretto.com/Mercer.

This Master Ballot is for Existing Equity Interests in Class 8. Any of your Beneficial Holder clients that hold Claims or Interests in more than one Class under the Plan may receive a ballot for each such Class and must complete a separate ballot for each such Class. For your Beneficial Holder clients' votes to be counted, this Master Ballot must be properly completed, signed, and returned so that it is actually received by the Solicitation Agent by no later than the Voting Deadline, unless such time is extended by the Debtors. Please allow sufficient time for your Beneficial Holder clients to submit their voting instructions to you so that you are able to enter those votes in this Master Ballot and submit it to the Solicitation Agent by the Voting Deadline. If you wish to return a hard copy of your Master Ballot, you may return it in the enclosed preaddressed, postage prepaid envelope or by first class mail, overnight courier, or hand delivery to: Mercer International Inc. Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602. If you would prefer to submit your Master Ballot by email, which is the preferred method of submitting your Master Ballot, please send a PDF copy of your Master Ballot to TeamPublicSecurities@stretto.com (with "Mercer International Inc. Solicitation" in the subject line) such that the Solicitation Agent actually receives your Master Ballot before the Voting Deadline. Except for Master Ballots and pre-validated Beneficial Holder Ballots submitted by email of a PDF copy as described herein and in the applicable pre-validated Beneficial Holder Ballot, Master Ballots and pre-validated Beneficial Holder Ballots will not be accepted by telecopy, facsimile, or any other electronic means of transmission, including through the E-Ballot Portal.

Your receipt of this Master Ballot does not signify that the Class 8 Existing Equity Interest(s) of any Beneficial Holder has been or will be Allowed. This Master Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of or distribution on account of Class 8 Existing Equity Interests. The Debtors reserve all rights to dispute such Existing Equity Interests.

This Master Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than (a) to vote to accept or reject the Plan, (b) make an election with respect to the Third-Party Release, and/or (c) make certifications with respect to the Beneficial Holder Ballots. If you believe you have received this Master Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent immediately.

If you have any questions regarding this Master Ballot or how to properly complete this Master Ballot, please contact the Solicitation Agent for further assistance by telephone at (833) 333-9454 (toll free) or +1 (650) 525-4708 (international, toll) or via email at MercerInquiries@stretto.com (with "Mercer International Inc. Solicitation" in the subject line).

[*Remainder of page left intentionally blank*]

**IMPORTANT NOTICE REGARDING TREATMENT FOR HOLDERS OF CLASS 8 EXISTING EQUITY INTERESTS**

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed, and the Effective Date occurs, then each Holder of an Allowed Existing Equity Interest shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Existing Equity Interest, its Pro Rata Share of: (a) 8.5% of the New Common Stock, subject to dilution by the Management Incentive Plan and the New Convertible Preferred Stock (if converted); and (b) 3.5% of the New Convertible Preferred Stock.

On the Effective Date, all Existing Equity Interests shall be cancelled, released, extinguished, and of no further force and effect. Distributions of Plan Securities to Holders of Allowed Existing Equity Interests shall be made through the facilities of DTC in accordance with DTC's customary practices, except as otherwise agreed by the Debtors (or the Reorganized Debtors) and the Required Consenting Senior Noteholders.

[*Remainder of page left intentionally blank*]

**IMPORTANT NOTICE REGARDING TREATMENT FOR HOLDERS OF CLASS 8 EXISTING EQUITY INTERESTS**

**IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, IT WILL BE BINDING ON ALL HOLDERS OF CLASS 8 EXISTING EQUITY INTERESTS WHETHER OR NOT THEY VOTE. PLEASE BE ADVISED THAT IF THE PLAN IS CONFIRMED AND CONSUMMATED, HOLDERS OF CLASS 8 EXISTING EQUITY INTERESTS WILL BE BOUND BY THE INJUNCTION AND EXCULPATION PROVISIONS CONTAINED IN ARTICLE 10 OF THE PLAN AND SET FORTH IN APPENDIX A. EACH BENEFICIAL HOLDER THAT DOES NOT VALIDLY OPT OUT OF THE THIRD-PARTY RELEASE SO THAT SUCH ELECTION IS REFLECTED ON A MASTER BALLOT OR PRE-VALIDATED BENEFICIAL HOLDER BALLOT ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE, WILL BE DEEMED TO HAVE GRANTED THE THIRD-PARTY RELEASE, WHETHER SUCH BENEFICIAL HOLDER VOTES TO ACCEPT OR REJECT THE PLAN, ABSTAINS FROM VOTING, OR DOES NOT RETURN A BALLOT AT ALL. BENEFICIAL HOLDERS THAT VALIDLY OPT OUT OF THE THIRD-PARTY RELEASE WILL NOT BE RELEASING PARTIES AND, TO THE EXTENT THEY WOULD OTHERWISE BE RELEASED PARTIES, WILL NOT RECEIVE THE BENEFIT OF THE RELEASES GRANTED BY THE RELEASING PARTIES UNDER ARTICLE 10 OF THE PLAN. IN ADDITION, ANY BENEFICIAL HOLDER THAT TIMELY OBJECTS TO THE THIRD-PARTY RELEASE, EITHER THROUGH A FORMAL OBJECTION FILED ON THE DOCKET OF THE CHAPTER 11 CASES OR AN INFORMAL OBJECTION PROVIDED TO THE DEBTORS BY ELECTRONIC MAIL, WHICH OBJECTION IS NOT WITHDRAWN OR OTHERWISE RESOLVED BEFORE ENTRY OF THE CONFIRMATION ORDER, WILL NOT BE A RELEASING PARTY.**

**IMPORTANT**

**YOU SHOULD CAREFULLY REVIEW THE DISCLOSURE STATEMENT AND PLAN BEFORE YOU VOTE. YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR INTERESTS UNDER THE PLAN.**

**THE SOLICITATION AGENT IS NOT AUTHORIZED TO (AND WILL NOT) PROVIDE LEGAL ADVICE.**

**VOTING RECORD DATE: NOVEMBER 2, 2026**

**VOTING DEADLINE: 4:00 P.M. PREVAILING CENTRAL TIME ON DECEMBER 10, 2026 (UNLESS EXTENDED BY THE DEBTORS)**

**FOR YOUR BENEFICIAL HOLDER CLIENTS' VOTES TO BE COUNTED, THIS MASTER BALLOT MUST BE PROPERLY COMPLETED, SIGNED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE, UNLESS SUCH TIME IS EXTENDED BY THE DEBTORS. IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE THIS MASTER BALLOT BY THE VOTING DEADLINE, THE VOTES AND ANY ELECTIONS TO OPT OUT OF THE THIRD-PARTY RELEASE TRANSMITTED BY THIS MASTER BALLOT WILL NOT BE COUNTED, EXCEPT THAT THE DEBTORS RESERVE THE RIGHT TO REQUEST THE BANKRUPTCY COURT TO ALLOW SUCH VOTES AND ELECTIONS TO BE COUNTED.**

**YOU SHOULD NOT SEND THIS MASTER BALLOT TO ANY OF THE DEBTOR ENTITIES, DEBTORS' AGENTS (OTHER THAN THE SOLICITATION AGENT), OR DEBTORS' FINANCIAL OR LEGAL ADVISORS. IF SO SENT, THE MASTER BALLOT WILL NOT BE COUNTED IN CONNECTION WITH THE PLAN.**

**<u>INSTRUCTIONS FOR COMPLETING MASTER BALLOTS</u>**

1. This Master Ballot is subject to the tabulation procedures attached hereto as <u>Appendix B</u> (the "***Tabulation Procedures***"), which were approved by the Bankruptcy Court pursuant to the Solicitation Procedures Order. In the event of any inconsistency between this Master Ballot and the Tabulation Procedures, the Tabulation Procedures shall control.

2. The Debtors are soliciting the votes of Beneficial Holders of Class 8 Existing Equity Interests with respect to the Plan during the Chapter 11 Cases pursuant to the Solicitation Procedures Order. Holders of Existing Equity Interests were not solicited before the Petition Date. Capitalized terms used in this Master Ballot or in these instructions but not otherwise defined therein or herein shall have the meanings set forth in the Plan.

3. The Bankruptcy Court may confirm the Plan and thereby bind Holders of Claims and Interests by the terms of the Plan. Please review the Disclosure Statement and Plan for more information.

4. You should immediately, and in no event later than five (5) business days after receipt, distribute the Beneficial Holder Ballots and the solicitation package to all Beneficial Holders of Class 8 Existing Equity Interests and take any action required to enable each such Beneficial Holder to timely vote the Class 8 Existing Equity Interests that it holds. If your customary practice is to forward the solicitation information to Beneficial Holders by a voting instruction form, email, telephone, or other customary means of communication, you are authorized to employ that method of communication in lieu of sending the paper Beneficial Holder Ballot and/or solicitation package. Any Beneficial Holder Ballot returned to you by a Beneficial Holder shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to the Solicitation Agent, a Master Ballot that reflects the vote of such Beneficial Holder by the Voting Deadline, or you otherwise validate the Beneficial Holder Ballot in a manner acceptable to the Solicitation Agent by the Voting Deadline. If your customary practice is to collect votes from your Beneficial Holder clients by voting instruction form, email, telephone, or other accepted methods of communication, you are authorized to collect the votes and Third-Party Release elections in that manner.

5. You may pre-validate the Beneficial Holder Ballots by (a) signing the Beneficial Holder Ballot and indicating on the Beneficial Holder Ballot the (i) name and The Depository Trust Company ("***DTC***") Participant Number of the Nominee, (ii) account number of the Beneficial Holder, and (iii) number of shares of Class 8 Existing Equity Interests held by the Nominee for the Beneficial Holder, (b) applying a medallion guarantee stamp to the Beneficial Holder Ballot to certify the number of shares of Class 8 Existing Equity Interests held by the Beneficial Holder as of the Voting Record Date, and (c) forwarding such Beneficial Holder Ballot, together with the solicitation package, including a preaddressed, postage-paid return envelope addressed to the Solicitation Agent, to the Beneficial Holder. The Beneficial Holder will be required to complete the pre-validated Beneficial Holder Ballot and return it directly to the Solicitation Agent so that it is actually received before the Voting Deadline.

6. With regard to any votes returned to you by a Beneficial Holder (whether through a Beneficial Holder Ballot or otherwise), you must compile and validate the votes, execute the Master Ballot, and deliver the Master Ballot to the Solicitation Agent so that it is actually received by the Solicitation Agent on or before the Voting Deadline. All Beneficial Holder Ballots (or customary communications for transmitting votes) returned by Beneficial Holders should be retained for inspection for at least one (1) year after the Effective Date.

7. Beneficial Holder votes tabulated on this Master Ballot will be applied to the applicable positions you hold as the holder of record at DTC, as of the Voting Record Date. Votes submitted pursuant to a Master Ballot will not be counted in excess of the number of shares of Class 8 Existing Equity Interests you hold at DTC as of the Voting Record Date.

8. If you submit conflicting votes or "over-votes" pursuant to a Master Ballot or pre-validated Beneficial Holder Ballot, the Solicitation Agent may use reasonable efforts to reconcile such discrepancies with you. To the extent any over-vote is not reconciled prior to the preparation of the Voting Report, the Solicitation Agent shall tabulate the votes to accept and to reject the Plan in the same proportion as the votes to accept and to reject the Plan submitted by you on the applicable Master Ballot or pre-validated Beneficial Holder Ballots, but only to the extent of your position as of the Voting Record Date.

9. Each Beneficial Holder must make the same election with respect to the Third-Party Release for all Class 8 Existing Equity Interests it holds, including Interests held through more than one Nominee, account, CUSIP, or ISIN.

10. Consistent with Article 3.6 of the Plan, if no Holder of a Class 8 Existing Equity Interest eligible to vote submits a valid Beneficial Holder Ballot or Master Ballot, the Plan shall be presumed accepted by Class 8.

11. For purposes of tabulating votes, each Nominee or Beneficial Holder will be deemed to have voted the number of shares of its Class 8 Existing Equity Interests reflected on the securities position report(s) from DTC as of the Voting Record Date, regardless of any amount set forth on this Master Ballot. Only Beneficial Holders as of the Voting Record Date may vote, and any transferee of a Class 8 Existing Equity Interest after the Voting Record Date is not entitled to vote on account of such Interest.

12. You may complete and deliver to the Solicitation Agent multiple Master Ballots. Votes reflected on multiple Master Ballots will be counted, except to the extent that they are duplicative of other Master Ballots. Any duplicate Master Ballots will be counted only once. If two or more Master Ballots are inconsistent, the last properly completed Master Ballot actually received on or before the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior Master Ballot received by the Solicitation Agent. Likewise, if a Beneficial Holder submits to you more than one Beneficial Holder Ballot, (a) the last properly completed Beneficial Holder Ballot received in sufficient time to be included on your Master Ballot shall be deemed to reflect such Beneficial Holder's intent and supersede any prior Beneficial Holder Ballot submitted by such Beneficial Holder; and (b) you should complete the Master Ballot accordingly. With respect to pre-validated Beneficial Holder Ballots, the last properly completed Beneficial Holder Ballot actually received by the Solicitation Agent on or before the Voting Deadline shall control. Following the Voting Deadline, no Master Ballot or Beneficial Holder Ballot may be changed or revoked absent further order of the Bankruptcy Court.

13. The following Master Ballots and Beneficial Holder Ballots will not be counted: (a) any ballot that is illegible or contains insufficient information to permit the identification of the Nominee or Beneficial Holder; (b) any ballot actually received by the Solicitation Agent after the Voting Deadline, unless the Bankruptcy Court orders otherwise upon the request of the Debtors; (c) any ballot that is not properly signed; (d) any ballot not properly transmitted to the Solicitation Agent as required by the Tabulation Procedures, unless the Debtors determine otherwise; (e) any ballot submitted by or on behalf of a Person that did not hold a Class 8 Existing Equity Interest as of the Voting Record Date or that is otherwise not entitled to vote pursuant to the Plan; (f) any

ballot in a form other than the official form of ballot sent by the Solicitation Agent (provided that Beneficial Holder votes may be transmitted through the customary communications authorized in these instructions); (g) any ballot that attempts to partially accept and partially reject the Plan with respect to any Beneficial Holder; (h) any ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan; (i) any ballot superseded by a later, timely submitted valid ballot; (j) any ballot sent to the Debtors, the Debtors' agents or representatives (other than the Solicitation Agent), or the Debtors' financial or legal advisors; (k) any ballot that the Bankruptcy Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; (l) any ballot submitted by facsimile, telecopy, or other electronic means, other than a Master Ballot or pre-validated Beneficial Holder Ballot submitted by email in accordance with these instructions; and (m) any ballot not cast in accordance with the Tabulation Procedures and the procedures approved in the Solicitation Procedures Order.

14. Unless a Master Ballot or Beneficial Holder Ballot is received by the Solicitation Agent on or before the Voting Deadline, such ballot will be rejected as invalid and will not be counted as an acceptance or rejection of the Plan; provided, however, that the Debtors reserve the right to request the Bankruptcy Court to allow such ballot to be counted.

15. The method of delivery of the Master Ballot to the Solicitation Agent is at your election and risk. Except as otherwise provided herein, such delivery will be deemed made, regardless of the manner of delivery, only when the Solicitation Agent actually receives the properly completed Master Ballot. In all cases, Nominees should allow sufficient time to assure timely delivery of the Master Ballots.

16. The failure to vote does not constitute a vote to accept or reject the Plan. An objection to the confirmation of the Plan, even if timely served, does not constitute a vote to accept or reject the Plan.

17. Please be sure to sign and date your Master Ballot. You should indicate that you are signing a Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

18. Please keep any records of Beneficial Holder Ballots, including records of the Beneficial Holders to whom pre-validated Beneficial Holder Ballots were delivered, for at least one year after the Effective Date (or such other date as is set by order of the Bankruptcy Court). You may be ordered to produce the Beneficial Holder Ballots to the Debtors or the Bankruptcy Court.

19. If you are both the Nominee and the Beneficial Holder of any of the Class 8 Existing Equity Interests and you wish to vote such Class 8 Existing Equity Interests, please return a Master Ballot for such Class 8 Existing Equity Interests.

20. Subject to any contrary order of the Bankruptcy Court, the Debtors may waive any defect or irregularity as to any particular ballot at any time, either before or after the Voting Deadline, other than any requirement imposed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Local Rules, and any such waiver shall be identified in the Voting Report.

21. The Solicitation Agent may contact Nominees that submit incomplete or otherwise deficient ballots to make a reasonable effort to cure such deficiencies; *provided* that neither the Debtors nor the Solicitation Agent is required to provide notification of defects or irregularities with respect to completion or delivery of ballots, nor shall any of them incur any liability for failure to provide such notification; *provided further* that the Voting Report shall identify each ballot that does not conform to the Tabulation Procedures or contains any irregularity and the Debtors' treatment thereof.

22. Unless waived by the Debtors, subject to any contrary order of the Bankruptcy Court, any defects or irregularities in connection with deliveries of ballots must be cured prior to the Voting Deadline or such ballots will not be counted; *provided* that any such waiver may be made either before or after the Voting Deadline.

23. The Debtors will, upon written request, reimburse you for customary mailing and handling expenses you incur in forwarding the solicitation package and Beneficial Holder Ballot to the Beneficial Holders for which you are the Nominee. No fees or commissions or other remuneration will be payable to any broker, dealer, or other person for soliciting votes from Beneficial Holders with respect to the Plan.

24. This Master Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan, make an election with respect to the Third-Party Release, and/or make certifications with respect to the Beneficial Holder Ballots. Accordingly, at this time, Holders of Existing Equity Interests should not surrender stock certificates or instruments representing or evidencing their Existing Equity Interests and you should not accept delivery of any such certificates or instruments surrendered together with a Beneficial Holder Ballot.

25. This Master Ballot does not constitute, and shall not be deemed to be: (a) a Proof of Interest or (b) an assertion or admission of an Interest.

26. In the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Master Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

27. The Plan may be modified before confirmation in accordance with its terms and the Consenting Senior Noteholder RSA. Any acceptance or rejection of the Plan will be deemed an acceptance or rejection of the Plan as so modified, unless such modification materially and adversely changes the treatment of the Interest of the applicable Beneficial Holder, in which case resolicitation will be required only to the extent required by section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

28. If you believe you have received the wrong ballot, you should contact the Solicitation Agent immediately (a) by email to MercerInquiries@stretto.com with a reference to "Mercer International Inc. Solicitation" in the subject line, or (b) by telephone at (833) 333-9454 (toll free) or +1 (650) 525-4708 (international, toll).

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS MASTER BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.**

**IN ORDER FOR THE VOTES TRANSMITTED BY THIS MASTER BALLOT TO BE COUNTED, THIS MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE, AS DIRECTED ABOVE.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CONTACT THE SOLICITATION AGENT BY EMAIL TO MERCERINQUIRIES@STRETTO.COM WITH A REFERENCE TO "MERCER INTERNATIONAL INC. SOLICITATION" IN THE SUBJECT LINE, OR BY TELEPHONE AT (833) 333-9454 (TOLL FREE) OR +1 (650) 525-4708 (INTERNATIONAL, TOLL). PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL RENDER YOU OR ANY OTHER ENTITY THE AGENT OF THE DEBTORS OR THE SOLICITATION AGENT OR AUTHORIZE YOU OR ANY OTHER ENTITY TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF ANY OF THE DEBTORS WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE DOCUMENTS ENCLOSED HEREWITH.**

**THE VOTING DEADLINE IS DECEMBER 10, 2026 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

[*Remainder of page left intentionally blank*]

**Item 1. Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

| | |
|---|---|
| ☐ | is a broker, dealer, bank, or other agent or nominee for the Beneficial Holders of the aggregate number of shares of Class 8 Existing Equity Interests listed in Items 2 and 3 below and is the registered or record holder of such Class 8 Existing Equity Interests; or |
| ☐ | is acting under a power of attorney and/or agency agreement (a copy of which will be provided upon request) granted by a broker, bank, or other nominee that is the registered or record holder of the aggregate number of shares of Class 8 Existing Equity Interests listed in Items 2 and 3 below; or |
| ☐ | has been granted a proxy (an original of which is attached hereto) from a broker, bank, other nominee, or a Beneficial Holder, that is the registered or record holder of the aggregate number of shares of Class 8 Existing Equity Interests listed in Items 2 and 3 below and, accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holders of the Class 8 Existing Equity Interests described in Items 2 and 3 below. |

| |
|---|
| Aggregate number of shares of Class 8 Existing Equity Interests held as Nominee as of the Voting Record Date:<br>______________________________ Shares |
| CUSIP / ISIN to which this Master Ballot relates (check box):<br>☐ Existing Equity Interests (Common Stock) – CUSIP 588056101 / ISIN US5880561015 |

**Items 2 and 3. Class 8 Existing Equity Interests Vote on Plan; Third-Party Release.**

The undersigned transmits the following votes of Beneficial Holders of Class 8 Existing Equity Interests and certifies that the following Beneficial Holders of Class 8 Existing Equity Interests, as identified by their respective customer account numbers set forth below, are Beneficial Holders of such securities as of the Voting Record Date and have delivered to the undersigned, as Nominee, Beneficial Holder Ballots (or voting instructions conveyed through the customary means authorized in these instructions) casting such votes. Please note that the votes cast below will be applied in the same manner against each applicable Debtor. The Plan, though proposed jointly, constitutes separate plans proposed by each of the Debtor entities. Your vote will count as votes for or against, as applicable, each plan proposed by each Debtor entity. Indicate in the appropriate column below the number of shares voted for each account or attach such information to this Master Ballot in the form of the following table. Please note that each Beneficial Holder must vote all of such Beneficial Holder's Class 8 Existing Equity Interests to accept or reject the Plan and may not split such vote. Any Beneficial Holder Ballot that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted as a vote on the Plan. Beneficial Holders who did not cast a vote to accept or reject the Plan but checked the box to opt out of the Third-Party Release set forth in Article 10 of the Plan should be indicated by listing such Beneficial Holder's customer account number, leaving the accept and reject columns blank, and placing an "X" in the opt out column. (Please use additional sheets in the format below as necessary.)

| | Item 2 | | Item 3 |
|---|---|---|---|
| **Your Customer Account Number for Each Beneficial Holder of Class 8 Existing Equity Interests** | **Number of Shares Voted to ACCEPT the Plan** | **Number of Shares Voted to REJECT the Plan** | **OPT OUT OF THIRD-PARTY RELEASE** (if the box in Item 3 of the Beneficial Holder Ballot was completed, place an "X" in this column) |
| | | | |
| | | | |
| | | | |
| **TOTAL:** | | | |

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**PLAN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS**

**THE PLAN INCLUDES CERTAIN INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS. IF THE PLAN IS CONFIRMED AND CONSUMMATED, THEN, UNLESS A BENEFICIAL HOLDER OF A CLASS 8 EXISTING EQUITY INTEREST VALIDLY OPTS OUT OF THE THIRD-PARTY RELEASE SO THAT SUCH ELECTION IS REFLECTED ON A MASTER BALLOT OR PRE-VALIDATED BENEFICIAL HOLDER BALLOT ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE, SUCH BENEFICIAL HOLDER WILL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED THE DEBTORS, THE REORGANIZED DEBTORS, AND THE RELEASED PARTIES AS PROVIDED IN ARTICLE 10 OF THE PLAN AND AS SET FORTH IN APPENDIX A, REGARDLESS OF WHETHER SUCH BENEFICIAL HOLDER VOTES TO ACCEPT OR REJECT THE PLAN, ABSTAINS FROM VOTING, OR DOES NOT RETURN A BALLOT AT ALL. BENEFICIAL HOLDERS THAT VALIDLY OPT OUT OF THE THIRD-PARTY RELEASE WILL NOT BE RELEASING PARTIES AND, TO THE EXTENT THEY WOULD OTHERWISE BE RELEASED PARTIES, WILL NOT RECEIVE THE BENEFIT OF THE RELEASES GRANTED BY THE RELEASING PARTIES UNDER ARTICLE 10 OF THE PLAN.**

An election to opt out of the Third-Party Release will be valid only if it is included on a Master Ballot, or on a pre-validated Beneficial Holder Ballot, that is **actually received** by the Solicitation Agent by the Voting Deadline. The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.

**Item 4. Certification as to Transcription of Information from Item 4 of the Beneficial Holder Ballots (Other Beneficial Holder Ballots Submitted) as to Class 8 Existing Equity Interests.**

The undersigned certifies that the undersigned has transcribed in the following table the information, if any, provided by the Beneficial Holders in Item 4 of each of the Beneficial Holders' Beneficial Holder Ballots, identifying any Class 8 Existing Equity Interests for which such Beneficial Holders have submitted ballots other than to the undersigned:

**TRANSCRIBE FROM ITEM 4 OF THE BENEFICIAL HOLDER BALLOTS:**

| Your Customer Account Number for Beneficial Holder | Name of Registered Holder or Nominee | DTC Participant Number | CUSIP / ISIN | Number of Shares Voted through Other Beneficial Holder Ballot | Plan Vote of Class 8 Existing Equity Interests Voted (Accept or Reject) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

**Item 5. Certifications**

By signing this Master Ballot, the undersigned certifies that:

(1) it has received a copy of the Disclosure Statement, the ballots, and the solicitation package and has delivered the same to the Beneficial Holders listed on the ballots;

(2) it has received a completed and signed Beneficial Holder Ballot (or voting instructions conveyed through the customary means authorized in these instructions) from each Beneficial Holder listed in Items 2 and 3 of this Master Ballot;

(3) it is the registered or record holder of the securities being voted;

(4) it has been authorized by each such Beneficial Holder to vote on the Plan and/or make an election with respect to the Third-Party Release;

(5) it has properly disclosed: (i) the number of Beneficial Holders who completed Beneficial Holder Ballots; (ii) the respective number of shares of Class 8 Existing Equity Interests voted by each Beneficial Holder who completed a Beneficial Holder Ballot; (iii) each such Beneficial Holder's respective vote or election concerning the Plan or Third-Party Release, respectively; (iv) each such Beneficial Holder's certification as to Class 8 Existing Equity Interests voted; and (v) the customer account or other identification number for each such Beneficial Holder;

(6) each such Beneficial Holder has certified to the undersigned that it is eligible to vote on the Plan and/or make an election with respect to the Third-Party Release, and it will maintain Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least one year after the Effective Date and disclose all such information to the Bankruptcy Court or the Debtors if so ordered;

(7) it acknowledges and understands that the solicitation is being made pursuant to the terms and conditions set forth in the Plan, the Disclosure Statement, and the other applicable solicitation materials;

(8) it acknowledges and agrees that the Debtors may make conforming changes to the Plan in accordance with the terms thereof and, following commencement of the Chapter 11 Cases, to the extent provided by Bankruptcy Rule 3019 as may be reasonably necessary and that the Debtors

will not re-solicit acceptances or rejections of the Plan in the event of such conforming changes; and

(9) no other Master Ballots with respect to the same Class 8 Existing Equity Interests identified in Item 2 have been cast or, if any other Master Ballots have been cast with respect to such Class 8 Existing Equity Interests, then any such earlier received Master Ballots are hereby revoked.

**YOUR RECEIPT OF THIS MASTER BALLOT DOES NOT SIGNIFY THAT THE EXISTING EQUITY INTERESTS OF ANY BENEFICIAL HOLDER HAVE BEEN OR WILL BE ALLOWED. SUBJECT TO THE ALLOWANCE OF EXISTING EQUITY INTERESTS UNDER THE PLAN, THE DEBTORS RESERVE ALL RIGHTS TO DISPUTE SUCH EXISTING EQUITY INTERESTS.**

| | |
|---|---|
| Name of Nominee: | ______________________ |
| Name of Proxy Holder or Agent for Nominee (if applicable): | ______________________ |
| Nominee's DTC Participant Number: | ______________________ |
| Signature: | ______________________ |
| Name of Signatory: | ______________________ |
| Title: | ______________________ |
| Address: | ______________________ |
| Telephone Number: | ______________________ |
| Email Address: | ______________________ |
| Date Completed: | ______________________ |

This Master Ballot shall not constitute or be deemed a proof of claim or equity interest, an assertion of a claim or equity interest, or the allowance of a claim or equity interest.

**PLEASE COMPLETE, SIGN, AND DATE THIS MASTER BALLOT AND RETURN IT (WITH A SIGNATURE) *PROMPTLY* TO THE SOLICITATION AGENT IN THE ENVELOPE PROVIDED OR BY EMAIL BY ONE OF THE FOLLOWING METHODS:**

1. **Via electronic mail service to (preferred method):**

   **TeamPublicSecurities@stretto.com**

   **With reference to "Mercer International Inc. Solicitation" in the subject line.**

2. **In the envelope provided via first class mail, by overnight courier, or by hand delivery to:**

   **Mercer International Inc.**
   **Ballot Processing**
   **c/o Stretto**
   **410 Exchange, Suite 100**
   **Irvine, CA 92602**

| |
|---|
| **IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS MASTER BALLOT ON OR BEFORE DECEMBER 10, 2026 AT 4:00 P.M. (PREVAILING CENTRAL TIME), AND IF THE VOTING DEADLINE IS NOT EXTENDED, THE VOTES AND ANY ELECTIONS TO OPT OUT OF THE THIRD-PARTY RELEASE TRANSMITTED BY THIS MASTER BALLOT WILL NOT BE COUNTED, EXCEPT THAT THE DEBTORS RESERVE THE RIGHT TO REQUEST THE BANKRUPTCY COURT TO ALLOW SUCH VOTES AND ELECTIONS TO BE COUNTED.** |

[*Remainder of page left intentionally blank*]

# APPENDIX A

Release, Injunction, And Exculpation Provisions in the Plan[1]

[1] Capitalized terms used but not defined in this Appendix A have the meanings given to them in the Plan.

**A. Certain Relevant Definitions.**

"***Exculpated Parties***" means, each in its capacity as such, (a) each of the Debtors and the Estates; and (b) each independent director of the Debtors.

"***Related Parties***" means with respect to a Person, such Person's current and former affiliates, and such Person's and its current and former affiliates' current and former directors, managers, committee members, members of any governing body, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed or advised entities, accounts, or funds, current or former, and future associated entities, predecessors, participants, successors, and assigns (whether by operation of law or otherwise), subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, partners, employees, agents, fiduciaries, trustees, advisory board members, financial advisors or managers, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, investment managers, investment advisors, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such.

"***Released Parties***" means, collectively, solely in their capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Senior Notes Trustee; (e) each Backstop Party; (f) each member of the Majority Ad Hoc Group; and (g) with respect to each of the foregoing Persons in clauses (a) through (f), each of their Related Parties; *provided* that, a Person shall not be a Released Party if such Person (i) elects to opt out of the Releases set forth in this Plan or (ii) timely Files an objection to the Releases set forth in this Plan and such objection is not withdrawn or otherwise resolved before the Confirmation Order is entered.

"***Releases***" means, collectively, the releases set forth in Article 10.6 of the Plan.

"***Releasing Parties***" means, collectively, and in each case solely in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Senior Notes Trustee; (e) each Backstop Party; (f) each Holder of a Claim or Interest in a Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective ballot; (g) each Holder of a Claim or Interest in a Non-Voting Class that is deemed to accept this Plan that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective Release Opt-Out Form; and (h) each Related Party of each Entity in clauses (a) through (g), solely to the extent such Related Party (I) would be obligated to grant a release under principles of agency if it were so directed by the Entity in the foregoing clauses (a) through (f) to whom they are related or (II) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (g); *provided*, that any Holder of a Claim or Interest that timely objects to the Third Party Release, either through (x) a formal objection Filed on the docket of the Chapter 11 Cases or (y) an informal objection provided to the Debtors by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or via electronic mail, as applicable, or otherwise resolved before the Confirmation Order is entered, shall not be a "Releasing Party".

**B. Section 10.5 of the Plan – Permanent Injunction.**

**Except as otherwise expressly provided in this Plan or the Confirmation Order, from and after the Effective Date, all Persons and Entities are, to the fullest extent provided under section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined from (a) commencing or continuing, in any manner or in any place, any suit, action, or other proceeding of any kind; (b) enforcing, attaching, collecting, or recovering in any manner or means any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Lien or encumbrance; (d) asserting a right**

**of setoff or subrogation of any kind; or (e) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or with respect to any Claim, demand, liability, obligation, debt, right, Cause of Action, Interest, or remedy released or to be released, exculpated or to be exculpated, settled or to be settled, or discharged or to be discharged pursuant to this Plan or the Confirmation Order against any Person or Entity so released, discharged, or exculpated (or the property or estate of any Person or Entity so released, discharged, or exculpated). All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.**

**No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, Reorganized Debtors, Exculpated Parties, or Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of any Claim or Cause of Action, as applicable, subject to Article X, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Exculpated Party. At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Reorganized Debtor, Exculpated Party, Released Party or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action File a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Federal Rules of Civil Procedure, including Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.**

**C. Section 10.6 of the Plan – Releases.**

**(a) Releases by the Debtors.**

**To the fullest extent permitted by applicable law, and except as otherwise expressly set forth in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Debtors, the Reorganized Debtors, and the Estates, in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally, released and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (a) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (b) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor**

**Affiliates, (c) the subject matter of, or the transactions, events, circumstances, acts, or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (d) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including the Consenting Stakeholders), (e) the Senior Notes Documents, (f) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (g) intercompany transactions, (h) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements and related prepetition transactions, the Definitive Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (i) any contract, instrument, release, or other agreement or document created or entered into in connection with this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements, the Definitive Documents, the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of this Plan, or the administration and implementation of this Plan or the Confirmation Order, including the issuance or distribution of Securities pursuant to this Plan, (j) the distribution, including any disbursements made by a Distribution Agent, of property under this Plan, or any other related agreement, or (k) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; *provided*, that the Debtors do not release Claims or Causes of Action (x) that are of a commercial nature and arise in the ordinary course of business, such as accounts receivable and accounts payable on account of goods being sold and services being performed; (y) arising under an Executory Contract or Unexpired Lease that is assumed by the Debtors; or (z) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct. Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under this Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or the Restructuring Transactions, or any agreement, Claim, or obligation arising or assumed under this Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing this Plan; (b) a good-faith settlement and compromise of the Claims released by the Debtors; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.**

**(b) Releases by Holders of Claims and Interests.**

**To the fullest extent permitted by applicable law, and except as otherwise expressly set forth in this Plan or the Confirmation Order, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party, in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and**

**unconditionally, released and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (a) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (b) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (c) the subject matter of, or the transactions, events, circumstances, acts, or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (d) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including the Consenting Stakeholders), (e) the Senior Notes Documents, (f) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (g) intercompany transactions, (h) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements and related prepetition transactions, the Definitive Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (i) any contract, instrument, release, or other agreement or document created or entered into in connection with this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements, the Definitive Documents, or the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, or the administration and implementation of this Plan or the Confirmation Order, including the issuance or distribution of Securities pursuant to this Plan, (j) the distribution, including any disbursements made by a Distribution Agent, of property under this Plan, or any other related agreement, or (k) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; *provided*, that the Releasing Parties do not release Claims or Causes of Action arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct. Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under this Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or the Restructuring Transactions, or any agreement, Claim, or obligation arising or assumed under this Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of this Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing this Plan; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.**

**D. Section 10.7 of the Plan – Exculpation.**

**Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any Claims or Causes of Action for any act taken or omitted to be taken between the Petition Date and the Effective Date in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the Confirmation or consummation (as applicable) of this Plan, the Restructuring Support Agreements and related prepetition transactions, and the Disclosure Statement including any disbursements made by a Distribution Agent in connection with this Plan, the Disclosure Statement, the Definitive Documents, the Corporate Governance Documents, the Senior Notes Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with this Plan, or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement, or Confirmation or consummation of this Plan; *provided*, that the foregoing provisions of this exculpation shall not operate to waive or release: (a) any Claims or Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; or (b) the rights of any Person or Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan, or assumed pursuant to this Plan or Final Order of the Bankruptcy Court; *provided further*, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions, or inactions.**

**The Exculpated Parties have, and upon consummation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.**

**The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or Entity. For the avoidance of doubt and notwithstanding anything else herein, the foregoing exculpation shall be limited to Persons that served as Estate fiduciaries during the Chapter 11 Cases.**

# APPENDIX B

Tabulation Procedures

## Tabulation Procedures

These tabulation procedures (the "***Tabulation Procedures***") govern the tabulation of Ballots submitted by Holders of Claims in Class 3 (Senior Notes Claims) and Holders of Interests in Class 8 (Existing Equity Interests) (together, the "***Voting Classes***") and Release Opt-Out Forms submitted by Holders of Claims and Interests in Class 1 (Secured Claims), Class 2 (Other Priority Claims), Class 4 (General Unsecured Claims), and Class 7 (510(b) Claims). The Debtors commenced the solicitation of votes from Eligible Holders of Class 3 Senior Notes Claims before the Petition Date, and these Tabulation Procedures apply to such prepetition solicitation to the extent consistent with sections 1125(g) and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018(b). Holders in the Voting Classes that are Non-Eligible Holders may vote only following entry of the order to which these Tabulation Procedures are attached (the "***Solicitation Procedures Order***"), and the distribution of Release Opt-Out Forms to the Holders of Claims in Class 1 (Secured Claims), Class 2 (Other Priority Claims), Class 4 (General Unsecured Claims), and Class 7 (510(b) Claims) will commence following entry of the Solicitation Procedures Order. Holders of Class 8 Existing Equity Interests will be solicited following entry of the Solicitation Procedures Order. Capitalized terms used but not defined herein have the meanings given to them in the Solicitation Procedures Order, the Motion,[1] or the Plan, as applicable.

### 1. Voting Record Date.

The Voting Record Date for Holders of Senior Notes Claims in Class 3 and Holders of Existing Equity Interests in Class 8 is November 2, 2026.

### 2. Voting Deadline.

To be counted, a Ballot must be properly executed, completed, and delivered so that it is actually received by the Solicitation Agent no later than **December 10, 2026 at 4:00 p.m. (prevailing Central Time)** (the "***Voting Deadline***"), which the Debtors may extend with the reasonable consent of the Required Consenting Senior Noteholders, subject to the terms of the Consenting Senior Noteholder RSA. The deadline to submit a Release Opt-Out Form is the Voting Deadline. Beneficial Holders voting through a Nominee (other than through a pre-validated Ballot) must return their Ballots or voting instructions to their Nominee with sufficient time for the Nominee to process them and deliver a Master Ballot to the Solicitation Agent by the Voting Deadline, and Beneficial Holders that receive a pre-validated Ballot must return it directly to the Solicitation Agent so that it is actually received by the Voting Deadline.

### 3. Methods of Submission.

Registered Holder Ballots and Release Opt-Out Forms may be submitted (a) in hard copy by regular mail, overnight courier, or hand delivery to the address set forth in the applicable Ballot or Release Opt-Out Form, or (b) through the E-Ballot Portal. Beneficial Holder Ballots that are not pre-validated must be returned to the applicable Nominee in accordance with such Nominee's instructions and customary practices. Master Ballots and pre-validated Ballots may be submitted in hard copy as set forth in clause (a) above or by email of a PDF copy to the address set forth in the applicable Ballot, but may not be submitted through the E-Ballot Portal. Except as provided in the preceding sentences, Ballots and Release Opt-Out

[1] The "***Motion***" means the *Emergency Motion of Debtors for Entry of an Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Approving (A) Solicitation Procedures, (B) Form and Manner of Notice of Commencement, Combined Hearing, and Objection Deadline, and (C) Rights Offering Procedures and Related Forms, and Authorizing Commencement of the Rights Offering; (III) Fixing Deadline to Object to Disclosure Statement and Plan; (IV) Conditionally (A) Directing the United States Trustee Not to Convene Section 341 Meeting of Creditors and (B) Waiving Requirement to File Statements of Financial Affairs and Schedules of Assets and Liabilities; (V) Conditionally Approving the Disclosure Statement; and (VI) Granting Related Relief.*

Forms submitted by email, facsimile, or any other electronic means will not be counted. The encrypted ballot data and audit trail created by electronic submission through the E-Ballot Portal shall become part of the record of any Ballot or Release Opt-Out Form submitted in this manner, and the Holder's electronic signature will be deemed immediately legally valid and effective. A Holder that submits a Ballot through the E-Ballot Portal should not also submit a paper Ballot on account of the same Claim or Interest. The method of delivery is at the election and risk of each Holder, and a Ballot or Release Opt-Out Form will be deemed delivered only when the Solicitation Agent actually receives it.

**4. Ballots Not Counted.**

Subject to Section 8 below, the following Ballots will not be counted: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder; (b) any Ballot actually received by the Solicitation Agent after the Voting Deadline, unless the Court orders otherwise upon request of the Debtors; (c) any Ballot that does not contain a signature (provided that a signature collected electronically through the E-Ballot Portal will be deemed a valid signature); (d) any Ballot not properly transmitted to the Solicitation Agent as required by these Tabulation Procedures, unless the Debtors determine otherwise; (e) any Ballot submitted by a Person that did not hold a Claim or Interest in a Voting Class as of the Voting Record Date or that is otherwise not entitled to vote pursuant to the Plan; (f) any Ballot submitted by or on behalf of a Non-Eligible Holder before entry of the Solicitation Procedures Order (and any Holder submitting a Ballot before entry of the Solicitation Procedures Order shall be deemed to have certified that it is an Eligible Holder); (g) any form of ballot other than the official form of Ballot sent by the Solicitation Agent (provided that votes transmitted by Beneficial Holders to their Nominees through customary communications as permitted by the Ballots may be reflected on a Master Ballot); (h) any Ballot that partially rejects and partially accepts the Plan; (i) any Ballot that is properly completed, executed, and timely returned but is not marked to either accept or reject the Plan, or is marked to both accept and reject the Plan; (j) any Ballot superseded by a later, timely submitted valid Ballot; (k) any Ballot sent to the Debtors, the Debtors' agents or representatives (other than the Solicitation Agent), or the Debtors' financial or legal advisors; (l) any Ballot cast by a Person that the Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; and (m) any Ballot not cast in accordance with these Tabulation Procedures and the procedures approved in the Solicitation Procedures Order.

**5. General Tabulation Rules.**

Whenever a Holder casts more than one Ballot voting the same Claim or Interest before the Voting Deadline, the last properly completed Ballot actually received on or before the Voting Deadline shall be deemed to reflect such Holder's intent and shall supersede any previously received Ballot. With respect to Beneficial Holder Ballots submitted through a Nominee (other than pre-validated Ballots), the last such Ballot received by the Nominee in sufficient time to be included on its Master Ballot shall control. Any duplicate Ballots will be counted only once.

Following the Voting Deadline, no Ballot may be changed or revoked, absent further order of the Court.

If a Holder simultaneously casts inconsistent Ballots with respect to the same Claim or Interest, such Ballots will not be counted.

Holders must vote all of their Claims or Interests within a particular Class either to accept or reject the Plan and may not split their votes.

The amount of a Claim or Interest for voting purposes shall be (i) for Class 3, the outstanding principal amount of the applicable Senior Notes held by each Beneficial Holder through its Nominee, without regard

to any accrued but unpaid interest, fees, or premiums, as reflected in the securities position report(s) from DTC as of the Voting Record Date, and (ii) for Class 8, the number of shares reflected on the Debtors' stock register maintained by the transfer agent or the securities position report(s) from DTC as of the Voting Record Date, in each case regardless of any amount set forth on a Ballot. In the event of any inconsistency, the securities position report(s) from DTC shall control for positions held through DTC.

A Ballot does not constitute, and shall not be deemed to be, a proof of claim or an assertion or admission of a Claim or Interest.

Only Holders as of the Voting Record Date may vote, and any transferee of a Claim or Interest after the Voting Record Date shall not be entitled to vote on account of such Claim or Interest.

Any Person signing a Ballot in a representative capacity (including as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation) must indicate such capacity and, if requested by the Debtors or the Solicitation Agent, submit proper evidence of authority to so act.

Consistent with Article 3.6 of the Plan, if no Holder in a Voting Class eligible to vote submits a valid Ballot, the Plan shall be presumed accepted by such Voting Class.

**6. Nominees, Master Ballots, and Overvotes.**

Nominees may (a) forward the Solicitation Package to Beneficial Holders no later than 5 business days after receipt and collect and tabulate their votes on a Master Ballot, or (b) pre-validate a Beneficial Holder Ballot and forward it to the Beneficial Holder for return directly to the Solicitation Agent, and may collect votes in accordance with their customary practices, including through voting instruction forms or electronic means. Nominees electing option (a) must deliver the Master Ballot so that it is actually received by the Solicitation Agent by the Voting Deadline.

Votes cast by Beneficial Holders through Nominees will be applied to the positions held by such Nominees as of the Voting Record Date, as evidenced by the applicable securities position report(s) from DTC.

Votes submitted by a Nominee will not be counted in excess of such Nominee's position as of the Voting Record Date.

If conflicting votes or over-votes are submitted by a Nominee, the Solicitation Agent may use reasonable efforts to reconcile such discrepancies with the Nominee.

To the extent any over-vote cannot be reconciled, the Solicitation Agent will tabulate votes to accept and to reject the Plan in the same proportion as the votes submitted by the Nominee on the applicable Master Ballot or pre-validated Ballots, but only to the extent of such Nominee's position as of the Voting Record Date. A Holder (including a Registered Holder or Beneficial Holder) that holds through more than one Nominee, account, or CUSIP must execute and return a separate Ballot for each Nominee, account, or CUSIP, must vote all such Claims or Interests in the same manner, and, in the case of a Beneficial Holder, must certify on each Ballot all other Ballots submitted in the same Voting Class.

For purposes of determining whether the numerosity requirement of section 1126(c) of the Bankruptcy Code has been satisfied, the Solicitation Agent will treat each Beneficial Holder as a single Holder, to the extent it is able to identify such Beneficial Holder's Ballots submitted through multiple Nominees or accounts.

**7. Release Opt-Out Forms.**

Subject to Section 8 below, a Release Opt-Out Form will be counted only if it is properly completed, executed, and actually received by the Solicitation Agent on or before the Voting Deadline in accordance with Section 3 above. The following Release Opt-Out Forms will not be counted: (a) any Release Opt-Out Form that is illegible or contains insufficient information to permit the identification of the Holder of the Claim or Interest; (b) any Release Opt-Out Form actually received by the Solicitation Agent after the Voting Deadline, unless the Court orders otherwise upon request of the Debtors; (c) any Release Opt-Out Form submitted by or on behalf of a Person that is not entitled to opt out of the Third-Party Release under the Restructuring Support Agreements; (d) any Release Opt-Out Form sent to the Debtors, the Debtors' agents or representatives (other than the Solicitation Agent), or the Debtors' financial or legal advisors; (e) any Release Opt-Out Form transmitted by facsimile, email, or other electronic means other than as permitted by these Tabulation Procedures; (f) any unsigned Release Opt-Out Form (provided that a signature collected electronically through the E-Ballot Portal will be deemed a valid signature); (g) any Release Opt-Out Form submitted without making the opt-out election; and (h) any Release Opt-Out Form not completed in accordance with these Tabulation Procedures and the procedures approved in the Solicitation Procedures Order.

If multiple Release Opt-Out Forms are received from the same Holder with respect to the same Claim or Interest before the Voting Deadline, the last properly completed Release Opt-Out Form timely received will supersede and revoke any earlier received Release Opt-Out Form. A Holder must make the same election with respect to all Claims or Interests held by such Holder in a single Class. An opt-out election made on a properly completed and timely submitted Ballot will be given the same effect as an election made on a Release Opt-Out Form.

A Release Opt-Out Form is not a letter of transmittal and may not be used for any purpose other than to opt out of the Third-Party Release, and does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

**8. Waiver of Defects; Voting Report.**

Subject to a contrary order of the Court, the Debtors may waive any defects or irregularities as to any particular Ballot or Release Opt-Out Form at any time, either before or after the Voting Deadline, other than any requirement imposed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Local Rules. The Debtors or the Solicitation Agent, as applicable, shall determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots, which determination, absent a contrary order of the Court, shall be final and binding. The Solicitation Agent may contact parties who submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies; *provided* that neither the Debtors nor the Solicitation Agent is required to provide notification of defects or irregularities with respect to completion or delivery of Ballots, nor shall any of them incur any liability for failure to provide such notification. The Solicitation Agent will file a voting report (the "***Voting Report***") no later than December 14, 2026, or 2 business days before any adjourned Combined Hearing, which shall, among other things, (a) identify each Ballot that does not conform to these Tabulation Procedures or contains any irregularity, the Debtors' treatment of each such Ballot, and any waivers made under this section, and (b) report the Release Opt-Out elections received on Ballots and Release Opt-Out Forms.

**9. Retention of Ballots.**

The Solicitation Agent shall retain all paper copies of Ballots and all solicitation-related correspondence for 2 years following the Effective Date, whereupon the Solicitation Agent is authorized to destroy or

otherwise dispose of all paper copies of Ballots, printed solicitation materials (including unused copies of the Solicitation Package), and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such 2-year period.

**EXHIBIT 6-C**

Form of Class 8 Registered Holder Ballot

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| MERCER INTERNATIONAL INC., *et al.*,[1] | : | Case No. 26-90829 (CML) |
| Debtors. | : | (Jointly Administered) |

**BALLOT FOR REGISTERED HOLDERS
OF EXISTING EQUITY INTERESTS IN CLASS 8
FOR VOTING TO ACCEPT OR REJECT THE JOINT
PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF
MERCER INTERNATIONAL INC. AND ITS DEBTOR AFFILIATE**

**The voting deadline to accept or reject the Plan is 4:00 p.m. (prevailing Central Time), on December 10, 2026 (the "*Voting Deadline*"), unless extended by the Debtors.**

**Please be advised that Article 10 of the Plan contains release, exculpation, and injunction provisions. These provisions are included in Appendix A to this Ballot. You are advised to review and consider the Plan carefully because your rights might be affected thereunder even if you abstain from voting. If you do not validly opt out of the Third-Party Release by checking the box in Item 3 and returning this Ballot so that such election is actually received by the Solicitation Agent by the Voting Deadline, you will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Debtors, the Reorganized Debtors, and the Released Parties as provided in Article 10.6(b) of the Plan (the "*Third-Party Release*"). This is the case whether you vote to accept or reject the Plan, abstain from voting, or do not return a ballot at all. If you opt out of the Third-Party Release, you will not be a Releasing Party and, to the extent you would otherwise be a Released Party, you will not receive the benefit of the releases granted by the Releasing Parties under Article 10 of the Plan. In addition, any Holder that timely objects to the Third-Party Release, either through a formal objection Filed on the docket of the Chapter 11 Cases or an informal objection provided to the Debtors by electronic mail, which objection is not withdrawn or otherwise resolved before entry of the Confirmation Order, will not be a Releasing Party.**

**Please be advised that your decision to opt out does not affect the amount of distribution you will receive under the Plan.**

[1] The Debtors in the Chapter 11 Cases, together with the last four digits of each Debtor's taxpayer identification number, are: Mercer International Inc. (6945) and Mercer International (Texas) LLC (N/A). The Debtors' mailing address for purposes of the Chapter 11 Cases is: Suite 1120, 700 West Pender Street, Vancouver, British Columbia V6C 1G8.

The Debtors have sent this ballot (the "***Ballot***") to you to solicit your vote to accept or reject the *Joint Prepackaged Chapter 11 Plan of Reorganization of Mercer International Inc. and Its Debtor Affiliate*, dated November 9, 2026 (as may be amended, modified, or supplemented from time to time, the "***Plan***").[2] The Plan is attached as Exhibit A to the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Mercer International Inc. and Its Debtor Affiliate*, dated November 9, 2026 (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***"), which accompanies this Ballot and is available on the Solicitation Agent's website. The Disclosure Statement provides information to assist you in deciding how to vote on the Plan. The Solicitation Agent's website allows holders to electronically submit a vote on the Plan, and contains important information, hearing dates, other key deadlines, as well as the docket for the Chapter 11 Cases (as defined below).

If you have not received or wish to obtain additional copies of the Disclosure Statement, or if you have any questions on how to properly complete and/or submit this Ballot, please contact the Debtors' Solicitation Agent, Stretto, Inc. (the "***Solicitation Agent***"), (a) by writing to Mercer International Inc., c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, (b) by email at MercerInquiries@stretto.com (with "Mercer International Inc. Solicitation" in the subject line), or (c) by telephone at (833) 333-9454 (toll free) or +1 (650) 525-4708 (international, toll). Please be advised that the Solicitation Agent cannot provide legal advice.

You are receiving this Ballot because you may be the holder of record (a "***Registered Holder***"), as of November 2, 2026 (the "***Voting Record Date***"), of Existing Equity Interests. "***Existing Equity Interests***" means any and all Interests in Mercer International Inc. ("***Mercer***") (other than any Existing Unexercised Equity Interests) as of immediately before the Effective Date.

The Debtors' cases (the "***Chapter 11 Cases***") under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") are pending before the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "***Bankruptcy Court***"). Holders of Existing Equity Interests were not solicited before the Petition Date, and this solicitation is being conducted pursuant to the order of the Bankruptcy Court approving the solicitation procedures (the "***Solicitation Procedures Order***"). The Plan may be confirmed by the Bankruptcy Court and thereby made binding on you if: (a) it is accepted by at least two-thirds in amount of the Existing Equity Interests in Class 8 that actually vote on the Plan; and (b) the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, Class 8 and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court and the Effective Date occurs, the Plan will be binding on all Holders of Existing Equity Interests whether or not a Holder of Existing Equity Interests returns a ballot, votes to reject the Plan, or does not vote.

All pleadings and notices relating to the Chapter 11 Cases that are filed with the Bankruptcy Court (including notices of the date and time of hearings), are available for review and download, free of charge, on the case information website of the Solicitation Agent at https://cases.stretto.com/Mercer.

This Ballot is for Existing Equity Interests in Class 8. If you hold Claims or Interests in more than one class, you will receive a separate ballot for each class in which you are entitled to vote. In order for your vote to count, you must either (a) complete and submit your vote through the Solicitation Agent's E-Ballot Portal

[2] Capitalized but undefined terms herein shall have the meanings ascribed to them in the Plan.

or (b) complete and return this paper Ballot in accordance with the instructions set forth herein, in each case so that it is actually received by the Solicitation Agent on or before the Voting Deadline.

Your receipt of this Ballot does not signify that you hold Class 8 Existing Equity Interests or that any such Existing Equity Interests have been or will be Allowed. This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of or distribution on account of Class 8 Existing Equity Interests. The Debtors reserve all rights to dispute such Interests.

This Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than (a) to cast a vote to accept or reject the Plan and/or (b) to make an election with respect to the Third-Party Release. Accordingly, at this time, Holders of Existing Equity Interests should not surrender stock certificates or instruments representing or evidencing their Existing Equity Interests, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates or instruments surrendered together with a Ballot. If you believe you have received this Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent immediately.

If you have any questions regarding the Ballot or how to properly complete this Ballot, please contact the Solicitation Agent for further assistance by telephone at (833) 333-9454 (toll free) or +1 (650) 525-4708 (international, toll) or via email at MercerInquiries@stretto.com (with "Mercer International Inc. Solicitation" in the subject line).

**IMPORTANT NOTICE REGARDING TREATMENT FOR HOLDERS OF CLASS 8 EXISTING EQUITY INTERESTS**

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed, and the Effective Date occurs, then each Holder of an Allowed Existing Equity Interest shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Existing Equity Interest, its Pro Rata Share of: (a) 8.5% of the New Common Stock, subject to dilution by the Management Incentive Plan and the New Convertible Preferred Stock (if converted); and (b) 3.5% of the New Convertible Preferred Stock. On the Effective Date, all Existing Equity Interests shall be cancelled, released, extinguished, and of no further force and effect.

Distributions of Plan Securities to Holders of Allowed Existing Equity Interests shall be made through the facilities of DTC in accordance with DTC's customary practices, except as otherwise agreed by the Debtors (or the Reorganized Debtors) and the Required Consenting Senior Noteholders.

[*Remainder of page left intentionally blank*]

**IMPORTANT NOTICE REGARDING TREATMENT FOR HOLDERS OF CLASS 8 EXISTING EQUITY INTERESTS**

**IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, IT WILL BE BINDING ON ALL HOLDERS OF CLASS 8 EXISTING EQUITY INTERESTS WHETHER OR NOT THEY VOTE. PLEASE BE ADVISED THAT IF THE PLAN IS CONFIRMED AND CONSUMMATED, HOLDERS OF CLASS 8 EXISTING EQUITY INTERESTS WILL BE BOUND BY THE INJUNCTION AND EXCULPATION PROVISIONS CONTAINED IN ARTICLE 10 OF THE PLAN AND SET FORTH IN APPENDIX A. EACH HOLDER OF A CLASS 8 EXISTING EQUITY INTEREST THAT DOES NOT VALIDLY OPT OUT OF THE THIRD-PARTY RELEASE BY CHECKING THE BOX IN ITEM 3 AND RETURNING THIS BALLOT SO THAT IT IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE WILL BE DEEMED TO HAVE GRANTED THE THIRD-PARTY RELEASE, WHETHER SUCH HOLDER VOTES TO ACCEPT OR REJECT THE PLAN, ABSTAINS FROM VOTING, OR DOES NOT RETURN A BALLOT AT ALL. HOLDERS THAT VALIDLY OPT OUT OF THE THIRD-PARTY RELEASE WILL NOT BE RELEASING PARTIES AND, TO THE EXTENT THEY WOULD OTHERWISE BE RELEASED PARTIES, WILL NOT RECEIVE THE BENEFIT OF THE RELEASES GRANTED BY THE RELEASING PARTIES UNDER ARTICLE 10 OF THE PLAN. IN ADDITION, ANY HOLDER THAT TIMELY OBJECTS TO THE THIRD-PARTY RELEASE, EITHER THROUGH A FORMAL OBJECTION FILED ON THE DOCKET OF THE CHAPTER 11 CASES OR AN INFORMAL OBJECTION PROVIDED TO THE DEBTORS BY ELECTRONIC MAIL, WHICH OBJECTION IS NOT WITHDRAWN OR OTHERWISE RESOLVED BEFORE ENTRY OF THE CONFIRMATION ORDER, WILL NOT BE A RELEASING PARTY.**

**IMPORTANT**

**YOU SHOULD CAREFULLY REVIEW THE DISCLOSURE STATEMENT AND PLAN BEFORE YOU VOTE. YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR INTERESTS UNDER THE PLAN.**

**THE SOLICITATION AGENT IS NOT AUTHORIZED TO (AND WILL NOT) PROVIDE LEGAL ADVICE.**

**VOTING RECORD DATE: NOVEMBER 2, 2026**

**VOTING DEADLINE: 4:00 P.M. PREVAILING CENTRAL TIME ON DECEMBER 10, 2026 (UNLESS EXTENDED BY THE DEBTORS)**

**YOU MAY USE THE E-BALLOT PORTAL TO SUBMIT YOUR VOTE AND YOUR OPT-OUT ELECTION. IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE YOUR BALLOT BY THE VOTING DEADLINE, YOUR VOTE WILL NOT BE COUNTED, UNLESS THE BANKRUPTCY COURT ORDERS OTHERWISE UPON REQUEST OF THE DEBTORS, AND ANY ELECTION TO OPT OUT OF THE THIRD-PARTY RELEASE WILL NOT BE VALID.**

**YOU SHOULD NOT SEND YOUR BALLOT TO ANY OF THE DEBTOR ENTITIES, DEBTORS' AGENTS (OTHER THAN THE SOLICITATION AGENT), OR DEBTORS'**

**FINANCIAL OR LEGAL ADVISORS. IF SO SENT, THE BALLOT WILL NOT BE COUNTED IN CONNECTION WITH THE PLAN.**

**PAPER BALLOTS MAY BE RETURNED BY FIRST CLASS MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO: MERCER INTERNATIONAL INC. BALLOT PROCESSING, C/O STRETTO, 410 EXCHANGE, SUITE 100, IRVINE, CA 92602; OR SUBMITTED VIA THE SOLICITATION AGENT'S E-BALLOT PORTAL AT HTTPS://CASES.STRETTO.COM/MERCER. BALLOTS SUBMITTED BY FACSIMILE, EMAIL, OR ANY OTHER ELECTRONIC TRANSMISSION OTHER THAN THE E-BALLOT PORTAL WILL NOT BE COUNTED. HOLDERS OF CLASS 8 EXISTING EQUITY INTERESTS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT PORTAL.**

**INSTRUCTIONS FOR VOTING ONLINE THROUGH THE E-BALLOT PORTAL: You may return your Ballot by electronic, online transmission solely by visiting the Solicitation Agent's E-Ballot Portal at https://cases.stretto.com/Mercer, clicking on the "Submit E-Ballot" section of the website, and following the directions to submit your E-Ballot. You will need your Unique E-Ballot ID# [__________] to retrieve and submit your customized E-Ballot. Holders who cast a Ballot using the E-Ballot Portal should NOT also submit a paper Ballot. A signature collected electronically through the E-Ballot Portal will be deemed immediately legally valid and effective.**

[*Remainder of page left intentionally blank*]

**BALLOT INSTRUCTIONS**

1. This Ballot is subject to the tabulation procedures attached hereto as Appendix B (the "***Tabulation Procedures***"), which were approved by the Bankruptcy Court pursuant to the Solicitation Procedures Order. In the event of any inconsistency between this Ballot and the Tabulation Procedures, the Tabulation Procedures shall control.

2. Complete Items 1 and 2.

3. If you wish to opt out of the Third-Party Release, regardless of whether you vote to accept or reject the Plan or abstain from voting, complete Item 3 by checking the box. Unless you check the box in Item 3 and return this Ballot in accordance with these instructions, you will be deemed to have granted the Third-Party Release, whether you vote to accept or reject the Plan, abstain, or do not return a ballot at all. In addition, consistent with the Plan, if you timely object to the Third-Party Release, either through a formal objection Filed on the docket of the Chapter 11 Cases or an informal objection provided to the Debtors by electronic mail, and such objection is not withdrawn or otherwise resolved before entry of the Confirmation Order, you will not be a Releasing Party.

4. Review the certification contained in Item 4.

5. Sign and date the Ballot and fill out the other required information.

6. If you are completing this Ballot on behalf of another person or entity, indicate your relationship with such person or entity and the capacity in which you are signing and, if requested, submit satisfactory evidence of your authority to so act (e.g., a power of attorney or a certified copy of board resolutions authorizing you to so act).

7. To ensure that your Ballot is counted, you must either: (a) complete and submit your Ballot via the Solicitation Agent's E-Ballot Portal at https://cases.stretto.com/Mercer; or (b) complete, sign, and return this paper Ballot to the Solicitation Agent by first class mail, overnight courier, or hand delivery, in each case so that it is actually received no later than the Voting Deadline of 4:00 p.m. (prevailing Central Time) on December 10, 2026. Ballots will not be accepted by facsimile, email, or other electronic means (other than the E-Ballot Portal). Holders who cast a Ballot using the E-Ballot Portal should not also submit a paper Ballot.

8. You must vote all of your Class 8 Existing Equity Interests either to accept or reject the Plan and you may not split your vote.

9. The number of shares of your Class 8 Existing Equity Interests for voting purposes will be the number of shares reflected on the Debtors' stock register maintained by the transfer agent or the securities position report(s) from DTC as of the Voting Record Date, regardless of any amount set forth on this Ballot. In the event of any inconsistency, the securities position report(s) from DTC shall control for positions held through DTC.

10. Only Holders as of the Voting Record Date may vote, and any transferee of a Class 8 Existing Equity Interest after the Voting Record Date is not entitled to vote on account of such Interest.

11. You must make the same election with respect to the Third-Party Release for all Class 8 Existing Equity Interests you hold, including Existing Equity Interests held under more than one account.

12. Consistent with Article 3.6 of the Plan, if no Holder of a Class 8 Existing Equity Interest eligible to vote submits a valid Ballot, the Plan shall be presumed accepted by Class 8.

13. The following Ballots will not be counted: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Registered Holder; (b) any Ballot actually received by the Solicitation Agent after the Voting Deadline, unless the Bankruptcy Court orders otherwise upon the request of the Debtors; (c) any Ballot that is not properly signed (provided that a signature collected electronically through the E-Ballot Portal will be deemed a valid signature); (d) any Ballot not properly transmitted to the Solicitation Agent as required by the Tabulation Procedures, unless the Debtors determine otherwise; (e) any Ballot submitted by a Person that did not hold a Class 8 Existing Equity Interest as of the Voting Record Date or that is otherwise not entitled to vote pursuant to the Plan; (f) any ballot in a form other than the official form of Ballot sent by the Solicitation Agent; (g) any Ballot that attempts to partially accept and partially reject the Plan; (h) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan; (i) any Ballot superseded by a later, timely submitted valid Ballot; (j) any Ballot sent to the Debtors, the Debtors' agents or representatives (other than the Solicitation Agent), or the Debtors' financial or legal advisors; (k) any Ballot that the Bankruptcy Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; (l) any Ballot submitted by email, facsimile, or any other means of electronic transmission other than the E-Ballot Portal; and (m) any Ballot not cast in accordance with the Tabulation Procedures and the procedures approved in the Solicitation Procedures Order.

14. Unless a Ballot is received by the Solicitation Agent on or prior to the Voting Deadline, such Ballot will be rejected as invalid and will not be counted as an acceptance or rejection of the Plan; provided, however, that the Debtors reserve the right to request the Bankruptcy Court to allow such Ballot to be counted. The method of delivery of the Ballot to the Solicitation Agent is at your election and risk. Except as otherwise provided herein, such delivery will be deemed made, regardless of the manner of delivery, only when the Solicitation Agent actually receives the properly completed Ballot. In all cases, Holders should allow sufficient time to assure timely delivery of their Ballots.

15. The Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors (other than the Solicitation Agent).

16. If you cast more than one Ballot voting the same Class 8 Existing Equity Interests before the Voting Deadline, the last properly completed Ballot actually received on or before the Voting Deadline will be deemed to reflect your intent, and thus, to supersede and revoke any prior Ballot received by the Solicitation Agent. Following the Voting Deadline, no Ballot may be changed or revoked absent further order of the Bankruptcy Court.

17. You must vote all of your Class 8 Existing Equity Interests in the same manner. If you simultaneously submit two or more Ballots with respect to the same Class 8 Existing Equity Interests that are inconsistent with one another, none of such Ballots will be counted. Any duplicate Ballots will be counted only once.

18. The failure to vote does not constitute a vote to accept or reject the Plan. An objection to the confirmation of the Plan, even if timely served, does not constitute a vote to accept or reject the Plan.

19. Please be sure to sign and date your Ballot. If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, you must submit proper evidence to the requesting party of your authority to so act on behalf of such holder.

20. Subject to any contrary order of the Bankruptcy Court, the Debtors may waive any defect or irregularity as to any particular Ballot at any time, either before or after the Voting Deadline, other than any requirement imposed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Local Rules, and any such waiver shall be identified in the Voting Report.

21. The Solicitation Agent may contact Registered Holders that submit incomplete or otherwise deficient Registered Holder Ballots to make a reasonable effort to cure such deficiencies; *provided that* neither the Debtors, nor the Solicitation Agent are required to provide notification of defects or irregularities with respect to completion or delivery of Registered Holder Ballots, nor shall any of them incur any liability for failure to provide such notification; *provided further* that the Voting Report shall identify each Registered Holder Ballot that does not conform to the Tabulation Procedures or contains any irregularity and the Debtors' treatment thereof.

22. Unless waived by the Debtors, subject to any contrary order of the Bankruptcy Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted; *provided that* any such waiver may be made either before or after the Voting Deadline.

23. This Ballot does not constitute, and shall not be deemed to be: (a) a Proof of Interest or (b) an assertion or admission of an Interest.

24. In the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

25. The Plan may be modified before confirmation in accordance with its terms and the Consenting Senior Noteholder RSA. Any acceptance or rejection of the Plan will be deemed an acceptance or rejection of the Plan as so modified, unless such modification materially and adversely changes the treatment of your Interest, in which case resolicitation will be required only to the extent required by section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

26. If you believe you have received the wrong ballot, you should contact the Solicitation Agent immediately (a) by email to MercerInquiries@stretto.com with a reference to "Mercer International Inc. Solicitation" in the subject line, or (b) by telephone at (833) 333-9454 (toll free) or +1 (650) 525-4708 (international, toll).

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.**

**YOUR COMPLETED BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE, AS DIRECTED ABOVE.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CONTACT THE SOLICITATION AGENT BY EMAIL TO MERCERINQUIRIES@STRETTO.COM WITH "MERCER INTERNATIONAL INC. SOLICITATION" IN THE SUBJECT LINE, OR BY TELEPHONE AT (833) 333-9454 (TOLL FREE) OR +1 (650) 525-4708 (INTERNATIONAL, TOLL). PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL RENDER YOU OR ANY OTHER ENTITY THE AGENT OF THE DEBTORS OR THE SOLICITATION AGENT OR AUTHORIZE YOU OR ANY OTHER ENTITY TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF ANY OF THE DEBTORS WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE DOCUMENTS ENCLOSED HEREWITH.**

**THE VOTING DEADLINE IS DECEMBER 10, 2026 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

**YOUR COMPLETED BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE IN ONE OF THE MANNERS SET FORTH BELOW:**

**If by First Class Mail, Hand Delivery, or Overnight Courier:**

**Please complete your Ballot in accordance with these instructions, clearly indicate your decision to accept or reject the Plan in the boxes provided in Item 2 of the Ballot, clearly sign and date your Ballot, and return your original Ballot in the enclosed, pre-addressed, pre-paid envelope or via first class mail, overnight courier, or hand delivery to the following address:**

**Mercer International Inc.**
**Ballot Processing c/o Stretto**
**410 Exchange, Suite 100**
**Irvine, CA 92602**

**If you would like to coordinate hand delivery of your Ballot, please send an email to MercerInquiries@stretto.com with "Class 8 Ballot Delivery" in the subject line at least 24 hours before your arrival at the address above and provide the anticipated date and time of your delivery.**

**If by E-Ballot Portal**

**Submit your Ballot via the Solicitation Agent's E-Ballot Portal at https://cases.stretto.com/Mercer. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**
**Unique E-Ballot ID#: ______________________**

**The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will**

**not be counted. Each Unique E-Ballot ID# is to be used solely for voting only those Existing Equity Interests described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each Unique E-Ballot ID# you receive, as applicable.**

**Holders who cast a Ballot using the E-Ballot Portal should NOT also submit a paper Ballot.**

**Item 1. The Number of Shares.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Registered Holder (or authorized signatory for the Registered Holder) of the following number of shares. The number of shares for voting purposes shall be the number of shares reflected on the Debtors' stock register maintained by the transfer agent or the securities position report(s) from DTC as of the Voting Record Date, regardless of any amount set forth on this Ballot. The number of shares below is for voting purposes only and is subject to the applicable voting and tabulation procedures.

| |
|---|
| Number of shares of Class 8 Existing Equity Interests held as of the Voting Record Date: ______________________________ Shares |
| CUSIP / ISIN to which this Ballot relates (check box):<br>☐ Existing Equity Interests (Common Stock) – CUSIP 588056101 / ISIN US5880561015 |

A Registered Holder that holds Class 8 Existing Equity Interests under more than one account must complete a separate Ballot for each such account and must cast the same vote on each such Ballot.

**Item 2. Vote on Plan.**

Please vote below either to accept or to reject the Plan with respect to your Interests in Class 8. Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan. The Plan, though proposed jointly, constitutes separate plans proposed by each of the Debtor entities. Your vote will count as votes for or against, as applicable, each plan proposed by each Debtor entity. The Registered Holder of the Class 8 Existing Equity Interests identified in Item 1 votes as follows (check one box only—if you do not check a box or you check both boxes, your vote will not be counted):

| | |
|---|---|
| ☐ **ACCEPT** (vote FOR) the Plan. | ☐ **REJECT** (vote AGAINST) the Plan. |

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**Item 3. Optional Release Election.**

**PLAN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS**

**THE PLAN INCLUDES CERTAIN INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS. IF THE PLAN IS CONFIRMED AND CONSUMMATED, THEN, UNLESS YOU CHECK THE BOX BELOW AND RETURN THIS BALLOT SO THAT SUCH ELECTION IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE, YOU WILL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED THE DEBTORS, THE REORGANIZED DEBTORS, AND THE RELEASED PARTIES AS PROVIDED IN ARTICLE 10 OF THE PLAN AND AS SET FORTH IN APPENDIX A, REGARDLESS OF WHETHER YOU VOTE TO ACCEPT OR REJECT THE PLAN, ABSTAIN FROM VOTING, OR DO NOT RETURN A BALLOT AT ALL. IF YOU OPT OUT OF THE THIRD-PARTY RELEASE, YOU WILL NOT BE A RELEASING PARTY AND, TO THE EXTENT YOU WOULD OTHERWISE BE A RELEASED PARTY, YOU WILL NOT RECEIVE THE BENEFIT OF THE RELEASES GRANTED BY THE RELEASING PARTIES UNDER ARTICLE 10 OF THE PLAN. IN**

**ADDITION, IF YOU TIMELY OBJECT TO THE THIRD-PARTY RELEASE, EITHER THROUGH A FORMAL OBJECTION FILED ON THE DOCKET OF THE CHAPTER 11 CASES OR AN INFORMAL OBJECTION PROVIDED TO THE DEBTORS BY ELECTRONIC MAIL, WHICH OBJECTION IS NOT WITHDRAWN OR OTHERWISE RESOLVED BEFORE ENTRY OF THE CONFIRMATION ORDER, YOU WILL NOT BE A RELEASING PARTY.**

Regardless of whether you voted to accept or reject the Plan in Item 2 above or abstained from voting to accept or reject the Plan, you may check this box if you elect not to grant the Third-Party Release. Election to withhold consent to the Third-Party Release is at your option. The Registered Holder of the Class 8 Existing Equity Interests identified in Item 1 elects to:

| |
|---|
| ☐ **Opt Out of the Third-Party Release** |

Your election to opt out of the Third-Party Release will be valid only if this Ballot is actually received by the Solicitation Agent by the Voting Deadline. The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.

**Item 4. Certifications.**

By signing this Ballot, the undersigned certifies to the Debtors and the Solicitation Agent that, as of the Voting Record Date, either: (i) the Entity is the Registered Holder of the Class 8 Existing Equity Interests being voted on this Ballot; or (ii) the Entity is an authorized signatory for the Entity that is the Registered Holder of the Class 8 Existing Equity Interests being voted on this Ballot, and further certifies that: (1) the Entity (or in the case of an authorized signatory, the Registered Holder) has received a copy of the Plan, the Disclosure Statement, and the other applicable solicitation materials and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein; (2) the Entity has the power and authority to vote to accept or reject the Plan; (3) the Entity has cast the same vote with respect to all Class 8 Existing Equity Interests; (4) no other Ballots with respect to the Class 8 Existing Equity Interests identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Class 8 Existing Equity Interests, then any such earlier received Ballots are hereby revoked; (5) the Entity acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of the Class 8 Existing Equity Interests held by it or the Registered Holder on whose behalf it is submitting this Ballot, as applicable; (6) the Entity understands and, if accepting the Plan, agrees with the treatment provided under the Plan for such Class 8 Existing Equity Interests; (7) the Entity acknowledges that this solicitation is being conducted during the Chapter 11 Cases pursuant to the Solicitation Procedures Order and that the Debtors intend to use the votes received in this solicitation to seek confirmation of the Plan; (8) the Entity acknowledges and agrees that the Debtors may make conforming changes to the Plan in accordance with the terms thereof and, to the extent provided by Bankruptcy Rule 3019, as may be reasonably necessary, and that the Debtors will not re-solicit acceptances or rejections of the Plan in the event of such conforming changes; (9) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned; and (10) the undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

**YOUR RECEIPT OF THIS BALLOT DOES NOT SIGNIFY THAT YOUR EXISTING EQUITY INTERESTS HAVE BEEN OR WILL BE ALLOWED. SUBJECT TO THE ALLOWANCE OF**

**EXISTING EQUITY INTERESTS UNDER THE PLAN, THE DEBTORS RESERVE ALL RIGHTS TO DISPUTE SUCH EXISTING EQUITY INTERESTS.**

| | |
|---|---|
| Name of Holder of Class 8 Existing Equity Interest: | ______________________________ |
| Signature: | ______________________________ |
| Name of Signatory (If other than the Registered Holder, indicate relationship with the Registered Holder and capacity in which signing): | ______________________________ |
| Title: | ______________________________ |
| Address (Street, City, State, Zip Code): | ______________________________ |
| Telephone Number: | ______________________________ |
| Email Address: | ______________________________ |
| Date Completed: | ______________________________ |

This Ballot shall not constitute or be deemed a proof of Interest, an assertion or admission of an Interest, or the allowance of an Interest.

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT (WITH A SIGNATURE) *PROMPTLY* TO THE SOLICITATION AGENT IN THE ENVELOPE PROVIDED OR SUBMIT IT VIA THE E-BALLOT PORTAL.**

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT ON OR BEFORE DECEMBER 10, 2026 AT 4:00 P.M. (PREVAILING CENTRAL TIME), YOUR VOTE WILL NOT BE COUNTED AND ANY ELECTION TO OPT OUT OF THE THIRD-PARTY RELEASE WILL NOT BE VALID; PROVIDED, HOWEVER, THAT THE DEBTORS RESERVE THE RIGHT TO REQUEST THE BANKRUPTCY COURT TO ALLOW SUCH BALLOT TO BE COUNTED.**

[*Remainder of page left intentionally blank*]

# APPENDIX A

Release, Injunction, And Exculpation Provisions in the Plan[1]

[1] Capitalized terms used but not defined in this Appendix A have the meanings given to them in the Plan.

**A. Certain Relevant Definitions.**

"***Exculpated Parties***" means, each in its capacity as such, (a) each of the Debtors and the Estates; and (b) each independent director of the Debtors.

"***Related Parties***" means with respect to a Person, such Person's current and former affiliates, and such Person's and its current and former affiliates' current and former directors, managers, committee members, members of any governing body, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed or advised entities, accounts, or funds, current or former, and future associated entities, predecessors, participants, successors, and assigns (whether by operation of law or otherwise), subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, partners, employees, agents, fiduciaries, trustees, advisory board members, financial advisors or managers, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, investment managers, investment advisors, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such.

"***Released Parties***" means, collectively, solely in their capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Senior Notes Trustee; (e) each Backstop Party; (f) each member of the Majority Ad Hoc Group; and (g) with respect to each of the foregoing Persons in clauses (a) through (f), each of their Related Parties; *provided* that, a Person shall not be a Released Party if such Person (i) elects to opt out of the Releases set forth in this Plan or (ii) timely Files an objection to the Releases set forth in this Plan and such objection is not withdrawn or otherwise resolved before the Confirmation Order is entered.

"***Releases***" means, collectively, the releases set forth in Article 10.6 of the Plan.

"***Releasing Parties***" means, collectively, and in each case solely in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Senior Notes Trustee; (e) each Backstop Party; (f) each Holder of a Claim or Interest in a Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective ballot; (g) each Holder of a Claim or Interest in a Non-Voting Class that is deemed to accept this Plan that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective Release Opt-Out Form; and (h) each Related Party of each Entity in clauses (a) through (g), solely to the extent such Related Party (I) would be obligated to grant a release under principles of agency if it were so directed by the Entity in the foregoing clauses (a) through (f) to whom they are related or (II) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (g); *provided*, that any Holder of a Claim or Interest that timely objects to the Third Party Release, either through (x) a formal objection Filed on the docket of the Chapter 11 Cases or (y) an informal objection provided to the Debtors by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or via electronic mail, as applicable, or otherwise resolved before the Confirmation Order is entered, shall not be a "Releasing Party".

**B. Section 10.5 of the Plan – Permanent Injunction.**

**Except as otherwise expressly provided in this Plan or the Confirmation Order, from and after the Effective Date, all Persons and Entities are, to the fullest extent provided under section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined from (a) commencing or continuing, in any manner or in any place, any suit, action, or other proceeding of any kind; (b) enforcing, attaching, collecting, or recovering in any manner or means any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Lien or encumbrance; (d) asserting a right**

**of setoff or subrogation of any kind; or (e) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or with respect to any Claim, demand, liability, obligation, debt, right, Cause of Action, Interest, or remedy released or to be released, exculpated or to be exculpated, settled or to be settled, or discharged or to be discharged pursuant to this Plan or the Confirmation Order against any Person or Entity so released, discharged, or exculpated (or the property or estate of any Person or Entity so released, discharged, or exculpated). All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.**

**No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, Reorganized Debtors, Exculpated Parties, or Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of any Claim or Cause of Action, as applicable, subject to Article X, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Exculpated Party. At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Reorganized Debtor, Exculpated Party, Released Party or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action File a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Federal Rules of Civil Procedure, including Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.**

**C. Section 10.6 of the Plan – Releases.**

**(a) Releases by the Debtors.**

**To the fullest extent permitted by applicable law, and except as otherwise expressly set forth in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Debtors, the Reorganized Debtors, and the Estates, in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally, released and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (a) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (b) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor**

**Affiliates, (c) the subject matter of, or the transactions, events, circumstances, acts, or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (d) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including the Consenting Stakeholders), (e) the Senior Notes Documents, (f) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (g) intercompany transactions, (h) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements and related prepetition transactions, the Definitive Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (i) any contract, instrument, release, or other agreement or document created or entered into in connection with this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements, the Definitive Documents, the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of this Plan, or the administration and implementation of this Plan or the Confirmation Order, including the issuance or distribution of Securities pursuant to this Plan, (j) the distribution, including any disbursements made by a Distribution Agent, of property under this Plan, or any other related agreement, or (k) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; *provided*, that the Debtors do not release Claims or Causes of Action (x) that are of a commercial nature and arise in the ordinary course of business, such as accounts receivable and accounts payable on account of goods being sold and services being performed; (y) arising under an Executory Contract or Unexpired Lease that is assumed by the Debtors; or (z) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct. Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under this Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or the Restructuring Transactions, or any agreement, Claim, or obligation arising or assumed under this Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing this Plan; (b) a good-faith settlement and compromise of the Claims released by the Debtors; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.**

**(b) Releases by Holders of Claims and Interests.**

**To the fullest extent permitted by applicable law, and except as otherwise expressly set forth in this Plan or the Confirmation Order, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party, in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and**

**unconditionally, released and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Estates that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (a) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (b) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (c) the subject matter of, or the transactions, events, circumstances, acts, or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (d) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including the Consenting Stakeholders), (e) the Senior Notes Documents, (f) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (g) intercompany transactions, (h) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements and related prepetition transactions, the Definitive Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (i) any contract, instrument, release, or other agreement or document created or entered into in connection with this Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreements, the Definitive Documents, or the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, or the administration and implementation of this Plan or the Confirmation Order, including the issuance or distribution of Securities pursuant to this Plan, (j) the distribution, including any disbursements made by a Distribution Agent, of property under this Plan, or any other related agreement, or (k) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; *provided*, that the Releasing Parties do not release Claims or Causes of Action arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct. Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under this Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or the Restructuring Transactions, or any agreement, Claim, or obligation arising or assumed under this Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of this Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing this Plan; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.**

**D. Section 10.7 of the Plan – Exculpation.**

**Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any Claims or Causes of Action for any act taken or omitted to be taken between the Petition Date and the Effective Date in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the Confirmation or consummation (as applicable) of this Plan, the Restructuring Support Agreements and related prepetition transactions, and the Disclosure Statement including any disbursements made by a Distribution Agent in connection with this Plan, the Disclosure Statement, the Definitive Documents, the Corporate Governance Documents, the Senior Notes Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with this Plan, or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement, or Confirmation or consummation of this Plan; *provided*, that the foregoing provisions of this exculpation shall not operate to waive or release: (a) any Claims or Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; or (b) the rights of any Person or Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan, or assumed pursuant to this Plan or Final Order of the Bankruptcy Court; *provided further*, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions, or inactions.**

**The Exculpated Parties have, and upon consummation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.**

**The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or Entity. For the avoidance of doubt and notwithstanding anything else herein, the foregoing exculpation shall be limited to Persons that served as Estate fiduciaries during the Chapter 11 Cases.**

# APPENDIX B

Tabulation Procedures

# Tabulation Procedures

These tabulation procedures (the "***Tabulation Procedures***") govern the tabulation of Ballots submitted by Holders of Claims in Class 3 (Senior Notes Claims) and Holders of Interests in Class 8 (Existing Equity Interests) (together, the "***Voting Classes***") and Release Opt-Out Forms submitted by Holders of Claims and Interests in Class 1 (Secured Claims), Class 2 (Other Priority Claims), Class 4 (General Unsecured Claims), and Class 7 (510(b) Claims). The Debtors commenced the solicitation of votes from Eligible Holders of Class 3 Senior Notes Claims before the Petition Date, and these Tabulation Procedures apply to such prepetition solicitation to the extent consistent with sections 1125(g) and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018(b). Holders in the Voting Classes that are Non-Eligible Holders may vote only following entry of the order to which these Tabulation Procedures are attached (the "***Solicitation Procedures Order***"), and the distribution of Release Opt-Out Forms to the Holders of Claims in Class 1 (Secured Claims), Class 2 (Other Priority Claims), Class 4 (General Unsecured Claims), and Class 7 (510(b) Claims) will commence following entry of the Solicitation Procedures Order. Holders of Class 8 Existing Equity Interests will be solicited following entry of the Solicitation Procedures Order. Capitalized terms used but not defined herein have the meanings given to them in the Solicitation Procedures Order, the Motion,[1] or the Plan, as applicable.

**1. Voting Record Date.**

The Voting Record Date for Holders of Senior Notes Claims in Class 3 and Holders of Existing Equity Interests in Class 8 is November 2, 2026.

**2. Voting Deadline.**

To be counted, a Ballot must be properly executed, completed, and delivered so that it is actually received by the Solicitation Agent no later than **December 10, 2026 at 4:00 p.m. (prevailing Central Time)** (the "***Voting Deadline***"), which the Debtors may extend with the reasonable consent of the Required Consenting Senior Noteholders, subject to the terms of the Consenting Senior Noteholder RSA. The deadline to submit a Release Opt-Out Form is the Voting Deadline. Beneficial Holders voting through a Nominee (other than through a pre-validated Ballot) must return their Ballots or voting instructions to their Nominee with sufficient time for the Nominee to process them and deliver a Master Ballot to the Solicitation Agent by the Voting Deadline, and Beneficial Holders that receive a pre-validated Ballot must return it directly to the Solicitation Agent so that it is actually received by the Voting Deadline.

**3. Methods of Submission.**

Registered Holder Ballots and Release Opt-Out Forms may be submitted (a) in hard copy by regular mail, overnight courier, or hand delivery to the address set forth in the applicable Ballot or Release Opt-Out Form, or (b) through the E-Ballot Portal. Beneficial Holder Ballots that are not pre-validated must be returned to the applicable Nominee in accordance with such Nominee's instructions and customary practices. Master Ballots and pre-validated Ballots may be submitted in hard copy as set forth in clause (a)

---

[1] The "***Motion***" means the *Emergency Motion of Debtors for Entry of an Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Approving (A) Solicitation Procedures, (B) Form and Manner of Notice of Commencement, Combined Hearing, and Objection Deadline, and (C) Rights Offering Procedures and Related Forms, and Authorizing Commencement of the Rights Offering; (III) Fixing Deadline to Object to Disclosure Statement and Plan; (IV) Conditionally (A) Directing the United States Trustee Not to Convene Section 341 Meeting of Creditors and (B) Waiving Requirement to File Statements of Financial Affairs and Schedules of Assets and Liabilities; (V) Conditionally Approving the Disclosure Statement; and (VI) Granting Related Relief.*

above or by email of a PDF copy to the address set forth in the applicable Ballot, but may not be submitted through the E-Ballot Portal. Except as provided in the preceding sentences, Ballots and Release Opt-Out Forms submitted by email, facsimile, or any other electronic means will not be counted. The encrypted ballot data and audit trail created by electronic submission through the E-Ballot Portal shall become part of the record of any Ballot or Release Opt-Out Form submitted in this manner, and the Holder's electronic signature will be deemed immediately legally valid and effective. A Holder that submits a Ballot through the E-Ballot Portal should not also submit a paper Ballot on account of the same Claim or Interest. The method of delivery is at the election and risk of each Holder, and a Ballot or Release Opt-Out Form will be deemed delivered only when the Solicitation Agent actually receives it.

**4. Ballots Not Counted.**

Subject to Section 8 below, the following Ballots will not be counted: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder; (b) any Ballot actually received by the Solicitation Agent after the Voting Deadline, unless the Court orders otherwise upon request of the Debtors; (c) any Ballot that does not contain a signature (provided that a signature collected electronically through the E-Ballot Portal will be deemed a valid signature); (d) any Ballot not properly transmitted to the Solicitation Agent as required by these Tabulation Procedures, unless the Debtors determine otherwise; (e) any Ballot submitted by a Person that did not hold a Claim or Interest in a Voting Class as of the Voting Record Date or that is otherwise not entitled to vote pursuant to the Plan; (f) any Ballot submitted by or on behalf of a Non-Eligible Holder before entry of the Solicitation Procedures Order (and any Holder submitting a Ballot before entry of the Solicitation Procedures Order shall be deemed to have certified that it is an Eligible Holder); (g) any form of ballot other than the official form of Ballot sent by the Solicitation Agent (provided that votes transmitted by Beneficial Holders to their Nominees through customary communications as permitted by the Ballots may be reflected on a Master Ballot); (h) any Ballot that partially rejects and partially accepts the Plan; (i) any Ballot that is properly completed, executed, and timely returned but is not marked to either accept or reject the Plan, or is marked to both accept and reject the Plan; (j) any Ballot superseded by a later, timely submitted valid Ballot; (k) any Ballot sent to the Debtors, the Debtors' agents or representatives (other than the Solicitation Agent), or the Debtors' financial or legal advisors; (l) any Ballot cast by a Person that the Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; and (m) any Ballot not cast in accordance with these Tabulation Procedures and the procedures approved in the Solicitation Procedures Order.

**5. General Tabulation Rules.**

Whenever a Holder casts more than one Ballot voting the same Claim or Interest before the Voting Deadline, the last properly completed Ballot actually received on or before the Voting Deadline shall be deemed to reflect such Holder's intent and shall supersede any previously received Ballot. With respect to Beneficial Holder Ballots submitted through a Nominee (other than pre-validated Ballots), the last such Ballot received by the Nominee in sufficient time to be included on its Master Ballot shall control. Any duplicate Ballots will be counted only once.

Following the Voting Deadline, no Ballot may be changed or revoked, absent further order of the Court.

If a Holder simultaneously casts inconsistent Ballots with respect to the same Claim or Interest, such Ballots will not be counted.

Holders must vote all of their Claims or Interests within a particular Class either to accept or reject the Plan and may not split their votes.

The amount of a Claim or Interest for voting purposes shall be (i) for Class 3, the outstanding principal amount of the applicable Senior Notes held by each Beneficial Holder through its Nominee, without regard to any accrued but unpaid interest, fees, or premiums, as reflected in the securities position report(s) from DTC as of the Voting Record Date, and (ii) for Class 8, the number of shares reflected on the Debtors' stock register maintained by the transfer agent or the securities position report(s) from DTC as of the Voting Record Date, in each case regardless of any amount set forth on a Ballot. In the event of any inconsistency, the securities position report(s) from DTC shall control for positions held through DTC.

A Ballot does not constitute, and shall not be deemed to be, a proof of claim or an assertion or admission of a Claim or Interest.

Only Holders as of the Voting Record Date may vote, and any transferee of a Claim or Interest after the Voting Record Date shall not be entitled to vote on account of such Claim or Interest.

Any Person signing a Ballot in a representative capacity (including as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation) must indicate such capacity and, if requested by the Debtors or the Solicitation Agent, submit proper evidence of authority to so act.

Consistent with Article 3.6 of the Plan, if no Holder in a Voting Class eligible to vote submits a valid Ballot, the Plan shall be presumed accepted by such Voting Class.

**6. Nominees, Master Ballots, and Overvotes.**

Nominees may (a) forward the Solicitation Package to Beneficial Holders no later than 5 business days after receipt and collect and tabulate their votes on a Master Ballot, or (b) pre-validate a Beneficial Holder Ballot and forward it to the Beneficial Holder for return directly to the Solicitation Agent, and may collect votes in accordance with their customary practices, including through voting instruction forms or electronic means. Nominees electing option (a) must deliver the Master Ballot so that it is actually received by the Solicitation Agent by the Voting Deadline.

Votes cast by Beneficial Holders through Nominees will be applied to the positions held by such Nominees as of the Voting Record Date, as evidenced by the applicable securities position report(s) from DTC.

Votes submitted by a Nominee will not be counted in excess of such Nominee's position as of the Voting Record Date.

If conflicting votes or over-votes are submitted by a Nominee, the Solicitation Agent may use reasonable efforts to reconcile such discrepancies with the Nominee.

To the extent any over-vote cannot be reconciled, the Solicitation Agent will tabulate votes to accept and to reject the Plan in the same proportion as the votes submitted by the Nominee on the applicable Master Ballot or pre-validated Ballots, but only to the extent of such Nominee's position as of the Voting Record Date. A Holder (including a Registered Holder or Beneficial Holder) that holds through more than one Nominee, account, or CUSIP must execute and return a separate Ballot for each Nominee, account, or CUSIP, must vote all such Claims or Interests in the same manner, and, in the case of a Beneficial Holder, must certify on each Ballot all other Ballots submitted in the same Voting Class.

For purposes of determining whether the numerosity requirement of section 1126(c) of the Bankruptcy Code has been satisfied, the Solicitation Agent will treat each Beneficial Holder as a single Holder, to the extent it is able to identify such Beneficial Holder's Ballots submitted through multiple Nominees or accounts.

**7. Release Opt-Out Forms.**

Subject to Section 8 below, a Release Opt-Out Form will be counted only if it is properly completed, executed, and actually received by the Solicitation Agent on or before the Voting Deadline in accordance with Section 3 above. The following Release Opt-Out Forms will not be counted: (a) any Release Opt-Out Form that is illegible or contains insufficient information to permit the identification of the Holder of the Claim or Interest; (b) any Release Opt-Out Form actually received by the Solicitation Agent after the Voting Deadline, unless the Court orders otherwise upon request of the Debtors; (c) any Release Opt-Out Form submitted by or on behalf of a Person that is not entitled to opt out of the Third-Party Release under the Restructuring Support Agreements; (d) any Release Opt-Out Form sent to the Debtors, the Debtors' agents or representatives (other than the Solicitation Agent), or the Debtors' financial or legal advisors; (e) any Release Opt-Out Form transmitted by facsimile, email, or other electronic means other than as permitted by these Tabulation Procedures; (f) any unsigned Release Opt-Out Form (provided that a signature collected electronically through the E-Ballot Portal will be deemed a valid signature); (g) any Release Opt-Out Form submitted without making the opt-out election; and (h) any Release Opt-Out Form not completed in accordance with these Tabulation Procedures and the procedures approved in the Solicitation Procedures Order.

If multiple Release Opt-Out Forms are received from the same Holder with respect to the same Claim or Interest before the Voting Deadline, the last properly completed Release Opt-Out Form timely received will supersede and revoke any earlier received Release Opt-Out Form. A Holder must make the same election with respect to all Claims or Interests held by such Holder in a single Class. An opt-out election made on a properly completed and timely submitted Ballot will be given the same effect as an election made on a Release Opt-Out Form.

A Release Opt-Out Form is not a letter of transmittal and may not be used for any purpose other than to opt out of the Third-Party Release, and does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

**8. Waiver of Defects; Voting Report.**

Subject to a contrary order of the Court, the Debtors may waive any defects or irregularities as to any particular Ballot or Release Opt-Out Form at any time, either before or after the Voting Deadline, other than any requirement imposed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Local Rules. The Debtors or the Solicitation Agent, as applicable, shall determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots, which determination, absent a contrary order of the Court, shall be final and binding. The Solicitation Agent may contact parties who submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies; *provided* that neither the Debtors nor the Solicitation Agent is required to provide notification of defects or irregularities with respect to completion or delivery of Ballots, nor shall any of them incur any liability for failure to provide such notification. The Solicitation Agent will file a voting report (the "***Voting Report***") no later than December 14, 2026, or 2 business days before any adjourned Combined Hearing, which shall, among other things, (a) identify each Ballot that does not conform to these Tabulation Procedures or contains any irregularity, the Debtors' treatment of each such Ballot, and any waivers made under this section, and (b) report the Release Opt-Out elections received on Ballots and Release Opt-Out Forms.

**9. Retention of Ballots.**

The Solicitation Agent shall retain all paper copies of Ballots and all solicitation-related correspondence for 2 years following the Effective Date, whereupon the Solicitation Agent is authorized to destroy or

otherwise dispose of all paper copies of Ballots, printed solicitation materials (including unused copies of the Solicitation Package), and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such 2-year period.

# **EXHIBIT 7**

Rights Offering Procedures and Subscription Form

# MERCER RIGHTS OFFERING PROCEDURES

**Pursuant to the *Joint Prepackaged Chapter 11 Plan of Reorganization of Mercer International Inc. and Its Debtor Affiliate* (as may be amended or modified from time to time, the "*Plan*") of Mercer International Inc. ("*Mercer*") and its affiliated debtor (together with Mercer, the "*Debtors*"), each Holder[1] of an Allowed Senior Notes Claim as of the Rights Offering Record Date (as defined below) is being granted a subscription right (each, a "*Subscription Right*") to purchase New Money Senior Secured Notes to be issued by Reorganized Mercer (the "*Company*") pursuant to the New Senior Secured Notes Indenture (such New Money Senior Secured Notes, the "*Rights Offering Notes*") pursuant to the Plan, as more fully described in these Rights Offering Procedures. Each such Holder that validly exercises its Subscription Rights to purchase Rights Offering Notes will also receive its pro rata share of the Stapled Equity, consisting of 40.0% of the New Common Stock and 40.0% of the New Convertible Preferred Stock (the "*Stapled Equity*"), as more fully described in these Rights Offering Procedures. Each Holder of an Allowed Senior Notes Claim will receive its Pro Rata Share of the New Common Stock, the New Convertible Preferred Stock and the Takeback Senior Secured Notes distributed pursuant to Article 4.3 of the Plan whether or not it participates in the Rights Offering, but only Holders that validly exercise their Subscription Rights will receive Stapled Equity.**

**The Allowed Senior Notes Claims are Claims on account of, or otherwise arising under, (a) the 12.875% Senior Notes due October 1, 2028 (the "*2028 Senior Notes*") issued pursuant to the 2028 Senior Notes Indenture and (b) the 5.125% Senior Notes due February 1, 2029 (the "*2029 Senior Notes*" and, together with the 2028 Senior Notes, the "*Senior Notes*") issued pursuant to the 2029 Senior Notes Indenture.**

**The offering of $420.0 million in aggregate principal amount of Rights Offering Notes (inclusive of $20.0 million of original issue discount but exclusive of the Put Option Premium, and subject to a dollar-for-dollar reduction for amounts drawn under the New ABL Facility (in the aggregate across all facilities comprising the New ABL Facility) at close; *provided* that such reduction shall only be available if and to the extent liquidity at close is above $300.0 million and shall not reduce liquidity at close to below $300.0 million) (the "*Rights Offering Amount*") is referred to as the "*Rights Offering*." The Rights Offering is fully backstopped by the Backstop Parties pursuant to the Backstop Commitment Letter.**

**The offering, issuance and distribution of the Stapled Equity under the Plan shall be exempt from registration requirements under the Securities Act of 1933, as amended (the "*Securities Act*"), or any state or local law requiring registration for offer and sale of a security, in reliance upon the exemption provided in section 1145(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "*Bankruptcy Code*") to the maximum extent permitted by law and, to the extent not so permitted, section 4(a)(2) of the Securities Act or Regulation D or Regulation S promulgated thereunder or other applicable exemptions from registration under the Securities Act and any other applicable securities laws. To the extent that the Stapled Equity is issued under the Plan pursuant to section 1145(a) of the Bankruptcy Code, such securities may be resold by the holders thereof without registration unless the holder (A) is an "underwriter" (as defined in section 1145(b) of the Bankruptcy Code) with respect to such securities, (B) is an "affiliate" of Reorganized Mercer (as defined in Rule 144(a)(1) under the Securities Act), or (C) has been such an "affiliate" within ninety (90) days of such sale or transfer, in each case subject to any**

[1] Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan.

**restrictions on transferability in the New Corporate Governance Documents or the New Senior Secured Notes Documents, as applicable.**

**The Rights Offering Notes are being offered, issued and distributed to Holders without registration under the Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance on the exemption provided in section 1145(a) of the Bankruptcy Code to the extent permitted thereunder and, to the extent not so permitted, section 4(a)(2) of the Securities Act, Regulation D or Regulation S promulgated thereunder or another available exemption; *provided*, that if counsel to the Debtors and counsel to the Consenting Senior Noteholders mutually agree, all Rights Offering Notes will be issued in reliance on section 4(a)(2) of the Securities Act (or another applicable exemption other than section 1145 of the Bankruptcy Code). The Backstop Notes (as defined below) (other than Put Option Premium Notes, at the election of the beneficial owner thereof) and any Stapled Equity issued on account of the Backstop Equity (as defined in the Backstop Commitment Letter) are being offered, issued and distributed to the Backstop Parties without registration under the Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance on the exemption provided in Section 4(a)(2) of the Securities Act, Regulation S under the Securities Act or another available exemption. Securities issued in reliance on Section 4(a)(2) of the Securities Act will be "restricted" securities, and resales of such securities, and of securities issued to "underwriters" or affiliates of Reorganized Mercer, will require registration under the Securities Act or an exemption from registration under the Securities Act. Resale restrictions are discussed in more detail in the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Mercer International Inc. and Its Debtor Affiliate* in respect of the Plan (as the same may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto, the "*Disclosure Statement*"), in the section entitled "Transfer Restrictions and Consequences under Federal Securities Laws."**

**None of the Subscription Rights distributed in connection with these Rights Offering Procedures have been or will be registered under the Securities Act, nor any state or local law requiring registration for offer and sale of a security. The Subscription Rights are being distributed under the Plan on account of Allowed Senior Notes Claims in reliance upon the exemption provided in section 1145(a)(1) of the Bankruptcy Code or, to the extent section 1145(a)(1) of the Bankruptcy Code is not available, section 4(a)(2) of the Securities Act, Regulation D or Regulation S promulgated thereunder or another available exemption. The Rights Offering is being commenced after the Petition Date in accordance with the Rights Offering Procedures Order (as defined below).**

**To exercise the Subscription Rights, each Holder of the underlying Senior Notes as of the Rights Offering Record Date (a "*Noteholder*") must (i) return its duly completed and executed Noteholder Beneficial Owner Subscription Form (as defined below) (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) to its bank, broker, intermediary, securities nominee or agent (each, a "*Nominee*") (unless otherwise directed by its Nominee) in sufficient time to allow such Nominee to deliver such documents to be actually received by Stretto, Inc. (the "*Subscription Agent*") on or before the Subscription Expiration Deadline (as defined below), and (ii) electronically deliver (or cause to be delivered) such Senior Notes to the appropriate contra CUSIP established by The Depository Trust Company ("*DTC*") for the Rights Offering through the Automated Tender Offer Program ("*ATOP*") of DTC, so that they are received by the Subscription Expiration Deadline. Each Noteholder should coordinate with its Nominee to confirm the arrangements for remitting the Funding Amount to the Subscription Agent to avoid duplicate payments.**

**The Subscription Rights will not be detachable or otherwise transferable separately from the underlying Senior Notes. Rather, the Subscription Rights, together with the underlying Senior Notes with respect to which such Subscription Rights were allocated, will trade together and will be evidenced by the underlying Senior Notes until the Subscription Expiration Deadline, subject to such limitations, if any, that would be applicable to the transferability of the underlying Senior Notes; *provided*, that following the exercise of any Subscription Rights, the Holder thereof shall be prohibited from selling, transferring, assigning, pledging, hypothecating, participating, donating or otherwise encumbering or disposing of (each of the above, a "*Transfer*") the Senior Notes corresponding to such Subscription Rights unless the Rights Offering is terminated; *provided further*, that Holders of Allowed Senior Notes Claims shall be permitted to designate affiliates or Related Funds to participate in the Rights Offering and/or to receive the Rights Offering Notes and Stapled Equity without the need to Transfer any Senior Notes to such affiliate or Related Fund.**

**The Rights Offering is being conducted by the Debtors in good faith and in compliance with the Bankruptcy Code. In accordance with section 1125(e) of the Bankruptcy Code, a debtor or any of its agents that participate, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized debtor under the plan, is not liable, on account of such participation, for violation of any applicable law, rule, or regulation governing the offer, issuance, sale or purchase of securities.**

**The distribution or communication of these Rights Offering Procedures and the issuance of the Rights Offering Notes and the Stapled Equity in certain jurisdictions may be restricted by law. No action has been taken or will be taken to permit the distribution or communication of these Rights Offering Procedures in any jurisdiction where any action for that purpose may be required. Accordingly, these Rights Offering Procedures may not be distributed or communicated, and the Rights Offering Notes and Stapled Equity may not be subscribed for or issued, in any jurisdiction except in circumstances where such distribution, communication, subscription or issuance would comply with all applicable laws without the need for the Debtors to take any action or obtain any consent, approval or authorization therefor except for any notice filings required under U.S. federal and applicable state securities laws. Further, the Rights Offering has not been approved or disapproved by the U.S. Securities and Exchange Commission or any other state securities commission or any other regulatory or governmental authority, nor have any of the foregoing passed upon the accuracy or adequacy of the information presented, and any representation to the contrary is a criminal offense.**

**The Rights Offering Notes and the Stapled Equity are available only to Holders of Senior Notes. No offer or invitation to subscribe or purchase is being made to any person who is not a Holder, and no such person should act or rely on any offer or invitation to subscribe or purchase Rights Offering Notes or Stapled Equity.**

Noteholders and Nominees of Noteholders should note the following dates and times relating to the Rights Offering:

| Date | Calendar Date | Event |
|---|---|---|
| Rights Offering Record Date | November 9, 2026 | The date fixed for the determination of the Holders of Allowed Senior Notes Claims who will receive these Rights |

| | | |
|---|---|---|
| | | Offering Procedures and be entitled to participate in the Rights Offering (the "***Rights Offering Record Date***"). |
| Subscription Commencement Date | November 12, 2026 | The date on which these Rights Offering Procedures are distributed, which shall be November 12, 2026 (or as soon as reasonably practicable thereafter) (the "***Subscription Commencement Date***"). |
| Subscription Expiration Deadline | 4:00 p.m. (Prevailing Central Time) on December 10, 2026 (as may be extended pursuant to the terms herein) | The deadline for Noteholders to subscribe for Rights Offering Notes, as such deadline may be extended pursuant to the terms herein (the "***Subscription Expiration Deadline***").<br><br>A Noteholder's duly completed and executed Noteholder Beneficial Owner Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) must be returned to its Nominee (unless otherwise directed by its Nominee) in sufficient time to allow such Nominee to deliver such documents to be actually received by the Subscription Agent on or before the Subscription Expiration Deadline. The Noteholder must instruct its Nominee to electronically deliver the applicable underlying Senior Notes via ATOP to the appropriate contra CUSIP established by DTC, so that such underlying Senior Notes are actually received by the Subscription Agent on or before the Subscription Expiration Deadline. Senior Notes delivered to the Subscription Agent via ATOP may not thereafter be Transferred unless the Rights Offering is terminated.<br><br>Noteholders who are not Backstop Parties must deliver the Funding Amount (as defined below) for all Subscribed Notes (as defined below) by the Subscription Expiration Deadline.<br><br>Noteholders who are Backstop Parties must deliver the Funding Amount for all Subscribed Notes (if any) and the applicable Backstop Notes (as defined below) (if any) no later than the Backstop Funding Deadline (as defined below) to the Subscription Agent or otherwise in accordance with the Backstop Commitment Letter.<br><br>The Subscription Expiration Deadline may be extended by the Debtors only with the prior written consent of the Required Backstop Parties (as defined in the Backstop Commitment Letter) and the Required Consenting Senior Noteholders (in each case, for which email of counsel shall suffice), either before or after the previously scheduled Subscription Expiration Deadline. In the event that the Debtors extend the Subscription Expiration Deadline, the Debtors shall: (i) post a notice of such extension (the "***Extension Notice***") on the Debtors' restructuring website at https://cases.stretto.com/Mercer; (ii) file a copy of the Extension Notice on the docket of the Debtors' Chapter 11 Cases; and (iii) provide a copy of the Extension Notice to the Majority Ad Hoc Group Advisors, with email notice being |

| | | |
|---|---|---|
| | | sufficient. The Debtors shall use commercially reasonable efforts to cause such notice to be posted, filed, and delivered in accordance with the foregoing, to the extent reasonably practicable, at least five (5) Business Days prior to any previously scheduled Subscription Expiration Deadline (or, if such extension is made after the previously scheduled Subscription Expiration Deadline, as promptly as reasonably practicable thereafter). |
| Backstop Funding Deadline | As set forth in the Funding Notice (no later than four (4) Business Days prior to the anticipated Effective Date) | The deadline for Backstop Parties to deliver the Funding Amount for their Subscribed Notes and the applicable Backstop Notes. |

[*Remainder of page intentionally left blank*]

To Noteholders and Nominees of Noteholders:

On November 9, 2026, the Debtors filed the Plan and the Disclosure Statement. Pursuant to the Plan, each Noteholder has the right to participate in the Rights Offering in accordance with the terms and conditions of the Plan and these Rights Offering Procedures. A summary of frequently asked questions regarding the Rights Offering is attached to these Rights Offering Procedures as **Annex 2** (the "***Rights Offering Q&A***"). The Rights Offering Q&A is provided for convenience only, and in the event of any inconsistency between the Rights Offering Q&A and these Rights Offering Procedures, the Plan or the Backstop Commitment Letter, these Rights Offering Procedures, the Plan or the Backstop Commitment Letter, as applicable, shall control.

Pursuant to the Plan and these Rights Offering Procedures, each Noteholder will be allocated Subscription Rights to subscribe for and purchase Rights Offering Notes in a principal amount equal to its pro rata share of the Rights Offering Amount based upon a fraction (expressed as a percentage), the numerator of which is the amount of its Allowed Senior Notes Claims and the denominator of which is the aggregate amount of all Allowed Senior Notes Claims ("***Pro Rata Share***"), and may exercise such Subscription Rights by (x) timely and properly executing and delivering its Noteholder Beneficial Owner Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable), the form of which is attached to these Rights Offering Procedures as **Annex 3** (the "***Noteholder Beneficial Owner Subscription Form***"), to its Nominee (or as otherwise directed by its Nominee) in sufficient time to allow such Nominee to process and deliver copies of all Noteholder Beneficial Owner Subscription Forms (with accompanying IRS Forms) to the Subscription Agent on or before the Subscription Expiration Deadline, (y) electronically delivering (or causing to be delivered) such Senior Notes through ATOP to the appropriate contra CUSIP established by DTC, so that they are received by the Subscription Expiration Deadline and (z) funding in cash the aggregate Purchase Price of its Subscribed Notes (the "***Funding Amount***"), as calculated in accordance with its Noteholder Beneficial Owner Subscription Form in accordance with the instructions provided herein.

**As part of the exercise process, following exercise of the Subscription Rights, the Senior Notes underlying the Subscription Rights that are being exercised will be frozen from Transfer unless the Rights Offering is terminated, as described below.** All Noteholder Beneficial Owner Subscription Forms and/or other instructions required by the Nominee must be returned to the applicable Nominee in sufficient time to allow such Nominee to process and deliver the applicable underlying Senior Notes through ATOP to the appropriate contra CUSIP established by DTC prior to the Subscription Expiration Deadline. By instructing its Nominee to submit the underlying Senior Notes through ATOP to the appropriate contra CUSIP established by DTC, the Noteholder is (a) authorizing its Nominee to exercise all Subscription Rights associated with the amount of Senior Notes as to which the instruction pertains, and (b) certifying that it understands that, once submitted, the underlying Senior Notes will be frozen from Transfer unless the Rights Offering is terminated. Notwithstanding the above, Noteholders shall be permitted to designate affiliates or Related Funds to participate in the Rights Offering and/or to receive the Rights Offering Notes and Stapled Equity without the need to Transfer any Senior Notes to such affiliate or Related Fund.

Unless the Rights Offering is terminated, on the Effective Date:

(a) the Senior Notes will be cancelled pursuant to the Plan;

(b) each Holder of an Allowed Senior Notes Claim, whether or not it participates in the Rights Offering, will receive its Pro Rata Share of the Class 3 recovery pursuant to Article 4.3 of the Plan;

(c) each Noteholder that validly subscribes for and funds Rights Offering Notes, and is not a Backstop Party, will receive:

(i) a principal amount of Rights Offering Notes equal to such Noteholder's Pro Rata Share of the Rights Offering Amount (the "***Subscribed Notes***"), as further described in these Rights Offering Procedures; and

(ii) such Noteholder's pro rata share of the Stapled Equity, the New Common Stock component of which shall dilute only the New Common Stock issued to Holders of Allowed Senior Notes Claims pursuant to Article 4.3 of the Plan, and all of which shall be subject to dilution by the Management Incentive Plan;

(d) each Backstop Party will receive:

(i) such Backstop Party's Subscribed Notes and its pro rata share of the Stapled Equity on account thereof, as further described in these Rights Offering Procedures;

(ii) its allocated share of the Backstop Notes (as defined below) actually purchased by such Backstop Party and the Stapled Equity attributable thereto; and

(iii) its applicable share of the Put Option Premium, payable in the form of Put Option Premium Notes in accordance with the Backstop Commitment Letter.

Each Noteholder that holds both 2028 Senior Notes and 2029 Senior Notes and wishes to exercise its Subscription Rights with respect to both series must deliver each series of Senior Notes to the appropriate contra CUSIP established by DTC for such series. If a Noteholder holds Senior Notes underlying the Subscription Rights that it wishes to exercise through multiple Nominees, it must complete, execute and deliver a separate Noteholder Beneficial Owner Subscription Form with respect to each such Nominee.

**The amount of time necessary for a Nominee to process and deliver the applicable Senior Notes through ATOP may vary. Noteholders are urged to consult with their Nominees to determine the necessary deadline to return their Noteholder Beneficial Owner Subscription Forms to their Nominee (as well as any other steps required by such Nominee, which may vary from Nominee to Nominee). Failure of a Noteholder to submit such Noteholder Beneficial Owner Subscription Form (or other instructions required by the Nominee) on a timely basis will result in forfeiture of such Noteholder's Subscription Rights, subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities. None of the Debtors, the Company, the Subscription Agent or any of the Backstop Parties will have any liability for any such failure.**

No Noteholder shall be entitled to participate in the Rights Offering unless cash in an amount equal to the Funding Amount of its Subscribed Notes, calculated in accordance with its Noteholder Beneficial Owner Subscription Form, is received by the Subscription Agent (i) in the case of a Noteholder that is not a Backstop Party, on or before the Subscription Expiration Deadline and (ii) in the case of a Noteholder that is a Backstop Party, no later than the Backstop Funding Deadline (together with the Funding Amount for the applicable Backstop Notes as set forth in the Funding Notice), or otherwise in accordance with the terms of the Backstop Commitment Letter. If the Rights Offering is terminated for any reason, the Funding Amount previously received by the Subscription Agent will be returned to the applicable Noteholders as provided in Section 6 hereof and the deposited Senior Notes will be released by the Subscription Agent. Except as otherwise provided in the Backstop Commitment Letter with respect to funds deposited by the Backstop Parties, no interest will be paid on any advanced funding of the Funding Amount or on any returned Funding Amount.

Before electing to participate in the Rights Offering, each Noteholder should review the Disclosure Statement (including the risk factors described in Article VIII entitled "Certain Risk Factors to be Considered") and the Plan, and, in each case, any amendments, supplements or other modifications thereto, in addition to these Rights Offering Procedures, the Rights Offering Q&A and the instructions contained herein and in its Noteholder Beneficial Owner Subscription Form. A copy of the Disclosure Statement is available from the Subscription Agent and on the Debtors' restructuring website at https://cases.stretto.com/Mercer.

**In order to participate in the Rights Offering, you must complete all the steps outlined below. If all of the steps outlined below are not completed by the Subscription Expiration Deadline (other than with respect to payments of the Funding Amount by Backstop Parties, which must be received by the Backstop Funding Deadline), you shall be deemed to have forever and irrevocably relinquished and waived your right to participate in the Rights Offering, subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities.**

**1. Participation in the Rights Offering; Description of Backstop.**

Noteholders have the right, but not the obligation, to participate in the Rights Offering by subscribing for and purchasing Rights Offering Notes. Each Noteholder that exercises its Subscription Rights to purchase Rights Offering Notes will also receive its pro rata share of the Stapled Equity.

Holders that are not "U.S. persons" (as defined in Regulation S under the Securities Act) and that are located outside the United States may participate in the Rights Offering in reliance on Regulation S under the Securities Act, whether or not they are "accredited investors" or "qualified institutional buyers," subject to compliance with the laws of their applicable jurisdiction as described in these Rights Offering Procedures.

Subject to the terms and conditions set forth in the Plan and these Rights Offering Procedures, each Noteholder is entitled to subscribe for either all or none of its Pro Rata Share of Rights Offering Notes. The purchase price for the Rights Offering Notes shall be 95.238095% of the principal amount thereof, reflecting the original issue discount (the "***Purchase Price***").

Subject to the terms and conditions as set forth in the Plan, these Rights Offering Procedures and the Backstop Commitment Letter, each Backstop Party has agreed, severally and not jointly, to (a) exercise in full all Subscription Rights distributed to it (or its designees) and purchase the Rights Offering Notes subscribed for thereby (its "***Primary Commitment***") and (b) purchase its Backstop Commitment Percentage (as defined in the Backstop Commitment Letter) of the Backstop Notes (its "***Backstop Commitment***"), in each case subject to its Aggregate Commitment Amount (as defined in the Backstop Commitment Letter).

There will be no over-subscription privilege in the Rights Offering. The Backstop Parties have committed to backstop 100.0% of the Rights Offering. Any Rights Offering Notes that are unsubscribed by the Noteholders entitled thereto (the "***Backstop Notes***") will be purchased by the applicable Backstop Parties in accordance with the Backstop Commitment Letter. Subject to the terms and conditions of the Backstop Commitment Letter, each Backstop Party has agreed to purchase (on a several and not joint basis) a certain principal amount of Rights Offering Notes and/or Backstop Notes. As consideration for their undertakings, the Backstop Parties will receive a non-refundable premium equal to $56.0 million in the aggregate, payable in the form of Put Option Premium Notes in accordance with the Backstop Commitment Letter (the "***Put Option Premium***"); *provided* that if the Backstop Commitment Letter is terminated prior to the Effective Date for any reason other than a breach of the Backstop Commitment Letter or the other Definitive Documents by the Backstop Parties, the Put Option Premium shall be payable in cash on the

earlier of (x) twenty (20) Business Days after such termination and (y) the consummation of an Alternative Transaction (as defined in the Consenting Senior Noteholder RSA); *provided further* that no Backstop Party that defaults on its obligation to fund its commitments under the Backstop Commitment Letter shall be entitled to any portion of the Put Option Premium. Any Put Option Premium Notes shall be issued in an aggregate principal amount equal to the Put Option Premium solely to the Backstop Parties (or their designees), shall be fungible with, and have the same terms (including as to security, ranking, interest rate, maturity, and call protection) as, the other Rights Offering Notes, shall be in addition to, and shall not reduce, the Rights Offering Amount, and shall otherwise have the terms set forth in the Backstop Commitment Letter.

The offering, issuance and distribution of the Stapled Equity under the Plan shall be exempt from registration requirements under the Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance upon the exemption provided in section 1145(a) of the Bankruptcy Code to the maximum extent permitted by law and, to the extent not so permitted, section 4(a)(2) of the Securities Act or Regulation D or Regulation S promulgated thereunder or other applicable exemptions from registration under the Securities Act and any other applicable securities laws. To the extent that the Stapled Equity is issued under the Plan pursuant to section 1145(a) of the Bankruptcy Code, such securities may be resold by the holders thereof without registration unless the holder (A) is an "underwriter" (as defined in section 1145(b) of the Bankruptcy Code) with respect to such securities, (B) is an "affiliate" of Reorganized Mercer (as defined in Rule 144(a)(1) under the Securities Act), or (C) has been such an "affiliate" within ninety (90) days of such sale or transfer, in each case subject to any restrictions on transferability in the New Corporate Governance Documents or the New Senior Secured Notes Documents, as applicable.

The Rights Offering Notes are being offered, issued and distributed to Holders without registration under the Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance on the exemption provided in section 1145(a) of the Bankruptcy Code to the extent permitted thereunder and, to the extent not so permitted, section 4(a)(2) of the Securities Act, Regulation D or Regulation S promulgated thereunder or another available exemption; *provided*, that if counsel to the Debtors and counsel to the Consenting Senior Noteholders mutually agree, all Rights Offering Notes will be issued in reliance on section 4(a)(2) of the Securities Act (or another applicable exemption other than section 1145 of the Bankruptcy Code). The Backstop Notes (other than the Put Option Premium Notes, at the election of the beneficial owner thereof) and any Stapled Equity issued on account of any of the foregoing (including the Backstop Equity (as defined in the Backstop Commitment Letter)), are being offered, issued and distributed to the Backstop Parties without registration under the Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance on the exemption provided in Section 4(a)(2) of the Securities Act, Regulation S under the Securities Act or another available exemption. Securities issued in reliance on Section 4(a)(2) of the Securities Act will be "restricted" securities, and resales of such securities, and of securities issued to "underwriters" or affiliates of Reorganized Mercer, will require registration under the Securities Act or an exemption from registration under the Securities Act. Resale restrictions are discussed in more detail in the Disclosure Statement, in the section entitled "Transfer Restrictions and Consequences under Federal Securities Laws." None of the Subscription Rights distributed in connection with these Rights Offering Procedures have been or will be registered under the Securities Act, nor any state or local law requiring registration for offer and sale of a security. The Subscription Rights are being distributed under the Plan on account of Allowed Senior Notes Claims in reliance upon the exemption provided in section 1145(a)(1) of the Bankruptcy Code or, to the extent section 1145(a)(1) of the Bankruptcy Code is not available, section 4(a)(2) of the Securities Act, Regulation D or Regulation S promulgated thereunder or another available exemption.

**SUBJECT TO THE TERMS AND CONDITIONS OF THE PLAN AND THESE RIGHTS OFFERING PROCEDURES, ALL SUBSCRIPTIONS SET FORTH IN EACH NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM ARE IRREVOCABLE UPON RECEIPT BY**

**THE SUBSCRIPTION AGENT AND WITHDRAWALS WILL NOT BE PERMITTED, UNLESS THE SUBSCRIPTION AGENT CONSENTS, IN WRITING, TO ALLOW REVOCATION SOLELY FOR THE PURPOSE OF CURING ADMINISTRATIVE OR CLERICAL ERRORS.**[2]

**2. Subscription Period.**

The Rights Offering will commence on the Subscription Commencement Date and will expire on the Subscription Expiration Deadline (as such deadline may be extended pursuant to the terms set forth herein). Each Noteholder intending to purchase Rights Offering Notes in the Rights Offering must affirmatively elect to exercise its Subscription Rights in the manner set forth in the Rights Offering Instructions attached hereto as **Annex 1** (the "***Rights Offering Instructions***") (consistent herewith, including as described in Section 4 hereof) on or prior to the Subscription Expiration Deadline and must fund the Funding Amount for any exercised Subscription Rights by the applicable deadline.

Any exercise (including payment by any Noteholder that is not a Backstop Party) of Subscription Rights after the Subscription Expiration Deadline will not be allowed and any purported exercise received by the Subscription Agent after the Subscription Expiration Deadline, regardless of when the documents or payment relating to such exercise were sent, will not be honored.

The Subscription Expiration Deadline may be extended by the Debtors only with the prior written consent of the Required Backstop Parties (as defined in the Backstop Commitment Letter) (for which email of counsel shall suffice), either before or after the previously scheduled Subscription Expiration Deadline, and the Debtors shall not change the Rights Offering Record Date without such consent. In the event that the Debtors extend the Subscription Expiration Deadline, the Debtors shall: (i) post the Extension Notice on the Debtors' restructuring website at https://cases.stretto.com/Mercer; (ii) file a copy of the Extension Notice on the docket of the Debtors' Chapter 11 Cases; and (iii) provide a copy of the Extension Notice to the Majority Ad Hoc Group Advisors, with email notice being sufficient. The Debtors shall use commercially reasonable efforts to cause the Extension Notice to be posted, filed, and delivered in accordance with the foregoing, to the extent reasonably practicable, at least five (5) Business Days prior to any previously scheduled Subscription Expiration Deadline (or, if such extension is made after the previously scheduled Subscription Expiration Deadline, as promptly as reasonably practicable thereafter).

**3. Delivery of the Noteholder Beneficial Owner Subscription Form.**

Each Noteholder may exercise either all or none of such Noteholder's Subscription Rights, but subject to the terms and conditions of the Plan and these Rights Offering Procedures, the exercise of any Subscription Rights will be irrevocable, unless the Subscription Agent consents, in writing, to allow revocation solely for the purpose of curing administrative or clerical errors. In order to facilitate the exercise of the Subscription Rights, beginning on the Subscription Commencement Date, the Subscription Agent will furnish, or cause to be furnished, to each Noteholder or Noteholder's Nominee, as applicable, the Noteholder Beneficial Owner Subscription Form, together with appropriate instructions for the proper completion and due execution by, and timely delivery by or on behalf of, the Noteholder of the Noteholder Beneficial Owner Subscription Form, and the payment of the Funding Amount, as calculated in accordance with such Noteholder's Noteholder Beneficial Owner Subscription Form. To effectuate delivery of the aforementioned documents, the Subscription Agent is authorized to rely on securities position reports requested and obtained from DTC as of the Rights Offering Record Date for purposes of distribution. In

---

[2] Notwithstanding that subscriptions are irrevocable, in the event Noteholder positions are erroneously delivered to the wrong contra CUSIPs at DTC via ATOP, the Subscription Agent will use best efforts to cure such defects, subject to the approval of DTC.

addition, appropriate service of the aforementioned documents will be deemed completed by the Subscription Agent upon delivery of such documents to DTC and the applicable Nominees (or such Nominees' agents); *provided however*, that the Subscription Agent will instruct such Nominees (or their agents) to immediately distribute such documents to the underlying Noteholders, as applicable, in accordance with their customary procedures.

**4. Exercise of Subscription Rights.**

(a) In order to validly exercise Subscription Rights, each Noteholder that is not a Backstop Party must:

(i) instruct its Nominee(s) to electronically deliver the Senior Notes underlying the Subscription Rights that are being exercised through ATOP, such that they are received by the Subscription Expiration Deadline;

(ii) for Noteholders who wish to designate an affiliate or Related Fund to receive their Rights Offering Notes and Stapled Equity, identify such designee in the manner instructed by the Subscription Agent by the Subscription Expiration Deadline;

(iii) return a duly completed and executed Noteholder Beneficial Owner Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) to its Nominee (or as otherwise directed by its Nominee), so that such documents are actually received by the Subscription Agent on or before the Subscription Expiration Deadline; and

(iv) no later than the Subscription Expiration Deadline, fund the Funding Amount for all Subscribed Notes to the Subscription Agent by wire transfer of immediately available funds in accordance with the instructions included in Item 3 of the Noteholder Beneficial Owner Subscription Form (or, if applicable, through an aggregated wire remitted by its Nominee in accordance with Section 4(e)).

(b) In order to validly exercise Subscription Rights, each Noteholder that is a Backstop Party must:

(i) instruct its Nominees to electronically deliver the Senior Notes underlying the Subscription Rights that are being exercised through ATOP, such that they are received by the Subscription Expiration Deadline;

(ii) for Noteholders who wish to designate an affiliate or Related Fund to receive their Rights Offering Notes and Stapled Equity, identify such designee in the manner instructed by the Subscription Agent by the Subscription Expiration Deadline;

(iii) return a duly completed and executed Noteholder Beneficial Owner Subscription Form (including the certification that such Noteholder is an Eligible Holder) (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) to its Nominee (or as otherwise directed by its Nominee), so that such documents are actually received by the Subscription Agent on or before the Subscription Expiration Deadline;

(iv) ensure that the Backstop Party Addendum (as defined below) is provided to its Nominee so that the Nominee will receive confirmation that payment does not have to be made prior to the Subscription Expiration Deadline; and

(v) no later than the deadline specified in the Funding Notice, which shall be no earlier than four (4) Business Days after delivery of the Funding Notice and no later than four (4) Business Days prior to the anticipated Effective Date (such deadline, the "***Backstop Funding Deadline***"), pay the Funding Amount for all Subscribed Notes and the applicable Backstop Notes to the Subscription Agent, in its capacity as Funding Agent, by wire transfer of immediately available funds in accordance with the instructions included in the Funding Notice.

(c) In the event that funds received by the Subscription Agent in payment for a subscribing Noteholder's Subscribed Notes are less than the aggregate Funding Amount for the Subscribed Notes of such Noteholder, the subscription represented by such subscribing Noteholder's Noteholder Beneficial Owner Subscription Form will not be recognized, and the associated Subscription Rights will be deemed forever relinquished and waived, subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities. For the avoidance of doubt, if the principal amount(s) of underlying Senior Notes held by a Noteholder that is electronically delivered through ATOP is less than all of such Noteholder's Senior Notes, the subscription represented by such subscribing Noteholder's Noteholder Beneficial Owner Subscription Form will not be recognized, and the associated Subscription Rights will be deemed forever relinquished and waived, subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities. Subject to the foregoing, if there is a discrepancy between the principal amount of Senior Notes set forth in a Noteholder Beneficial Owner Subscription Form and the principal amount of Senior Notes delivered through ATOP, the principal amount delivered through ATOP shall control, and the Funding Amount shall be determined on that basis, even in the event of a miscalculation on the part of the Noteholder. If a Noteholder is not permitted to participate in the Rights Offering because it failed to comply with these Rights Offering Procedures, any Funding Amount (or portion thereof) delivered by such Noteholder to the Subscription Agent shall be refunded to such Noteholder, without interest, as soon as reasonably practicable, and any Senior Notes tendered by such Noteholder through ATOP shall be released.

(d) The payments of cash made in accordance with the Rights Offering will be deposited and held by the Subscription Agent in a segregated bank account established by the Subscription Agent for this purpose, until disbursed to the Company in connection with the settlement of the Rights Offering on the Effective Date or returned to subscribing Noteholders as provided in Section 6. The Subscription Agent may not use such funds for any other purpose prior to the Effective Date and may not encumber or permit such funds to be encumbered with any lien or similar encumbrance. Such funds held in the segregated bank account or otherwise by the Subscription Agent shall not be deemed part of the Debtors' bankruptcy estate. The Subscription Agent shall release such funds to the Company, and shall release the Senior Notes tendered through ATOP for cancellation, only upon written instruction from the Debtors, with the consent of the Required Consenting Senior Noteholders (for which email of counsel shall suffice), confirming that the Effective Date has occurred or will occur simultaneously with such release. Upon termination of the Rights Offering, the Subscription Agent shall return such funds and release such Senior Notes in accordance with Section 6 without the need for any further instruction.

(e) A Nominee may remit the Funding Amounts of multiple Noteholders that are not Backstop Parties in a single aggregated wire transfer of immediately available funds; *provided* that (i) no later than the Subscription Expiration Deadline, the Nominee delivers to the Subscription Agent a holder-level allocation schedule, in form and substance acceptable to the Subscription Agent, identifying for each Noteholder covered by such wire its name, the series and principal amount of Senior Notes tendered, the applicable DTC ATOP confirmation (VOI) number(s) and the Funding Amount attributable to such Noteholder; (ii) the amount of the aggregated wire equals the sum of the Funding Amounts set forth in such schedule; and (iii) each Noteholder covered by such wire has separately satisfied all other requirements of this Section 4, including delivery of its Noteholder Beneficial Owner Subscription Form and the tender of its Senior Notes through ATOP on a per-holder basis in accordance with Section 9. An aggregated wire does not replace individual ATOP tenders or Noteholder Beneficial Owner Subscription Forms. If the amount of an aggregated wire is less than the sum of the Funding Amounts set forth in the applicable schedule, and the Nominee does not identify to the Subscription Agent, prior to the Subscription Expiration Deadline, the Noteholder(s) to which such shortfall is attributable, the Subscription Agent may treat the subscriptions of all Noteholders covered by such schedule as underfunded under Section 4(c), subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities.

***Special Note for Backstop Parties.*** Backstop Parties must complete the Backstop Party Addendum attached to the Noteholder Beneficial Owner Subscription Form (the "***Backstop Party Addendum***") and arrange for the Backstop Party Addendum to (a) be completed and returned to the Subscription Agent in accordance with the directions included in the Backstop Party Addendum and (b) be provided to their Nominee so that the Nominee will be informed that funding from such Backstop Party does not have to be made prior to the Subscription Expiration Deadline. Each Backstop Party must provide its payment by the deadline set forth in the Funding Notice to the extent that such payment has not already been made to the Subscription Agent, or otherwise in accordance with the terms of the Backstop Commitment Letter.

The rights and obligations of the Backstop Parties in the Rights Offering shall be governed by the Backstop Commitment Letter to the extent the rights or obligations set forth therein differ from the rights and obligations set forth in these Rights Offering Procedures or any Noteholder Beneficial Owner Subscription Form.

Any Noteholder exercising Subscription Rights, and any affiliate or Related Fund of such Noteholder designated by such Noteholder to participate in the Rights Offering and/or to receive Rights Offering Notes or Stapled Equity, shall be deemed to have represented and acknowledged that: (i) the exercise of the Subscription Rights is and shall be irrevocable, unless the Subscription Agent consents, in writing, to allow revocation solely for the purpose of curing administrative or clerical errors; *provided* that nothing in these Rights Offering Procedures shall amend, modify or otherwise alter any right of the Backstop Parties to terminate the Backstop Commitment Letter in accordance with its terms; (ii) it has read and understands these Rights Offering Procedures, the Noteholder Beneficial Owner Subscription Form, the Plan and the Disclosure Statement, and the risks associated with the Debtors and their businesses as described in the Disclosure Statement; (iii) it is not relying upon any information, representation or warranty other than as expressly set forth in these Rights Offering Procedures, the Noteholder Beneficial Owner Subscription Form, the Plan or the Disclosure Statement (or, in the case of a Backstop Party, the Backstop Commitment Letter); and (iv) it has consulted, to the extent deemed appropriate, with its own advisors as to the financial, tax, legal and related matters concerning an investment in the Rights Offering Notes and the Stapled Equity and on that basis believes that such investment is suitable and appropriate for it.

5. **Transfer Restriction; Revocation.**

(a) The Subscription Rights will not be detachable or otherwise transferable separately from the Senior Notes. Any Senior Notes Transferred after the Subscription Expiration Deadline will not be Transferred with the Subscription Rights attached. If any Subscription Rights are Transferred by a Noteholder in contravention of the foregoing, the Subscription Rights will be cancelled, and neither such Noteholder nor the purported transferee will receive any Rights Offering Notes otherwise purchasable on account of such Transferred Subscription Rights.

(b) Noteholders shall be permitted to designate affiliates or Related Funds to participate in the Rights Offering and/or to receive the Rights Offering Notes and Stapled Equity without the need to Transfer any Senior Notes to such affiliate or Related Fund.

(c) The Subscription Rights, together with the underlying Senior Notes with respect to which such Subscription Rights were allocated, will trade together as a unit, subject to such limitations, if any, that would be applicable to the transferability of the underlying Senior Notes.

(d) Once a Noteholder has properly exercised its Subscription Rights, subject to the terms and conditions contained in these Rights Offering Procedures (and the Backstop Commitment Letter in the case of any Backstop Party), such exercise will be irrevocable, unless the Subscription Agent consents, in writing, to allow revocation solely for the purpose of curing administrative or clerical errors. Moreover, following the exercise of any Subscription Rights, the Holder thereof shall be prohibited from Transferring or assigning the Senior Notes corresponding to such Subscription Rights unless the Rights Offering is terminated.

6. **Termination/Return of Payment.**

Unless the Effective Date has occurred, the Rights Offering shall terminate, without any action of any party, upon the earliest of (a) the revocation or withdrawal of the Plan (other than in connection with the filing of an amended or modified Plan consistent with the Consenting Senior Noteholder RSA), or the rejection of the Plan by all classes entitled to vote thereon, (b) the termination of the Consenting Senior Noteholder RSA as to all parties thereto in accordance with its terms, (c) the termination of the Backstop Commitment Letter in accordance with its terms, and (d) 4:00 p.m. (prevailing Central Time) on December 31, 2026, if the closing of the Rights Offering has not occurred on or prior to such time, which time (A) shall automatically be extended for thirty (30) additional calendar days if the Effective Date has not occurred solely because required regulatory approvals have not yet been obtained and (B) may be further extended to any time up to 4:00 p.m. (prevailing Central Time) on the thirtieth (30th) day following such time (as in effect prior to such extension) with the written consent of the Required Backstop Parties (for which email of counsel shall suffice); *provided* that, notwithstanding the occurrence of any of the events described in the foregoing clauses (a), (b), or (d), the Debtors may, with the consent of the Required Backstop Parties (for which email of counsel shall suffice), elect at any time before the Subscription Agent has returned funds and released deposited Senior Notes in accordance with this Section 6 to continue the Rights Offering, in which case the Rights Offering shall not terminate (and shall be deemed not to have terminated) and shall continue in accordance with its terms, and the Subscription Agent shall not return any funds or release any deposited Senior Notes during such period. If the Rights Offering is terminated, any cash paid to the Subscription Agent will be returned, without interest, and all deposited Senior Notes shall be released by the Subscription Agent, to the applicable Noteholder as soon as reasonably practicable thereafter, but in any event within ten (10) Business Days after the date on which the Rights Offering is

terminated; *provided* that if the Effective Date has not occurred on or prior to the tenth (10th) Business Day following the Backstop Funding Deadline (as such date may be extended in connection with any funding default by a Backstop Party or any continuation of the Rights Offering, in each case in accordance with the Backstop Commitment Letter), any funds deposited by a Backstop Party shall be returned to such Backstop Party, with interest, upon its written request (which may be by email), as soon as reasonably practicable, but in any event within two (2) Business Days after such request. To the extent that the final Rights Offering Amount is reduced or any participating Noteholder has remitted funds in excess of the amount required for its final allocation, such excess funds shall be returned to the applicable Noteholder, without interest, as soon as reasonably practicable following the determination and approval of the final allocations, but in no event later than ten (10) Business Days thereafter. The Subscription Agent shall process such refunds upon receipt of written authorization from the Debtors and confirmation of the applicable refund amounts and recipient banking instructions. Each participating Noteholder or its Nominee, as applicable, shall be responsible for providing accurate and complete banking information necessary to effectuate any refund. The Subscription Agent may undertake reasonable verification procedures, including call-back verification, before releasing funds. Any delay resulting from incomplete, inaccurate, or unverified payment instructions shall not constitute a failure by the Subscription Agent to comply with the foregoing refund deadline.

## 7. **Settlement of the Rights Offering and Distribution of the Subscribed Notes and Stapled Equity.**

The settlement of the Rights Offering is conditioned on confirmation of the Plan by the Bankruptcy Court, compliance by the Debtors with these Rights Offering Procedures, satisfaction of the conditions precedent set forth in the Backstop Commitment Letter and the simultaneous occurrence of the Effective Date.

Within six (6) Business Days following the Subscription Expiration Deadline, the Debtors shall deliver to each Backstop Party a certification by an executive officer of Mercer setting forth (i) if there are Backstop Notes, a true and accurate calculation of the aggregate principal amount of Backstop Notes and the principal amount of Backstop Notes such Backstop Party is required to purchase, or (ii) if there are no Backstop Notes, the fact that there are no Backstop Notes. No later than four (4) Business Days prior to the Backstop Funding Deadline, the Debtors or the Subscription Agent, on behalf of the Debtors, shall notify the Majority Ad Hoc Group Advisors and each Backstop Party of the aggregate principal amount of Subscribed Notes validly subscribed, the aggregate principal amount of Backstop Notes and each Backstop Party's allocation thereof, the applicable Funding Amount, the Backstop Funding Deadline and wire instructions for payment to the Subscription Agent (such notice, the "***Funding Notice***"). Upon request, the Subscription Agent shall confirm to any subscribing Noteholder (or its Nominee) the principal amount of Subscribed Notes allocated to such Noteholder.

The Debtors intend that the Rights Offering Notes, the Backstop Notes and the Put Option Premium Notes (if any) will be issued pursuant to the New Senior Secured Notes Indenture and, to the extent eligible, in book-entry form in accordance with the practices and procedures of DTC.

The Debtors intend that the Rights Offering Notes and the Stapled Equity issued to subscribing Noteholders will be issued in book-entry form in accordance with the practices and procedures of DTC, and that DTC, or its Nominee, will be the holder of record of such securities, and that any securities issued to the Backstop Parties in reliance on Section 4(a)(2) of the Securities Act will be issued on the books of the applicable trustee or the Company's transfer agent unless such securities may be issued in book-entry form in accordance with the practices and procedures of DTC. For subscribing Noteholders, the Company will either (i) cause the Rights Offering Notes and the Stapled Equity to be credited to the accounts at DTC through which the respective Noteholders or Nominees, as applicable, held the Senior Notes underlying the applicable Allowed Senior Notes Claims (as evidenced by the Noteholder's ATOP submission), and the

Nominees will arrange for the credit of such securities to the individual accounts of the applicable Noteholders or (ii) deliver such securities to accounts of persons designated by the subscribing Noteholders at DTC via Deposit or Withdrawal at Custodian ("***DWAC***") deposits.

If, for any reason, the Rights Offering Notes or the Stapled Equity to be issued in book-entry form in accordance with the practices and procedures of DTC cannot be issued in such form, then such securities will be issued and registered in the name of the subscribing Noteholders on the books and records of the applicable trustee or the Company's transfer agent, subject to the terms of the Plan and applicable law, including, with respect to the Stapled Equity, compliance with section 1145 of the Bankruptcy Code. After the initial issuance of such securities, however, Noteholders may transfer such securities in accordance with the procedures of the applicable trustee or the Company's transfer agent subject to applicable securities laws and the provisions of the New Senior Secured Notes Documents and the New Corporate Governance Documents, as applicable. For the avoidance of doubt, any securities (including any Rights Offering Notes, any Put Option Premium Notes (to the extent the beneficial owner thereof elects private placement treatment in accordance with Article 5.6 of the Plan), and any Stapled Equity issued to the Backstop Parties) issued pursuant to Section 4(a)(2) of the Securities Act, Regulation S under the Securities Act or another available exemption other than section 1145 of the Bankruptcy Code will bear a legend (or, if uncertificated, a substantially similar restrictive notation on the books and records of the applicable trustee or the Company's transfer agent) indicating that the securities may not be sold or otherwise transferred unless such securities are registered with the SEC pursuant to the Securities Act and comply with any applicable state or local law requiring registration of securities, or such sale or transfer is exempt from registration requirements of the Securities Act and any applicable state or local law.

All Holders of New Common Stock and New Convertible Preferred Stock, whether issued as Stapled Equity or otherwise, shall be deemed to be a party to, and bound by, the New Corporate Governance Documents, in accordance with their terms, without the requirement to execute a signature page thereto, and such securities may bear a legend or restrictive notation indicating that they are subject to the transfer restrictions set forth in the New Corporate Governance Documents.

To the extent that section 1145(a) of the Bankruptcy Code is not available for any Stapled Equity or Rights Offering Notes, in each case issued to a Holder participating in reliance on Regulation S under the Securities Act, such securities will be issued in reliance on Regulation S, may not be offered, sold or otherwise transferred in the United States or to, or for the account or benefit of, a U.S. person during the applicable distribution compliance period under Regulation S except pursuant to registration under the Securities Act or an available exemption therefrom, and will bear a legend, and may be held under a separate CUSIP or ISIN, to that effect.

**8. No Fractional Shares of Stapled Equity.**

No fractional Subscription Rights or fractional shares of New Common Stock or New Convertible Preferred Stock comprising the Stapled Equity will be issued in connection with the Rights Offering, and all Stapled Equity allocations will be rounded in accordance with Article 6.14 of the Plan; *provided* that any Stapled Equity or Backstop Equity distributed to the Backstop Parties (or their designees) will be rounded in accordance with Section 1(d) of the Backstop Commitment Letter. Rights Offering Notes will be issued in minimum denominations of $1,000.00 and integral multiples of $1,000.00 in excess thereof, and allocations of Rights Offering Notes will be rounded down accordingly; *provided* that the Debtors and the Required Backstop Parties may round allocations of Rights Offering Notes and make such further adjustments as are necessary so that the aggregate principal amount of the Rights Offering Notes (other than the Put Option Premium Notes) equals the Rights Offering Amount. No compensation shall be paid, whether in cash or otherwise, in respect of any rounded-down amounts.

**9. Bulk Tenders.**

With respect to subscribing Noteholders, Nominees must submit instructions on account of each Noteholder separately. "Bulk Tenders" via ATOP are not permitted and will be rejected.

**10. Validity of Exercise of Subscription Rights.**

All questions concerning the timeliness, validity, form, and eligibility of any exercise of Subscription Rights will be determined in good faith by the Debtors in consultation with the Required Consenting Senior Noteholders and, if necessary, subject to a final and binding determination by the Bankruptcy Court. The Debtors, with the consent of the Required Consenting Senior Noteholders (for which email of counsel shall suffice) or pursuant to the terms of the Backstop Commitment Letter, may waive any defect or irregularity, or permit a defect or irregularity to be corrected within such time as they may determine in good faith, or reject the purported exercise of any Subscription Rights. Noteholder Beneficial Owner Subscription Forms will be deemed not to have been received or accepted until all irregularities have been waived or cured within such time as the Debtors determine in good faith and with the consent of the Required Consenting Senior Noteholders (for which email of counsel shall suffice). In addition, the Debtors, with the consent of the Required Consenting Senior Noteholders (for which email of counsel shall suffice) or pursuant to the terms of the Backstop Commitment Letter, may permit any such defect or irregularity to be cured within such time as they may determine in good faith to be appropriate.

All calculations, including, to the extent applicable, the calculation of (a) the amount of any Noteholder's Allowed Senior Notes Claims for purposes of the Rights Offering, (b) the Rights Offering Amount (including any reduction on account of amounts drawn under the New ABL Facility (in the aggregate across all facilities comprising the New ABL Facility)), and (c) any Noteholder's Subscribed Notes and Stapled Equity, shall be made in good faith by the Debtors with the consent of the Required Consenting Senior Noteholders (for which email of counsel shall suffice), and such calculations will be conclusive absent manifest error. Any disputes regarding such calculations shall be subject to a final and binding determination by the Bankruptcy Court.

The Debtors reserve the right to request additional information or certifications from any participant in the Rights Offering (including any designated affiliate or Related Fund) and to undertake such other diligence measures as the Debtors, in consultation with the Required Consenting Senior Noteholders, deem reasonably necessary to confirm that such participant is eligible to participate in the Rights Offering and, in the case of a Backstop Party or any designee thereof, is an Eligible Holder. The Debtors shall not be obligated to deliver any notice to Noteholders in connection with any reduction in the Rights Offering Amount on account of amounts drawn under the New ABL Facility (in the aggregate across all facilities comprising the New ABL Facility) at close, other than to the Backstop Parties in accordance with the Backstop Commitment Letter.

For the avoidance of doubt and notwithstanding the above, the Debtors and their agents are not required to inform parties of any defect or irregularity with their submission of documents or payments and may reject such submissions without notifying the party prior to such rejection other than as required pursuant to the terms of the Backstop Commitment Letter. Additionally, each such irregularity or defect, if reviewed, will be reviewed on an individual submission basis.

**11. Minimum Exercise Amount.**

There is no minimum principal amount of Senior Notes with respect to which Subscription Rights may be exercised.

**12. DTC.**

All of the Senior Notes are held in book-entry form in accordance with the practices and procedures of DTC. The Debtors intend to comply with the practices and procedures of DTC for the purpose of conducting the Rights Offering, and, subject to compliance with Section 13 hereof, these Rights Offering Procedures will be deemed appropriately modified to achieve such compliance. Noteholders that hold Senior Notes through Euroclear Bank SA/NV or Clearstream Banking S.A. must instruct the applicable direct participant to deliver such Senior Notes through ATOP in accordance with these Rights Offering Procedures and the procedures of Euroclear or Clearstream, as applicable, and should allow additional time to meet any earlier deadline imposed by such clearing system.

**13. Modification of Procedures.**

The Debtors reserve the right, subject to the terms of the Backstop Commitment Letter and with the reasonable consent of the Required Consenting Senior Noteholders and the reasonable consent of the Required Backstop Parties (in each case, such consent not to be unreasonably withheld, conditioned, or delayed, and for which email of counsel shall suffice), to modify these Rights Offering Procedures or adopt additional procedures consistent with the provisions of these Rights Offering Procedures to effectuate the Rights Offering and to issue the Subscribed Notes; provided, however, that the Debtors shall provide prompt written notice (the "***Modification Notice***") to the Noteholders of any material modification to these Rights Offering Procedures made after the Subscription Commencement Date by: (i) posting the Modification Notice on the Debtors' restructuring website at https://cases.stretto.com/Mercer; (ii) filing a copy of the Modification Notice on the docket of the Debtors' Chapter 11 Cases; and (iii) providing a copy of the Modification Notice to the Majority Ad Hoc Group Advisors, with email notice being sufficient. Subject to the terms of the Backstop Commitment Letter and the Consenting Senior Noteholder RSA, the Debtors, with the reasonable consent of the Required Consenting Senior Noteholders and the Required Backstop Parties (in each case, such consent not to be unreasonably withheld, conditioned, or delayed, and for which email of counsel shall suffice), may execute and enter into agreements and take further action that the Debtors determine in good faith are necessary and appropriate to effect and implement the Rights Offering and the issuance of the Subscribed Notes, the Backstop Notes, the Stapled Equity and the Put Option Premium Notes (if any).

**14. Inquiries and Transmittal of Documents; Subscription Agent.**

The Rights Offering Instructions should be carefully read and strictly followed. Noteholders are encouraged to review the Rights Offering Q&A attached hereto as **Annex 2** before contacting the Subscription Agent.

Questions relating to the Rights Offering should be directed to the Subscription Agent at the following phone number or email address: (833) 333-9454 (domestic toll-free) or +1 (650) 525-4708 (for international calls) or MercerInquiries@stretto.com. To obtain copies of the documents, please visit https://cases.stretto.com/Mercer.

The risk of non-delivery of all documents and payments to the Subscription Agent and any Nominee is on the Noteholder electing to exercise its Subscription Rights and not the Debtors or the Subscription Agent.

Subscription Rights that are not exercised in accordance with these Rights Offering Procedures by the Subscription Expiration Deadline will be relinquished on the Subscription Expiration Deadline, and none of the Debtors, the Reorganized Debtors, the Subscription Agent or any of their respective employees, affiliates or professionals shall have any liability for any failure to exercise Subscription Rights.

The Subscription Agent will, among other things, (a) coordinate with DTC the establishment of the ATOP event and the contra CUSIPs for each series of Senior Notes; (b) assist in establishing the segregated bank account described in Section 4(d), subject to the agreed banking arrangements; (c) receive, review and process Noteholder Beneficial Owner Subscription Forms, holder-level allocation schedules and other supporting documents; (d) receive and reconcile each Funding Amount against the applicable Noteholder Beneficial Owner Subscription Form and ATOP tender (VOI) before recording a subscription as complete; and (e) prepare and deliver to the trustee under the New Senior Secured Notes Indenture, the Company's transfer agent or other designated issuance agent, as applicable, the registration and delivery information necessary to issue the Rights Offering Notes and the Stapled Equity.

The Subscription Agent is authorized to rely conclusively, without independent investigation, on securities position reports obtained from DTC, information and certifications provided by Nominees, and the Noteholder Beneficial Owner Subscription Forms, and shall have no liability for any action taken or omitted in good faith in reliance thereon or otherwise in connection with the Rights Offering, other than as a result of its gross negligence, willful misconduct or fraud.

Nominees (or Noteholders that are instructed by their Nominees to return the Noteholder Beneficial Owner Subscription Form directly to the Subscription Agent) must return the Noteholder Beneficial Owner Subscription Form and the appropriate IRS tax form by no later than the Subscription Expiration Deadline to the following:

**Mercer Rights Offering Subscription**
c/o Stretto, Inc.
410 Exchange, Suite 100
Irvine, CA 92602

**Preferred Method**
Submit via email:
MercerRightsOffering@Stretto.com

All documents relating to the Rights Offering are available from the Subscription Agent. In addition, these documents, together with all filings made with the Bankruptcy Court by the Debtors, are available free of charge from the Debtors' restructuring website at https://cases.stretto.com/Mercer.

**Only choose one method of return. If you choose to return the applicable documents via email, do not follow up with hard copies.**

## 15. Backstop Commitment Letter.

The Debtors are party to that certain Backstop Commitment Letter (the "***Backstop Commitment Letter***"), dated as of November 2, 2026 with certain members of the Majority Ad Hoc Group (the "***Backstop Parties***"), pursuant to which the Backstop Parties committed to backstop 100.0% of the Rights Offering in exchange for the Put Option Premium. Notwithstanding anything to the contrary in these Rights Offering Procedures, (a) the Subscription Agent shall act as the Funding Agent (as defined in the Backstop Commitment Letter), and each Backstop Party shall fund the amount required under Section 1(g) of the Backstop Commitment Letter (the "***Backstop Purchase Price***") for its Subscribed Notes and its Backstop Notes to the Subscription Agent by the Backstop Funding Deadline, which shall be the Funding Deadline (as defined in the Backstop Commitment Letter); (b) the Rights Offering Notes subject to the Primary Commitments (as defined in the Backstop Commitment Letter) shall be subscribed for, funded and allocated, and the Stapled Equity on account thereof distributed, in accordance with the Backstop Commitment Letter; (c) the Backstop Notes shall consist of the Unsubscribed Notes (as defined in the

Backstop Commitment Letter); (d) any funds deposited by a Backstop Party with the Subscription Agent shall be returned to such Backstop Party, with interest, at the times and in the manner set forth in Section 1(g) of the Backstop Commitment Letter; and (e) any designee of a Backstop Party to purchase Rights Offering Notes or Backstop Notes, or to receive Stapled Equity or Put Option Premium Notes, on account of such Backstop Party's commitments must be an "accredited investor" within the meaning of Rule 501(a) of Regulation D under the Securities Act, must be designated by written notice to the Debtors at least three (3) days prior to the Effective Date, and, in the case of any designee to purchase Rights Offering Notes or Backstop Notes or to receive Stapled Equity, must properly complete and duly execute all documents that would be required of such designee under these Rights Offering Procedures if it were a Holder of Allowed Senior Notes Claims as of the Rights Offering Record Date; *provided* that no such designation shall reduce, release, or novate the Primary Commitment or Backstop Commitment of such Backstop Party prior to the occurrence of the Effective Date. In the event of any conflict between these Rights Offering Procedures and the terms of the Backstop Commitment Letter, the terms of the Backstop Commitment Letter will control.

**16. Withholding.**

All issuances and distributions in connection with the Rights Offering, including the issuance of the Rights Offering Notes, the Backstop Notes, the Stapled Equity and the Put Option Premium Notes (if any), shall be subject to applicable withholding and reporting requirements in accordance with Article 6.19 of the Plan. Any Noteholder that fails to deliver a properly completed IRS Form W-9 or appropriate IRS Form W-8 may be subject to backup withholding or other withholding as required by applicable law.

**17. Court Approval; Jurisdiction.**

These Rights Offering Procedures have been approved by the Bankruptcy Court pursuant to the order entered on [ ● ], 2026 [Docket No. [ ● ]] (the "***Rights Offering Procedures Order***"), and the Rights Offering shall not commence until the Rights Offering Procedures Order has been entered. The Bankruptcy Court shall retain exclusive jurisdiction to hear and determine any dispute arising out of or relating to the Rights Offering or these Rights Offering Procedures, including any determination made pursuant to Section 10 hereof.

# ANNEX 1

Mercer Rights Offering Instructions

# MERCER RIGHTS OFFERING INSTRUCTIONS[1]

**To elect to participate in the Rights Offering, you must follow the instructions set out below:**

1. **Insert** the principal amount of your Senior Notes (by series) that you hold in the corresponding fields within your Noteholder Beneficial Owner Subscription Form. There is no minimum principal amount of Senior Notes with respect to which Subscription Rights may be exercised.

   If you do not know the principal amount of your Senior Notes, please contact your Nominee immediately. If you intend to exercise your Subscription Rights, you must provide instructions to your Nominee to submit all of your Senior Notes into the ATOP system through DTC to the appropriate contra CUSIP established by DTC.

2. **Complete** the calculation in Item 2 of your Noteholder Beneficial Owner Subscription Form, which calculates your Funding Amount (*i.e.*, the aggregate Purchase Price of the Rights Offering Notes you are entitled to purchase in the Rights Offering).

3. **Read, complete and sign** the certification in Item 4 of your Noteholder Beneficial Owner Subscription Form, and all other requested information in the remaining items.

4. **Read, complete and sign** an IRS Form W-9 if you are a U.S. person. If you are a non-U.S. person, read, complete and sign an appropriate IRS Form W-8. These forms may be obtained from the IRS at its website: www.irs.gov.

5. **Instruct** your Nominee to electronically deliver via ATOP your Senior Notes to the appropriate contra CUSIP established by DTC by the Subscription Expiration Deadline. If you intend to exercise your Subscription Rights, you must provide instructions to your Nominee to submit all of your Senior Notes into the ATOP system.

6. **Return** your signed Noteholder Beneficial Owner Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) to your Nominee in sufficient time to allow your Nominee to process your instructions and prepare and deliver your Noteholder Beneficial Owner Subscription Form to the Subscription Agent (or otherwise follow the instructions of your Nominee) prior to the Subscription Expiration Deadline.

7. **Arrange for full payment** of the Funding Amount in immediately available funds, calculated in accordance with Item 2 of your Noteholder Beneficial Owner Subscription Form. A Noteholder who is not a Backstop Party should follow the payment instructions as provided in Item 3 of the Noteholder Beneficial Owner Subscription Form. Any Backstop Party should follow the payment instructions that will be provided in the Funding Notice, except to the extent of any Funding Amount previously paid by such Backstop Party to the Subscription Agent, or otherwise in accordance with the terms of the Backstop Commitment Letter.

8. **For Backstop Parties ONLY, confirm** that you are a Backstop Party by checking the appropriate box in Item 5 of your Noteholder Beneficial Owner Subscription Form, so that the Nominee will receive confirmation that payment does not have to be made prior to the Subscription Expiration Deadline. If you are a Backstop Party, you must also complete the Backstop Party Addendum, which is attached to your Noteholder Beneficial Owner Subscription Form, and submit the

[1] Terms used and not defined herein shall have the meaning assigned to them in the Plan.

Backstop Party Addendum to the Subscription Agent. (This instruction is only for Backstop Parties.)

**The Subscription Expiration Deadline is 4:00 p.m. (Prevailing Central Time) on December 10, 2026 (as such deadline may be extended pursuant to the Rights Offering Procedures).**

**Noteholder Beneficial Owner Subscription Forms (each with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) must be received by the Subscription Agent and the underlying Senior Notes must be delivered through ATOP to the appropriate contra CUSIP established by DTC by the Subscription Expiration Deadline or the subscription represented by your Noteholder Beneficial Owner Subscription Form will not be recognized, and the associated Subscription Rights will be deemed forever relinquished and waived, subject to the provisions of Section 10 of the Rights Offering Procedures relating to the waiver or correction of defects or irregularities.**

**Please note that, unless otherwise directed by your Nominee, the Noteholder Beneficial Owner Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) must be received by your Nominee in sufficient time to allow such Nominee to process and deliver your underlying Senior Notes through ATOP to the appropriate contra CUSIP established by DTC by the Subscription Expiration Deadline or the subscription represented by your Noteholder Beneficial Owner Subscription Form will not be recognized, and the associated Subscription Rights will be deemed forever relinquished and waived, subject to the provisions of Section 10 of the Rights Offering Procedures relating to the waiver or correction of defects or irregularities.**

**Further, the full payment of the Funding Amount by Noteholders who are not Backstop Parties must be received by the Subscription Agent by the Subscription Expiration Deadline or the subscription represented by your Noteholder Beneficial Owner Subscription Form will not be recognized, and the associated Subscription Rights will be deemed forever relinquished and waived, subject to the provisions of Section 10 of the Rights Offering Procedures relating to the waiver or correction of defects or irregularities. Noteholders that are Backstop Parties must deliver the Funding Amount for their Subscribed Notes and the applicable Backstop Notes directly to the Subscription Agent pursuant to the Funding Notice (except to the extent of any Funding Amounts previously provided by any such Noteholders to the Subscription Agent in accordance with the terms of the Backstop Commitment Letter) no later than the Backstop Funding Deadline, or otherwise in accordance with the terms of the Backstop Commitment Letter.**

**Answers to frequently asked questions are set forth in the Rights Offering Q&A attached to the Rights Offering Procedures as Annex 2. Questions relating to the Rights Offering should be directed to the Subscription Agent at the following phone number or email address: (833) 333-9454 (domestic toll-free) or +1 (650) 525-4708 (for international calls) or MercerInquiries@stretto.com. To obtain copies of the documents, please visit https://cases.stretto.com/Mercer.**

[*Remainder of page intentionally left blank*]

Nominees (or Noteholders that are instructed by their Nominees to return the Noteholder Beneficial Owner Subscription Form directly to the Subscription Agent) must return the Noteholder Beneficial Owner Subscription Form and the appropriate IRS tax form by no later than the Subscription Expiration Deadline to the following:

**Mercer Rights Offering Subscription**
c/o Stretto, Inc.
410 Exchange, Suite 100
Irvine, CA 92602

**Preferred Method**
Submit via email:
MercerRightsOffering@Stretto.com

**Only choose one method of return. If you choose to return the applicable documents via email, do not follow up with hard copies.**

[*Remainder of page intentionally left blank*]

**ANNEX 2**

Rights Offering Q&A

**Rights Offering Q&A**

This Rights Offering Q&A is provided for convenience only and does not modify, supplement or otherwise amend the Plan, the Disclosure Statement, the Rights Offering Procedures (including the Rights Offering Instructions), the Noteholder Beneficial Owner Subscription Form, the Backstop Commitment Letter, the Rights Offering Procedures Order, the Confirmation Order or any other document filed with the Bankruptcy Court in the Debtors' Chapter 11 Cases, each of which governs in all respects. In the event of any inconsistency between this Rights Offering Q&A and any such document, such document shall control. This Rights Offering Q&A does not constitute legal, tax, investment or financial advice, and Noteholders should consult their own advisors. Capitalized terms used but not defined herein have the meanings given to them in the Rights Offering Procedures or the Plan, as applicable.

**Question 1. What is the rights offering?**

*Answer: Pursuant to the Plan, Mercer International Inc. and its debtor affiliate (the "**Debtors**") are offering Holders of Allowed Senior Notes Claims the right to purchase their Pro Rata Share of $420.0 million in aggregate principal amount of New Money Senior Secured Notes (the "**Rights Offering Notes**") to be issued by Reorganized Mercer, together with their pro rata share of the Stapled Equity, on the terms set forth in the Rights Offering Procedures, the Plan and the Backstop Commitment Letter. Holders may subscribe by (a) returning a completed Noteholder Beneficial Owner Subscription Form (with an IRS Form W-9 or W-8) through their Nominee, (b) instructing their Nominee to tender all of their Senior Notes through ATOP and (c) paying the Funding Amount, in each case by the Subscription Expiration Deadline (or, for Backstop Parties, paying by the Backstop Funding Deadline).*

**Question 2. Am I eligible to participate? / Who is eligible to participate in the Rights Offering?**

*Answer: You are eligible if, as of the Rights Offering Record Date (November 9, 2026), you hold an Allowed Senior Notes Claim on account of the 12.875% Senior Notes due 2028 and/or the 5.125% Senior Notes due 2029. Questions concerning eligibility are determined by the Debtors in good faith, in consultation with the Required Consenting Senior Noteholders, as described in Section 10 of the Rights Offering Procedures.*

**Question 3. What if I bought or sold securities after the record date?**

*Answer: The Subscription Rights are not detachable from the Senior Notes and trade together with the underlying Senior Notes until the Subscription Expiration Deadline. Once you exercise your Subscription Rights and your Senior Notes are tendered through ATOP, those Senior Notes may not be Transferred unless the Rights Offering is terminated. Please see Section 5 of the Rights Offering Procedures. If you have questions regarding your entitlement following a purchase or sale, please contact your Nominee and the Subscription Agent.*

**Question 4. How much may I purchase?**

*Answer: You may purchase a principal amount of Rights Offering Notes equal to your Pro Rata Share of the Rights Offering Amount, calculated as the amount of your Allowed Senior Notes Claims divided by the aggregate amount of all Allowed Senior Notes Claims. The Purchase Price is 95.238095% of the principal amount of the Rights Offering Notes. Please use Item 2 of the Noteholder Beneficial Owner Subscription Form to calculate your Funding Amount. Stapled Equity allocations are rounded in accordance with Article 6.14 of the Plan, as described in Section 8 of the Rights Offering Procedures.*

**<u>Question 5</u>. Can I subscribe for only part of my entitlement?**

*<u>Answer</u>: No. Each Noteholder may subscribe for either all or none of its Pro Rata Share of Rights Offering Notes. If you exercise your Subscription Rights, you must tender all of your Senior Notes through ATOP; if less than all of your Senior Notes are tendered, your subscription will not be recognized.*

**<u>Question 6</u>. May I subscribe for more than my entitlement?**

*<u>Answer</u>: No. There is no over-subscription privilege in the Rights Offering. Any Rights Offering Notes that are not subscribed for will be purchased by the Backstop Parties in accordance with the Backstop Commitment Letter.*

**<u>Question 7</u>. Which documents do I submit and where?**

*<u>Answer</u>: Return your completed and executed Noteholder Beneficial Owner Subscription Form (attached to the Rights Offering Procedures as <u>Annex 3</u>), together with an IRS Form W-9 or appropriate IRS Form W-8, to your Nominee (unless your Nominee directs otherwise) in sufficient time for your Nominee to deliver it to the Subscription Agent by the Subscription Expiration Deadline. The preferred method of delivery to the Subscription Agent is by email to MercerRightsOffering@Stretto.com; documents may also be delivered to Mercer Rights Offering Subscription, c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602. Choose only one method of return. Separately, instruct your Nominee to tender your Senior Notes through ATOP and arrange payment of the Funding Amount.*

**<u>Question 8</u>. Do I need my broker's assistance or an ATOP tender?**

*<u>Answer</u>: Yes. All of the Senior Notes are held through DTC, so you must instruct your Nominee to electronically deliver all of your Senior Notes through ATOP to the appropriate contra CUSIP established by DTC for the Rights Offering so that they are received by the Subscription Expiration Deadline. Tendered Senior Notes will be frozen from Transfer unless the Rights Offering is terminated, in which case they will be released. The Noteholder Beneficial Owner Subscription Form and payment of the Funding Amount are separate requirements.*

**<u>Question 9</u>. What are the deadlines?**

*<u>Answer</u>: The Subscription Expiration Deadline is 4:00 p.m. (prevailing Central Time) on December 10, 2026, which may be extended as set forth in <u>Section 2</u> of the Rights Offering Procedures. By that deadline, the Subscription Agent must receive your Noteholder Beneficial Owner Subscription Form, your ATOP tender and (unless you are a Backstop Party) your Funding Amount. Backstop Parties must also submit their forms and ATOP tenders by the Subscription Expiration Deadline, but must pay their Funding Amount by the Backstop Funding Deadline set forth in the Funding Notice. Your Nominee may impose an earlier deadline; please confirm its requirements promptly.*

**<u>Question 10</u>. I hold multiple securities or use several brokers. What do I do?**

*<u>Answer</u>: If you hold both 2028 Senior Notes and 2029 Senior Notes, you must deliver each series to the appropriate contra CUSIP established by DTC for that series. If you hold Senior Notes through multiple Nominees, you must complete, execute and deliver a separate Noteholder Beneficial Owner Subscription Form with respect to each Nominee.*

**<u>Question 11</u>. How do I pay and verify the wire instructions?**

*<u>Answer</u>: Noteholders that are not Backstop Parties must pay the Funding Amount by wire transfer of immediately available funds to the Subscription Agent in accordance with the instructions in*

*<u>Item 3</u> of the Noteholder Beneficial Owner Subscription Form, so that it is received by the Subscription Expiration Deadline. Backstop Parties must pay in accordance with the Funding Notice by the Backstop Funding Deadline. Funds are held in a segregated account and no interest will be paid on advanced or returned funds (other than funds deposited by Backstop Parties, which will be returned with interest in accordance with the Backstop Commitment Letter). Before wiring, verify the wire instructions by calling the Subscription Agent at a known phone number.*

*Each Noteholder should coordinate with its Nominee to confirm the arrangements for remitting the Funding Amount to the Subscription Agent to avoid duplicate payments.*

| | |
|---|---|
| Name of Account: | **Mercer International Inc.** |
| Account No.: | [redacted] |
| SWIFT No.: | [redacted] |
| Bank Name: | **Citizens Bank** |
| Bank Address: | **300 Barr Harbor Dr, Suite 450<br>Conshohocken, PA 19428** |
| Routing Number: | [redacted] |
| Special Instructions to be included in the reference: | VOI Number & Name of Participant/Bank* |

***Individual Wire Transfers:** If you are remitting funds individually, please include the VOI number, DTC Participant number, and Participant name in the wire reference field. If the field has character limitations, please prioritize the VOI number.*

***Bulk Wire Transfers by DTC Participant:** If you are a nominee remitting a single wire on behalf of multiple parties, please include your DTC Participant number and the phrase "Bulk Wire" in the wire reference field. In addition, please email a detailed breakdown of the bulk wire in Excel, including each VOI number and its corresponding dollar amount, to MercerRightsOffering@Stretto.com.*

*Call-Back Verification Numbers:*

*Domestic: (866) 708-7505 and International: (949) 882-0596*

**<u>Question 12</u>. Does confirmation of a Chapter 11 plan mean my subscription is accepted?**

*<u>Answer</u>: No. Plan confirmation alone does not establish acceptance of a subscription. Your subscription will be recognized only if your Noteholder Beneficial Owner Subscription Form, ATOP tender and Funding Amount are timely received, and you are a Noteholder. Settlement of the Rights Offering is conditioned on confirmation of the Plan, satisfaction of the conditions precedent in the Backstop Commitment Letter and the Plan and the occurrence of the Effective Date.*

**<u>Question 13</u>. I submitted a form but cannot obtain my VOI. What should I do?**

*<u>Answer</u>: Ask your Nominee for the VOI number for your ATOP tender and contact the Subscription Agent with the series of Senior Notes, your Nominee's DTC participant number and any submission reference. A subscription form alone does not complete your subscription; your Senior Notes must also be tendered through ATOP by the Subscription Expiration Deadline. Any defect may be waived or cured only as described in <u>Section 10</u> of the Rights Offering Procedures.*

**Question 14. I wired funds or submitted incomplete materials. Can you fix my subscription?**

*Answer: Stretto will log the issue. Under Section 10 of the Rights Offering Procedures, the Debtors, with the consent of the Required Consenting Senior Noteholders, may waive a defect or irregularity, permit it to be cured within such time as they determine, or reject the subscription. The Debtors and their agents are not required to notify you of any defect, and there is no assurance that a defect will be cured or waived. If funds received are less than your full Funding Amount, your subscription will not be recognized.*

**Question 15. Can I withdraw or transfer my subscription rights?**

*Answer: No. Subject to the Plan and the Rights Offering Procedures, all subscriptions are irrevocable and withdrawals will not be permitted, unless the Subscription Agent consents, in writing, to allow revocation solely for the purpose of curing administrative or clerical errors. The Subscription Rights may not be transferred separately from the underlying Senior Notes, and after you exercise your Subscription Rights, the Senior Notes corresponding to those Subscription Rights may not be Transferred unless the Rights Offering is terminated. You may, however, designate affiliates or Related Funds to participate and/or receive the Rights Offering Notes and Stapled Equity without transferring your Senior Notes. Please see Section 5 of the Rights Offering Procedures.*

**Question 16. What happens if I do not participate?**

*Answer: Subscription Rights that are not validly exercised by the Subscription Expiration Deadline will be deemed forever relinquished and waived, and you will not receive any Rights Offering Notes or Stapled Equity. Whether or not you participate, as a Holder of an Allowed Senior Notes Claim you will receive your Pro Rata Share of the Class 3 Plan treatment.*

**Question 17. When and how will I receive Rights Offering securities?**

*Answer: The Rights Offering Notes and Stapled Equity are expected to be delivered on the Effective Date, subject to confirmation of the Plan and the satisfaction of the conditions in the Backstop Commitment Letter, in book-entry form through DTC to the accounts through which you tendered your Senior Notes (or to accounts you designate via DWAC). If the Rights Offering is terminated, your Funding Amount will be returned without interest and your Senior Notes released within ten (10) Business Days after termination (other than funds deposited by Backstop Parties, which will be returned with interest in accordance with the Backstop Commitment Letter).*

**Question 18. Are the securities freely tradable, and should I invest?**

*Answer: To the extent issued pursuant to section 1145(a) of the Bankruptcy Code, the Stapled Equity and the Rights Offering Notes generally may be resold without registration unless the holder is an "underwriter" or an affiliate of Reorganized Mercer. Securities issued in reliance on Section 4(a)(2) of the Securities Act, such as certain securities issued to the Backstop Parties on account of their Backstop Commitments, will be restricted securities. Securities issued to Holders participating in reliance on Regulation S that are not issued under section 1145(a) will be subject to Regulation S resale restrictions during the applicable distribution compliance period, will bear a legend and may be held under a separate CUSIP or ISIN. Please review the Rights Offering Procedures and the Disclosure Statement, including the risk factors and the section entitled "Transfer Restrictions and Consequences under Federal Securities Laws." Stretto provides administrative assistance only. Investment, legal and tax questions should be directed to your own advisors.*

**Question 19. May a nominee submit bulk instructions or an aggregated wire?**

*Answer: No bulk tenders. Nominees must submit ATOP instructions on account of each Noteholder separately and provide the corresponding VOI; "Bulk Tenders" via ATOP will be rejected. A Nominee may, however, submit an aggregated wire for Noteholders that are not Backstop Parties if it delivers a holder-level allocation schedule acceptable to the Subscription Agent by the Subscription Expiration Deadline, as described in Section 4(e) of the Rights Offering Procedures; an aggregated wire does not replace individual ATOP tenders or subscription forms.*

**Question 20. How should nominees handle commitment parties?**

*Answer: The Backstop Parties are certain members of the Majority Ad Hoc Group. Each Backstop Party must check the box in Item 5 of its Noteholder Beneficial Owner Subscription Form and provide its Backstop Party Addendum to its Nominee and the Subscription Agent, which confirms that payment does not have to be made prior to the Subscription Expiration Deadline. Backstop Parties must still submit their forms and ATOP tenders by the Subscription Expiration Deadline, and must pay their Funding Amount by wire to the Subscription Agent by the Backstop Funding Deadline in accordance with the Funding Notice. Nominees should not require Backstop Parties to pre-fund.*

**Question 21. What is being offered pursuant to the Rights Offering?**

*Answer: $420.0 million in aggregate principal amount of New Money Senior Secured Notes to be issued by Reorganized Mercer under the New Senior Secured Notes Indenture (inclusive of $20.0 million of original issue discount but exclusive of the Put Option Premium, and subject to a dollar-for-dollar reduction for amounts drawn under the New ABL Facility (in the aggregate across all facilities comprising the New ABL Facility) at close; provided that such reduction shall apply only if and to the extent liquidity at close is above $300.0 million and shall not reduce liquidity at close below $300.0 million). Each participating Noteholder will also receive its pro rata share of the Stapled Equity, consisting of 40.0% of the New Common Stock and 40.0% of the New Convertible Preferred Stock.*

**Question 22. What happens if the Rights Offering is not fully subscribed?**

*Answer: The Rights Offering is fully backstopped. If the Rights Offering is not fully subscribed, the Backstop Parties will purchase, on a several and not joint basis, any unsubscribed Rights Offering Notes in accordance with the Backstop Commitment Letter. In exchange for their commitment, the Backstop Parties will receive a $56.0 million Put Option Premium payable in Put Option Premium Notes (or, if the Put Option Premium becomes payable upon termination of the Backstop Commitment Letter, in cash).*

**Question 23. What should I do if I have other questions?**

*Answer: If you have any questions about, or require assistance regarding, the procedures for exercising your Subscription Rights, please contact Stretto, Inc., the Subscription Agent, at (833) 333-9454 (domestic toll-free), +1 (650) 525-4708 (international) or MercerInquiries@stretto.com. Copies of the Rights Offering documents are available at https://cases.stretto.com/Mercer.*

# ANNEX 3

Noteholder Beneficial Owner Subscription Form

**NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM FOR RIGHTS OFFERING FOR USE BY HOLDERS OF SENIOR NOTES**

**IN CONNECTION WITH THE DEBTORS' DISCLOSURE STATEMENT DATED NOVEMBER 9, 2026**

**SUBSCRIPTION EXPIRATION DEADLINE**

**The Subscription Expiration Deadline is 4:00 p.m. (prevailing Central Time) on December 10, 2026, unless otherwise extended pursuant to the terms of the Rights Offering Procedures (the "*Procedures*"). Capitalized terms used but not defined herein shall have the meanings assigned to them in the Procedures.**

**To exercise the Subscription Rights with respect to the Senior Notes, each Holder of the underlying Senior Notes as of the Rights Offering Record Date (a "*Noteholder*") must (i) return its duly completed and executed Noteholder Beneficial Owner Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) to its bank, broker, intermediary, securities nominee or agent (each, a "*Nominee*") (unless otherwise directed by its Nominee) in sufficient time to allow such Nominee to deliver such documents to be actually received by the Subscription Agent on or before the Subscription Expiration Deadline, and (ii) electronically deliver (or cause to be delivered) all of such Senior Notes into the appropriate contra CUSIP established by The Depository Trust Company ("*DTC*") for the Rights Offering through the Automated Tender Offer Program ("*ATOP*") of DTC, so that they are received by the Subscription Expiration Deadline.**

**Noteholders who are not Backstop Parties must deliver the Funding Amount for all Subscribed Notes by the Subscription Expiration Deadline.**

**Noteholders who are Backstop Parties must deliver the Funding Amount for all Subscribed Notes (if any) and the applicable Backstop Notes (if any) no later than the Backstop Funding Deadline.**

**The Subscription Rights will not be detachable or otherwise transferable separately from the underlying Senior Notes. Rather, the Subscription Rights, together with the underlying Senior Notes with respect to which such Subscription Rights were allocated, will trade together as a unit and will be evidenced by the underlying Senior Notes until the Subscription Expiration Deadline, subject to such limitations, if any, that would be applicable to the transferability of the underlying Senior Notes; provided, that following the exercise of any Subscription Rights, the Holder thereof shall be prohibited from selling, transferring, assigning, pledging, hypothecating, participating, donating or otherwise encumbering or disposing of (each of the above, a "*Transfer*") the Senior Notes corresponding to such Subscription Rights unless the Rights Offering is terminated; provided further, that Noteholders shall be permitted to designate affiliates or Related Funds to participate in the Rights Offering and/or to receive the Rights Offering Notes and Stapled Equity without the need to Transfer any Senior Notes to such affiliate or Related Fund.**

**As part of the exercise process, following exercise of the Subscription Rights, the Senior Notes underlying the Subscription Rights that are being exercised will be frozen from Transfer unless the Rights Offering is terminated, as described in the Procedures.**

**All Noteholder Beneficial Owner Subscription Forms and/or other instructions required by the Nominee must be returned to the applicable Nominee in sufficient time to allow such Nominee to process and deliver the applicable underlying Senior Notes through ATOP to the appropriate**

**contra CUSIP established by DTC prior to the Subscription Expiration Deadline. By instructing its Nominee to submit the underlying Senior Notes through ATOP, the Noteholder is (a) authorizing its Nominee to exercise all Subscription Rights associated with the amount of Senior Notes as to which the instruction pertains, and (b) certifying that it understands that, once submitted, the underlying Senior Notes will be frozen from Transfer unless the Rights Offering is terminated.**

**Noteholders that are Backstop Parties must arrange for the Backstop Party Addendum to (a) be completed and returned to the Subscription Agent and (b) be provided to their Nominee so that the Nominee will be informed that funding from such Backstop Party does not have to be made prior to the Subscription Expiration Deadline. Noteholders that are Backstop Parties must deliver the Funding Amount for their Subscribed Notes and the applicable Backstop Notes directly to the Subscription Agent pursuant to the Funding Notice (except to the extent of any funding amounts previously provided by any such Noteholders to the Subscription Agent in accordance with the terms of the Backstop Commitment Letter) no later than the Backstop Funding Deadline, or otherwise in accordance with the terms of the Backstop Commitment Letter.**

**The offering, issuance and distribution of the Stapled Equity under the Plan shall be exempt from registration requirements under the Securities Act of 1933, as amended (the "*Securities Act*"), or any state or local law requiring registration for offer and sale of a security, in reliance upon the exemption provided in section 1145(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "*Bankruptcy Code*") to the maximum extent permitted by law and, to the extent not so permitted, section 4(a)(2) of the Securities Act or Regulation D or Regulation S promulgated thereunder or other applicable exemptions from registration under the Securities Act and any other applicable securities laws. To the extent that the Stapled Equity is issued under the Plan pursuant to section 1145(a) of the Bankruptcy Code, such securities may be resold by the holders thereof without registration unless the holder (A) is an "underwriter" (as defined in section 1145(b) of the Bankruptcy Code) with respect to such securities, (B) is an "affiliate" of Reorganized Mercer (as defined in Rule 144(a)(1) under the Securities Act), or (C) has been such an "affiliate" within ninety (90) days of such sale or transfer, in each case subject to any restrictions on transferability in the New Corporate Governance Documents or the New Senior Secured Notes Documents, as applicable.**

**The Rights Offering Notes are being offered, issued and distributed to Holders without registration under the Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance on the exemption provided in section 1145(a) of the Bankruptcy Code to the extent permitted thereunder and, to the extent not so permitted, section 4(a)(2) of the Securities Act, Regulation D or Regulation S promulgated thereunder or another available exemption; *provided*, that if counsel to the Debtors and counsel to the Consenting Senior Noteholders mutually agree, all Rights Offering Notes will be issued in reliance on section 4(a)(2) of the Securities Act (or another applicable exemption other than section 1145 of the Bankruptcy Code). The Backstop Notes (other than the Put Option Premium Notes, at the election of the beneficial owner thereof) and any Backstop Equity (as defined in the Backstop Commitment Letter) are being offered, issued and distributed to the Backstop Parties without registration under the Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance on the exemption provided in Section 4(a)(2) of the Securities Act, Regulation S under the Securities Act or another available exemption. Securities issued in reliance on Section 4(a)(2) of the Securities Act will be "restricted" securities, and resales of such securities, and of securities issued to "underwriters" or affiliates of Reorganized Mercer, will require registration under the Securities Act or an exemption from registration under the Securities Act. Resale restrictions are discussed in more detail in the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of***

***Reorganization of Mercer International Inc. and Its Debtor Affiliate*** **(as the same may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto, the "*Disclosure Statement*"), in the section entitled "Transfer Restrictions and Consequences under Federal Securities Laws."**

**The Rights Offering is being conducted by the Debtors in good faith and in compliance with the Bankruptcy Code. In accordance with section 1125(e) of the Bankruptcy Code, a debtor or any of its agents that participate, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized debtor under the plan, is not liable, on account of such participation, for violation of any applicable law, rule, or regulation governing the offer, issuance, sale or purchase of securities. The distribution or communication of the Procedures and the issuance of the Rights Offering Notes and the Stapled Equity in certain jurisdictions may be restricted by law. No action has been taken or will be taken to permit the distribution or communication of the Procedures in any jurisdiction where any action for that purpose may be required. Accordingly, the Procedures may not be distributed or communicated, and the Rights Offering Notes and the Stapled Equity may not be subscribed for or issued, in any jurisdiction except in circumstances where such distribution, communication, subscription or issuance would comply with all applicable laws without the need for the Debtors to take any action or obtain any consent, approval or authorization therefor except for any notice filings required under U.S. federal and applicable state securities laws. Further, the Rights Offering has not been approved or disapproved by the U.S. Securities and Exchange Commission or any other state securities commission or any other regulatory or governmental authority, nor have any of the foregoing passed upon the accuracy or adequacy of the information presented, and any representation to the contrary is a criminal offense. Please consult the Plan, the Disclosure Statement and the Procedures (including the instructions attached thereto) for additional information with respect to this Noteholder Beneficial Owner Subscription Form. Any terms capitalized but not defined herein shall have the meaning as set forth in the Plan or the Procedures.**

**None of the Subscription Rights distributed in connection with the Procedures have been or will be registered under the Securities Act, nor any state or local law requiring registration for offer and sale of a security. The Subscription Rights are being distributed under the Plan on account of Allowed Senior Notes Claims in reliance upon the exemption provided in section 1145(a)(1) of the Bankruptcy Code or, to the extent section 1145(a)(1) of the Bankruptcy Code is not available, section 4(a)(2) of the Securities Act, Regulation D or Regulation S promulgated thereunder or another available exemption.**

**The rights and obligations of the Backstop Parties in the Rights Offering shall be governed by the Backstop Commitment Letter to the extent the rights or obligations set forth therein differ from the rights and obligations set forth herein or in the Procedures.**

**Please note that you are responsible for all calculations made pursuant to this Noteholder Beneficial Owner Subscription Form.**

**Please refer to the Procedures for details on your entitlement to the Rights Offering Notes and the Stapled Equity to the extent you participate in the Rights Offering.**

**If you have any questions, please contact the Subscription Agent at the following phone number or email address: (833) 333-9454 (domestic toll-free) or +1 (650) 525-4708 (for international calls)**

**or MercerInquiries@stretto.com. To obtain copies of the documents, please visit https://cases.stretto.com/Mercer.**

**SUBJECT TO THE TERMS AND CONDITIONS OF THE PLAN AND THE PROCEDURES, ALL SUBSCRIPTIONS SET FORTH IN THIS NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM ARE IRREVOCABLE UPON RECEIPT BY THE SUBSCRIPTION AGENT AND WITHDRAWALS WILL NOT BE PERMITTED, UNLESS THE SUBSCRIPTION AGENT CONSENTS, IN WRITING, TO ALLOW REVOCATION SOLELY FOR THE PURPOSE OF CURING ADMINISTRATIVE OR CLERICAL ERRORS.**

**To subscribe, fill out all Items in this Noteholder Beneficial Owner Subscription Form completely and legibly – and follow the instructions of your Nominee with respect to the submission of your instructions to the Nominee.**

*[Remainder of page intentionally left blank]*

**Item 1. Amount of Senior Notes**

I certify that I am a beneficial owner of the aggregate principal amounts as set forth below of Mercer International Inc.'s 12.875% Senior Notes due October 1, 2028 (the "***2028 Senior Notes***") and 5.125% Senior Notes due February 1, 2029 (the "***2029 Senior Notes***" and, together with the 2028 Senior Notes, the "***Senior Notes***") in the following principal amounts (insert amount on the lines below) or that I am the authorized signatory of that beneficial holder. For the purposes of this Noteholder Beneficial Owner Subscription Form, do not adjust the principal (face) amount for any accrued or unmatured interest. Accrued prepetition interest is accounted for in the multipliers set forth in Item 2 below.

If you do not know the principal amount of your Senior Notes, please contact your Nominee immediately.

*Insert aggregate principal amount of Senior Notes held, as applicable.*

| | |
|---|---|
| 2028 Senior Notes (CUSIP 588056BC4 / ISIN US588056BC44) | ______________________ |
| 2028 Senior Notes (CUSIP U58839AL2 / ISIN USU58839AL29) | ______________________ |
| 2028 Senior Notes (CUSIP U58839AM0 / ISIN USU58839AM02) | ______________________ |
| 2029 Senior Notes (CUSIP 588056BB6 / ISIN US588056BB60) | ______________________ |
| 2029 Senior Notes (CUSIP 588056BA8 / ISIN US588056BA87) | ______________________ |
| 2029 Senior Notes (CUSIP U58839AK4 / ISIN USU58839AK46) | ______________________ |

**IMPORTANT NOTE: IF YOU HOLD YOUR SENIOR NOTES THROUGH MORE THAN ONE NOMINEE, YOU MUST COMPLETE AND RETURN A SEPARATE NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM TO EACH APPLICABLE NOMINEE. YOU MAY NOT AGGREGATE POSITIONS HELD BY DIFFERENT NOMINEES ON A SINGLE NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM.**

**Item 2. Funding Amount Calculation**

Each Noteholder is entitled to subscribe for and purchase Rights Offering Notes in a principal amount equal to its Pro Rata Share of the Rights Offering Amount based upon a fraction (expressed as a percentage), the numerator of which is the amount of its Allowed Senior Notes Claims and the denominator of which is the aggregate amount of all Allowed Senior Notes Claims.

Each Noteholder has the right, but not the obligation, to participate in the Rights Offering by subscribing for and purchasing Rights Offering Notes. Subject to the terms and conditions set forth in the Plan and the Procedures, each Noteholder is entitled to subscribe for either all or none of its Pro Rata Share of Rights Offering Notes at the Purchase Price. Each Noteholder that exercises its Subscription Rights will also receive its pro rata share of the Stapled Equity.

By filling in the following blanks,[1] you are indicating that the undersigned Noteholder is subscribing to purchase the principal amount of Rights Offering Notes specified in the below column

[1] A calculation worksheet is available at https://cases.stretto.com/Mercer for reference in calculating the Rights Offering Notes for which a noteholder may subscribe and the corresponding subscription amount.

"Calculation of Rights Offering Notes," on the terms and subject to the conditions set forth in the Procedures.

**Rights Offering Notes:**

The principal amount of Rights Offering Notes for which the undersigned may subscribe, based on the principal amount shown above, is calculated as follows:

| **Principal Amount of Notes to be Tendered into the Rights Offering** | | **Factor** | | **Calculation of Rights Offering Notes** |
|---|---|---|---|---|
| | X | 0.343608939 | = | |
| (Insert Principal Amount of *12.875% Senior Notes due 2028* CUSIP 588056BC4 Tendered) | | | | (Rights Offering Notes Subscribed) (***Round DOWN to nearest $1,000.00***) |
| | X | 0.343608939 | = | |
| (Insert Principal Amount of *12.875% Senior Notes due 2028* CUSIP U58839AL2 Tendered) | | | | (Rights Offering Notes Subscribed) (***Round DOWN to nearest $1,000.00***) |
| | X | 0.343608939 | = | |
| (Insert Principal Amount of *12.875% Senior Notes due 2028* CUSIP U58839AM0 Tendered) | | | | (Rights Offering Notes Subscribed) (***Round DOWN to nearest $1,000.00***) |
| | X | 0.322921628 | = | |
| (Insert Principal Amount of *5.125% Senior Notes due 2029* CUSIP 588056BB6 Tendered) | | | | (Rights Offering Notes Subscribed) (***Round DOWN to nearest $1,000.00***) |
| | X | 0.322921628 | = | |
| (Insert Principal Amount of *5.125% Senior Notes due 2029* CUSIP 588056BA8 Tendered) | | | | (Rights Offering Notes Subscribed) (***Round DOWN to nearest $1,000.00***) |
| (Insert Principal Amount of *5.125% Senior Notes due 2029* CUSIP U58839AK4 Tendered) | | | | (Rights Offering Notes Subscribed) (***Round DOWN to nearest $1,000.00***) |
| | | Total Rights Offering Notes: | = | (TOTAL Rights Offering Notes Subscribed, rounded down to nearest $1,000.00). |
| | | Aggregate Purchase Price: | = | (Aggregate Purchase Price, reflecting the total principal amount of Rights Offering Notes subscribed, as shown immediately above, multiplied by 95.238095%, rounded down to the nearest penny) |

**Item 3. Payment and Delivery Instructions**

| |
|---|
| **Funding Amount:**[2] **$**____________________________ |

For Noteholders that do not check the box in **Item 5** below, payment of the Funding Amount calculated pursuant to Item 2 above must be made by wire transfer ONLY of immediately available funds in accordance with the following wire instructions. A Nominee may remit the Funding Amounts of multiple Noteholders that are not Backstop Parties in a single aggregated wire only if it delivers to the Subscription Agent a holder-level allocation schedule (including VOI numbers) in accordance with Section 4(e) of the Procedures by the Subscription Expiration Deadline:

*Domestic/International wire:*

| | |
|---|---|
| Name of Account: | **Mercer International Inc.** |
| Account No.: | [redacted] |
| SWIFT No.: | [redacted] |
| Bank Name: | **Citizens Bank** |
| Bank Address: | **300 Barr Harbor Dr, Suite 450<br>Conshohocken, PA 19428** |
| Routing Number: | [redacted] |
| Special Instructions to be included in the reference: | VOI Number & Name of Participant/Bank* |

***Individual Wire Transfers:** If you are remitting funds individually, please include the VOI number, DTC Participant number, and Participant name in the wire reference field. If the field has character limitations, please prioritize the VOI number.

***Bulk Wire Transfers by DTC Participant:** If you are a nominee remitting a single wire on behalf of multiple parties, please include your DTC Participant number and the phrase **"**Bulk Wire**"** in the wire reference field. In addition, please email a detailed breakdown of the bulk wire in Excel, including each VOI number and its corresponding dollar amount, to MercerRightsOffering@Stretto.com.

**Noteholders who are not Backstop Parties must deliver the Funding Amount for all Subscribed Notes shown in the Funding Amount box above by the Subscription Expiration Deadline.**

**Noteholders who are Backstop Parties will receive a separate Funding Notice (as defined in the Procedures) and must deliver the Funding Amount for all Subscribed Notes (if any) and the applicable Backstop Notes (if any) no later than the Backstop Funding Deadline.**

**THE PAYMENT MUST BE MADE BY NOTEHOLDERS THAT ARE NOT BACKSTOP PARTIES BY THE SUBSCRIPTION EXPIRATION DEADLINE.**

Please provide your completed Noteholder Beneficial Owner Subscription Form (or other required instruction, as applicable) to your Nominee **in sufficient time** to allow such Nominee to deliver the aggregate principal amount of Senior Notes shown in **Item 1** via ATOP by the Subscription Expiration Deadline.

[2] Take the "Aggregate Purchase Price" from the Chart in **Item 2**.

**PLEASE NOTE: NO SUBSCRIPTION WILL BE VALID UNLESS ALL OF THE RELEVANT SENIOR NOTES HAVE BEEN TENDERED THROUGH ATOP BY THE SUBSCRIPTION EXPIRATION DEADLINE.**

[*Remainder of page intentionally left blank*]

**Item 4. Certification.**

The undersigned hereby certifies that it (a) is the beneficial owner of the Senior Notes set forth in Item 1 above or the authorized signatory (the "***Authorized Signatory***") of such Noteholder acting on behalf of the Noteholder, (b) in the case of a Backstop Party, is an "Eligible Holder" (*i.e.*, an "accredited investor" within the meaning of Rule 501 of Regulation D under the Securities Act or a "qualified institutional buyer" within the meaning of Rule 144A under the Securities Act, or a person that is not a "U.S. person" within the meaning of Regulation S under the Securities Act and is located outside the United States), and is entitled to participate in the Rights Offering, (c) has reviewed a copy of the Plan, the Disclosure Statement and the Procedures (including the Mercer Rights Offering Instructions attached thereto) and other applicable materials and (d) understands that the exercise of the Subscription Rights under the Rights Offering is subject to all the terms and conditions set forth in the Plan and the Procedures.

The undersigned further (e) represents that it is acquiring the Rights Offering Notes and Stapled Equity for its own account (or for accounts over which it exercises investment discretion) and not with a view to any distribution in violation of the Securities Act, (f) represents that it has full power and authority to execute this Noteholder Beneficial Owner Subscription Form, (g) acknowledges that it has relied solely on the Plan, the Disclosure Statement and the Procedures and on its own independent investigation, and has had the opportunity to consult its own advisors, and has not relied on any statement of the Debtors, the Subscription Agent or the Backstop Parties not contained therein, (h) acknowledges that it understands the risks of an investment in the Rights Offering Notes and Stapled Equity, including those described in the Disclosure Statement, (i) acknowledges that any Rights Offering Notes or other securities issued to it in reliance on Section 4(a)(2) of the Securities Act will be "restricted securities," will bear a restrictive legend and may not be resold except pursuant to registration or an available exemption, and (j) if it is participating in reliance on Regulation S under the Securities Act, represents that (1) it is not a "U.S. person" (as defined in Regulation S) and is not acquiring the Rights Offering Notes or Stapled Equity for the account or benefit of a U.S. person, (2) it is located outside the United States and the offer to it and its exercise of Subscription Rights are being made in an "offshore transaction" (as defined in Regulation S), (3) it has not engaged in, and is not aware of, any "directed selling efforts" (as defined in Regulation S) in the United States with respect to such securities, (4) its participation complies with the laws of the jurisdiction in which it is located and does not require the Debtors to take any action or obtain any consent, approval or authorization in such jurisdiction, and (5) it acknowledges that, to the extent such securities are not issued pursuant to section 1145(a) of the Bankruptcy Code, they may be subject to the resale restrictions and legends described in the Procedures.

Please provide your completed Noteholder Beneficial Owner Subscription Form to your Nominee in sufficient time to allow your Nominee to process and deliver your underlying Senior Notes through ATOP by the Subscription Expiration Deadline. By subscribing for the total principal amount of Rights Offering Notes shown in Item 2's chart above, the Noteholder (or the Authorized Signatory on behalf of the Noteholder) is hereby instructing its Nominee to arrange for the delivery of all of the Senior Notes shown in Item 1 via ATOP by the Subscription Expiration Deadline, and acknowledges that the Funding Amount shown in Item 3 must be paid by the Noteholder by the Subscription Expiration Deadline, unless the Noteholder is a Backstop Party.

**The Noteholder (or the Authorized Signatory on behalf of such Noteholder) acknowledges that, by executing this Noteholder Beneficial Owner Subscription Form or otherwise providing its subscription instructions to its Nominee, the Noteholder has elected to subscribe for the principal amount of Rights Offering Notes associated with the principal amount indicated, and will be bound to pay the Funding Amount for the Rights Offering Notes it has subscribed for and that it may be liable to the Debtors to the extent of any nonpayment.**

**In the event that funds received by the Subscription Agent in payment for a subscribing Noteholder's Subscribed Notes are less than the aggregate Funding Amount for the Subscribed Notes**

**of such Noteholder, the subscription(s) represented by such subscribing Noteholder's Noteholder Beneficial Owner Subscription Form will not be recognized, and the associated Subscription Rights will be deemed forever relinquished and waived, subject to the provisions of Section 10 of the Procedures relating to the waiver or correction of defects or irregularities.**

| | |
|---|---|
| Date: | ______________________ |
| Name of Noteholder: | ______________________ |
| Signature: | ______________________ |
| Name of Signatory: | ______________________ |
| Title: | ______________________ |
| Telephone Number: | ______________________ |
| Email: | ______________________ |

**Item 5. Backstop Party Representation.**

*This section is only for Backstop Parties, each of whom is aware of its status as a Backstop Party. If you are a Backstop Party, a fully completed Backstop Party Addendum MUST be provided to your Nominee and the Subscription Agent. A Backstop Party Addendum is attached to the Noteholder Beneficial Owner Subscription Form, and the Backstop Party is responsible for forwarding it to its Nominee, who will confirm that payment does not have to be made prior to the Subscription Expiration Deadline. Please note that checking the box below if you are not a Backstop Party may result in forfeiture of your rights to participate in the Rights Offering.*

| | |
|---|---|
| ☐ | I am a Backstop Party identified in the Backstop Commitment Letter and the Backstop Party Addendum has been provided to my Nominee. |

If the undersigned is a Backstop Party, the undersigned certifies that it qualifies as an Eligible Holder (as defined in Item 4) by satisfying at least one of the following criteria (check all that apply):

| | |
|---|---|
| ☐ | An "accredited investor" as defined in Rule 501 of Regulation D under the Securities Act. |
| ☐ | A "qualified institutional buyer" as defined in Rule 144A under the Securities Act. |
| ☐ | A person that is not a "U.S. person" within the meaning of Regulation S under the Securities Act and is located outside the United States. |

| | |
|---|---|
| Date: | ______________________ |
| Name of Noteholder: | ______________________ |
| Signature: | ______________________ |
| Name of Signatory: | ______________________ |
| Title: | ______________________ |
| Telephone Number: | ______________________ |
| Email: | ______________________ |

[*Remainder of page intentionally left blank*]

**Item 6. Tender of Senior Notes; Exercise Instruction.**

**Each Noteholder that exercises Subscription Rights in respect of Senior Notes must direct its Nominee to electronically tender all of its applicable underlying Senior Notes in the principal amount(s) set forth in Item 1 (which Nominees should copy below) to the appropriate contra CUSIP established by DTC for each series via ATOP in order to participate in the Rights Offering. Nominees must tender Noteholders' Senior Notes on a per-holder basis. Nominees may not submit bulk tender instructions.**

| To Be Completed by Nominee Only (Evidence of electronic delivery of Senior Notes via ATOP) | | | | | |
|---|---|---|---|---|---|
| **CUSIP / ISIN** | **Security Description** | **Principal Amount of Senior Notes Tendered into ATOP** | **Name & DTC # of Nominee Holding Position at DTC** | **DTC ATOP Confirmation Number (VOI) (If Applicable)** | **Euroclear or Clearstream Reference Number (If Applicable)** |
| | | | | | |
| | | | | | |
| | | | | | |

**Nominee Certification.** The undersigned Nominee certifies that (a) it holds the Senior Notes set forth above at DTC on behalf of the Noteholder identified in **Item 4**, (b) such Senior Notes have been tendered through ATOP under the VOI number(s) set forth above, and (c) the information set forth above is true and correct.

Name of Nominee: ______________________
DTC Participant No.: ______________________

Signature: ______________________
Name: ______________________
Title: ______________________
Date: ______________________

**Item 7. Registration Information.**

**The Debtors intend that the Rights Offering Notes, the Backstop Notes and the Put Option Premium Notes (if any) will be issued pursuant to the New Senior Secured Notes Indenture and, to the extent eligible, in book-entry form in accordance with the practices and procedures of DTC. The Debtors intend that (i) the Rights Offering Notes and the Stapled Equity issued to subscribing Noteholders will be issued in book-entry form in accordance with the practices and procedures of DTC, and that DTC, or its Nominee, will be the holder of record of such securities, and (ii) any securities issued to the Backstop Parties in reliance on Section 4(a)(2) of the Securities Act will be issued on the books of the applicable trustee or the Company's transfer agent unless such securities may be issued in book-entry form in accordance with the practices and procedures of DTC.**

**Please indicate on the lines provided below the name of the Noteholder in whose name the Rights Offering Notes, Backstop Notes, Put Option Premium Notes (if any) and Stapled Equity should be registered or issued in the event that such securities are issued in registered form on the books and records of the applicable trustee or the Company's transfer agent. You may direct that the Rights Offering Notes, Backstop Notes, Put Option Premium Notes (if any) and Stapled Equity be issued to different parties in any allocation of your choice, subject to completing Item 9 for any**

**designee. For example, you may request that all Rights Offering Notes be delivered to fund 1 while all of the Stapled Equity be delivered to fund 2. It is strongly recommended that the below information be typed to ensure that it is legible. Please also select the "account type" into which such securities will be issued:**

| | |
|---|---|
| Registration Name[3] Line 1 (Maximum 35 Characters) | ______________________ |
| Registration Name Line 2 (Maximum 35 Characters) (if needed) | ______________________ |
| Address 1 | ______________________ |
| Address 2 | ______________________ |
| Address 3 | ______________________ |
| City, State, Postal Code | ______________________ |
| Telephone | ______________________ |
| Email | ______________________ |
| U.S. Tax Identification Number | ______________________ |
| Check here if non-US (no TIN) | ☐ |

| | |
|---|---|
| ☐ | INDIVIDUAL ACCOUNT; |
| ☐ | IRA ACCOUNT; |
| ☐ | CORPORATIONS (S-CORP): ((ASSOCIATED, ASSOCIATES, ASSOCIATION, CO, CO. COMPANY, CORP, CORPORATE/PARTNER, ENTERPRISE(S), FUND, GROUP, INCORPORATED, INC, INTERNATIONAL, INTL, LIMITED, LTD, LIFETIME LIMITED COMPANY, LLC, L.L.C., PARTNER, PARTNERS, PLC, PUBLIC LIMITED COMPANY); |
| ☐ | PARTNERSHIP: (LP, L P, L.P., LLP, LIMITED PARTNERSHIP, LIFETIME LIMITED PARTNERSHIP); |
| ☐ | BANK; |
| ☐ | NOMINEE ACCOUNTS; |
| ☐ | THE NEW C-CORP; |
| ☐ | NON-PROFIT: (CEMETERY, CHURCH, COLLEGE, COMMISSION FOR CHILDREN WITH, COMMISSION FOR HANDICAPPED, COMMISSION MINISTRIES INC, COMMISSION OF PUBLIC WORKS, COMMISSION OF BANKING & FOUNDATIONS, HOSPITAL, SCHOOL, SYNAGOGUE, UNIVERSITY); |
| ☐ | FIDUCIARY ACCOUNT: (CUSTODIAN, CO-TRUSTEE, ESTATE, EXECUTOR, EXECUTRIX FBO, F/B/O, FAO, FIDUCIARY TRUST, ITF, LIFE TEN, PENSION PLAN, INDIVIDUAL NAME PROFIT SHARING PLAN, RETIREMENT PLAN, 401K PLAN, SELL TRANSFER PLEDGE, STATE UNIFORM TRANSFER TO MINOR'S ACT, TTEE, TTEES, UW, UTMA, UGMA, USUFRUCT, UNIFIED, UNIF GIFT MIN ACT, UNIF TRUST MIN ACT, UNIFIED GIFT TO MINORS ACT, UNIFORM GIFT TO MINORS, UNIFORM TRANSFER TO MINORS, GRAT (GRANTOR ANNUITY TRUST)); |
| ☐ | TENANTS IN COMMON; |
| ☐ | TENANTS BY ENTIRETY: (TEN ENT, TENANTS ENT, TENANTS ENTIRETY, TENANTS BY ENTIRETY, TENANTS BY ENTIRETIES); |

[3] To the extent there is more than one registrant, please attach a separate sheet with the information required under Item 7.

| | |
|---|---|
| ☐ | JOINT TENANTS: (JT TEN, JT TEN WROS, JT WROS, J/T/W/R/S, JOINT TENANCY, JOINT TENANTS WITH RIGHT OF SURVIVORSHIP, JT OWNERSHIP, IF JT ACCOUNT WITH TOD); or |
| ☐ | COMMUNITY PROPERTY: (COM PROP, COMM PROP, COM PROPERTY, COMM PROPERTY, MARITAL PROPERTY, HWACP, HUSBAND & WIFE AS COMMUNITY PROPERTY). |

**Please indicate on the lines provided below the DTC participant information for deposit of the Backstop Notes, the Put Option Premium Notes (if any) and any other securities issued to the Backstop Parties into the brokerage account of the Noteholder in the event such securities are DTC-eligible and issued in book-entry form in accordance with the practices and procedures of DTC. The Rights Offering Notes and the Stapled Equity are expected to be credited to the same DTC Participant and Beneficial Holder accounts through which the Noteholder tendered its 2028 Senior Notes and/or 2029 Senior Notes, unless a Noteholder designates an alternative recipient pursuant to <u>Item 9</u> below.**

DTC Participant Name ____________________
DTC Participant Number: ____________________
Beneficial Holder Name: ____________________
Beneficial Holder Account Number: ____________________
DTC Participant Contact Name: ____________________
DTC Participant Contact Telephone: ____________________
DTC Participant Contact Email: ____________________

**<u>Item 8</u>. Wire information in the event a refund is needed:**

| Field | Details |
|---|---|
| Beneficiary Name | |
| Beneficiary Address | |
| Bank Account Number or IBAN | |
| ABA Routing Number or SWIFT/BIC Code | |
| Bank Name | |
| Bank Address | |
| Payment Reference | |

[*Remainder of page intentionally left blank*]

| Intermediary Bank Information (if applicable) | |
|---|---|
| **Field** | **Details** |
| Intermediary Bank Name | |
| Intermediary Bank ABA Routing Number or SWIFT/BIC Code | |
| Additional Intermediary Bank Information | |

**Once completed, you must return this Noteholder Beneficial Owner Subscription Form (or other form of instruction required by your Nominee) to your Nominee in accordance with your Nominee's instructions in sufficient time for your Nominee to tender your Senior Notes to the appropriate contra CUSIP established by DTC through DTC's ATOP system no later than the Subscription Expiration Deadline.**

**PLEASE RETURN THIS NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM OR OTHER INSTRUCTION (AS REQUIRED BY THE NOMINEE) ONLY TO YOUR NOMINEE. DO NOT RETURN THIS FORM DIRECTLY TO THE SUBSCRIPTION AGENT, UNLESS YOUR NOMINEE HAS ALREADY TENDERED YOUR SENIOR NOTES THROUGH ATOP OR OTHERWISE AND THE RELATED VOI NUMBER(S) (IF APPLICABLE) ARE PROVIDED ON THIS NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM. NOTWITHSTANDING THE FOREGOING, ANY BACKSTOP PARTY ADDENDUM AND ANY DESIGNEE CERTIFICATION UNDER ITEM 9 MUST ALSO BE DELIVERED TO THE SUBSCRIPTION AGENT.**

**THE SUBSCRIPTION AGENT MUST BE IN RECEIPT OF THIS NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM BY THE SUBSCRIPTION EXPIRATION DEADLINE.**

Return completed documents to:

**Mercer Rights Offering Subscription**
c/o Stretto, Inc.
410 Exchange, Suite 100
Irvine, CA 92602

**Preferred Method**
Submit via email:
MercerRightsOffering@Stretto.com

**The method of delivery of the applicable Noteholder Beneficial Owner Subscription Form (or other form of instruction required by your Nominee) and any other required documents is at each Noteholder's option and sole risk. Each Noteholder must ensure that its Nominee tenders its Senior Notes at or prior to the Subscription Expiration Deadline and, except for Noteholders who are Backstop Parties, coordinates payment of the Funding Amount.**

**PLEASE NOTE: THE SUBSCRIPTION WILL NOT BE VALID UNLESS ALL OF THE RELEVANT SENIOR NOTES HAVE BEEN TENDERED THROUGH ATOP BY THE SUBSCRIPTION EXPIRATION DEADLINE.**

**PAYMENT MUST BE MADE BY NOTEHOLDERS THAT ARE NOT BACKSTOP PARTIES BY THE SUBSCRIPTION EXPIRATION DEADLINE.**

[*Remainder of page intentionally left blank*]

**Item 9. Designee Information.**

**Please complete ONLY if the Rights Offering Notes, Backstop Notes, Put Option Premium Notes (if any) or Stapled Equity are to be issued in the name of a designee or designees (including an affiliate or Related Fund). Any such party must also submit an IRS Form W-8 or IRS Form W-9, as applicable.**

**(a) Amount of Designation.**[4]

| | |
|---|---|
| Percentage and Amount of Rights Offering Notes: | ______________________ |
| Percentage and Amount of Backstop Notes: | ______________________ |
| Percentage and Amount of Put Option Premium Notes (if any): | ______________________ |
| Percentage and Amount of Stapled Equity (New Common Stock): | ______________________ |
| Percentage and Amount of Stapled Equity (New Convertible Preferred Stock) | ______________________ |

**(b) Designee Registration Information.**

**Please indicate on the lines provided below the name of the designee in whose name the Rights Offering Notes, Backstop Notes, Put Option Premium Notes (if any) or Stapled Equity should be registered or issued in the event that such securities are issued in registered form on the books and records of the applicable trustee or the Company's transfer agent.**

**It is strongly recommended that the below information be typed to ensure that it is legible. Please also select the "account type" into which such securities will be issued:**

| | |
|---|---|
| Registration Name Line 1 (Maximum 35 Characters) | ______________________ |
| Registration Name Line 2 (Maximum 35 Characters) (if needed) | ______________________ |
| Address 1 | ______________________ |
| Address 2 | ______________________ |
| Address 3 | ______________________ |
| City, State, Postal Code | ______________________ |
| Telephone | ______________________ |
| Email | ______________________ |
| U.S. Tax Identification Number | ______________________ |
| Check here if non-US (no TIN) | ☐ |

| | |
|---|---|
| ☐ | INDIVIDUAL ACCOUNT; |
| ☐ | IRA ACCOUNT; |

4 To the extent there is more than one designee, please attach a separate sheet with the information required under Item 9.

| | |
|---|---|
| ☐ | CORPORATIONS (S-CORP): ((ASSOCIATED, ASSOCIATES, ASSOCIATION, CO, CO. COMPANY, CORP, CORPORATE/PARTNER, ENTERPRISE(S), FUND, GROUP, INCORPORATED, INC, INTERNATIONAL, INTL, LIMITED, LTD, LIFETIME LIMITED COMPANY, LLC, L.L.C., PARTNER, PARTNERS, PLC, PUBLIC LIMITED COMPANY); |
| ☐ | PARTNERSHIP: (LP, L P, L.P., LLP, LIMITED PARTNERSHIP, LIFETIME LIMITED PARTNERSHIP); |
| ☐ | BANK; |
| ☐ | NOMINEE ACCOUNTS; |
| ☐ | THE NEW C-CORP; |
| ☐ | NON-PROFIT: (CEMETERY, CHURCH, COLLEGE, COMMISSION FOR CHILDREN WITH, COMMISSION FOR HANDICAPPED, COMMISSION MINISTRIES INC, COMMISSION OF PUBLIC WORKS, COMMISSION OF BANKING & FOUNDATIONS, HOSPITAL, SCHOOL, SYNAGOGUE, UNIVERSITY); |
| ☐ | FIDUCIARY ACCOUNT: (CUSTODIAN, CO-TRUSTEE, ESTATE, EXECUTOR, EXECUTRIX FBO, F/B/O, FAO, FIDUCIARY TRUST, ITF, LIFE TEN, PENSION PLAN, INDIVIDUAL NAME PROFIT SHARING PLAN, RETIREMENT PLAN, 401K PLAN, SELL TRANSFER PLEDGE, STATE UNIFORM TRANSFER TO MINOR'S ACT, TTEE, TTEES, UW, UTMA, UGMA, USUFRUCT, UNIFIED, UNIF GIFT MIN ACT, UNIF TRUST MIN ACT, UNIFIED GIFT TO MINORS ACT, UNIFORM GIFT TO MINORS, UNIFORM TRANSFER TO MINORS, GRAT (GRANTOR ANNUITY TRUST)); |
| ☐ | TENANTS IN COMMON; |
| ☐ | TENANTS BY ENTIRETY: (TEN ENT, TENANTS ENT, TENANTS ENTIRETY, TENANTS BY ENTIRETY, TENANTS BY ENTIRETIES); |
| ☐ | JOINT TENANTS: (JT TEN, JT TEN WROS, JT WROS, J/T/W/R/S, JOINT TENANCY, JOINT TENANTS WITH RIGHT OF SURVIVORSHIP, JT OWNERSHIP, IF JT ACCOUNT WITH TOD); or |
| ☐ | COMMUNITY PROPERTY: (COM PROP, COMM PROP, COM PROPERTY, COMM PROPERTY, MARITAL PROPERTY, HWACP, HUSBAND & WIFE AS COMMUNITY PROPERTY). |

**Please indicate on the lines provided below the DTC participant information for deposit of the Rights Offering Notes, Backstop Notes, Put Option Premium Notes (if any) and Stapled Equity into the brokerage account of the designee (including via DWAC), <u>in the event such securities</u> are DTC-eligible and issued in book-entry form in accordance with the practices and procedures of DTC.**

DTC Participant Name ______________________________
DTC Participant Number: ______________________________
Beneficial Holder Name: ______________________________
Beneficial Holder Account Number: ______________________________
DTC Participant Contact Name: ______________________________
DTC Participant Contact Telephone: ______________________________
DTC Participant Contact Email: ______________________________

**(c) <u>Designee Certification</u>.**

Each designee identified in this <u>Item 9</u> must complete and execute this Designee Certification and deliver it, together with an IRS Form W-9 or appropriate IRS Form W-8, as applicable, to the Subscription Agent

with this Noteholder Beneficial Owner Subscription Form by the Subscription Expiration Deadline. A designation will not be recognized unless this Designee Certification is properly completed and timely received, subject to the provisions of Section 10 of the Procedures relating to the waiver or correction of defects or irregularities. Notwithstanding the foregoing, any designation by a Backstop Party of a designee to purchase Rights Offering Notes or Backstop Notes, or to receive Stapled Equity or Put Option Premium Notes, on account of such Backstop Party's commitments shall be governed by Section 6 of the Backstop Commitment Letter and may be made by written notice to the Debtors at least three (3) days prior to the Effective Date. Designating a designee does not relieve the Noteholder of any of its obligations under the Procedures, including its obligation to pay the Funding Amount, or modify or eliminate any right or obligation of a Backstop Party under the Backstop Commitment Letter.

The undersigned designee hereby certifies that it (1) is an affiliate or Related Fund of the Noteholder identified in Item 4 of this Noteholder Beneficial Owner Subscription Form (or, in the case of a designee of a Backstop Party, is a Person permitted to be designated under Section 6 of the Backstop Commitment Letter); (2) in the case of a designee of a Backstop Party, is an Eligible Holder (*i.e.*, an "accredited investor" within the meaning of Rule 501 of Regulation D under the Securities Act or a "qualified institutional buyer" within the meaning of Rule 144A under the Securities Act, or a person that is not a "U.S. person" within the meaning of Regulation S under the Securities Act and is located outside the United States) and, if it is relying on Regulation S, makes the representations set forth in clause (j) of Item 4 as if it were the Noteholder (*provided* that any designee of a Backstop Party must be an "accredited investor" within the meaning of Rule 501(a) of Regulation D under the Securities Act); (3) is acquiring the securities designated to it for its own account (or for accounts over which it exercises investment discretion) and not with a view to any distribution in violation of the Securities Act; (4) makes, and is bound by, the representations and acknowledgments deemed made under Section 4 of the Procedures; and (5) agrees that it is deemed to be a party to, and bound by, the New Corporate Governance Documents as provided in Section 7 of the Procedures, without the requirement to execute a signature page thereto.

Name of Designee: ______________________________

Signature: ______________________________
Name: ______________________________
Title: ______________________________
Date: ______________________________

## BACKSTOP PARTY ADDENDUM

The undersigned certifies that the undersigned is a party to that certain Backstop Commitment Letter, dated as of November 2, 2026, by and among Mercer International Inc., the other Debtor party thereto and the Backstop Parties party thereto, and therefore is not required to submit payment of the Funding Amount in connection with the Rights Offering prior to the Subscription Expiration Deadline. A Noteholder that is a Backstop Party must provide its payment in accordance with the Funding Notice and Section 1(g) of the Backstop Commitment Letter. If you are a Backstop Party, please instruct your Nominee to submit a properly executed Backstop Party Addendum along with the Noteholder Beneficial Owner Subscription Form. The information in the table below should be consistent with the information provided in **Item 7** of the Noteholder Beneficial Owner Subscription Form.

**IN WITNESS WHEREOF**, the undersigned has executed this addendum on and as of the ___ day of ______, 2026.

**If an Entity:**

Name of Entity: ______________________________

Signature: ______________________________
By: ______________________________
Its: ______________________________
State or Country of Principal Place of Business ______________________________
Address: ______________________________
Fax: ______________________________
Email: ______________________________
US Tax ID/EIN: ______________________________
Or Check here if non-US (no TIN) ☐

**If an Individual Investor:**

Name of Individual: ______________________________

Signature: ______________________________
State or Country of Primary Residence: ______________________________
Address: ______________________________
Fax: ______________________________
Email: ______________________________
US Tax ID/EIN ______________________________
Or Check here if non-US (no TIN) ☐

| To Be Completed by Nominee Only (Evidence of electronic delivery of Senior Notes via ATOP) | | | | | |
|---|---|---|---|---|---|
| CUSIP / ISIN | Security Description | Principal Amount of Senior Notes Tendered into ATOP | Name & DTC # of Nominee Holding Position at DTC | DTC ATOP Confirmation Number (VOI) (If Applicable) | Euroclear or Clearstream Reference Number (If Applicable) |
| | | | | | |
| | | | | | |
| | | | | | |